**JENNER & BLOCK LLP**
Kate T. Spelman (Cal. Bar. No. 269109)
kspelman@jenner.com
633 West Fifth Street, Suite 3600
Los Angeles, California 90071
Telephone:      213 239-5100
Facsimile:      213 239-5199

**JENNER & BLOCK LLP**
Debbie L. Berman (*pro hac vice*)
dberman@jenner.com
Wade A. Thomson (*pro hac vice*)
wthomson@jenner.com
353 North Clark Street
Chicago, Illinois 60654
Telephone:      312 222-9350
Facsimile:      312 527-0484

Attorneys for Defendant
PeopleConnect, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MEREDITH CALLAHAN AND LAWRENCE GEOFFREY ABRAHAM, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br>  v.<br><br>PEOPLECONNECT, INC., a Delaware Corporation; PEOPLECONNECT INC., a California Corporation; CLASSMATES MEDIA CORPORATION, a Delaware Corporation; and DOES 1 through 50, inclusive,<br><br>      Defendants. | Case No. 3:20-cv-09203-EMC<br><br>**NOTICE OF DEFENDANT'S MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 AND MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16 AND MEMORANDUM IN SUPPORT**<br><br>Complaint Filed: December 18, 2020<br><br>Hearing Date: April 29, 2021<br>Hearing Time: 1:30 p.m.<br>Judge: Judge Edward M. Chen<br>Courtroom: 5 |

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on April 29, 2021 at 1:30 p.m., or as soon thereafter as the Court is available, in Courtroom 5 of the federal courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant PeopleConnect, Inc. ("PeopleConnect") will and hereby does move the Court to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) and Federal Rule of Civil Procedure (12)(b)(6).

PeopleConnect's Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the concurrently-filed Declaration and exhibit attached thereto, any additional briefing on this subject, and any evidence and arguments that will be presented to the Court at the hearing on this matter.

Dated: March 19, 2021                JENNER & BLOCK LLP


By: */s/ Kate T. Spelman*
Kate T. Spelman
Debbie L. Berman
Wade A. Thomson

Attorneys for Defendant
PeopleConnect, Inc.

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

BACKGROUND FACTS AND PLAINTIFFS' MATERIAL ALLEGATIONS ......................................1

ARGUMENT ...........................................................................................................2

I.     PLAINTIFFS SHOULD BE REQUIRED TO PROCEED IN ARBITRATION. ...........................2

      A.     A Valid Arbitration Agreement Exists Between Plaintiffs And PeopleConnect. ...............3

           1.     Registered Classmates.com Users Are Bound By The Terms Of Service. ............3

           2.     Plaintiffs' Counsel Registered As A Classmates User on Behalf of his Clients. .............................................................................................................4

      B.     The Arbitrator Must Decide If This Dispute Is Within The Scope Of The Agreement. ..........................................................................................................5

II.     PLAINTIFFS' CLAIMS ARE BARRED BY FEDERAL LAW. ......................................5

      A.     The Communications Decency Act Bars Plaintiffs' Claims. ...............................6

      B.     The Copyright Act Preempts All But One Of Plaintiffs' Claims. .........................9

III.     PLAINTIFFS HAVE NOT ADEQUATELY PLEADED ANY CAUSES OF ACTION. ..........11

      A.     Plaintiffs Have Failed To State A Claim Under The California Right Of Publicity Law. ................................................................................................................11

           1.     Plaintiffs' Allegations Are Insufficient To State A Claim Under § 3344 ..............11

                i.     Plaintiffs Have Not Pleaded An Actionable Injury. ...................................11

                ii.     Plaintiffs Have Not Plausibly Pleaded Unlawful Advertising. ..................12

           2.     The "Public Affairs" Exception Forecloses Plaintiffs' Claim. .............................13

      B.     Plaintiffs Do Not State A California Unfair Competition Law Claim. ............................15

           1.     Use Of Personal Information Is Not A Violation Of The UCL. ...........................15

           2.     Plaintiffs Do Not Allege An Unlawful Or Unfair Practice. ..................................16

      C.     Plaintiffs Fail To State A Claim For Intrusion On Seclusion. ...........................................17

      D.     Plaintiffs' Unjust Enrichment Claim Should Be Dismissed As A Matter of Law ............18

IV.     PEOPLECONNECT'S ALLEGED CONDUCT IS PROTECTED BY THE FIRST AMENDMENT. .....................................................................................................19

      A.     The Conduct Alleged Is Core First Amendment Speech. .................................19

      B.     Yearbooks Are Fully Protected, Non-Commercial Speech. .............................20

C.    If Displaying Information About Plaintiffs Is Commercial Speech, It Still Is Protected. ...................................................................................................21

V.    THE COMPLAINT IS BARRED BY THE CALIFORNIA ANTI-SLAPP STATUTE. .............22

A.    Plaintiffs' Suit Arises From PeopleConnect's Protected Conduct. ...................................23

B.    Plaintiffs Cannot Show A Likelihood Of Success On Their Claims. ................................25

CONCLUSION......................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Anthem, Inc. Data Breach Litig.*,
   No. 15-02617, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ................................................16

*Archer v. United Rentals, Inc.*,
   195 Cal. App. 4th 807 (2011) ............................................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................................................11

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) .......................................................................................18, 19

*Avakian v. Wells Fargo Bank, N.A.*,
   827 F. App'x 765 (9th Cir. 2020) ......................................................................................18

*Ballen v. City of Redmond*,
   466 F.3d 736 (9th Cir. 2006) .............................................................................................22

*Barrett v. Rosenthal*,
   40 Cal. 4th 33 (2006) ........................................................................................................23

*Bartnicki v. Vopper*,
   532 U.S. 514 (2001) ..........................................................................................................20

*Baugh v. CBS, Inc.*,
   828 F. Supp. 745 (N.D. Cal. 1993) ....................................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................................................11

*Belluomini v. Citigroup, Inc.*,
   2013 WL 5645168 (N.D. Cal. Oct. 16, 2013) ....................................................................18

*Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*,
   206 F.3d 980 (10th Cir. 2000) .............................................................................................8

*Bd. of Trustees of State Univ. of N.Y. v. Fox*,
   492 U.S. 469  (1989) .........................................................................................................22

*Binder v. Aetna Life Ins. Co.*,
   75 Cal. App. 4th 832 (1999) ................................................................................................3

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) .............................................................................................5

*Callahan v. Ancestry.com, Inc.*,
  No. 20-cv-08437, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021) ...................................... *passim*

*Caraccioli v. Facebook, Inc.*,
  700 F. App'x 588 (9th Cir. 2017) ..................................................................................6

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ...................................................................................6, 9

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ..................................................................................................16

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*,
  447 U.S. 557 (1980)..................................................................................................21, 22

*Cheri v. Forum International, Ltd.*,
  692 F. 2d 634 (9th Cir. 1982) ........................................................................................6

*City of Oakland v. Oakland Raiders*,
  445 F. Supp. 3d 587 (N.D. Cal. 2020) ..................................................................11

*Clark v. Andover Sec.*,
  44 F. App'x 228 (9th Cir. 2002) ....................................................................................4

*Coffee v. Google, LLC*,
  No. 20-03901, 2021 WL 493387 (N.D. Cal. Feb. 10, 2021) ........................................6

*Cohen v. Facebook, Inc.*,
  798 F. Supp. 2d 1090 (N.D. Cal. 2011) ..................................................................12

*Cordas v. Uber Techs., Inc.*,
  228 F. Supp. 3d 985 (N.D. Cal. 2017) ..........................................................................3

*Cross v. Facebook, Inc.*,
  14 Cal. App. 5th 190 (2017) ........................................................................................13

*Damner v. Facebook Inc.*,
  No. 20-05177, 2020 WL 7862706 (N.D. Cal. Dec. 31, 2020)......................................17

*Damon v. Ocean Hills Journalism Club*,
  85 Cal. App. 4th 468 (2000) ............................................................................23, 24, 25

*Davis v. Elec. Arts Inc.*,
  775 F.3d 1172  (9th Cir. 2015) ......................................................................................2

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)........................................................................................................2

*Dex Media W., Inc. v. City of Seattle*,
  696 F.3d 952 (9th Cir. 2012) ......................................................................................19

*In re DirecTV Early Cancellation Litig.*,
   738 F. Supp. 2d 1062 (C.D. Cal. 2010) ...................................................................6

*Doe v. CVS Pharmacy, Inc.*,
   982 F.3d 1204 (9th Cir. 2020) ...................................................................16, 17

*Donohue v. Apple, Inc.*,
   871 F. Supp. 2d 913 (N.D. Cal. 2012) ...................................................................19

*Dora v. Frontline Video, Inc.*,
   15 Cal. App. 4th 536 (1993) ...................................................................13, 24

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093 (9th Cir. 2019) ...................................................................8

*Edenfield v. Fane*,
   507 U.S. 761 (1993) ...................................................................21

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*,
   485 U.S. 568 (1988) ...................................................................15

*In re Facebook Internet Tracking Litig.*,
   140 F. Supp. 3d 922 (N.D. Cal. 2015) ...................................................................18

*In re Facebook Priv. Litig.*,
   791 F. Supp. 2d 705 (N.D. Cal. 2011) ...................................................................15

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) (en banc) ...................................................................7

*Firoozye v. Earthlink Network*,
   153 F. Supp. 2d 1115 (N.D. Cal. 2001) ...................................................................9

*Fleet v. CBS, Inc.*,
   50 Cal. App. 4th 1911 (1996) ...................................................................9, 10, 11

*Folgelstrom v. Lamps Plus, Inc.*,
   195 Cal. App. 4th 986 (2011) ...................................................................15

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019) ...................................................................7, 9

*Gates v. Discovery Commc'ns, Inc.*,
   34 Cal. 4th 679 (2004) ...................................................................23

*Gionfriddo v. Major League Baseball*,
   94 Cal. App. 4th 400 (2001) ................................................................... *passim*

*In re Google Assistant Priv. Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ...................................................................17

*In re Google, Inc., Priv. Policy Litig.*,
    58 F. Supp. 3d 968 (N.D. Cal. 2014) .................................................................................18

*Grenier v. Taylor*,
    234 Cal. App. 4th 471 (2015) ....................................................................................23, 24

*Hemlock Hat Co. v. Diesel Power Gear, LLC*,
    No. 19-024222020, WL 7013585 (S.D. Cal. Nov. 25, 2020) ....................................................6

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    273 F. Supp. 3d 1099 (N.D. Cal. 2017) ..................................................................15, 22, 24

*IMDb.com Inc. v. Becerra*,
    962 F.3d 1111 (9th Cir. 2020) .............................................................................19, 20, 21

*Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*,
    No. 18-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019) ..............................................4, 5

*In re iPhone Application Litig.*,
    No. 11-02250, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ..............................................15

*Italian Colors Rest. v. Becerra*,
    878 F.3d 1165 (9th Cir. 2018) .......................................................................................21, 22

*Jones v. Dirty World Ent. Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) ...........................................................................................7

*Jones v. PNC Bank, N.A.*,
    No. 10-01077, 2010 WL 3325615 (N.D. Cal. Aug. 20, 2010) ..............................................16

*Jules Jordan Video, Inc. v. 144942 Canada, Inc.*,
    617 F.3d 1146 (9th Cir. 2010) .......................................................................................9, 10

*Jurin v. Google Inc.*,
    695 F. Supp. 2d 1117 (E.D. Cal. 2010)...............................................................................6

*Keller Constr. Co. v. Kashani*,
    220 Cal. App. 3d 222 (1990) ...........................................................................................4

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ..................................................................................7, 8, 9

*Kincaid v. Gibson*,
    236 F.3d 342 (6th Cir. 2001) .......................................................................................19, 20

*Kwikset Corp. v. Superior Ct.*,
    51 Cal. 4th 310 (2011) ....................................................................................................17

*LaCourt v. Specific Media, Inc.*,
    No. 10-1256, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) ..............................................15

*Laws v. Sony Music Ent.*,
    448 F.3d 1134 (9th Cir. 2006) ...........................................................................10

*Letizia v. Prudential Bache Secs., Inc.*,
    802 F.2d 1185 (9th Cir. 1986) ...........................................................................4

*Levin v. Caviar, Inc.*,
    146 F. Supp. 3d 1146 (N.D. Cal. 2015) ...........................................................3

*Liberi v. Taitz*,
    No. 11-0485, 2011 WL 13315691 (C.D. Cal. Oct. 17, 2011)...........................8

*Local TV, LLC v. Superior Ct.*,
    3 Cal. App. 5th 1 (2016) ...................................................................................12

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...........................................................18

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013) ...............................................................22, 23, 25

*Maloney v. T3Media, Inc.*,
    94 F. Supp. 3d 1128 (C.D. Cal. 2015), *aff'd*, 853 F.3d 1004 (9th Cir. 2017).................. *passim*

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
    925 F.3d 1263 (D.C. Cir. 2019) ........................................................................8

*McCoy v. Alphabet, Inc.*,
    No. 20-05427, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ..............................18

*Miller v. Collectors Universe, Inc.*,
    159 Cal. App. 4th 988 (2008) ...........................................................................12

*Miller v. Nat'l Broad. Co.*,
    187 Cal. App. 3d 1463 (1986) ...........................................................................18

*Montana v. San Jose Mercury News, Inc.*,
    34 Cal. App. 4th 790 (1995) ..............................................................12, 21, 24

*Murphy v. Schneider Nat'l, Inc.*,
    362 F.3d 1133 (9th Cir. 2004) ...........................................................................3

*New Kids on the Block v. News Am. Publ'g, Inc.*,
    745 F. Supp. 1540 (C.D. Cal. 1990), *aff'd*, 971 F.2d 302 (9th Cir. 1992)...................14, 19, 23

*Obado v. Magedson*,
    No. 13-2382, 2014 WL 3778261, 7 (D.N.J. July 31, 2014), *aff'd*, 612 F. App'x 90 (3d
    Cir. 2015) ...........................................................................................................8

*Ozenne v. Chase Manhattan Bank (In re Ozenne)*,
    841 F.3d 810 (9th Cir. 2016) .............................................................................19

*Perkins v. Linkedin Corp.*,
   53 F. Supp. 3d 1222. (N.D. Cal. 2014) .................................................................................12

*Phillips v. Archstone Simi Valley LLC*,
   2016 WL 400100 (C.D. Cal. 2016)......................................................................................18

*Planned Parenthood Fed'n of Am Inc,. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018) ...............................................................................................25

*Polydoros v. Twentieth Century Fox Film Corp.*,
   67 Cal. App. 4th 318 (1997) ..........................................................................................21, 24

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015)..............................................................................................................20

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010)..................................................................................................................5

*Ruiz v. Gap Inc.*,
   540 F. Supp. 2d 1121 (N.D. Cal. 2008) ...............................................................................15

*Ruiz v. Harbor View Cmty. Ass'n*,
   134 Cal. App. 4th 1456 (2005) ................................................................................23, 24, 25

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
   72 Cal. App. 4th 861 (1999) ................................................................................................17

*S.D. v. Hytto Ltd.*,
   No. 18-00688, 2019 WL 8333519 (N.D. Cal. May 15, 2019)..............................................18

*Sarver v. Chartier*,
   813 F.3d 891 (9th Cir. 2016) .........................................................................................20, 22

*Shulman v. Grp. W Prods., Inc.*,
   18 Cal. 4th 200 (1998), *as modified on denial of reh'g* (July 29, 1998)..........................13, 17

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ...............................................................................................11

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011)..................................................................................................19, 21, 22

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001), *amended by* 275 F.3d 1187 (2001) .........................................12

*Stewart v. Rolling Stone LLC*,
   181 Cal. App. 4th 664 (2010) ........................................................................................19, 21

*Thompson v. Home Depot Inc.*,
   2007 WL 2746603 (S.D. Cal. 2007) .....................................................................................15

*Tompkins v. 23andMe, Inc.*,
  No. 13-05682, 2014 WL 2903752 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th
  Cir. 2016) ................................................................................................................3, 4

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976) ...........................................................................................20, 22

*Velasquez-Reyes v. Samsung Elecs. Am., Inc.*,
  No. 16-1953, 2020 WL 6528422 (C.D. Cal. Oct. 20, 2020)........................................4

*Visa USA, Inc. v. Martiz Inc.*,
  No. 07-05585, 2008 WL 744832 (N.D. Cal. Mar. 18, 2008) .....................................2

*Wilbanks v. Wolk*,
  121 Cal. App. 4th 883 (2004) ...............................................................................23

*William O'Neil & Co., Inc.  v. Validea.com Inc.*,
  202 F. Supp. 2d 1113 (C.D. Cal. 2002) ..............................................13, 14, 21, 24

*Williams v. Facebook, Inc.*,
  384 F. Supp. 3d 1043 (N.D. Cal. 2018) ..................................................................17

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ...................................................................................9

**Statutes and Rules**

17 U.S.C. § 101 ...........................................................................................................9, 10

17 U.S.C. § 102 ...........................................................................................................9, 10

17 U.S.C. § 103 ...............................................................................................................9

17 U.S.C. § 106 ...........................................................................................................9, 10

47 U.S.C. § 230 ........................................................................................................ *passim*

Cal. Bus. & Prof. Code § 17200 .................................................................2, 9, 15, 16

Cal. Bus. & Prof. Code § 17204 ...............................................................................15

Cal. Civ. Code § 2330 ...................................................................................................4

Cal. Civ. Code § 3344 ............................................................................................. *passim*

Cal. Code Civ. P. § 425.16........................................................................................ *passim*

Fed. R. Civ. P. 12 ...................................................................................................3, 6, 11

Fed. R. Civ. P. R-14(a) ................................................................................................5

**Other Authorities**

Public Library Classic Catalog Albuquerque and Bernalillo County,
   https://albuq.cabq.gov/search~S1?/Xyearbook+albuquerque+academy&searchscope=
   1&SORT=D/Xyearbook+albuquerque+academy&searchscope=1&SORT=D&SUBK
   EY=yearbook+albuquerque+academy/1%2C5%2C5%2CB/frameset&FF=Xyearbook
   +albuquerque+academy&searchscope=1&SORT=D&2%2C2%2C (last accessed Mar.
   18, 2021) ...................................................................................................................1

Library of Congress, https://www. loc.gov/resource/mss85590.041/?sp=1&r=-
   0.649,0.265,2.298,0.978,0 (last accessed Mar. 18, 2021).......................................................14

Port Huron Northern High School Yearbooks, Internet Archive, https://archive.org/details/
   porthuronnorthernhsyearbooks (last accessed Mar. 18, 2021) ...................................................2

*Shellville High School, The Blade*, TX0001451935, Public Catalog, U.S. Copyright Office
   (Oct. 30, 1984), https://bit.ly/2NE5Aui ...................................................................................9

St. Clair County Library System Digital Yearbook Collection,
   https://stclaircountylibrary.org/search_and_media/databases/yearbooks (last accessed
   Mar. 18, 2021)..................................................................................................................2

## INTRODUCTION

Yearbooks are American institutions. They are the primary medium through which school communities memorialize the events, stories, and images of the prior year. Local libraries as well as national archives maintain yearbooks as valued artifacts, which both inform and entertain their readers for generations. PeopleConnect, Inc. operates one of the most comprehensive online libraries of yearbooks in the nation. Much of that material is available to any website user for free. Some of it is available to subscribing members. But all of it comes from that most ubiquitous of keepsakes—yearbooks.

Plaintiffs submit that PeopleConnect violates California law by displaying and selling yearbooks on the internet. They seek to pursue a sweeping class action—as these same Plaintiffs already unsuccessfully attempted with regard to a similar database of yearbooks maintained by another website, *see Callahan v. Ancestry.com, Inc.*, No. 20-cv-08437, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021)—under various right of publicity and privacy theories. Initially, those claims go nowhere in this Court as Plaintiffs have agreed to resolve their disputes with PeopleConnect in arbitration. But more fundamentally, given that Plaintiffs seek to remove from the internet documents available to all at public libraries, it is no surprise that a host of legal doctrines bar Plaintiffs' efforts. Federal law—specifically, Section 230 of the Communications Decency Act and Section 301 of the Copyright Act—prevents Plaintiffs from pursuing their state law claims; Plaintiffs cannot plead all the elements they must; and the First Amendment protects the very speech Plaintiffs seek to prohibit. The Court therefore should dismiss Plaintiffs' Complaint.

## BACKGROUND FACTS AND PLAINTIFFS' MATERIAL ALLEGATIONS

PeopleConnect, Inc. owns and operates Classmates.com, which includes an online library of over 450,000 school yearbooks that can be viewed by its 70 million members. Plaintiff Lawrence Geoffrey Abraham alleges that the Classmates.com library includes yearbooks from Albuquerque Academy in Albuquerque, New Mexico, which contain "sixteen unique records," which use his "name, photograph, and likeness." Complaint ¶¶ 22−23, Dkt. No. 2 ("Compl.").[1] To support his claims, Abraham identifies

---

[1]   Yearbooks from Abraham's alma mater are available at his hometown library. *See* https://albuq.cabq.gov/search~S1?/Xyearbook+albuquerque+academy&searchscope=1&SORT=D/Xyear book+albuquerque+academy&searchscope=1&SORT=D&SUBKEY=yearbook+albuquerque+academy/ 1%2C5%2C5%2CB/frameset&FF=Xyearbook+albuquerque+academy&searchscope=1&SORT=D&2% 2C2%2C (last accessed Mar. 18, 2021).

three yearbook records accessible to Classmates.com users: (1) his 11th grade portrait from 2003; (2) his 7th grade portrait from 1998; and (3) a photograph from Abraham's 11th grade yearbook, *id*. ¶ 22. Plaintiff Meredith Callahan similarly alleges that the Classmates.com library contains yearbooks from Northern High School in Port Huron, Michigan, which contain "thirty-six unique records" using her "name, photograph, and likeness." *Id*. ¶¶ 39−40.[2] Callahan also highlights three records accessible to Classmates.com users: (1) her 10th grade portrait from 1997; (2) her 12th grade valedictorian photo; and (3) her 12th grade portrait from 1999. *Id*. ¶¶ 39, 42. Neither Plaintiff alleges that their records have ever been viewed by any Classmates.com user.

Plaintiffs pursue a putative class action based on PeopleConnect's online database of decades-old yearbooks and assert four causes of action: (1) violation of California Civil Code § 3344; (2) violation of California Business & Professions Code § 17200; (3) intrusion upon seclusion; and (4) unjust enrichment. *Id.* ¶¶ 73−96. In doing so, Plaintiffs offer two overarching theories. First, that it is unlawful for PeopleConnect to sell reprinted yearbooks and access to online scans of those same yearbooks because they include Plaintiffs' names and likenesses. *See id*. ¶ 9. Second, that it is unlawful for PeopleConnect to use Plaintiffs' names and likenesses in what Plaintiffs allege are advertisements for these reprinted and online yearbooks, as well as for memberships to Classmates.com. *Id.* ¶¶ 7–8.

## ARGUMENT

### I.   Plaintiffs Should Be Required To Proceed In Arbitration.

To start, Plaintiffs are in the wrong forum. The Federal Arbitration Act ("FAA") "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985). And where an arbitration agreement delegates questions of arbitrability to the arbitrator, the court's role is limited to determining if a valid agreement exists. *Visa USA, Inc. v. Martiz Inc.*, No. 07-05585, 2008 WL 744832, at *3–4 (N.D. Cal. Mar. 18, 2008). Here, Plaintiffs' counsel assented to the Classmates.com Terms of Service ("TOS")

---

[2] Yearbooks from Callahan's alma mater are available through her hometown library. St. Clair County Library System Digital Yearbook Collection, https://stclaircountylibrary.org/search_and_media/databases/yearbooks (last accessed Mar. 18, 2021); Port Huron Northern High School Yearbooks, Internet Archive, https://archive.org/details/porthuronnorthernhsyearbooks (last accessed Mar. 18, 2021).

while acting as Plaintiffs' agent, binding Plaintiffs to the arbitration provision therein. The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3).

**A.  A Valid Arbitration Agreement Exists Between Plaintiffs And PeopleConnect.**

**1.  Registered Classmates.com Users Are Bound By The Terms Of Service.**

Numerous courts have held that clickwrap agreements—which require a user to click a button to assent to a website's terms of service—constitute valid and enforceable contracts. *E.g.*, *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015); *see Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999). The terms need not be displayed on the same page as the button; rather, a user may be bound by hyperlinked terms. *Tompkins v. 23andMe, Inc.*, No. 13-05682, 2014 WL 2903752, at *8 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) (enforcing arbitration agreement where plaintiff "clicked a box or button that appeared near a hyperlink to the TOS to indicate acceptance of the TOS"). *Cordas v. Uber Techs., Inc.,* 228 F. Supp. 3d 985 (N.D. Cal. 2017), is instructive. There, the plaintiff encountered the following when creating an account: "By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy." *Id.* at 990. "The phrase 'Terms & Conditions and Privacy Policy' was displayed in a clickable box that linked a user to the pages containing the then-current terms and conditions and privacy policies." *Id*. at 988. The court held that "[b]y creating an account on the Uber app, [the user] affirmatively acknowledge[d] the agreement and is bound by its terms," *id.*at 990 (internal quotation marks omitted), and granted Uber's motion to compel arbitration on that basis. *Id.* at 992.

The same is true here. To register for a free or paid account on Classmates.com, a user is prompted with the following message: "By clicking Submit, you agree to the Terms of Service and Privacy Policy." Declaration of Tara McGuane, ("Decl.") ¶ 6.[3] The TOS are hyperlinked directly from that message, and the user must affirmatively click "submit" to create an account. *Id*. The TOS contains the following:

> **YOU AND THE PEOPLECONNECT ENTITIES EACH AGREE THAT ANY AND ALL DISPUTES THAT HAVE ARISEN OR MAY ARISE BETWEEN YOU AND THE PEOPLECONNECT ENTITIES SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT.**

---

[3] Because a motion to compel arbitration is brought pursuant to Rule 12(b)(3), the Court need not accept the pleadings as true and may consider materials outside the pleadings. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).

Decl. ¶ 8. Under controlling law, this creates a valid and enforceable contract to arbitrate.

### 2.      Plaintiffs' Counsel Registered As A Classmates User on Behalf of his Clients.

Plaintiffs' counsel, Benjamin Osborn, bound Plaintiffs to the arbitration agreement by acting on their behalf to create two Classmates.com accounts. A lawyer is his client's agent. *Clark v. Andover Sec.*, 44 F. App'x 228, 231 (9th Cir. 2002). Under California law, "[a]n agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal." Cal. Civ. Code § 2330. A principal thus cannot avoid an arbitration agreement by sending his agent to act on his behalf. *Keller Constr. Co. v. Kashani*, 220 Cal. App. 3d 222, 225–27 (1990); *Letizia v. Prudential Bache Sec., Inc*., 802 F.2d 1185, 1187–88 (9th Cir. 1986); *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. 16-1953, 2020 WL 6528422, at *4 (C.D. Cal. Oct. 20, 2020).

Osborn has three Classmates.com accounts, one of which uses the same email address that appears in his signature block in the Complaint. Decl. ¶¶ 12–14. He could not have created these accounts without assenting to the TOS. Decl. ¶¶ 6, 12–16. The Complaint confirms such assent, as it includes screenshots showing Osborn's access to sections of the website accessible only after assent. Compl. ¶¶ 22–27, 29, 39, 41–45, and 47; Decl. ¶¶ 6, 12–16. *See Tompkins,* 2014 WL 2903752, at *7 (plaintiff's access to portions of website requiring assent to terms of use constitutes sufficient evidence of assent). Those screenshots also confirm that Osborn used two of his Classmates.com accounts (one of which he created on December 6, 2020, twelve days before this action was filed) to search for records utilized to file this action on Plaintiffs' behalf—an activity "within the scope of his actual or ostensible authority." Cal. Civ. Code § 2330.

*Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*, No. 18-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019), is on point. There, Uber moved to compel arbitration on the grounds that the plaintiffs' agent—a paralegal at the office representing plaintiffs—agreed to Uber's terms of service. *Id.*, at *4. The court held that because the plaintiffs had "dispatched their agents to affirmatively test the Uber application in order to bolster their claim of discrimination," plaintiffs were "bound by the arbitration agreement to the same extent as their agent." *Id*. This case is no different. Instead of accessing Classmates.com themselves, Plaintiffs "dispatched" Osborn to "affirmatively test [Classmates.com] in

order to bolster their claim[s]." *Id.* So through Osborn, Plaintiffs gained access to portions of Classmates.com they would not have been able to view without Osborn's assent and then put images of those sections in their Complaint. Compl. ¶¶ 22–27, 29, 39, 41–45, and 47. Plaintiffs cannot avoid arbitration by having their attorney do what they otherwise would have had to do themselves. Rather, as in *Indep. Living Res.*, Plaintiffs are "bound by the arbitration agreement [in the TOS] to the same extent as their agent." 2019 WL 3430656, at * 4.[4]

   **B.     The Arbitrator Must Decide If This Dispute Is Within The Scope Of The Agreement.**

   When an arbitration agreement "clearly and unmistakably" contains a "delegation provision"—one that delegates issues of arbitrability to an arbitrator—"the FAA operates on this additional arbitration agreement just as it does on any other," and requires a court to "compel[] arbitration" of that threshold issue. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–70, 70 n.1 (2010) (internal quotation marks omitted). The Ninth Circuit has held that "incorporation of the [American Arbitration Association] rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). And here, the TOS states "[t]he arbitration will be governed by the Consumer Arbitration Rules of the American Arbitration Association ('AAA'), if applicable, as modified by this section." Decl. ¶ 9. The AAA Consumer Arbitration Rules contain the same arbitrability provision the Ninth Circuit found controlling in *Brennan*, 796 F.3d at 1128. *See* AAA Consumer Arbitration Rule R-14(a).

   Even if this Court were to resolve arbitrability, the provision in the TOS plainly applies, as it encompasses "any and all disputes that have arisen or may arise between [Plaintiffs] and the PeopleConnect entities." Decl. ¶ 8. This is a "dispute[]" between Plaintiffs and PeopleConnect. It belongs in arbitration.

**II.     Plaintiffs' Claims Are Barred By Federal Law.**

   Because the motion to compel arbitration is dispositive, the Court need not reach any other issue in this case and should dismiss on that basis alone. But assuming *arguendo* that Plaintiffs are not bound by

---

[4] If this Court is not inclined to grant PeopleConnect's motion to compel arbitration, Defendant requests leave to engage in limited discovery regarding Plaintiffs' knowledge of and acquiescence to their counsel's use of Classmates.com on their behalf. *See* Order, *Indep. Living Res. Ctr. S.F. v. Uber Techs., Inc.*, No. 18-06503 (N.D. Cal. May 6, 2019), ECF No. 35 (denying motion to compel arbitration without prejudice, but granting "limited discovery" to "clarify the issue" of whether the "testers were Plaintiffs' agents").

their arbitration agreement, the Court should dismiss the Complaint for the same reason the court in *Ancestry.com* dismissed that Complaint: federal law bars their claims. First, the Communications Decency Act of 1996 makes PeopleConnect immune from Plaintiffs' claims. 47 U.S.C. § 230(c)(1). Second, all but one of Plaintiffs' claims are preempted by the Copyright Act. 17 U.S.C. § 301. These defenses are plain from Plaintiffs' allegations alone, so the Court should dismiss the Complaint pursuant to Rule 12(b)(6). *See e.g.*, *Coffee v. Google, LLC*, No. 20-03901, 2021 WL 493387, at *1 (N.D. Cal. Feb. 10, 2021) (granting motion to dismiss based on Section 230 immunity); *Hemlock Hat Co. v. Diesel Power Gear, LLC*, No. 19-024222020 WL 7013585, at *4–5 (S.D. Cal. Nov. 25, 2020) (granting motion to dismiss based on Copyright Act preemption).

### A.    The Communications Decency Act Bars Plaintiffs' Claims.

Section 230 of the Communications Decency Act provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Courts in the Ninth Circuit have applied Section 230 to bar all the causes of action Plaintiffs plead here. *E.g. Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) ("intrusion upon seclusion," California Unfair Competition Law); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122, 1125 (9th Cir. 2003) (California right of publicity); *Jurin v. Google Inc.*, 695 F. Supp. 2d 1117, 1122–23 (E.D. Cal. 2010) (unjust enrichment).

Indeed, a court recently found Section 230 immunity in a virtually identical case alleging the same causes of action brought by *these same Plaintiffs*. *See Ancestry.com*, 2021 WL 783524, at *1, *6 & n.13.[5] In *Ancestry.com*, these same Plaintiffs sued Ancestry on the same claims as in this case, "object[ing] to Ancestry.com's inclusion of their decades-old yearbook photographs and information in Ancestry's Yearbook Database." *Id.* at *1. Ancestry moved to dismiss, arguing that Section 230 immunized it from

---

[5] Additionally, when that case becomes final, Plaintiffs will be precluded from disputing the Section 230 issue under principles of collateral estoppel. Plaintiffs, "the part[ies] against whom issue preclusion is asserted," were "part[ies] to the prior action." *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1078 (C.D. Cal. 2010) (citation omitted). They had a "full and fair opportunity" to litigate Section 230, and "actually litigated" it. *Id.* And the Section 230 issue decided in that case is "identical" to the one now presented. *Id.*; *see Ancestry.com*, 2021 WL 783524, at *1–2, *5–6. Thus, the prior Section 230 ruling will preclude Plaintiffs from arguing the issue here once that court issues "a final judgment." 738 F. Supp. 2d at 1078.

Plaintiffs' claims. *Id.* at \*2. Plaintiffs argued that Ancestry "create[d] content," and lost immunity, by extracting information from yearbooks and placing it on Ancestry's website. *Id.* at \*6. The court rejected that assertion. "Instead of creating content," the court held, "Ancestry—by taking information and photos from the donated yearbooks and republishing them on its website in an altered format—engaged in 'a publisher's traditional editorial functions [that] [ ] do not transform an individual into a content provider within the meaning of § 230.'" *Id.* (alterations in original and citation omitted). Because "Ancestry did not contribute 'materially' to the content," Section 230 provided immunity. *Id.*

The *Ancestry.com* decision flows directly from Ninth Circuit precedent. When the underlying content complained of is provided by third parties, it makes no difference that a website "provide[s] neutral tools" that allow people to find that republished information through "their voluntary inputs." *See Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1172 (9th Cir. 2008) (en banc). Indeed, it is for largely that same reason the Ninth Circuit in *Kimzey v. Yelp! Inc.* rejected the argument that "Yelp transformed [a] review by [a user] into its own 'advertisement' or 'promotion' on Google." 836 F.3d 1263, 1269 (9th Cir. 2016). The court "fail[ed] to see how Yelp's rating system, which is based on rating inputs from third parties and which reduces this information into a single, aggregate metric is anything other than user-generated data." *See id.* at 1270; *accord Force v. Facebook, Inc.*, 934 F.3d 53, 65–71 (2d Cir. 2019); *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 413–15, 417 (6th Cir. 2014).

This Court should reach the same result. Section 230 makes a defendant immune from a claim that would impose liability on "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Kimzey*, 836 F.3d at 1268 (citation omitted). This test is met here.

*First*, PeopleConnect, as owners of a website used by millions, are "provider[s] … of an interactive computer service." *Id.* ("'[T]oday, the most common interactive computer services are websites.'") (citation omitted).

*Second*, Plaintiffs' claims are premised on PeopleConnect's republication and distribution of content from student yearbooks, Compl. ¶¶ 3, 7–11, 60, 75, 81, 87, 93, and thus are "directed against [PeopleConnect] in its capacity as a publisher or speaker," *Kimzey*, 836 F.3d at 1268. That is, because

Plaintiffs' claims depend on PeopleConnect's dissemination of Plaintiffs' information from their yearbooks, either by online republication or by sale, they trigger Section 230 immunity. *See, e.g.*, *Liberi v. Taitz*, No. 11-0485, 2011 WL 13315691, at *11 (C.D. Cal. Oct. 17, 2011) (Section 230 would bar claims that Intelius, Reed Elsevier, and LexisNexis sold information for credit reports without proper security precautions). Indeed, the recent decision in *Ancestry.com* barred the same claims, by these same Plaintiffs, for that very reason. 2021 WL 783524, at *6.

*Third*, Plaintiffs' allegations confirm that PeopleConnect was a publisher "of information provided by another information content provider." *Kimzey*, 836 F.3d at 1268 (citation omitted). The Complaint alleges that PeopleConnect "extract[s]" and "aggregates" "personal information *from school yearbooks*, including names, photographs, schools attended, and other biographical information." Compl. ¶ 3 (emphasis added). It further alleges that the Classmates.com "Yearbook Collection contains records *copied from* over 400 thousand yearbooks." *Id.* ¶ 4 (emphasis added). And Plaintiffs allege that "[a]t least some, and possibly all, of [Classmates.com's] Yearbook Collection was built via … donations" from users. *Id.* ¶ 60. But Plaintiffs made the same allegation regarding how Ancestry obtains yearbooks, and the court nonetheless held that Ancestry was "immune" because it "did not create the underlying yearbook records and instead obtained them from third parties." *Ancestry.com*, 2021 WL 783524, at *1, *5. That follows from the many other courts that have held that businesses that search or ask for information from other sources and republish it in new forms receive Section 230 immunity. *E.g.*, *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1268–69 (D.C. Cir. 2019) (search engines pulling information from fake locksmiths' websites for search results); *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 983, 985–86 (10th Cir. 2000) (AOL publishing stock price information pulled for AOL by third-party providers); *accord Obado v. Magedson*, No. 13-2382, 2014 WL 3778261, at *1, * 4–7 (D.N.J. July 31, 2014), *aff'd*, 612 F. App'x 90 (3d Cir. 2015); *Liberi*, 2011 WL 13315691, at *11.

The fact that PeopleConnect also sells copies of yearbooks makes no difference. PeopleConnect cannot be held liable "for disseminating the same content in essentially the same format … , as this action does not change the origin of the third-party content." *See Kimzey*, 836 F.3d at 1270. What matters is that PeopleConnect did not "create[] or develop[] the specific content at issue"; it "published information created or developed by third parties." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097–98

(9th Cir. 2019) ("recommendations and notifications" are "tools meant to facilitate the communication and content of others," and "not content in and of themselves"); *see Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331–32 (4th Cir. 1997) (holding that "distributors, like traditional news vendors or book sellers," are publishers and thus subject to Section 230); *Force*, 934 F.3d at 65 (same). "Simply put, proliferation and dissemination of content does not equal creation or development of content." *Kimzey*, 836 F.3d at 1270.

"[R]eviewing courts have treated § 230(c) immunity as quite robust." *Carafano*, 339 F.3d at 1123. It easily covers Plaintiffs' claims, which seek to punish PeopleConnect for disseminating information about Plaintiffs created and provided to PeopleConnect by others. *See Ancestry.com*, 2021 WL 783524, at *6.

### B.     The Copyright Act Preempts All But One Of Plaintiffs' Claims.

When a copyrightable work is disseminated to the public and an individual allegedly suffers harm as a result, federal copyright law is the exclusive means of redress. This is true regardless of whether the work at issue is actually copyrighted, *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1124 (N.D. Cal. 2001); *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1919–21 (1996), or whether either party owns the copyright, *Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1139 n.9 (C.D. Cal. 2015), *aff'd*, 853 F.3d 1004 (9th Cir. 2017); *see Jules Jordan Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146, 1154 (9th Cir. 2010). Under 17 U.S.C. § 301, a claim is preempted if (1) the "'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103," and (2) the "rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (citation omitted). Plaintiffs' § 3344, Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, and unjust enrichment claims all meet this test.

*First*, the "subject matter" of Plaintiffs' state law claims falls within 17 U.S.C. §§ 102 and 103. All of Plaintiffs' claims concern PeopleConnect's use of their "names," "photographs," and "likenesses" either (1) in yearbooks or (2) in excerpts of yearbooks. Both "fall[] within the subject matter of copyright." *See Maloney*, 853 F.3d at 1010. Yearbooks are copyrightable because they are "[w]orks of authorship" containing "pictorial, graphic," and "literary works," 17 U.S.C. § 102; or "compilations" thereof, *id.* § 103; *see id.* § 101 (defining "work[s] of authorship" to include "books" and defining "pictorial" and "graphic" works to include "photographs"). That is why the Copyright Office has granted copyright protection for school yearbooks. *E.g.*, Don Novello, *Shellville High School, The Blade*, TX0001451935, Public Catalog,

U.S. Copyright Office (Oct. 30, 1984), https://bit.ly/2NE5Aui. Excerpted portions of yearbooks are no different, regardless of whether they contain photographs or text. Photographs are copyrightable. 17 U.S.C. §§ 101, 102; *Maloney*, 94 F. Supp. 3d at 1135–36 (plaintiffs' right of publicity claims challenging website's use of photographs preempted). So too are excerpted phrases from yearbooks containing identifying text. 17 U.S.C. § 102; *see* Compl. ¶¶ 24–25, 27, 41–42, 44. That the excerpted phrases constitute a portion of a yearbook makes no difference. *See Jules Jordan Video*, 617 F.3d at 1154 (right of publicity claims preempted with respect to "'still shots' of the copyrighted video performance" used "on the covers of the counterfeit DVDs"); *Laws v. Sony Music Ent.t, Inc.*, 448 F.3d 1134, 1136 (9th Cir. 2006) (right of publicity claims preempted where defendant used "brief samples" of plaintiff's voice recording).

*Second*, the rights asserted under Plaintiffs' § 3344, UCL, and unjust enrichment claims, Compl. ¶¶ 73–84, 92–96, are the same "rights governed exclusively by copyright law." *Maloney*, 853 F.3d at 1011. These "exclusive rights" include the right to publicly "display" the work, "reproduce" it, and "distribute copies … to the public by sale." 17 U.S.C. § 106. These are the rights Plaintiffs seek to hold PeopleConnect liable for exercising—displaying the yearbooks and snippets of the yearbooks to the public on Classmates.com, reproducing their yearbooks in hard copy and digitally, and distributing copies of the yearbooks to customers by selling them in print and digitally via subscription membership. *See, e.g.*, Compl. ¶¶ 2–3, 7–9, 22–33, 39–51.[6]

This conclusion aligns with precedent applying the Copyright Act to California law. In cases where a plaintiff's personally-identifying characteristics were contained in copyrightable material and the defendant displayed, distributed, or sold that material, § 3344 and UCL claims have routinely been held to be preempted. *E.g.*, *Maloney*, 853 F.3d at 1007; *Fleet*, 50 Cal. App. 4th at 1913, 1915. If, as Plaintiffs would have it, state law imposes liability for distributing and selling copyrightable works containing a person's name, photograph, or likeness without that person's assent, California law "would destroy

---

[6] Plaintiffs' inaccurate use of the word "advertising" throughout their Complaint makes no difference to this analysis—in *Maloney*, for example, the plaintiffs alleged the defendant used their "names, images, and likenesses … for the purpose of advertising" and both the district court and the Ninth Circuit nonetheless held that those claims were preempted. 94 F. Supp. 3d at 1138–39; *see also* 853 F.3d at 1011; *accord Fleet*, 50 Cal. 4th at 1913, 1915 (holding that claims alleging defendants "made unauthorized use of his photograph and likeness on the packaging and advertising materials for the motion picture" are preempted).

copyright holders' ability to exercise their exclusive rights under the Copyright Act." *Maloney*, 94 F. Supp. 3d at 1137–38. This outcome would "effectively giv[e] the subject of every photograph veto power over the artist's rights under the Copyright Act and destroy[] the *exclusivity* of rights the Copyright Act aims to protect." *Id.* Section 301 prevents this nonsensical result.

## III.   Plaintiffs Have Not Adequately Pleaded Any Causes of Action.

Plaintiffs' claims also fail because none of them are legally viable as pleaded. "A pleading must 'contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.'" *City of Oakland v. Oakland Raiders*, 445 F. Supp. 3d 587, 596 (N.D. Cal. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007)). Those allegations must be "plausible." *Twombly*, 550 U.S. at 555. "Plausibility requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of the elements of a cause of action, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief." *Somers v. Apple, Inc.*, 729 F.3d 953, 959–60 (9th Cir. 2013) (internal citations and quotation marks omitted). "Threadbare recitals" supported by "conclusory statements" or facts "'merely consistent with' … liability," warrant dismissal pursuant to Rule 12(b)(6) is appropriate. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.   Plaintiffs Have Failed To State A Claim Under The California Right Of Publicity Law.

To plead a claim under California Civil Code § 3344, Plaintiffs must allege: (1) defendant's use of the plaintiff's identity; (2) appropriation of plaintiff's name or likeness to defendant's advantage; (3) lack of consent; (4) resulting injury; (5) knowing use of the plaintiff's name or likeness for purposes of advertising or solicitation; and (6) direct connection between the use and the commercial purpose. *Maloney*, 853 F.3d at 1008 n.2 (citing *Fleet*, 50 Cal. App. 4th at 1918). If these elements are met, § 3344 still does not prohibit "use of a name, … photograph, or likeness in connection with any news, public affairs, or sports broadcast or account." Cal. Civ. Code § 3344(d). Plaintiffs' Complaint falls short in both respects—it does not allege all the § 3344 element and the conduct it identifies falls within § 3344(d).

#### 1.   Plaintiffs' Allegations Are Insufficient To State A Claim Under § 3344.

##### i.   Plaintiffs Have Not Pleaded An Actionable Injury.

Plaintiffs do not allege an injury that is actionable under § 3344. Instead, all they are able to offer is the conclusory assertion that PeopleConnect "den[ied] them the economic value of their likenesses,"

while nonetheless failing to plead any facts relating to the purported "economic value" of their names, photographs, or likenesses as required to recover economic damages under § 3344. Compl. ¶¶ 10, *see* 34, 52.

That forecloses Plaintiffs' § 3344 claim. It is the reason the court in *Cohen v. Facebook, Inc.*, dismissed a § 3344 claim brought by a non-celebrity who had not alleged to have suffered mental anguish as a result of the alleged misappropriation, as well as a plausible supporting factual basis for any such assertion. 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011); *see Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1006 (2008) (noting that § 3344 permits "statutory minimum damages" awards "to compensate non-celebrity plaintiffs *who suffer … mental anguish* yet no discernible commercial loss") (emphasis added); *see also Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1222, 1242–46. (N.D. Cal. 2014). This Court should do the same. Under *Cohen*, because Plaintiffs have not pleaded mental anguish or demonstrated the economic value of their likeness, they have not pleaded a § 3344 injury.

### ii.    Plaintiffs Have Not Plausibly Pleaded Unlawful Advertising.

Plaintiffs also have not plausibly alleged that PeopleConnect used their names, images or likenesses for the purposes of advertising or soliciting purchases. *See Maloney*, 853 F.3d at 1008 n.2. That is because "[a]dvertising using a publication's content does not violate the right to publicity of a person appearing in the advertising, unless the advertisement implies that the person is endorsing the publication." *Local TV, LLC v. Superior Ct.t*, 3 Cal. App. 5th 1, 9 (2016) (citing *Cher v. Forum Int'll, Ltd*., 692 F.2d 634, 639 (9th Cir. 1982) and *Montana v. San Jose Mercury News, Inc*., 34 Cal. App. 4th 790, 797 (1995)). Here, the yearbook snippets are user-initiated and do not imply endorsement—they merely inform the user of the yearbook's contents. Because there is no allegation that PeopleConnect's use of Plaintiffs' names, photographs, and likenesses from their yearbooks suggest endorsement of those yearbooks—nor could there be given the screenshots Plaintiffs provide in their Complaint—this theory is as baseless as the first.

The advertising theory also fails for another reason: although Plaintiffs allege PeopleConnect "knowingly uses the names … [and] likenesses … to advertise, sell, and solicit the purchase of" yearbooks and website memberships, Compl. ¶¶ 7–8, the allegations in the Complaint contradict that assertion. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended by* 275 F.3d 1187 (2001) (a plaintiff can "plead himself out of a claim by including ... details contrary to his claims"). Plaintiffs

identify three types of webpages they allege present their likenesses as advertisements: (1) search result pages, (2) pop-up windows displaying advertisements, and (3) links to advertisements that appear on a separate webpage. Compl. ¶¶ 22–29, 39–47. None of these instances amounts to using names or likenesses "for purposes of advertising or solicitation or purchases." *Maloney*, 853 F.3d at 1008 n.2. In each, the records at most appear "adjacent" to a separate advertisement, rather than as part of an advertisement. Compl. ¶ 27. That is not enough to state a claim under § 3344. *Cross v. Facebook, Inc.,* 14 Cal. App. 5th 190, 211 (2017) (holding that webpage using name and likeness also featuring unrelated, third-party advertisements did not establish Section 3344 claim).

### 2. The "Public Affairs" Exception Forecloses Plaintiffs' Claim.

Section 3344 exempts from its coverage "use[s] of a name, … photograph, or likeness in connection with any news, public affairs, or sports broadcast or account." Cal. Civ. Code § 3344(d). That forecloses this claim, for PeopleConnect's alleged uses of Plaintiffs' names, photographs, and likenesses in their high school yearbooks were "in connection with" a "public affairs … account." *Id.*

What constitutes a "public affairs" account for purposes of § 3344(d) is "broadly interpreted." *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 416 (2001); *see Baugh v. CBS, Inc*., 828 F. Supp. 745, 754 (N.D. Cal. 1993). "Public affairs" includes any "name, photograph, or likeness" presented "for purposes of education, amusement or enlightenment, when the public may reasonably be expected to have a legitimate interest in what is published." *Shulman v. Grp. W Prods., Inc*., 18 Cal. 4th 200, 225 (1998), *as modified on denial of reh'g* (July 29, 1998) (citation omitted). It is enough if a presentation conveys a "real life occurrence[]" that "is of more than passing interest to some." *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 539–40, 546 (1993) (applying exception to documentary chronicling surfing in Malibu); *William O'Neil & Co. v. Validea.com Inc*., 202 F. Supp. 2d 1113, 1117 (C.D. Cal. 2002) ("news' exception" reaches "reproduction[s] of past events, travelogues and biographies") (citation omitted).

Through its online library and reprinted yearbooks, PeopleConnect makes available information "related to real-life occurrences," *Dora*, 15 Cal. App. 4th at 545, that, as Plaintiffs' allegations illustrate, are of interest to many people. Compl. ¶ 66 (alleging that PeopleConnect has over "4 million subscribers worldwide" and its yearbook collection numbers "over 400,000 yearbooks in the United States"). Further, yearbooks frequently serve as important primary-source documents of a community's activity in a given

year and inform the work of historians, archivists, journalists, genealogists and other scholars. Even the Library of Congress maintains a collection of yearbooks. *See* Library of Congress*,* https://www. loc.gov/ resource/mss85590.041/?sp=1&r=-0.649,0.265,2.298,0.978,0 (last accessed Mar. 18, 2021).

As for PeopleConnect's alleged use of Plaintiffs' names, photographs, and likenesses in advertisements, those uses too fall within the exception. First, by Plaintiffs' account, Plaintiffs' names, photographs, and likenesses do not appear in advertisements—as described above, Plaintiffs mischaracterize as advertisements the mention of their names in search results, the use of yearbook excerpts in pop-up windows, and the appearance of links to advertisements near yearbook excerpts. *See, e.g.*, Compl. ¶¶ 26−27. These excerpted records reproduce factual data—they represent the particular records that are responsive to the user's search—and serve as a "reference source" for the records within PeopleConnect's collection. *Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1179 (9th Cir. 2015). So just as in *Gionfriddo*, PeopleConnect's yearbooks "qualify as 'public affairs' within the meaning of" § 3344(d). 94 Cal. App. 4th at 416.

But even if PeopleConnect's use of Plaintiffs' names, photographs and likenesses were part of the advertisements, those uses were, at most, "merely an adjunct" of the use in the yearbooks themselves and thus entitled to the same protection under § 3344(d). *William O'Neil & Co.*, 202 F. Supp. 2d at 1119 (citing *Cher*, 692 F.2d at 639). In *O'Neil*, the defendant published a book on investment strategy that contained plaintiff's name and likeness. The court held that the advertising promoting the book was only incidental to the protected speech, and so must be "protected to the same extent as the book itself." *Id.* The rule, therefore, is that "advertisements are actionable when the plaintiff's identity is used, without consent, to promote an *unrelated* product." *Gionfriddo*, 94 Cal. App. 4th at 413–414  (collecting cases). Here, Plaintiffs' likenesses are part of the products purportedly being advertised.

Finally, the Ninth Circuit has interpreted § 3344(d) not only to encompass speech activities protected by the First Amendment, but to sweep more broadly than the First Amendment. *New Kids on the Block v. News Am. Publ'g, Inc*., 971 F.2d 302, 309–310 (9th Cir. 1992). As explained below, PeopleConnect's alleged use of Plaintiffs' names, photos, and likenesses qualifies as protected First Amendment speech. It thus necessarily falls within the bounds of § 3344(d) and any doubts as to whether the exemption applies should be resolved to avoid the constitutional limits of the First Amendment. *See*

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."), *accord hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1114 n.12 (N.D. Cal. 2017).

**B.      Plaintiffs Do Not State A California Unfair Competition Law Claim.**

Plaintiffs also allege violations of the California UCL. To plead a claim under the UCL, a private plaintiff must allege having "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. And even when that condition is satisfied, a plaintiff still must allege that the defendant engaged in "unfair competition"—meaning the defendant engaged in an "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiffs have done neither.

**1.      Use Of Personal Information Is Not A Violation Of The UCL.**

A UCL claim requires a plaintiff to allege the loss of "money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *see In re iPhone Application Litig.*, No. 11-02250, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011). "Numerous courts have held that a plaintiff's 'personal information' does not constitute money or property under the UCL." *In re iPhone Application Litig.*, 2011 WL 4403963, at *14; *see In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 715 n.10 (N.D. Cal. 2011)) (citing *Ruiz v. Gap Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008)); *Thompson v. Home Depot*, Inc., No. 07-1058, 2007 WL 2746603, at *3 (S.D. Cal. Sept. 18, 2007). Here, Plaintiffs' UCL theory is based on the supposed dissemination of their "personal information," Compl. ¶¶ 81, 83, and, therefore, Plaintiffs cannot state a claim under the UCL.

It makes no difference that Plaintiffs allege they "lost the economic value of their likenesses." Compl. ¶ 84. As discussed above regarding § 3344, Plaintiffs do not allege, the existence of a market for them to monetize their depictions in their high school yearbooks. *See LaCourt v. Specific Media, Inc*., No. 10-1256, 2011 WL 1661532, at *5 (C.D. Cal. Apr. 28, 2011); *Archer v. United Rentals, Inc*., 195 Cal. App. 4th 807, 816 (2011). That is critical, for it is not enough for a plaintiff to show that personal information had value to the defendant—to allege adequate harm under the UCL, plaintiff must identify a stand-alone market for their information. *See Folgelstrom v. Lamps Plus, Inc*., 195 Cal. App. 4th 986, 993–94 (2011)

(rejecting argument that plaintiff suffered economic harm under UCL based on collection and licensing of personal information). Having failed to do that, Plaintiffs fall well short of the "stringent standard for standing under the UCL." *In re Anthem, Inc. Data Breach Litig.*, No. 15-02617, 2016 WL 3029783, at *30 (N.D. Cal. May 27, 2016).

### 2.     Plaintiffs Do Not Allege An Unlawful Or Unfair Practice.

The UCL defines unfair competition as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]" Cal. Bus. & Prof. Code § 17200. Plaintiffs do not allege fraud. Nor do they allege "unfair, deceptive, untrue, or misleading advertising." Instead, they allege that PeopleConnect's practices are "unlawful" and "unfair." Compl. ¶¶ 82–83. Those conclusory allegations are inadequate.

**Unlawful.** The UCL "borrows violations from other laws and treats them as unlawful practices that the UCL makes independently actionable." *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *32 (citation omitted). Plaintiffs' claim for unlawful conduct under the UCL is derivative of their right of publicity claim. *See* Compl. ¶¶ 81–82. Because Plaintiffs' right of publicity claim fails for the reasons stated above, so too must their claim for unlawful conduct under the UCL.

**Unfair.** To determine whether a practice is "unfair," courts variously consider: "(1) whether the challenged conduct is 'tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law … (2) whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers … or (3) whether the practice's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer.'" *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020) (citation omitted). Plaintiffs fail to plead facts sufficient to meet any of these tests; they simply assert by fiat the conduct was unfair. *See Jones v. PNC Bank, N.A.*, No. 10-01077, 2010 WL 3325615, at *3 (N.D. Cal. Aug. 20, 2010) ("Simply concluding that an act is 'unfair' does not meet the standard for stating a claim under the UCL.")

*First*, the California Supreme Court has "limited" the tethering test to cases involving a "competitor alleging anticompetitive practices." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 n.12 (1999). Plaintiffs are not competitors with PeopleConnect. And Plaintiffs do not otherwise

1   allege that Classmates engages in "conduct that...significantly threatens or harms competition." *In re*

2   *Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 843 (N.D. Cal. 2020) (citation omitted).

3   *Second*, Plaintiffs could not possibly contend that PeopleConnect's conduct—making available

4   online documents that are available in their hometown public libraries and are the types of materials

5   routinely used by historians and researchers to document the community—"offends an established public

6   policy or … is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.*

7   at 842–43 (citation omitted). This concept traditionally is equated with deceptive trade practices, such as

8   fraudulent claims made on the label of a product that induced consumers to purchase it, not putting

9   information online that already is in the public domain. *See Kwikset Corp. v. Superior Ct.t*, 51 Cal. 4th

10   310, 326 (2011); *S. Bay Chevrolet v. Gen. Motors Acceptance Corp*., 72 Cal. App. 4th 861, 886–87 (1999).

11   Plaintiffs allege only that PeopleConnect's business offends non-consumer Plaintiffs by selling a product

12   containing their information. But as the Ninth Circuit has explained, "profit motive is not enough" under

13   this test. *Doe*, 982 F.3d at 1214–15.

14   *Third*, the Complaint contains no allegation that Plaintiffs' purported injuries "outweigh[] 'the

15   reasons, justifications and motives'" for PeopleConnect's use of their personal information. *Id.* (citation

16   omitted). Again, *Doe* suggests that to proceed under this theory, such an allegation must be made *and* there

17   must be some explanation for why that balancing favors the Plaintiffs. *Id.* at 1215 (explaining that inquiry

18   requires a balancing of evidence on both sides). Plaintiffs' Complaint does neither.

19   In short, regardless of the test the California courts ultimately apply to determine whether conduct

20   is "unfair," Plaintiffs' pleading under that element is insufficient. The Court should dismiss the claim.

21   **C.    Plaintiffs Fail To State A Claim For Intrusion On Seclusion.**

22   Intrusion on seclusion claims have two elements: (1) an "intrusion into a private place, conversation

23   or matter" and (2) "in a manner highly offensive to a reasonable person." *Damner v. Facebook Inc*., No.

24   20-05177, 2020 WL 7862706, at *6 (N.D. Cal. Dec. 31, 2020) (citing *Shulman*, 18 Cal. 4th at 231 (1998)).

25   Plaintiffs do not satisfy either element.

26   *First*, the plaintiff must show (a) an actual, subjective expectation of seclusion or solitude in the

27   place, conversation, or matter, and (b) that the expectation was objectively reasonable. *See Williams v.*

28   *Facebook, Inc*., 384 F. Supp. 3d 1043, 1053–54 (N.D. Cal. 2018). But all Plaintiffs allege is that their

"names, likenesses, photographs, and biographical information" were disseminated. Compl. ¶¶ 87–88. They do not allege they had a "subjective expectation of seclusion" in this information. Nor could they. Their allegations are that this information became public years ago when the yearbooks were released. *Id.* ¶ 22, 39. Even if Plaintiffs had alleged they expected such information to be kept secret, the expectation could not be "objectively reasonable" given that the purpose of a yearbook is to *disseminate* the information it contains. *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 933 n.5 (N.D. Cal. 2015).

*Second*, it cannot be that the intrusion Plaintiffs identify is "*highly offensive* to a reasonable person." *In re Google, Inc., Priv. Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (emphasis added). This is a "high bar." *Id.* (citing *Belluomini v. Citigroup, Inc.*, No. 13-01743, 2013 WL 5645168, at *3 (N.D. Cal. Oct. 16, 2013) (holding that issuance of customer's "address and identity" to third party not highly offensive)). There is no way PeopleConnect's alleged use of Plaintiffs' names, likenesses, photographs, and biographical information to advertise and sell yearbooks amounts to a "highly offensive" intrusion. *Phillips v. Archstone Simi Valley LLC*, 2016 WL 400100, at *9 (C.D. Cal. 2016). This is especially true given that Plaintiffs sat for their yearbook photos and knew their photos, together with their names, would be published in the yearbooks—the opposite of any "intrusion" or "highly offensive" intrusion.

The intrusion on seclusion tort is designed to punish truly egregious conduct, like the unauthorized filming of a cardiac episode, *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1484 (1986), or collection of data related to customers' sexual activity, *S.D. v. Hytto Ltd.*, No. 18-00688, 2019 WL 8333519, at *10 (N.D. Cal. May 15, 2019). This case is nothing like those. Compl. ¶¶ 22, 42 (alleging dissemination of Abraham's participation in track and cross country and Callahan's acceptance to Yale University).

### D.    Plaintiffs' Unjust Enrichment Claim Should Be Dismissed As A Matter of Law.

In California, there is no "stand-alone cause of action for unjust enrichment." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012) (collecting cases). Plaintiffs' claim for "unjust enrichment," Compl. ¶ 92–96, therefore, must be dismissed. *See, e.g.*, *McCoy v. Alphabet, Inc.*, No. 20-05427, 2021 WL 405816, at *12 (N.D. Cal. Feb. 2, 2021). To be sure, unjust enrichment can be shorthand for a "quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). But that would not be appropriate here. To state such a claim, Plaintiffs must allege PeopleConnect was "unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Avakian*

*v. Wells Fargo Bank, N.A.*, 827 F. App'x 765, 766 (9th Cir. 2020) (citing *Astiana*, 783 F.3d at 762); *see Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 932–33 (N.D. Cal. 2012). Here, there is no such allegation.

## IV.   PeopleConnect's Alleged Conduct Is Protected By The First Amendment.

Even assuming *arguendo* that Plaintiffs' claims are not barred by federal law *and* that Plaintiffs have alleged some or all of their causes of action, the First Amendment bars this suit.[7]

### A.   The Conduct Alleged Is Core First Amendment Speech.

Plaintiffs' efforts to prevent PeopleConnect from disseminating their yearbook records is an attack on quintessential constitutionally protected speech. As courts have long recognized, where a person's name, image, or likeness is used in speech for "informative or cultural" purposes, the First Amendment renders the use "immune" from liability. *New Kids on the Block v. News Am. Publ'g, Inc.*, 745 F. Supp. 1540, 1546 (C.D. Cal. 1990), *aff'd*, 971 F.2d 302 (9th Cir. 1992). This protection is not "contingent on the perceived value" of the speech. *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 964–65 (9th Cir. 2012). And it does not matter whether the speech is disseminated free of charge or is "undertaken for profit." *Gionfriddo*, 94 Cal. App. at 411–12; *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 682 (2010) (First Amendment protection extends to speech "*whether or not sold for a profit*.") (citation omitted).

"There can be no serious argument about the fact that, in its most basic form, the yearbook serves as a forum in which student editors present pictures, captions, and other written material, and that these materials constitute expression for purposes of the First Amendment." *Kincaid v. Gibson*, 236 F.3d 342, 351 (6th Cir. 2001); *see Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). And online sources of information, such as the "biographical information" Plaintiffs seek to prevent PeopleConnect from releasing, also are protected. Compl. ¶ 55. *Kincaid,* 236 F. 3d at 351; *Sorrell*, 564 U.S. at 570; *see IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1121–22 (9th Cir. 2020) (holding that "online database of information" including biographical information protected by First Amendment); *Dex Media W., Inc*, 696 F.3d at 964–65 (holding that "the yellow pages directories are entitled to full First Amendment protection"). As Plaintiffs' Complaint makes clear, the materials they seek to suppress are a source of

---

[7] *See Ozenne v. Chase Manhattan Bank (In re Ozenne)*, 841 F.3d 810, 814 (9th Cir. 2016) ("[A]s a fundamental rule of judicial restraint, we must consider nonconstitutional grounds for decision before reaching any constitutional questions.") (internal quotation marks and citation omitted).

1    information and interest for an audience of millions. *See, e.g.*, Compl. ¶¶ 22, 39, 66.  PeopleConnect's

2    alleged dissemination of these materials therefore qualifies as speech protected by the First Amendment.

3    *See Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) (recognizing that "the acts of 'disclosing' and

4    'publishing' information" qualify as "the kind of 'speech' that the First Amendment protects").

5            To the extent the state laws Plaintiffs invoke restrict dissemination of their likenesses, they impose

6    "content-based" restrictions on speech. *See, e.g.*, *IMDb.com Inc.*, 962 F.3d at 1120 ("AB 1687 restricts

7    speech because of its content. It prohibits the dissemination of one type of speech: 'date of birth or age

8    information.'"); *Sarver v. Chartier*, 813 F.3d 891, 903 (9th Cir. 2016) ("By its terms, California's right of

9    publicity law clearly restricts speech based upon its content."). Content-based restrictions are subject to

10   strict scrutiny—a standard that has never been met in any analogous case, and has no hope of being met in

11   this one—unless the speech qualifies as "commercial speech." *IMDb.com*, 962 F.3d at 1123; *see also Reed*

12   *v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (observing that "[c]ontent-based laws … are presumptively

13   unconstitutional").[8] Although the alleged speech at issue in this case is properly characterized as non-

14   commercial, the First Amendment protects this speech even if it is deemed commercial.

15       **B.    Yearbooks Are Fully Protected, Non-Commercial Speech.**

16           "Commercial speech" is speech that "'does no more than propose a commercial transaction.'"

17   *IMDb.com Inc.*, 962 F.3d at 1122 (quoting *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council,*

18   *Inc.*, 425 U.S. 748, 762 (1976)). The records PeopleConnect disseminate do not satisfy this definition.

19   Plaintiffs do not allege that their names, photographs, and likenesses in their school yearbooks do "no more

20   than propose a commercial transaction." *Id.* Nor could they. A yearbook is a "creative publication" that

21   "exists for the purpose of expressive activity." *Kincaid*, 236 F.3d at 351. By Plaintiffs' account, the

22   yearbooks convey information about their school-age selves. Compl. ¶¶ 22, 39.

23           As for excerpting yearbooks in connection with the sale of access to those same yearbooks, that too

24   is not commercial speech. Even if Plaintiffs had adequately alleged that their names, images, and likenesses

25

26   _____

27   [8] For purposes of this analysis, it does not matter whether the yearbook information concerns issues of
     "public" or "private concern." *IMDb.com*, 962 F.3d at 1123. As the Ninth Circuit recently clarified,
     "neither this court, nor the Supreme Court, has held that content-based restrictions on public speech

28   touching on private issues escape strict scrutiny." *Id.*

were used in advertising, though they have not, the speech Plaintiffs identify would be protected. If a publication qualifies as constitutionally protected speech, then disseminating portions of it in advertising that promotes the same publication is likewise protected. *See, e.g.*, *William O'Neil & Co.,* 202 F. Supp. 2d at 1119; *Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 325 (1997); *Montana*, 34 Cal. App. 4th at 796. Indeed, Plaintiffs' allegations that PeopleConnect used their names, images and likenesses in advertisements are virtually indistinguishable from those rejected in *Gionfriddo*: "even if Baseball used depictions of players playing the game or recited statistics or historical facts about *the game* to advertise the game and promote attendance, the commercial speech cases relied on by plaintiffs would be inapposite. The owner of a product is entitled to show that product to entice customers to buy it." 94 Cal. App. at 414.

The only alleged circumstances in which PeopleConnect even arguably proposes a commercial transaction are in a section of a window next to search results, in pop-up windows, and in standalone webpages. In each of those contexts, Plaintiffs' information either is not visible or is visible in a separate part of the web page that merely reproduces the information in Plaintiffs' yearbooks. *Id.* These uses of Plaintiffs' names, images, and likenesses do not qualify as speech which "does no more than propose a commercial transaction," *IMDb.com*, 962 F.3d at 1122, regardless of their "proximity to" speech proposing a commercial transaction, *Stewart*, 181 Cal. App. 4th at 687 (speech in magazine is noncommercial where it is merely in "proximity to advertisements touching on the same subject matter").

### C. If Displaying Information About Plaintiffs Is Commercial Speech, It Still Is Protected.

The Supreme Court has recognized that "[t]he commercial marketplace, like other spheres of our social and cultural life, provides a forum where ideas and information flourish." *Sorrell*, 564 U.S. at 579 (quoting *Edenfield v. Fane*, 507 U.S. 761, 767 (1993)). So even commercial speech is entitled to First Amendment protection. *Edenfield*, 507 U.S. at 767.

"Restrictions on commercial speech must survive intermediate scrutiny under *Central Hudson*." *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1176 (9th Cir. 2018) (referring to *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980)). "The *Central Hudson* test first asks whether the speech is either misleading or related to illegal activity. If the speech 'is neither misleading nor related to unlawful activity,' then '[t]he State must assert a substantial interest to be achieved by' the

regulation. The regulation must directly advance the asserted interest, and must not be 'more extensive than is necessary to serve that interest.'" *Id.* (quoting *Central Hudson*, 447 U.S. at 563–66). "This requires that there be a reasonable fit between the restriction and the goal, and that the challenged regulation include 'a means narrowly tailored to achieve the desired objective.'" *Ballen v. City of Redmond*, 466 F.3d 736, 742 (9th Cir. 2006) (quoting *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)).

This test is nowhere near satisfied. First, Plaintiffs do not allege that PeopleConnect's speech is "misleading [or] related to unlawful activity." *Central Hudson*, 447 U.S. at 564; *see Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S.748, 773 (1976) (holding that State may not "suppress the dissemination of concededly truthful information about entirely lawful activity"). Second, there is no "reasonable fit" between a law that imposes liability for PeopleConnect's alleged use of Plaintiffs' identities and any state interest. *Ballen*, 466 F.3d at 742. The only result of such a law would be to suppress information that interests millions of people, *see* Compl. ¶ 66, and provide a payout to those who have done nothing to earn it. The State has "no interest"—much less a substantial interest—"in giving [a private individual] an economic incentive to live his life as he otherwise would," *Sarver*, 813 F.3d at 905, and suppressing informative speech in the process, *Sorrell*, 564 U.S. at 577–79.

## V.     The Complaint Is Barred By The California Anti-SLAPP Statute.

California Code of Civil Procedure 425.16 ("Section 425.16"), allows a defendant to bring a special motion to strike any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Section 425.16(b)(1); *see Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1181 (9th Cir. 2013) (en banc) (holding that Section 425.16 motion available in federal court). Section 425.16 is "construed broadly." Cal. Code Civ. P. § 425.16(a). Its reach "is broader than the scope of constitutionally protected speech" and "applies to a cause of action arising from an act 'in furtherance of' the person's right of free speech under the constitution." *hiQ Labs*, 273 F. Supp. 3d at 1116. Courts apply a two-part test to determine whether claims are barred by Section 425.16. First, "the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). If this showing is made, "[t]he burden then shifts to the plaintiff" to "establish a reasonable probability that it will prevail on

its claim." *Id.* Application of both elements makes clear that Plaintiffs' Complaint is a SLAPP and must be dismissed as such.

### A.    Plaintiffs' Suit Arises From PeopleConnect's Protected Conduct.

Section 425.16(e) protects "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. P. § 425.16(e)(3), (e)(4). The challenged yearbooks and yearbook excerpts all appear on Classmates.com, which is a "public forum." *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006) ("Web sites accessible to the public … are 'public forums' for purposes of the anti-SLAPP statute."); *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 895 (2004) (statements posted on public website "hardly could be more public").

The challenged yearbooks and yearbook excerpts also constitute speech "in connection with" an "issue of public interest." Section 425.16(e)(3). Again, courts have repeatedly held that "gathering information for dissemination to the public" is a core First Amendment activity. *See New Kids on the Block*, 745 F. Supp. at 1546. Such activity is protected regardless of whether the information disseminated relates to current events or historical events, as "the public is also entitled to be informed and entertained about our history." *Gionfriddo*, 94 Cal. App. 4th at 411; *see Gates v. Discovery Commc'ns, Inc.*, 34 Cal. 4th 679, 695 (2004) (granting anti-SLAPP motion regarding speech "of an historical nature"). And California courts have repeatedly held that speech of interest only to a specific community still constitutes speech in the "public interest." *See, e.g.*, *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000) (statements about homeowners association manager published in community newsletter were in "public interest"); *Ruiz v. Harbor View Cmty. Ass'n*, 134 Cal. App. 4th 1456, 1468–69 (2005) (letters from homeowners association regarding disputes over architectural guidelines were of "public interest" to residents of 523 lots governed by association); *Grenier v. Taylor*, 234 Cal. App. 4th 471, 482–83 (2015) (speech to community of 550 to 1,000 church members was in "public interest").

The yearbooks and yearbook excerpts that underlie Plaintiffs' claims constitute protected speech in connection with matters of public interest. First, the gathering and dissemination of the historical information in yearbooks falls squarely within the First Amendment. *New Kids on the Block*, 745 F. Supp.

at 1546; *Gionfriddo*, 94 Cal. App. 4th at 411–13; *Dora*, 15 Cal. App. 4th at 542–43. Second, yearbooks are in the "public interest." One need look no further than Plaintiffs' allegation that PeopleConnect has over four million subscribers worldwide to see that. Compl. ¶ 66. And in any event, yearbooks are of interest to a definable portion of the public—namely, school alumni communities. Yearbooks memorialize collective school experiences and allow members of school communities to relive these experiences, even decades later. Plaintiffs' own allegations show how PeopleConnect has contributed to this matter of interest, as Plaintiffs allege that PeopleConnect has compiled records from over "400,000 yearbooks," each with the names and likenesses of "hundreds, sometimes thousands" of students from those schools. Compl. ¶ 66. Such school communities—which today can include several thousand people from a single class— well exceed the size of communities that California courts have found to have a public interest. *See, e.g.*, *Ruiz*, 134 Cal. App. 4th at 1468–69 (residents of 523 lots); *Grenier*, 234 Cal. App. 4th at 482–83 (550 to 1,000 church members); *Damon*, 85 Cal. App. 4th at 479 (3,000 homeowners' association members).

Plaintiffs' allegations that their names and likenesses appear in "advertisements" for yearbooks and yearbook subscriptions do not remove their claims from the reach of the anti-SLAPP statute. *First*, as discussed above, Plaintiffs' names, likenesses, and information *do not* actually appear in advertisements. *Second*, courts have held that if a publication qualifies as constitutionally protected speech, then disseminating portions of it in advertising for the same publication is likewise protected. *See William O'Neil & Co.*, 202 F. Supp. 2d at 1119; *Polydoros*, 67 Cal. App. 4th at 325; *Montana*, 34 Cal. App. 4th at 796. Moreover, the scope of the anti-SLAPP statute extends *further* than the scope of constitutionally protected speech. *See hiQ Labs*, 273 F. Supp. 3d at 1116. PeopleConnect's alleged use of excerpts from its yearbooks is, at a minimum, conduct "in furtherance" of its right to free speech on a public issue or matter of public interest. *See* Section 425.16(e)(4).

In *Ancestry.com*, the court dismissed Callahan's claims, but denied Ancestry's anti-SLAPP motion, finding that "decades-old yearbooks are not demonstrably an issue of public interest" because yearbooks do not (necessarily) involve "celebrities, public officials, or the public realm or more obvious public interest." *Ancestry.com*, 2021 WL 783524, at \*7. But California's anti-SLAPP statute protects more than speech about celebrities and public officials. Yearbooks serve an important function as primary-source documents memorializing a community's activity in a given year and informing the work of historians,

archivists, journalists, genealogists and other scholars. Even the Library of Congress maintains a collection of yearbooks. So yearbooks are at least as much in the "public interest" as, for example, a letter to a single homeowner regarding architectural guidelines (*Ruiz*, 134 Cal. App. 4th at 1468–69) or a letter discussing whether a homeowner's association should switch to a professional management company (*Damon*, 85 Cal. App. 4th at 479). On this point, PeopleConnect believes the court in *Ancestry.com* was mistaken.

**B.      Plaintiffs Cannot Show A Likelihood Of Success On Their Claims.**

Because Plaintiffs' claims arise from protected speech or an act in furtherance of protected speech, Plaintiffs bear the burden to "establish a reasonable probability" they will prevail on their claims. *Makaeff,* 715 F.3d at 261. To satisfy this test, Plaintiffs must show that these claims are adequately pleaded. *Planned Parenthood Fed'n of Am Inc,. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). For the reasons stated above, Plaintiffs have failed to make this showing. Accordingly, the Court should grant PeopleConnect's motion to strike Plaintiffs' claims and award PeopleConnect its attorney's fees and costs. *See* Section 425.16(c)(1) ("[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."); *Planned Parenthood*, 890 F.3d at 834 (Section 425.16 fees provision applies in federal court).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed and Plaintiffs compelled to adjudicate their claims in arbitration. In the alternative, the Complaint should be dismissed for failure to state a claim upon which relief can be granted.

Dated: March 19, 2021                              Respectfully submitted,

JENNER & BLOCK LLP

By:    /s/ *Kate T. Spelman*
Kate T. Spelman
Debbie L. Berman
Wade A. Thomson

Attorneys for Defendant PeopleConnect, Inc.