Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Telephone: (415) 358-6293

Benjamin R. Osborn (*Pro Hac Vice*)
102 Bergen Street
Brooklyn, NY 11201
Phone: (347) 645-0464
Email: ben@benosbornlaw.com

*Attorneys for Plaintiffs*
*and the Proposed Class*

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MEREDITH CALLAHAN and LAWRENCE GEOFFREY ABRAHAM, individually and on behalf of all others similarly situated, | Case No.: 3:20-cv-09203-EMC |
| | OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE; MEMORANDUM IN SUPPORT |
| Plaintiffs, | |
| v. | Complaint Filed: Dec. 18, 2020 |
| PEOPLECONNECT, INC., a Delaware Corporation, | Hearing Date: April 29. 2021 Hearing Time: 1:30 p.m. Judge Edward M. Chen |
| Defendant. | CLASS ACTION |

### **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ...................................................................................... 1

II. LEGAL STANDARD FOR MOTION TO DISMISS ................................................ 2

III. ARGUMENT ................................................................................................................ 2

    A. This matter is not subject to arbitration. ............................................................. 2

        1. There is no arbitration agreement because Plaintiffs are not Classmates users, nor do their claims arise from use of Classmates on their behalf. ................................. 2

        2. Delegation clauses do not apply to disputes about the existence of an arbitration agreement. ...................................................................................... 4

    B. Section 230 of the Communications Decency Act does not apply because the yearbook authors did not intend publication on the Internet. .......................................... 5

    C. Plaintiffs' claims are not preempted by copyright because Classmates does not own or license yearbook copyrights, and Plaintiffs' likenesses are not copyrightable.................. 8

    D. Plaintiffs have properly stated a claim under § 3344 ......................................... 10

        1. Plaintiffs have plead two forms of actionable injury under § 3344. .................... 10

        2. Because Plaintiffs have alleged actual damages, they have properly plead a claim for statutory damages under Cal. Civ. Code § 3344. ............................................ 12

        3. Pleading endorsement is not required. ................................................................ 14

        4. The newsworthy exception does not apply because there is no legitimate public interest in Plaintiffs' photographs as minors, and Classmates' use is for a commercial purpose. .................................................................................................. 14

    E. Plaintiffs have stated a claim for violation of the UCL. ...................................... 17

    F. Plaintiffs have stated a claim for intrusion upon seclusion................................... 17

    G. California recognizes a standalone claim for unjust enrichment. ...................... 18

    H. Classmates' conduct is not protected by the First Amendment because there is no legitimate public interest in Plaintiffs' likenesses, nor is Classmates engaged in transformative use ............................................................................................................ 18

    I. The anti-SLAPP motion should be denied because the exception for suits in the public

interest applies, and because there is no speech on an issue of public concern...............21

IV. CONCLUSION...........................................................................................................22

1

2

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Abdul-Jabbar v. General Motors Corporation*,
   85 F.3d 407 (9th Cir. 1996) ................................................................16

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753, 762 (9th Cir. 2015) .....................................................18

*Bartnicki v. Vopper*,
   532 U.S. 514 (2001) .........................................................................18

*Batzel v. Smith*,
   333 F.3d 1018, 1034 (9th Cir. 2003) ...............................................5, 7

*Ben Ezra, Weinstein, & Co. v. America Online Inc.*,
   206 F.3d 980 (10th Cir. 2000) ............................................................7

*Breazeale v. Victim Servs., Inc.*,
   878 F.3d 759, 766–67 (9th Cir. 2017) .................................................5

*Brennan v. Opus Bank*,
   796 F.3d 1125, 1130 (9th Cir. 2015) ..................................................5

*C.M.D. v. Facebook, Inc.*,
   2014 WL 1266291 (N.D. Cal. March 26, 2014).................................12

*Cairns v. Franklin Mint Co.*,
   107 F. Supp. 2d 1212, 1214 (C.D. Cal. 2000). .................................14

*Callahan v. Ancestry.com Inc.*,
   No. 3:20-cv-08437-LB (N.D. Cal., filed Nov. 20, 2020) .........2, 7, 15, 22

*Caraccioli v. Facebook, Inc.*,
   167 F. Supp. 3d 1056 (N.D. Cal. 2016)...............................................6

*Cohen v. Facebook, Inc.*,
   2011 WL 5117164 (N.D. Cal. Oct. 27, 2011) ...................................11

*Cohen v. Facebook, Inc.*,
   798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011)...................................11

*Comedy III Productions., Inc. v. Gary Saderup, Inc.*,
   25 Cal. 4th 387, 399 (2001).........................................................10, 19

*County of Contra Costa v. Kaiser Found. Health*,
   47 Cal.App.4th 237, 243 (1996) .........................................................3

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Damon v. Ocean Hills Journalism Club,*
   85 Cal. App. 4th 468 (2000) ...................................................................................22

*Davis v. Elec. Arts Inc.,*
   775 F.3d 1172 (9th Cir. 2015) .................................................................................15

*Del Amo v. Baccash,*
   2008 WL 4414514 (C.D. Cal. Sept. 16, 2008) ...............................................11, 13

*Deteresa v. Am. Broad. Cos., Inc.,*
   121 F.3d 460, 465 (9th Cir. 1997) ...........................................................................17

*Diamond Ranch Acad., Inc. v. Filer,*
   No. 2:14-CV-751-TC, 2016 WL 633351 (D. Utah Feb. 17, 2016) ...........................7

*Dobrowolski v. Intelius, Inc.,*
   No. 17-cv-1406, 2017 WL 3720170 (N.D. Ill. Aug. 29, 2017)..................................2

*Dora v. Frontline Video, Inc.,*
   15 Cal. App. 4th 536 (1993) ...................................................................................15

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,*
   472 U.S. 749 (1985) ................................................................................................18

*Eastwood v. Superior Court,*
   149 Cal. App. 3d 409 (1983) ..................................................................................15

*ESG Capital Partners, LP v. Stratos,*
   828 F.3d 1023 (9th Cir. 2016) .................................................................................18

*Fair v. Roommates,*
   521 F.3d 1157 (9th Cir. 2008) ..............................................................................5, 7

*Fausto v. Credigy Services Corp.,*
   598 F. Supp. 2d 1049 (N.D. Cal. 2009) ..................................................................17

*Federal Trade Commission v. Accusearch, Inc.,*
   No. 06-CV-105-D, 2007 WL 4356786 (D. Wyo. Sep. 28, 2007) .............................6

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.,*
   778 F.3d 1059 (9th Cir. 2015) .................................................................................14

*First Options of Chi., Inc. v. Kaplan,*
   514 U.S. 938 (1995) ..................................................................................................4

*Fleet v. CBS, Inc.,*
   50 Cal. App. 4th 1911 (1996) ...................................................................................8

*Force v. Facebook, Inc.,*
  934 F.3d 53 (2d Cir. 2019) ................................................................................6

*Fraley v. Facebook, Inc.,*
  830 F. Supp. 2d 785 (N.D. Cal. 2011) ...........................................11, 12, 15, 16

*Gertz v. Robert Welch, Inc.,*
  418 U.S. 323 (1974) ..........................................................................................18

*Gionfriddo v. Major League Baseball,*
  94 Cal.App.4th 400 (2001) ........................................................................15, 20

*Goldman, Sachs & Co. v. City of Reno,*
  747 F.3d 733 (9th Cir. 2014) ..............................................................................5

*Grenier v. Taylor,*
  234 Cal. App. 4th 471 (2015) ...........................................................................22

*Hart v. Elec. Arts, Inc.,*
  808 F. Supp. 2d 757 (D.N.J. Sep. 9, 2011) ......................................................18

*Hetter v. Eighth Judicial District Court,*
  874 P.2d 762 (Nev. 1994) .................................................................................11

*Hilton v. Hallmark Cards,*
  599 F.3d 894, 909 (9th Cir. 2010) ....................................................................19

*In re Facebook, Inc., Consumer Privacy User Profile Litig.,*
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ........................................................17, 18

*Independent Living Resource Center San Francisco v. Uber Technologies, Inc.,*
  2019 WL 3430656 (N.D. Cal. July 30, 2019) ....................................................4

*Jones v. Dirty World Entertainment Recordings LLC,*
  755 F.3d 398 (6th Cir. 2014) ..............................................................................6

*Jordan Video, Inc. v. 144942 Canada Inc.,*
  617 F.3d 1146 (9th Cir. 2010) ............................................................................8

*Jurin v. Google Inc.,*
  695 F. Supp. 2d 1117 (E.D. Cal. 2010) ..............................................................6

*Keller v. Electronic Arts Inc.,*
  724 F.3d 1268 (9th Cir. 2013) ..........................................................................19

*Kimzey v. Yelp! Inc.,*
  836 F.3d 1263 (9th Cir. 2016) .......................................................................6, 7

*Kincaid v. Gibson*,
   236 F.3d 342 (6th Cir. 2001) ...................................................................................20

*Klayman v. Mark Zuckerberg & Facebook, Inc.*,
   753 F.3d 1354 (D.C. Cir. 2014) .................................................................................7

*KNB Enterprises v. Matthews*,
   78 Cal. App. 4th 362 (2000) ...................................................................8, 11, 14

*L.A. Taxi Coop., Inc. v. Indep. Taxi Owners Ass'n of L.A.*,
   239 Cal. App. 4th 918 (2015) .................................................................................22

*Laws v. Sony Music Entertainment, Inc.*,
   448 F.3d 1134 (9th Cir. 2006) ...................................................................................8

*Legacy Wireless Services, Inc. v. Human Capital, L.L.C.*,
   314 F. Supp. 2d 1045 (D. Or. 2004) ..........................................................................4

*Liberi v. Taitz*,
   No. 11-0485, 2011 WL 13315691 (C.D. Cal. Oct. 17, 2011) ....................................7

*Lukis v. Whitepages Inc.*,
   454 F. Supp. 3d 746 (N.D. Ill. 2020) ..........................................................2, 6, 9, 16

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017) ...............................................................................8, 9

*Manzarek v. Marine*,
   519 F.3d 1025 (9th Cir. 2008) ...................................................................................2

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
   925 F.3d 1263 (D.C. Cir. 2019) .................................................................................6

*Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) ...................................................................................6

*Michaels v. Internet Entertainment Group*,
   5 F. Supp. 2d 823 (C.D. Cal. 1998) .........................................................................14

*Miller v. Collectors Univ*,
   159 Cal. App. 4th 988 (2008) ...........................................................................11, 12

*Motschenbacher v. R. J. Reynolds Tobacco Co.*,
   498 F.2d 821 (9th Cir. 1974) ...................................................................................11

*Nayab v. Capital One* Bank,
   942 F.3d 480 (9th Cir. 2019) .....................................................................................2

*New Kids on the Block v. News Am. Pub.*,
745 F. Supp. 1540 (C.D. Cal. 1990) ...................................................................20

*New Kids on the Block v. News Am. Publ'g, Inc.*,
971 F.2d 302 (9th Cir. 1992) ...........................................................................15

*Obado v. Magedson*,
612 F. App'x 90 (3d Cir. 2015) ...........................................................................7

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) ..........................................................................10

*Perfect 10, Inc. v. Talisman Communications, Inc.*,
2000 WL 364813 (C.D. Cal. March 27, 2000) .............................................13, 14

*Perfect 10, Inc., v. Cybernet Ventures, Inc.*,
213 F. Supp.2d 1146 (C.D. Cal. 2002) ...............................................................14

*Perkins v. Linkedin Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) ...................................................11, 12, 13

*Piping Rock Partners , Inc. v. David Lerner Assocs., Inc.*,
946 F. Supp. 2d 957 (N.D. Cal. 2013) ...............................................................22

*Polydoros v. Twentieth Century Fox Film Corp.*,
67 Cal. App. 4th 318 (1997) .............................................................................20

*Robins v. Spokeo, Inc.*,
867 F.3d 1108 (9th Cir. 2017) ..........................................................................10

*Ruiz v. Harbor View Community Assn*,
134 Cal. App. 4th 1456 (2005) .........................................................................22

*Sanders v. Am. Broad. Co., Inc.*,
20 Cal. 4th 907 (1999) ....................................................................................17

*Sarver v. Chartier*,
813 F.3d 891 (9th Cir. 2016) ............................................................................20

*Shulman v. Group W Productions, Inc.*,
18 Cal. 4th 200 (1998) ....................................................................................15

*Simpson Strong-Tie Co. v. MiTek Inc.*,
No. 20-cv-06957-VKD, 2021 WL 1253803 (N.D. Cal. Apr. 5, 2021) ....................17

*Smith v. Levine Leichtman Capital Partners, Inc.*,
723 F. Supp. 2d 1205 (N.D. Cal. 2010) .............................................................21

*Solano v. Playgirl, Inc.*,
    292 F.3d 1078 (2002) ............................................................................................11

*Stewart v. Rolling Stone*,
    181 Cal. App. 4th 664 (2010) ...............................................................................20

*Uzuegbunam v. Preczewski*,
    No. 19-968, 2021 WL 850106 (U.S. Mar. 8, 2021) ...............................................10

*Van Patten v. Vertical Fitness Group, LLC*,
    847 F.3d 1037 (9th Cir. 2017) ..............................................................................10

*Wallace v. Amsurg Holdings, Inc.*,
    No. 6:15-cv-01548-MC, 2015 WL 7568592 (D. Or. Nov. 24, 2015) .......................4

*Weinberg v. Feisel*,
    110 Cal. App. 4th 1122 (2003) .............................................................................22

*William O'Neil Co. Inc. v. Validea.com Inc.*,
    202 F. Supp. 2d 1113 (C.D. Cal. 2002) ...............................................................15

*William O'Neil Co. Inc. v. Validea.com Inc.*,
    202 F. Supp. 2d 1113 (C.D. Cal. 2002) ...............................................................20

*Williams v. Facebook, Inc.*,
    384 F. Supp. 3d 1043 (N.D. Cal. 2018) ...............................................................10

*Wilson v. Hewlett–Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ..............................................................................17

*Yeager v. Cingular Wireless LLC*,
    673 F. Supp. 2d 1089 (E.D. Cal. 2009) ...............................................................19

*Zeran v. America Online*,
    129 F.3d 327 (4th Cir. 1997) ..................................................................................7

**Statutes and Regulations**

17 U.S.C. § 103 ...................................................................................................................8

17 U.S.C. § 106 ...................................................................................................................9

17 U.S.C. §§ 102 .................................................................................................................8

47 U.S.C. § 230 ...................................................................................................................5

Cal. Bus. & Prof. Code § 17200 ......................................................................................17

Cal. Civ. Code § 3344 ..........................................................................................1, 10, 13, 15

Cal. Civ. Proc. Code § 425.16 ...................................................................................21

Cal. Civ. Proc. Code § 425.17 ...................................................................................21

Fed. R. Civ. P. 12 .......................................................................................................2

# I.  PRELIMINARY STATEMENT

Classmates.com ("Classmates")[1] is in the business of selling other people's personal information for profit. Without permission from copyright holders, yearbook authors, or the subjects who appear in their pages, Classmates obtained printed copies of hundreds of thousands of school yearbooks. ECF No. 2 at ¶¶ 53-56, 60-61. Classmates digitally scanned and extracted the names and photographs of millions of students, then created a database on which users may search by name and location for the photograph of any student. ECF No. 2 at ¶¶ 3, 24, 31. Classmates uses student names and photographs to advertise and promote website subscriptions costing $3 per month, and reprinted yearbook copies costing $99.95. ECF No. 2 at ¶ 7. Classmates advertises by providing limited access to low-resolution versions of student photographs for free on its website. Users who click to see a higher-resolution photograph, or who attempt to view more than two student photographs, are presented with messages soliciting the purchase of yearbook reprints and monthly subscription plans. ECF No. 2 at ¶¶ 23-32, 41-50.

Classmates stole intellectual property that belongs to the Plaintiffs: their likenesses. California's right to publicity statute prohibits the knowing use of a person's "name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent." Cal. Civ. Code § 3344. By using Plaintiffs' likenesses without consent, Classmates harmed the Plaintiffs by taking their intellectual property, violating statutorily protected privacy rights, and earning unjust profits.

Plaintiffs do not "seek to remove from the internet documents available to all at public libraries." ECF No. 26 at 1. Plaintiffs have no objection to the appearance of their names and photographs in school yearbooks, a use to which Plaintiffs consented. But Classmates' use of those names and photographs without consent to promote its own products – products of which the Plaintiffs had no knowledge – is illegal under California law.

The defendant is no stranger to the right of publicity. Classmates' parent company

---

[1] Classmates.com is owned and operated by PeopleConnect, Inc., the named Defendant in this lawsuit. Plaintiffs refer to Classmates.com and PeopleConnect, Inc. collectively as "Classmates."

PeopleConnect also owns Intelius and InstantCheckmate, which follow similar business practices. Both have faced right of publicity lawsuits. *See, e.g. Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746 (N.D. Ill. 2020); *Dobrowolski v. Intelius, Inc.*, 17-cv-1406, 2017 WL 3720170 (N.D. Ill. Aug. 29, 2017). Most recently, a district court in Illinois denied a motion to dismiss, finding that "Instant Checkmate's sole purpose in offering free previews" of background reports containing individuals' names and likenesses "is to advertise products available on its website . . . includ[ing] a monthly subscription." *Lukis*, 454 F. Supp. 3d at 755.

Plaintiffs are pursuing a related case against Ancestry.com. *Callahan v. Ancestry.com Inc.*, No. 3:20-cv-08437-LB (N.D. Cal., filed Nov. 20, 2020). On March 1, Magistrate Judge Beeler denied Ancestry's motion to strike pursuant to California's anti-SLAPP statute. The court also granted with leave to amend Ancestry's motion to dismiss, finding (1) plaintiffs lacked Article III standing, and (2) Ancestry was entitled to CDA immunity. 2021 WL 783524, at *1 (N.D. Cal. March 1, 2021). Plaintiffs filed an amended complaint that addresses Magistrate Judge Beeler's concerns. To the extent the issues overlap with this case, Plaintiffs respectfully disagree with Magistrate Judge Beeler's March 1 ruling on the CDA as inconsistent with controlling Ninth Circuit precedent (*see* Part B below).[2]

## II. LEGAL STANDARD FOR MOTION TO DISMISS

On a 12(b)(6) motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. Marine*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). A claim survives if it is "plausible on its face." *Nayab v. Capital One* Bank, 942 F.3d 480, 485 (9th Cir. 2019) (quotation omitted).

## III. ARGUMENT

**A.    This matter is not subject to arbitration.**

    **1.    There is no arbitration agreement because Plaintiffs are not Classmates users, nor do their claims arise from use of Classmates on their behalf.**

Plaintiffs are not Classmates users and do not have accounts on Classmates.com. ECF No. 2 at ¶¶ 19, 35. The proposed class excludes Classmates users. *Id.* at ¶ 65. Because Plaintiffs

---

[2] Classmates has not asserted a defense based on Article III standing.

1   and the class never created accounts, they never saw the "message(s)" a user is "prompted with"

2   when "register[ing] for a free or paid account." ECF No. 26 at 3. Even if those "messages"

3   created a valid arbitration agreement between Classmates and its users – which they do not,

4   because the arbitration clause is buried in the thirteenth section of a seventy-thousand-word

5   Terms of Service ("TOS") that is itself hidden behind a hyperlink the user does not need to click

6   to create an account, *see* ECF No. 27 (Decl. of Tara McGuane) – they are irrelevant to this case.[3]

7       Counsel's use of Classmates to gather the facts needed to file a complaint does not

8   constitute consent to the TOS on his clients' behalf. First, Classmates' position represents an

9   extraordinary overreach. Because virtually any lawsuit against a website requires visiting the

10  website to gather enough evidence, Classmates' position would allow websites to force every

11  person into arbitration, regardless of whether they use the site. Counsel must use the website to

12  meet the pleading standard. But she cannot use the website lest her client lose the right to sue. It

13  is a circular Catch-22 worthy of Joseph Heller, and it has no place in a court of law.

14      Second, counsel could not possibly have "bound Plaintiffs to the arbitration agreement"

15  by creating accounts "on their behalf," *see* ECF No. 26 at 4, because on its own terms the

16  Classmates TOS forbids the creation of accounts "on behalf of another person," ECF No. 27 at

17  12, and states that the user "may not assign or transfer your rights to any third party." *Id.* at 22.

18  According to the language Classmates drafted, a user has no authority to create an agreement on

19  behalf of any other person. *See County of Contra Costa v. Kaiser Found. Health*, 47 Cal.App.4th

20  237, 243 (1996) ("All nonsignatory arbitration cases are grounded in the authority of the

21  signatory to contract . . . on behalf of the nonsignatory.").

22      Third, while agency relationships are a recognized exception to the general rule that

23  "only signatory parties to an arbitration agreement may enforce it," *Rowe v. Exline*, 153 Cal.

24  App. 4th 1276, 1284 (2007), the agency exception generally applies only "when a signatory has

25  brought claims against nonsignatory agents and the agents then seek to invoke the arbitration

26

27  ───────────────

    [3] Should this court decide counsel's use of Classmates constituted consent on behalf of his

28  clients, Plaintiffs reserve the right to argue the arbitration clause is unenforceable on grounds that
    (1) no agreement exists because the TOS is a browser wrap agreement that does not put users on
    constructive notice; and (2) the clause is procedurally and substantively unconscionable.

───────────────────────────

clause against the signatory." *Legacy Wireless Services, Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1054 (D. Or. 2004). In other words, non-signatories may sometimes invoke agency theory to enforce an arbitration clause against a signatory. But where a signatory (Classmates) attempts to enforce arbitration against non-signatories (Plaintiffs), "[b]asic fairness principles" preclude "the extraordinary step of binding a nonsignatory to an arbitration agreement." *Wallace v. Amsurg Holdings, Inc.*, No. 6:15-cv-01548-MC, 2015 WL 7568592, at *5 (D. Or. Nov. 24, 2015) (quoting *Legacy Wireless Services, Inc.,* 314 F. Supp. 2d at 1055).

Classmates' reliance on *Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*, 2019 WL 3430656 (N.D. Cal. July 30, 2019), is unavailing. In that case, a paralegal at Disability Rights Advocates tested the Uber application to investigate average wait times for people in wheelchairs. *Id.* at 2. Crucially, the plaintiffs' claims *arose from their use of the Uber application and experiencing long wait times*, yet they claim[ed] never to have downloaded the Uber App." *Id.* at *3-4. So, the court treated the paralegal's use of Uber as if the plaintiffs had used Uber themselves. *Id.* at 4. Here, by contrast, Plaintiffs' claims *do not arise from their use of Classmates*. Classmates stole something that belongs to Plaintiffs: their likenesses. The harm in this case exists regardless of whether Plaintiffs use Classmates.

Fourth, counsel had no discussion with Plaintiffs about creating accounts on Classmates.[4]

### 2. Delegation clauses do not apply to disputes about the existence of an arbitration agreement.

Classmates argues its TOS incorporates standardized arbitration rules that in turn delegate decisions on whether specific claims are arbitrable to an arbitrator. ECF No. 26 at 5. This is irrelevant where, as here, Plaintiffs did not agree to and are not bound by the TOS. The decision whether a valid arbitration agreement exists between Plaintiffs and Classmates rests squarely with this Court. *See, e.g. First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 939 (1995) ("courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so."); *Goldman, Sachs & Co. v. City of Reno*, 747

---

[4] Counsel's discussions with Plaintiffs are protected by privilege. Counsel's representations regarding things they did <u>not</u> discuss do not operate as a waiver of the privilege on any subject.

F.3d 733, 742 (9th Cir. 2014) ("If the parties contest the existence of an arbitration agreement, the presumption in favor of arbitrability does not apply."); *cf. Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (parties did not dispute whether valid arbitration agreement existed).

**B.** **Section 230 of the Communications Decency Act does not apply because the yearbook authors did not intend publication on the Internet.**

Classmates' misappropriation is not protected by § 230 of the CDA because, under controlling Ninth Circuit authority, a website enjoys immunity only for content the creator intended to be published on the Internet. *Batzel v. Smith*, 333 F.3d 1018, 1034 (9th Cir. 2003), *superseded in part by statute on other grounds as stated in Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 766–67 (9th Cir. 2017) (CDA immunity exists only "when a third person or entity that created or developed the information in question furnished it to the provider or user under circumstances in which a reasonable person . . . would conclude that the information *was provided for publication on the Internet*.") (emphasis added); *Fair v. Roommates*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) ("[I]f the editor publishes material that *he does not believe was tendered to him for posting online*, then he is the one making the affirmative decision to publish, and so he . . . [is] not entitled to CDA immunity.") (emphasis added).

In *Batzel*, the plaintiff sent an email to the defendant, which the defendant then published on its website without asking permission. Applying the plain language of the CDA, which applies only to information "provided by another information content provider," the *Batzel* court concluded the defendant website could not claim CDA immunity:

> '[P]rovided' suggests, at least, some active role by the 'provider' in supplying the material to a 'provider or user of an interactive computer service.' One would not say, for example, that the author of a magazine article 'provided' it to an interactive computer service provider or user by allowing the article to be published in hard copy off-line. Although such an article is available to anyone with access to a library or a newsstand, it is not 'provided' for use on the Internet.

*Batzel*, 333 F.3d at 1032-33. The application of this rule to the present case could hardly be clearer. The authors who created and edited the yearbooks did so in the nineties and early 2000s. ECF No. 2 at ¶¶ 22, 39. The Internet was in its infancy and social media did not exist. Not only did the authors not "provide" their "content" to Classmates, they gave no indication they

intended it to be published on the Internet by anyone. Under *Batzel*, allowing material "to be published in hard copy off-line" cannot and does not constitute "providing" the material to a website for online distribution.

A court recently followed similar reasoning to deny CDA immunity in a statutory right to publicity case against the websites Instant Checkmate and Whitepages. *Lukis v. Whitepages Inc*., 454 F. Supp. 3d 746 (N.D. Ill. 2020). Like Classmates, Instant Checkmate is a website *owned and operated by the defendant PeopleConnect*. And like Classmates, both Whitepages and Instant Checkmate profit by selling access to personal information they gathered without permission from the authors. *Id.* at 752-56. The Court reasoned that because the website had "actively compiled and collated, from several sources, information regarding [the plaintiff]", it could not claim to be publishing information "provided by another information content provider." *Id.* at 763. Similarly, in *Federal Trade Commission v. Accusearch, Inc*., No. 06-CV-105-D, 2007 WL 4356786 (D. Wyo. Sep. 28, 2007), *aff'd*, 570 F.3d 1187 (10th Cir. 2009), CDA immunity did not apply to a website selling phone records online. Although the phone records "were created (at least originally) by various telephone companies for lawful purposes," because the companies had not willingly provided the phone records for publication online, the phone records were not "provided by another information content provider." *Id.* at *6.

In every case Classmates cites in support of CDA immunity, the creator intentionally posted the content on the Internet. *See Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd* 700 F. App'x 588 (9th Cir. 2017) (user intentionally posted content on Facebook); *Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019) (same); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003) (user intentionally posted Matchmaker.com profile); *Jurin v. Google Inc.*, 695 F. Supp. 2d 1117 (E.D. Cal. 2010) (companies intentionally posted advertisements using Google Adwords); *Kimzey v. Yelp! Inc.*, 836 F.3d 1263 (9th Cir. 2016) (reviewer intentionally posted on Yelp!); *Jones v. Dirty World Entertainment Recordings LLC*, 755 F.3d 398 (6th Cir. 2014) (user intentionally posted content on TheDirty.com); *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263 (D.C. Cir. 2019) (scam locksmiths intentionally posted websites on the Internet); *Ben Ezra, Weinstein, &*

*Co. v. America Online Inc*., 206 F.3d 980 (10th Cir. 2000) (company intentionally provided stock quote information to AOL); *Obado v. Magedson*, 612 F. App'x 90 (3d Cir. 2015) (blogger intentionally posted allegedly defamatory comments on the Internet); *Liberi v. Taitz*, No. 11-0485, 2011 WL 13315691, at *11 (C.D. Cal. Oct. 17, 2011) (government agencies and private companies intentionally published customer information on the Internet); *Zeran v. America Online*, 129 F.3d 327 (4th Cir. 1997) (user intentionally posted content on AOL bulletin board).

These cases have no relevance where, as here, yearbook authors did not willingly post their content. Try as it might, Classmates cannot cast itself in the guise of a "passive host of a forum" for user-provided content. *Cf. Kimzey*, 836 F.3d at 1265. Classmates actively selected which yearbooks to copy, extracted names and photographs, used those names and photographs to generate searchable records, and used those records to promote sales of website subscriptions and yearbook reprints, all without a single ounce of input from yearbook authors or the photographic subjects. Because Classmates made every decision leading to the illegal commercial use of Plaintiffs' likenesses, it is Classmates alone that bears responsibility. *See, e.g. Fair v. Roommates*, 521 F.3d at 1169 ("a website operator who . . . contributes to the alleged illegality. . . is directly involved in the alleged illegality and thus not immune"); *Diamond Ranch Acad., Inc. v. Filer*, No. 2:14-CV-751-TC, 2016 WL 633351, at *21 (D. Utah Feb. 17, 2016) (no CDA immunity where defendant "did more than simply post . . . information the third parties provided"); *cf. Klayman v. Mark Zuckerberg & Facebook, Inc.*, 753 F.3d 1354, 1358 (D.C. Cir. 2014) (immunity exists for websites that provide a "means by which third parties can post information *of their own independent choosing*") (emphasis added).

In a related action Plaintiffs are pursuing against the website Ancestry.com, which also extracts yearbook photographs for sale online, Magistrate Judge Beeler found Ancestry qualified for CDA immunity. *Callahan*, No. 3:20-cv-08437-LB, 2021 WL 783524, at *10. The Magistrate's opinion makes no mention of *Batzel* or *Fair v. Roommates*.

\\\

\\\

\\\

**C.    Plaintiffs' claims are not preempted by copyright because Classmates does not own or license yearbook copyrights, and Plaintiffs' likenesses are not copyrightable.**

Classmates does not own or license yearbook copyrights. When a defendant does not hold copyright in a work, there is no preemption. *See KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362 (2000). In *KNB Enterprises*, the defendant copied photographs from a website without permission from the copyright holders. In rejecting defendant's copyright preemption argument, the court reasoned "[w]e do not believe a [California right to publicity] claim is preempted under *Fleet* where, as here, the defendant has no legal right to publish the copyrighted work." Id. at 374 (citing *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911 (1996)). Like the defendant website in *KNB Enterprises*, Classmates did not obtain permission from the copyright holders before it extracted names, photographs, and likenesses from yearbooks. ECF No. 2 at ¶ 61. Having played fast and loose with copyright law, it cannot now claim its disregard for copyright insulates it from liability under the right of publicity.

Classmates leans heavily on *Maloney v. T3Media, Inc.*, but in *Maloney* it was the entity who held copyright that chose to distribute photographs on a website. 853 F.3d 1004, 1011 (9th Cir. 2017). Preemption existed because plaintiffs were challenging a "copyright holder's decision to distribute the copyright images themselves." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1011 (9th Cir. 2017). *Id. See also Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134 (9th Cir. 2006) (defendant held valid copyright license to distribute recorded musical work). In *Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1154-55 (9th Cir. 2010), preemption applied when the plaintiff owned the copyright and asserted both copyright and right to publicity claims arising from the unauthorized distribution of a video. Unlike *Jordan Video*, in this case neither Plaintiffs nor Classmates own copyright in Plaintiffs' yearbooks. Plaintiffs do not and could not obtain redress of their injuries by asserting a copyright claim.

Plaintiffs' right to publicity claims stem from the misuse of their likenesses, which cannot be copyrighted. Copyright preemption requires two conditions. "First, the content of the protected right must fall within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103. Second, the right asserted under state law must be equivalent to the exclusive rights

contained in section 106 of the Copyright Act." *Downing*, 265 F.3d 994, 1003 (9th Cir. 2001) (citation omitted). Neither condition is met where, as here, the subject matter of Plaintiffs' claims is the likenesses and names pictured in their yearbooks, not the yearbooks themselves. *See id*. at 1003-1004 ("the 'work' that is the subject matter of the right of publicity is the persona . . . Such name or likeness does not become a work of authorship because it is embodied in a copyrightable work such as a photograph.") (internal quotations omitted).

Whether a defendant's use of a photograph preempts a right to publicity claim "turns on how a copyrighted work is used." *Maloney*, 853 F.3d at 1013. If the defendant simply publishes an artistic work in which it holds copyright, preemption applies. But if the defendant goes "beyond the mere republication of the photograph" by using the photograph as part of an advertising scheme, then the defendant does injury to the uncopyrightable likeness or persona, and there is no preemption. *Id*. (quoting *Downing*, 265 F.3d at 1003).

Classmates has gone far beyond "mere republication" of yearbooks. Classmates digitally extracted student names and photographs from hard-copy yearbooks, then incorporated the names and photographs in an advertising scheme centered around offering free access to low-resolution versions of student photographs. People who use Classmates' free searches are shown two forms of advertisement: first, pop-up windows and webpages that appear while the user is attempting to view photographs, ECF No. 2 at ¶¶ 26, 28-29, 43, 46-47; and second, messages and buttons displayed adjacent to student records, ECF No. 2 at ¶¶ 24-25, 27, 41-42, 44-45. *See Lukis*, 454 F. Supp. 3d at 755 (free previews displayed adjacent to buttons marked "view report" and "open report" that "lead[] to a pay screen offering the monthly subscription package").

Classmates argues that because some of the pop-up messages and webpages obscure the student photographs displayed underneath, this somehow severs the link between student photographs and the commercial transactions being proposed. ECF No. 26 at 21. But in fact, student photographs often remain visible underneath pop-ups proposing a commercial transaction. *See, e.g.,* ECF No. 2 at ¶ 46. And even when they do not literally appear on the same screen, the pop-up messages and webpages are clearly linked to Plaintiffs' likenesses. The advertisements are displayed only while users are attempting to view student photographs; must

be clicked through to continue viewing student photographs; and propose commercial transactions where the user would gain enhanced access to student photographs through the purchase of a subscription or reprinted yearbook. *See Downing*, 265 F.3d at 999-1000 (advertisement that appeared several pages removed from plaintiff's photograph was clearly linked to the plaintiff's likeness because it was selling a shirt worn by the plaintiff).

**D.    Plaintiffs have properly stated a claim under § 3344.**

> **1.   Plaintiffs have plead two forms of actionable injury under § 3344.**

First, Plaintiffs have suffered economic injury by Classmates misappropriating and earning unjust profits from their likenesses, which are Plaintiffs' exclusive intellectual property. ECF No. 2 at ¶ 10; *see* Cal. Civ. Code § 3344(a) (liability for "any profits from the unauthorized use"); *see also Comedy III Productions., Inc. v. Gary Saderup, Inc*., 25 Cal. 4th 387, 399 (2001) ("The right of publicity . . . protects a form of intellectual property.")

Second, Plaintiffs have suffered injury by the invasion of a legally protected privacy right: the right to exclude others from the commercial use of their likenesses. Under well-established Ninth Circuit authority, the invasion of a long-recognized privacy right protected by statute is itself a concrete injury giving rise to a claim. *See, e.g. Patel v. Facebook, Inc*., 932 F.3d 1264, 1273 (9th Cir. 2019) (collection of facial recognition data in violation of statute was injury that gave rise to a claim because "the statutory provisions at issue . . . were established to protect an individual's concrete interests in privacy") (quoting *Robins v. Spokeo, Inc*., 867 F.3d 1108, 1113 (9th Cir. 2017)); *Williams v. Facebook, Inc*., 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018) (injury exists "where a plaintiff alleges that his personal information was collected and then wrongfully disclosed") (quotation omitted); *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (text messages sent without permission "present[ed] the precise harm and infringe[d] the same privacy interests Congress sought to protect" by passing the TCPA). *See also Uzuegbunam v. Preczewski*, No. 19-968, 2021 WL 850106, at *5 (U.S. Mar. 8, 2021) (plaintiffs could pursue claim for purely legal injury because "[a] contrary rule would have meant . . . no remedy at all for these rights . . . not readily reducible to monetary valuation.").

Classmates invents a novel pleading requirement for § 3344, asserting that Plaintiffs must

"plead . . . facts relating to the purported 'economic value' of their names." ECF No. 26 at 11-12.

Not so. Courts have long recognized that plaintiffs may bring § 3344 claims without

demonstrating their likenesses had commercial value prior to the defendant's exploitation:

> The Court finds nothing in the text of the statute or in case law that supports Defendant's interpretation of § 3344 as requiring a plaintiff pleading economic injury to provide proof of *preexisting* commercial value and efforts to capitalize on such value in order to survive a motion to dismiss. . . The statutory text makes no mention of preexisting value . . . Nor does the Court find any reason to impose a higher pleading standard on non-celebrities than on celebrities.

*Fraley v. Facebook, Inc*., 830 F. Supp. 2d 785, 806-07 (N.D. Cal. 2011) (emphasis in original)

(surveying supporting caselaw including *Del Amo v. Baccash*, 2008 WL 4414514 (C.D. Cal.

Sept. 16, 2008); *Solano v. Playgirl, Inc*., 292 F.3d 1078 (2002); *KNB Enterprises*; and

*Downing*)). The Ninth Circuit has recognized that "the appropriation of the identity of a

relatively unknown person . . . may itself create economic value in what was previously

valueless." *Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821 (9th Cir. 1974); *see

also Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1190 (N.D. Cal. 2014) ("LinkedIn is alleged to

have misappropriated Plaintiffs' names to promote LinkedIn . . . which is indisputably

economically valuable to LinkedIn"). If Plaintiffs' likenesses did not have economic value,

Classmates would not have bothered to steal them.

Indeed, the statutory provisions for minimum damages of "seven hundred fifty dollars"

and for "profits from the unauthorized use" exist precisely because the legislature recognized

non-celebrity plaintiffs would struggle to demonstrate pre-existing economic value. *Miller v.

Collectors Univ*, 159 Cal. App. 4th 988, 1002-03 (2008) ("by enacting section 3344(a), the

Legislature provided a practical remedy for a noncelebrity plaintiff whose damages are difficult

to prove"); *see also Perkins*, 53 F. Supp. 3d at 1243 (*quoting Hetter v. Eighth Judicial District

Court*, 874 P.2d 762 (Nev. 1994)).

Classmates argues that *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal.

2011) ("*Cohen I*") supports dismissal. But, in a detailed analysis, Judge Koh explained that the

reasoning in *Cohen I* and *Cohen v. Facebook, Inc.*, 2011 WL 5117164 (N.D. Cal. Oct. 27, 2011)

("*Cohen II*") is limited to cases where the plaintiffs have already willingly shared their names

and likenesses with a certain audience, as they did in *Cohen* by willingly creating Facebook profiles. *Perkins v. Linkedin Corp*., 53 F. Supp. 3d 1190 at 1209-10. *Cohen* does not apply when a website uses plaintiffs' names and likenesses "in a context where they did not already appear." *Id.*, at 1209 (quoting *Cohen II*, 2011 WL 5117164, at *3). In *C.M.D. v. Facebook, Inc*., 2014 WL 1266291 (N.D. Cal. March 26, 2014), Judge Seeborg, who authored *Cohen*, distinguish *Cohen* on grounds that the plaintiffs' likenesses were used to promote "third-party products, companies, and brands" with whom they had not shared their likenesses. *Id.*, at *2 (quoting *Fraley*, 830 F. Supp. 2d at 799). Because Plaintiffs did not willingly share their likenesses with Classmates, Plaintiffs' claims are like those in *Fraley*, *Perkins*, and *C.M.D.*, and unlike those in *Cohen*.

### 2. Because Plaintiffs have alleged actual damages, they have properly plead a claim for statutory damages under Cal. Civ. Code § 3344.[5]

The case law on the pleading standard for statutory damages under § 3344 is difficult to reconcile. In *Miller*, a California state court concluded in dicta that "the legislative history of section 3344(a) reveals the statutory minimum damages were meant to compensate noncelebrity plaintiffs who suffer the *Fairfield* form of mental anguish." *Miller v. Collectors Univ*, 159 Cal. App. 4th at 1006 (citation omitted). While *Miller* recognizes statutory damages in § 3344 were meant to compensate plaintiffs who suffer mental anguish, nothing in *Miller* or § 3344 suggests statutory damages are available exclusively for that purpose.

In *Fraley*, decided three years after *Miller*, the court denied a motion to dismiss a statutory damage claim under §3344 when plaintiffs' injury was based on the defendant's failure to compensate plaintiffs for the value of their likenesses. *Fraley*, 830 F. Supp. 2d 785, 806 ("Plaintiffs allege not that they suffered mental anguish as a result of Defendant's actions, but rather that they suffered economic injury because they were not compensated"). The court

---

[5] Classmates conflates pleading "mental anguish" with pleading a claim under § 3344. ECF No. 26 at 12. But even if pleading "mental anguish" were required to state a claim for statutory damages – which it is not – § 3344 also provides for the recovery of "actual damages" and "profits from the unauthorized use." *See Perkins v. Linkedin Corp*., 53 F. Supp. 3d 1222, 1244 (N.D. Cal. 2014) ("Plaintiffs appear to have confused the availability of minimum statutory damages under section 3344 with the availability of damages more generally under the statute").

reasoned the plaintiffs would be entitled § 3344's statutory minimum damages so long as they could "prove actual damages" in some amount at trial. *Id*. at 809.

In *Perkins*, the court revisited the legislative history, revising the analysis from *Miller* to posit an "inferred" additional requirement that non-celebrity plaintiffs must allege mental anguish to support statutory damages under § 3344. *See Perkins*, 53 F. Supp. 3d 1222 at 1242 ("The text of section 3344, it is true, contains no express requirement that a plaintiff plead mental harm in order to claim the minimum statutory damages figure. A California Court of Appeal, however, has inferred such a requirement.") (citing *Miller*).

On the face of the opinions, *Perkins* and *Fraley* are difficult to reconcile. One path forward is to follow the approach the *Perkins* court took in distinguishing *Fraley*. While the plaintiffs in Perkins plead only minimum statutory damages, "plaintiffs in *Fraley* had claimed both minimum statutory damages and actual damages in their complaint." *Perkins*, 53 F. Supp. 3d at 1245 (emphasis in original). If the Court follows this path, Plaintiffs have met the pleading standard. Like the plaintiffs in Fraley, and unlike the plaintiffs in Perkins, Plaintiffs plead both actual damages and minimum statutory damages in the Complaint. (*See, e.g.,* ECF No. 2 ¶ 97.)

An alternate path is to adopt *Fraley* as the correct interpretation of the law. Plaintiffs properly plead a claim for minimum statutory damages if they plausibly plead some amount of actual damage, which may come in the form of economic, statutory, or nominal damages. This interpretation is supported by the long history of courts allowing non-celebrity plaintiffs to bring statutory damage claims under §3344, even when their damages were economic in nature and the plaintiffs did not allege mental anguish. In *KNB Enterprises v. Matthews*, the court reasoned that statutory damages under §3344 exist precisely for the case of a non-celebrity plaintiff for whom "appropriation . . . would not inflict as great an economic injury as would be suffered by a celebrity plaintiff," and noted that part of the purpose of a statutory damages provision is to "discourage such appropriation" by the defendant. 78 Cal. App. 4th 362, 367 (2000) (internal quotation omitted). *See also Perfect 10, Inc. v. Talisman Communications, Inc*., 2000 WL 364813 (C.D. Cal. March 27, 2000); *Del Amo v. Baccash*, 2008 WL 4414514, at *6 (C.D. Cal. Sept. 16, 2008).

Should this Court still believe that Plaintiffs must plead mental anguish as a precondition for seeking statutory damages under § 3344, Plaintiffs would respectfully request leave to amend. Plaintiffs Callahan and Abraham experienced distress at the knowledge Classmates was profiting from their likenesses, and were concerned about the potential reputational impact. Both *Miller* and *Perkins* recognize that a person's knowledge of economic loss or reputational injury is a basis for mental anguish. *See Miller*, at 1006 n. 12; *Perkins*, at 1246.

### 3. Pleading endorsement is not required.

Classmates invents another non-existent pleading requirement, asserting § 3344 claims exist only for uses that "imply endorsement." Not so. The right of publicity "is infringed by the unpermitted use of a person's identify containing no inference that plaintiff endorses or approves the product." *Cairns v. Franklin Mint Co*., 107 F. Supp. 2d 1212, 1214 (C.D. Cal. 2000). This is precisely what distinguishes the right of publicity from a claim for false endorsement. *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1072 (9th Cir. 2015) ("we have previously distinguished between publicity right claims and § 1125(a) claims on the basis of this additional element") (citing additional Ninth Circuit authority).

Courts have routinely upheld § 3344 claims against websites that use the promise of access to plaintiffs' likenesses to solicit website subscriptions. *See, e.g. KNB Enterprises*, 78 Cal. App. 4th at 365-66; *Perfect 10 Inc*., 2000 WL 364813, at *2 (same); *Perfect 10, Inc., v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146 (C.D. Cal. 2002); *Michaels v. Internet Entertainment Group*, 5 F. Supp. 2d 823 (C.D. Cal. 1998). In *Lukis*, the court denied a motion to dismiss in a right to publicity case based on precisely the type of advertising scheme alleged here. The website presented "free previews" of reports containing plaintiffs' likenesses, accompanied by messages advertising "a monthly subscription service giving the purchaser access to background reports on anybody in [the defendant's] database." 454 F. Supp. 3d. at 760-61.

### 4. The newsworthy exception does not apply because there is no legitimate public interest in Plaintiffs' photographs as minors, and Classmates' use is for a commercial purpose.

The newsworthy exception to California's right of publicity statute exempts the use of a name, photograph, or likeness "in connection with any news, public affairs, or sports broadcast

or account, or any political campaign." Cal. Civ. Code § 3344(d). The exception "tracks the constitution right to freedom of speech" and excludes liability for "the publication of matters in the public interest, which rests on the right of the public to know and the freedom of the press to tell it." *Fraley*, 830 F. Supp. 2d at 804 (*Downing v. Abercrombie & Fitch*, 265 F.3d at 1001). The newsworthy exception "extends 'to almost all reporting of recent events,' as well as to publications about 'people who, by their accomplishments, mode of living, professional standing, or calling, create a 'legitimate and widespread attention' to their activities.'"). *Downing*, 265 F.2d at 1001 (quoting *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 416 (1983)). Information that is primarily of personal or limited interest does not qualify for protection. The facts disclosed must concern an issue of "legitimate public interest." *Shulman v. Group W Productions, Inc.*, 18 Cal. 4th 200, 214-15 (1998).

Plaintiffs are not public figures. There is no legitimate public interest in photographs of Plaintiffs as children. *Callahan*, No. 3:20-cv-07437-LB, 2021 WL 783524, at *7 ("decades-old yearbooks are not demonstrably an issue of public interest"); *see also Downing*, 265 F.3d at 994 (photograph did not concern a matter of public interest even when its subjects were professional surfers at a surfing competition).

Tellingly, most of the authority Classmates relies on concerns famous individuals whose names and likenesses were already in the public eye. *See New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302 (9th Cir. 1992) (famous boy band); *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 539–40, 543 (1993) ("well-known surfer"); *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 416 (2001) (famous baseball players); *William O'Neil Co. Inc. v. Validea.com Inc.*, 202 F. Supp. 2d 1113 (C.D. Cal. 2002) ("well-known financial analyst and stock market strategist"); *cf. Davis v. Elec. Arts Inc.*, 775 F.3d 1172 (9th Cir. 2015) (newsworthy exception did not apply even though plaintiffs were well-known football players). The plaintiffs in those cases were public figures who "create a legitimate and widespread attention to their activities." *See Downing*, 265 F.3d at 1001. Plaintiffs are not.

Facts about private individuals can be a matter of legitimate public interest, but only if those facts concern the person's involvement in an inherently newsworthy event. *See Shulman*,

18 Cal. 4th 200 at 215. In *Shulman*, the public had a legitimate interest in a news report about a recent car accident involving the plaintiff. *Id*. at 212. Classmates's use of Plaintiffs' photographs in advertising is unrelated to any newsworthy event.

Even if the names and likenesses Classmates misappropriated concerned matters of legitimate public interest (which they do not), the newsworthy exception still would not apply because Classmates used plaintiffs' likenesses for the commercial purpose of selling subscriptions and yearbook reprints. *See Fraley*, 830 F. Supp. 2d at 805 ("Facebook's commercial use of those actions in Sponsored Stories removes them from the scope of § 3344(d)'s newsworthy privilege.") (emphasis in original); *Abdul-Jabbar v. General Motors Corporation*, 85 F.3d 407 (9th Cir. 1996) (statements on matters of public interest were not protected by § 3344(d) when made in an "advertisement, not in a news or sports account.").

Nor can Classmates escape commercial purpose by claiming their use of Plaintiffs' likenesses in advertisements is "merely an adjunct" to speech on a matter of public interest. *See* ECF No. 26 at 14. The Court in *Lukis* rejected precisely this argument in a right of publicity case against Instant Checkmate, a website also owned and operated by PeopleConnect that advertises its products using names and likenesses in a manner nearly identical to Classmates:

> Anybody interested in obtaining background reports from Instant Checkmate can enter a first and last name in the search bar on its homepage. Doing so yields a list of actual persons . . . For each person listed, Instant Checkmate provides a limited, free preview of a background report containing enough information . . . to identify the person. . . *Instant Checkmate's sole purpose in offering free previews is to advertise products* . . . includ[ing] a monthly subscription enabling the subscriber to view background reports of persons in Instant Checkmate's database.

*Lukis v. Whitepages Inc.*, 454 F. Supp. 3d at 754-55 (emphasis added). The Court rejected Instant Checkmate's argument that its background reports qualified for the newsworthy exception, finding that even if the background reports themselves were newsworthy (which the Court doubted, *id.* at 763), "[p]laintiffs' claims are directed towards the free previews, not towards the subscription services advertised by the previews" and "the free previews serve a 'commercial purpose.'" *Id*, at 762.

\\\

**E.      Plaintiffs have stated a claim for violation of the UCL.**

The unlawful prong of California's UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Wilson v. Hewlett–Packard Co*., 668 F.3d 1136, 1140 (9th Cir. 2012). Plaintiffs allege Classmates' actions are unlawful under Cal. Civ. Code § 3344, giving rise to a UCL claim.

The theft of intellectual property leading to loss of potential income is a loss of "money or property" giving rise to standing under the UCL. *See Simpson Strong-Tie Co. v. MiTek Inc*., No. 20-cv-06957-VKD, 2021 WL 1253803, at *5 (N.D. Cal. Apr. 5, 2021).

**F.      Plaintiffs have stated a claim for intrusion upon seclusion.**

A claim for intrusion upon seclusion exists against "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." *Fausto v. Credigy Services Corp*., 598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009) (quoting *Deteresa v. Am. Broad. Cos., Inc.*, 121 F.3d 460, 465 (9th Cir. 1997)). Whether specific conduct is offensive is typically left to a jury. *See In re Facebook, Inc., Consumer Privacy User Profile Litig*., 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019).

Plaintiffs have alleged a reasonable expectation of privacy in the photographs and biographical information Classmates is distributing for profit. ECF No. 2 at ¶ 86. Plaintiffs consented as minor children (aged 12 to 16) decades ago to have their photographs and names printed in yearbooks intended for use by their family and classmates. But Plaintiffs reasonably expect not to see their photographs and information distributed to a worldwide audience decades later for a profit-making purpose. California law recognizes that people who willingly share personal information among a limited group of social connections do not lose their ability to assert privacy claims when a company shares that information much more broadly for profit. In *In re Facebook*, the court reasoned that privacy was not "an all-or-nothing proposition . . . the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law.'" *Id*. at 782 (quoting *Sanders v. Am. Broad. Co., Inc.*, 20 Cal. 4th 907, 916 (1999)).

1    Plaintiffs alleged facts sufficient for a reasonable jury to conclude Classmates' conduct is

2    highly offensive. Classmates disclosed Plaintiffs' private information to a worldwide audience

3    comprising millions of users. The information is highly sensitive, including photographs of

4    Plaintiffs as minors and information about where they grew up and attended school. *See In re*

5    *Facebook, Inc.*, 402 F. Supp. 3d at 797 (plaintiffs adequately alleged offensive conduct when

6    Facebook "disclosed to tens of thousands of app developers and business partners sensitive

7    information about them without their consent, including their photos.").

8    **G.    California recognizes a standalone claim for unjust enrichment.**

9        Plaintiffs have properly asserted a standalone unjust enrichment claim. *See, e.g. ESG*

10   *Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016) ("To allege unjust

11   enrichment as an independent cause of action, a plaintiff must show that the defendant received

12   and unjustly retained a benefit at the plaintiff's expense.") (citation omitted); *see also Astiana v.*

13   *Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

14   **H.    Classmates' conduct is not protected by the First Amendment because there is no**
15   **legitimate public interest in Plaintiffs' likenesses, nor is Classmates engaged in**
     **transformative use.**

16       Classmates argues that the First Amendment bars Plaintiffs' right to publicity claims, but

17   cites none of the correct law on this issue. Classmates invites the Court to become the first in

18   history to apply an "intermediate" or "strict scrutiny" analysis to a purported conflict between the

19   First Amendment and a right to publicity claim under California law. This Court should decline

20   the invitation, and instead follow the well-developed standards established through decades of

21   Supreme Court, Ninth Circuit, and California case law. *See Hart v. Elec. Arts, Inc.*, 808 F. Supp.

22   2d 757, 768-69 (D.N.J. Sep. 9, 2011) (surveying caselaw, including in California and the Ninth

23   Circuit, to conclude that "courts do not tend to apply strict or intermediate scrutiny tests when

24   addressing a First Amendment defense to intellectual property-related claims, such as the right of

25   publicity"; rather they apply "balancing tests.").

26       Courts applying California law follow the balancing test developed in a line of Supreme

27   Court cases including *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), *Dun & Bradstreet, Inc.*

28   *v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985), and *Bartnicki v. Vopper*, 532 U.S. 514 (2001).

When a defendant asserts that the right to free expression justifies its invasion of plaintiffs' property, a court must "balance the right of publicity . . . against the asserted First Amendment right." *Keller v. Electronic Arts Inc*., 724 F.3d 1268, 1271 (9th Cir. 2013).[6]

Within this balancing inquiry, courts recognize two situations where a defendant's First Amendment rights may outweigh the state's interest in protecting its citizens. First, "no cause of action will lie for the publication of matters in the <u>public interest</u>, which rests on the right of the public to know and the freedom of the press to tell it." *Downing v. Abercrombie Fitch*, 265 F.3d 994 at 1001 (quoting *Montana v. San Jose Mercury News, Inc*., 34 Cal. App. 4th 790, 793 (1995)) (emphasis added). California's right to publicity statute incorporates this as the "newsworthy" exception. *Fraley*, 830 F. Supp. 2d at 804 (citing Cal. Civ. Code. § 3344(d)). As Plaintiffs demonstrated in their discussion of the "newsworthy" exception in Part D above, Classmates' commercial use of names and photographs stolen from yearbooks does not constitute speech on a matter of public interest.

Second, "when a work contains significant <u>transformative elements</u>, it is not only especially worthy of First Amendment protection, but it is also less likely to interfere with the economic interest protected by the right of publicity." *Comedy III Prods., Inc. v. Gary Saderup, Inc*., at 405; *see also Hilton v. Hallmark Cards,* 599 F.3d 894, 909 (9th Cir. 2010). Here, Classmates has done nothing to transform Plaintiffs' likenesses; it presents Plaintiffs' photographs as they appeared in yearbooks.

No court applying California law has barred a right to publicity claim absent a finding of either "public interest" or "transformative use." *See Hilton*, at 909 n.11 ("We . . . leave for another day the question of whether the First Amendment furnishes a defense to misappropriation of publicity that is broader than the transformative use or public interest.").

The right to publicity cases in Classmates' own briefing apply the balancing test described above, making no mention of "intermediate scrutiny" or "strict scrutiny." *See Sarver v.*

---

[6] *See also Hilton*, 599 F.3d at 912; *Perkins*, 53 F. Supp. 3d, at 1249-50; *Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1096 (E.D. Cal. 2009); *Comedy III Prods., Inc.*, 25 Cal. 4th, at 390.

*Chartier*, 813 F.3d 891 (9th Cir. 2016) (applying balancing test to a California right to publicity claim and affirming that "speech which either appropriates the economic value of a performance or persona . . . is unprotected by the First Amendment against a California right-of-publicity claim."); *Gionfriddo v. Major League Baseball*, 94 Cal.App.4th 400 (2001) ("[T]he right to be protected from unauthorized publicity [must] be balanced against the public interest in the dissemination of news and information") (quotation omitted); *New Kids on the Block v. News Am. Pub.*, 745 F. Supp. 1540, 1547 (C.D. Cal. 1990) ("the Court has balanced the First Amendment values against plaintiffs' intangible property rights"); *William O'Neil Co. Inc. v. Validea.com Inc.*, 202 F. Supp. 2d 1113, 1117 (C.D. Cal. 2002) (case required "weighing of the private interest of the right of publicity against matters of public interest calling for constitutional protection") (citation omitted); *Stewart v. Rolling Stone*, 181 Cal. App. 4th 664 (2010) (no clear standard articulated, but no mention of "strict scrutiny" or "intermediate scrutiny"); *Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318 (1997) (same). Without exception, the cases Classmates cites in which a court applies "intermediate scrutiny" or "strict scrutiny" involve direct government regulation of speech by law or ordinance, not a private lawsuit seeking to redress a private plaintiff's injury.[7]

Classmates cites *Kincaid v. Gibson*, 236 F.3d 342 (6th Cir. 2001), for the broad proposition that yearbooks are protected speech. But that case concerned a portion of a specific yearbook in which the author expressed views on matters of public interest, including "high unemployment rates." *Id.*, at 345. Here, Plaintiffs protest only Classmates' misuse of their names and likenesses, which express no views on any subject. Furthermore, in *Kincaid* a university official acting as an agent of the government censored the expressive material and forbid its publication. *Id.* Plaintiffs are not public officials. Nor do they seek to forbid publication of yearbooks. It is Classmates' unlawful use of Plaintiffs' names and likenesses to promote its products that gives rise to the claim, not the publication of the yearbooks from which it stole.

---

[7] In the final and most confusing portion of its First Amendment argument, Classmates alternates between confusing Plaintiffs with state agents whose actions are subject to "intermediate scrutiny," and seemingly asking this court to strike down § 3344 as an unconstitutional law. *See* ECF No. 2 at 21-22. The constitutionality of § 3344 is not at issue in this suit.

**I.      The anti-SLAPP motion should be denied because the exception for suits in the public interest applies, and because there is no speech on an issue of public concern.**

Recognizing "that there has been a disturbing abuse" of the anti-SLAPP law, undermining the very rights "of speech and petition" the anti-SLAPP law was meant to protect, California's legislature recognizes an exception for "any action brought solely in the public interest or on behalf of the general public." Cal. Civ. Proc. Code § 425.17. A class action is immune from anti-SLAPP if (1) the plaintiff does not seek relief different from the class, (2) the action would enforce an "important right affecting the public interest," and (3) "private enforcement is necessary and places a disproportionate financial burden on the plaintiff." *Id.*

Plaintiffs' suit against Classmates is protected under § 425.17. Named plaintiffs Callahan and Abraham seek the same relief as the class, the action seeks to protect the public from the unscrupulous theft of their likenesses, and the amounts at stake are too small for individual claims to be a viable path to protecting the public interest. *See, e.g., Smith v. Levine Leichtman Capital Partners, Inc.*, 723 F. Supp. 2d 1205, 1218-19 (N.D. Cal. 2010) (applying exception to deny anti-SLAPP motion in a class action by consumers against a debt collection company).[8]

Even if this exception did not apply, the motion still must fail because Classmates cannot meet its burden of showing that the records and advertisements making use of Plaintiffs' likenesses are "speech in direct connection with an issue of public concern." Cal. Civ. Proc. Code § 425.16. California law establishes the following guiding principles:

(1) "public interest" does not equate with mere curiosity;

(2) a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest;

(3) there should be some degree of closeness between the challenged statements and the asserted public interest—the assertion of a broad and amorphous public interest is not sufficient;

---

[8] An order denying an anti-SLAPP motion is subject to immediate interlocutory appeal, while an order finding that the "public interest" exception applies is not. *Breazeale v. Victim Servs., Inc.*, 878 F.3d 759 (9th Cir. 2017) (citing Cal. Civ. Proc. Code § 425.17(e)). For this reason, Plaintiffs respectfully request that the Court address the "public interest" exception in its ruling, even if it also denies Classmate's anti-SLAPP motion on alternate grounds.

(4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy; and

(5) a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

*Piping Rock Partners , Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 968 (N.D. Cal. 2013) (citing *Weinberg v. Feisel*, 110 Cal. App. 4th 1122 (2003)).

Plaintiffs' decades-old photographs are not speech about an issue of public concern. They do not "concern a substantial number of people." Nor can Classmates convert private information "into a matter of public interest simply by communicating it to a large number of people." Classmates' purpose is simply to sell subscriptions and reprints. *See L.A. Taxi Coop., Inc. v. Indep. Taxi Owners Ass'n of L.A.*, 239 Cal. App. 4th 918, 927 (2015) ("commercial speech that does nothing but promote a commercial product or service is not speech protected under the anti-SLAPP statute.")

The cases Classmates cites in support of its motion demonstrate just how far-removed Classmate's conduct is from the kinds of activity courts view as "speech . . . in connection with an issue of public concern." The advertisements and records Classmates created using decades-old photographs of the Plaintiffs as minor children do not "impact[] a broad segment of society" or "affect[] a community in a manner similar to that of a governmental entity." *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468 (2000) (political speech about the qualifications of the manager of a 3,000-person organization). *See also Ruiz v. Harbor View Community Assn*, 134 Cal. App. 4th 1456, 1463 (2005) (speech accusing architectural committee of exposing association members to "serious liability and potential damages"); *Grenier v. Taylor*, 234 Cal. App. 4th 471 (2015) (allegations of theft and misuse of church funds by church officials).

In the related case Plaintiffs are pursuing against Ancestry.com, Magistrate Judge Beeler denied Ancestry's anti-SLAPP motion on grounds that "Ancestry's inclusion of the yearbook information is not a public issue." *Callahan*, No. 3:20-cv-08437-LB, 2021 WL 783524, at * 11.

## IV. CONCLUSION

For the above-stated reasons, Classmates' motions to dismiss and to strike should be denied. In the alternative, Plaintiffs should be granted leave to amend. While Plaintiffs have

plead facts sufficient to state a claim, given leave to amend Plaintiffs would allege additional

relevant facts, including: (1) Plaintiffs suffered mental anguish; (2) Classmates makes no attempt

to acquire or license copyrights in the yearbooks; (3) Classmates' TOS contains substantively

and procedurally unconscionable terms.

Respectfully submitted,

MORGAN & MORGAN
COMPLEX LITIGATION GROUP

Dated: April 16, 2021                 By:          /s/ Michael F. Ram

Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Telephone: (415) 358-6293

Benjamin R. Osborn
(appearing *Pro Hac Vice*)
102 Bergen Street
Brooklyn, NY 11201
Phone: (347) 645-0464
Email: ben@benosbornlaw.com

*Attorneys for Plaintiffs*
*and the Proposed Class*