**JENNER & BLOCK LLP**
Kate T. Spelman (Cal. Bar. No. 269109)
kspelman@jenner.com
633 West Fifth Street, Suite 3600
Los Angeles, California 90071
Telephone:     213 239-5100
Facsimile:     213 239-5199

**JENNER & BLOCK LLP**
Debbie L. Berman (*pro hac vice*)
dberman@jenner.com
Wade A. Thomson (*pro hac vice*)
wthomson@jenner.com
353 N. Clark Street
Chicago, Illinois 60654-3456
Telephone:     312 222-9350
Facsimile:     312 527-0484

Attorneys for Defendant PeopleConnect, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MEREDITH CALLAHAN AND LAWRENCE GEOFFREY ABRAHAM, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs.<br><br>v.<br><br>PEOPLECONNECT, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:20-cv-09203-EMC<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 AND MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16**<br><br>Hearing Date: May 13, 2021<br>Hearing Time: 1:30 p.m.<br>Judge: Hon. Edward M. Chen<br>Courtroom: 5 |

# **TABLE OF CONTENTS**

INTRODUCTION ..............................................................................................................................1

ARGUMENT ...................................................................................................................................1

I.     PLAINTIFFS SHOULD BE REQUIRED TO ARBITRATE THEIR CLAIMS. ...........................1

       A.      Plaintiffs Agreed To Arbitrate. ........................................................................1

       B.      The TOS Delegate The Question Of Arbitrability.............................................3

II.    PLAINTIFFS' CLAIMS ARE BARRED BY FEDERAL LAW. ....................................................3

       A.      The Communications Decency Act Bars Plaintiffs' Claims..................................3

       B.      The Copyright Act Preempts All But One Of Plaintiffs' Claims. .......................5

III.   PLAINTIFFS HAVE NOT ADEQUATELY PLEADED ANY OF THEIR CAUSES OF
       ACTION. ........................................................................................................................7

       A.      Plaintiffs Failed To State A Claim Under the California Right of Publicity Law. ..............7

               1.      Plaintiffs Have Not Pleaded An Actionable Injury Under § 3344.......................7

               2.      Plaintiffs Have Not Plausibly Stated A Claim For Unlawful Advertising. .............9

               3.      The "Public Affairs" Exception Applies.........................................................9

       B.      Plaintiffs Fail To State A California Unfair Competition Law Claim.............................10

       C.      Plaintiffs Fail To State An Intrusion On Seclusion Claim................................................11

       D.      Plaintiffs' Unjust Enrichment Claim Fails........................................................................12

IV.    PEOPLECONNECT'S ALLEGED CONDUCT IS PROTECTED BY THE FIRST
       AMENDMENT................................................................................................................12

V.     PLAINTIFFS' CLAIMS ARE BARRED BY CALIFORNIA'S ANTI-SLAPP STATUTE........13

CONCLUSION..............................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Abdul-Jabbar v. General Motors Corp.*,
    85 F.3d 407 (9th Cir. 1996) ...................................................................................................10

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) .................................................................................................12

*Avakian v. Wells Fargo Bank, N.A.*,
    827 F. App'x 765 (9th Cir. 2020) ..........................................................................................12

*Barker v. Avila*,
    No. 2:09-cv-00001, 2009 WL 10691367 (E.D. Cal. Nov. 19, 2009) .....................................14

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) .................................................................................................4

*Berman v. Dean Witter & Co.*,
    44 Cal. App. 3d 999 (1975) .....................................................................................................2

*Blackburn v. ABC Legal Servs., Inc.*,
    No. C 11-01298, 2011 WL 8609453 (N.D. Cal. June 16, 2011) ............................................14

*Callahan v. Ancestry.com Inc.*,
    No. 20-cv-08437, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021) ....................................1, 4, 5, 15

*Caraccioli v. Facebook, Inc.*,
    700 F. App'x 588 (9th Cir. 2017) ............................................................................................5

*Club Members for an Honest Election v. Sierra Club*,
    45 Cal. 4th 309 (2008) ...........................................................................................................14

*Cohen v. Facebook, Inc.*,
    798 F. Supp. 2d 1090 (N.D. Cal. 2011) ...........................................................................8, 11

*Damon v. Ocean Hills Journalism Club*,
    85 Cal. App. 4th 468 (2000) ...........................................................................................14, 15

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)..................................................................................................................2

*Dora v. Frontline Video, Inc.*,
    15 Cal. App. 4th 536 (1993) .....................................................................................................9

*Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001) ...................................................................................................7

*ESG Cap. Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) ...............................................................................................12

*In re Facebook, Inc. Consumer Privacy User Profile Litigation*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ...................................................................................11

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ...................................................................................................4, 5

*Firoozye v. Earthlink Network*,
    153 F. Supp. 2d 1115 (N.D. Cal. 2001) .........................................................................................6

*Fraley v. Facebook, Inc.*,
    830 F. Supp. 2d 785 (N.D. Cal. 2011) ........................................................................................8, 10

*FTC v. Accusearch Inc.*,
    570 F.3d 1187 (10th Cir. 2009) ....................................................................................................5

*Gionfriddo v. Major League Baseball*,
    94 Cal. App. 4th 400 (2001) ........................................................................................................10

*In re Google, Inc., Privacy Pol'y Litig.*,
    No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ...........................................7

*Grenier v. Taylor*,
    234 Cal. App. 4th 471 (2015) ......................................................................................................14

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    273 F. Supp. 3d 1099 (N.D. Cal. 2017) ......................................................................................15

*Hoffman v. Cap. Cities/ABC, Inc.*,
    255 F.3d 1180 (9th Cir. 2001) .....................................................................................................12

*Holley v. Gilead Sci., Inc.*,
    379 F. Supp. 3d 809 (N.D. Cal. 2019) .........................................................................................3

*Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*,
    No. 18-cv-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019) .................................................2

*Jules Jordan Video, Inc. v. 144942 Canada, Inc.*,
    617 F.3d 1146 (9th Cir. 2010) .....................................................................................................6

*Kincaid v. Gibson*,
    236 F.3d 342 (6th Cir. 2001) .......................................................................................................13

*KNB Enterprises v. Matthews*,
    78 Cal. App. 4th 362 (2000) ........................................................................................................6

*L.A. Taxi Coop., Inc. v. The Indep. Taxi Owners Ass'n of L.A.*,
    239 Cal. App. 4th 918 (2015) ......................................................................................................15

*Legacy Wireless Servs., Inc. v. Human Cap., L.L.C.*,
    314 F. Supp. 2d 1045 (D. Or. 2004) ............................................................................................2

*Local TV, LLC v. Superior Ct.*,
    3 Cal. App. 5th 1 (2016) ..............................................................................................................9

*Lukis  v. Whitepages Inc,*,
    454 F. Supp. 3d 746 (N.D. Ill. 202000) ......................................................................................10

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017) ................................................................................6, 7

*New Kids on the Block v. News Am. Publ'g, Inc.*,
   745 F. Supp. 1540 (C.D. Cal. 1990) ...........................................................................13

*Patel v. Facebook, Inc.*,
   932 F.3d 1264 (9th Cir. 2019) ......................................................................................8

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1222 (N.D. Cal. 2014) .......................................................................8, 9

*Ruiz v. Harbor View Cmty. Ass'n*,
   134 Cal. App. 4th 1456 (2005) ....................................................................................14

*Sarver v. Chartier*,
   813 F.3d 891 (9th Cir. 2016) ................................................................................12, 13

*Shulman v. Group W Productions, Inc.*,
   18 Cal. 4th 200 (1998) ..................................................................................................9

*Simpson Strong-Tie Co. v. Gore*,
   49 Cal. 4th 12 (2010) ...................................................................................................14

*Simpson Strong-Tie Co. v. MiTek Inc.*,
   No. 20-cv-06957, 2021 WL 1253803 (N.D. Cal. Apr. 5, 2021) .............................10, 11

*Slivinsky v. Watkins-Johnson Co.*,
   221 Cal. App. 3d 799 (1990) .........................................................................................8

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) .....................................................................................................13

*Stutzman v. Armstrong*,
   No. 2:13-CV-116, 2013 WL 4853333 (E.D. Cal. Sept. 10, 2013) ...............................14

*Tamsco Props., LLC v. Langemeier*,
   597 F. App'x 428 (9th Cir. 2015) ..................................................................................2

*Thornley v. Clearview AI, Inc.*,
   984 F.3d 1241 (7th Cir. 2021) ......................................................................................8

*Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976) .....................................................................................................13

*Van Patten v. Vertical Fitness Grp., LLC*,
   847 F.3d 1037 (9th Cir. 2017) ......................................................................................8

*Williams v. Facebook, Inc.*,
   384 F. Supp. 3d 1043 (N.D. Cal. 2018) .........................................................................8

*Zhang v. Baidu.com Inc.*,
   10 F. Supp. 3d 433 (S.D.N.Y. 2014) ............................................................................12

**Statutes**

47 U.S.C. § 230 ................................................................................................................5

Cal. Civ. Code § 2319 ......................................................................................................3

Cal. Civ. Code § 2330 ......................................................................................................2

Cal. Civ. Code § 3344 ............................................................................................. *passim*

California Code of Civil Procedure § 425.16 ..................................................................15

California Code of Civil Procedure § 425.17 ............................................................13, 14

## INTRODUCTION

In its Motion to Dismiss ("Motion"), Defendant PeopleConnect showed that the Complaint fails from the start because Plaintiffs, through their counsel, agreed to arbitrate their claims. PeopleConnect's Motion then goes on to explain that even if there were no arbitration agreement, a multitude of legal doctrines all lead to the same commonsense result: it is perfectly lawful for PeopleConnect to maintain an online library of school yearbooks and display excerpts from those yearbooks to users. Right of publicity laws simply do not forbid the online presentation of works freely available to all at public libraries.

In response, Plaintiffs seek to cast the online presentation of photographs of their school-aged selves from their school yearbooks as the theft of their intellectual property. ECF No. 32 at 1 ("Resp."). This theory is baseless. Nothing has been stolen from Plaintiffs. The materials they seek to bar PeopleConnect from presenting on the Classmates.com website already were public and broadly disseminated. Plaintiffs simply cannot argue their way around that fact. So whether the Court finds that Section 230 of the Communications Decency Act grants PeopleConnect immunity, that the Copyright Act preempts Plaintiffs' claims, that Plaintiffs cannot state actionable claims as a matter of California law, or that the First Amendment protects PeopleConnect's speech, the outcome here should be no different from the outcome of the motion to dismiss brought in response to the virtually identical complaint filed by these same Plaintiffs regarding the Ancestry.com online yearbook library—it should be dismissed. *Callahan v. Ancestry.com Inc.*, No. 20-cv-08437, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021). What is more, because no amount of repleading can cure these flaws in Plaintiffs' theories, the dismissal should be with prejudice.

## ARGUMENT

### I.   Plaintiffs Should Be Required To Arbitrate Their Claims.

#### A.   Plaintiffs Agreed To Arbitrate.

As PeopleConnect explained in its Motion, the Federal Arbitration Act ("FAA") "'mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" Mot. 2 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985)). Plaintiffs do not dispute that their counsel assented to PeopleConnect's Terms of Service ("TOS"). Nor do they deny that he is their agent. Instead, Plaintiffs argue that they cannot be bound by their counsel's assent to the TOS. Resp. 3. They are wrong.

*First*, Plaintiffs argue that an agent's agreement to arbitrate is only enforceable "when a signatory has brought claims against nonsignatory agents and the agents then seek to invoke the arbitration clause against the signatory." Resp. 3-4 (quoting *Legacy Wireless Servs., Inc. v. Human Cap., L.L.C.*, 314 F. Supp. 2d 1045, 1054 (D. Or. 2004)). Whatever the law may be in Oregon, that is not the law in California. Under California law, an agreement to arbitrate entered into by an agent is binding on the principal. *Tamsco Props., LLC v. Langemeier*, 597 F. App'x 428, 429 (9th Cir. 2015) ("Under California law, when a nonsignatory and one of the parties to an arbitration agreement have an agency agreement, the arbitration agreement may be enforced against the nonsignatory."); *see Berman v. Dean Witter & Co.*, 44 Cal. App. 3d 999, 1003-05 (1975) (affirming order compelling non-signatory to arbitration). This rule makes sense. If that were not the rule, a principal could simply dispatch his agent and avoid "all liabilities" associated with his agent's actions. That result would flout California agency law. Cal. Civ. Code § 2330 ("An agent represents his principal for all purposes within the scope of his actual or ostensible authority, and *all the rights and liabilities* which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, *accrue to the principal.*") (emphasis added).

Plaintiffs seek to distinguish this case from *Independent Living Resource Center San Francisco v. Uber Technologies, Inc.,* No. 18-cv-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019). Resp. 4. Those efforts fail. In *Uber*, the plaintiffs "dispatched their agents"—their lawyers—"to affirmatively test" Uber's application to "bolster their claim of discrimination." *Id.* at *4. The *Uber* plaintiffs then "file[d] a complaint that specifically referenced the data the law firm collected from the Uber App." *Id*. Here, Plaintiffs "dispatched their agents"—their lawyers—"to affirmatively test" Classmates.com and "file[d] a complaint that specifically referenced" the screenshots Plaintiffs' lawyer collected from Classmates.com. *See id.* So the "central inquiry" of *Uber* was not that the suit involved the plaintiff's use of the Uber application—it was that the lawyer *acted as plaintiffs' agent* while testing Uber's application. *Id*. The "central inquiry" here, similarly, is whether counsel was acting as Plaintiffs' agent while using Classmates.com. He was.

*Second*, Plaintiffs assert that their counsel "could not possibly have bound Plaintiffs to the arbitration agreement by creating accounts on their behalf because on its own terms the Classmates TOS forbids the creation of accounts on behalf of another person." Resp. 3 (internal quotation marks and citation omitted). Initially, the suggestion that because counsel violated the TOS they are not binding is nonsense.

Moreover, counsel did not create the account pretending to be his client, which is what PeopleConnect's TOS prohibit. Counsel created an account in his name so his clients would *not* have to create one themselves. Further, whether Plaintiffs asked counsel—their agent—to do so is irrelevant because under California law, agents may "do everything necessary or proper and usual, in the ordinary course of business, for effecting the purpose of his agency." Cal. Civ. Code § 2319. Plaintiffs do not dispute that Osborn is their agent or that he took steps "necessary," "proper," and "usual" to pursuing this lawsuit. *Id.*

Finally, in a footnote and without citation to authority, Plaintiffs purport to "reserve the right to argue the arbitration clause is unenforceable" because "the TOS is a browser wrap agreement" and because "the clause is procedurally and substantively unconscionable." Resp. 3 n.3. Plaintiffs have waived these arguments. *See Holley v. Gilead Sci., Inc.*, 379 F. Supp. 3d 809, 834 (N.D. Cal. 2019) ("Arguments raised only in footnotes … are generally deemed waived." (citation omitted)). But regardless, they have no merit. First, as PeopleConnect showed in its Motion, the TOS is a clickwrap agreement, not a browser wrap agreement. *See* Mot. 3. Second, courts in this district regularly enforce such agreements. *Id.*

### B.      The TOS Delegate The Question Of Arbitrability.

Plaintiffs claim that the fact the TOS "delegate decisions on whether specific claims are arbitrable to an arbitrator" is "irrelevant" because their defense is that "Plaintiffs did not agree to and are not bound by the TOS." Resp. 4. Plaintiffs misunderstand PeopleConnect's argument. PeopleConnect has taken the uncontroversial position that issues of arbitrability—*i.e.,* whether a dispute falls within the arbitration agreement—must be decided by an arbitrator if, as here, the arbitration agreement contains a delegation provision. PeopleConnect does not dispute that this Court must first decide the issue of contract formation; rather, PeopleConnect argues that this Court should decide that question in the affirmative, and thus any other disputes over arbitrability are for the arbitrator to resolve. Mot. 5.

## II.      Plaintiffs' Claims Are Barred By Federal Law.

### A.      The Communications Decency Act Bars Plaintiffs' Claims.

In its Motion, PeopleConnect showed: (1) it is an interactive computer service provider, Mot. 7; (2) Plaintiffs' claims treat it as a "publisher or speaker" because they are premised on the republication and distribution of yearbooks, *id.* at 7-8; and (3) Plaintiffs' complaint faults it for publishing information from "another information content provider," as the complained-of information is copied from yearbooks

provided by others, *id.* at 8-9 (citation omitted). Plaintiffs dispute none of these points—despite the fact that they were the very reasons the court in *Ancestry.com* held that Section 230 bars Plaintiffs' claims based on the publication of yearbook information, which Plaintiffs address by asserting by fiat that *Ancestry.com* was wrongly decided. 2021 WL 783524, at *5-6.[1]

Instead, Plaintiffs argue that Section 230 does not apply because the yearbooks' authors did not intend for them to be placed online. Resp. 5-7. Plaintiffs rely almost entirely on *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003), but that reliance is misplaced. There, the plaintiff sent a private email to the defendant, not the email used to receive information for publication on his listserv, and the Ninth Circuit held that Section 230 immunity turned on "whether … a reasonable person in [the defendant's] position would conclude that the information was sent for internet publication." *Id*. at 1035. As the *en banc* Ninth Circuit later explained, the exception to Section 230 immunity *Batzel* recognizes applies only if a defendant "publishes material that he does not believe was tendered to him for posting online." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1171 (9th Cir. 2008) (*en banc*). Here, the plaintiffs admit in their complaint that donors of yearbooks to Classmates know that their yearbooks will be posted online. Compl. ¶ 60 ("there is a section of the Classmates website encouraging users to donate old yearbooks to Classmates" and "[a]t least some, and possibly all, of its Yearbook Collection was built via such donations"). Plaintiffs further concede that PeopleConnect had "the implied consent of the donor"—that is, the individual who submitted the yearbook to PeopleConnect—to publish yearbooks on the internet. *Id.* ¶ 61. Put simply, those who donate yearbooks to a website that presents yearbooks online know the yearbooks they donate will appear online. *See Batzel*, 333 F.3d at 1034 ("When a user sends a message to a bulletin board, it is obvious that by doing so, he or she will be publicly posting the message.").

To avoid this, Plaintiffs seeks to divert the Court's attention away from who actually *sent* the yearbooks to PeopleConnect and towards "[t]he authors who created and edited the yearbooks." Resp. 5. This is similar to the unsuccessful approach they took in *Ancestry.com*, where they argued "because Ancestry did not obtain the content from the author of the content," Section 230 did not apply. 2021 WL

---

[1] Plaintiffs do not dispute that they would be precluded from arguing against Section 230 immunity in this case if their essentially identical case against Ancestry.com becomes final, which will occur if the *Ancestry.com* court dismisses Plaintiffs' amended complaint. *See id.* at 6 n.5.

783524, at *6. The court rightly rejected that contention. *Id.* "[N]o case supports the conclusion that … immunity applies only if the website operator obtained the third-party content from the original author." *Id.* What matters is whether the "information content provider" who actually "*provided*" the "information" to PeopleConnect did so in a manner that would reasonably lead PeopleConnect to think the provider meant it to appear online. 47 U.S.C. § 230(c)(1) (emphasis added). That is demonstrated by *Caraccioli v. Facebook, Inc.*, where the Ninth Circuit immunized Facebook for refusing "to remove private images and videos of Caraccioli posted on Facebook's website by a third party." 700 F. App'x 588, 589-90 (9th Cir. 2017). In affirming that Section 230 barred counts including "false light, public disclosure of private facts" and "intrusion upon seclusion," the Ninth Circuit focused solely on the fact Facebook republished material provided by another party, giving no weight to the intent of the subject matter of those posts. *Id.* at 590.

Plaintiffs also assert that Section 230 does not apply because Classmates "actively select[s]" which information to display rather than acting as a "passive host of a forum." Resp. 7 (citation omitted). This argument improperly conflates *Batzel*'s interpretation of the word "provided" with the question of when a publisher becomes a developer that loses its Section 230 immunity. To the extent Plaintiffs are claiming that PeopleConnect lost its immunity by choosing what information to post, Ninth Circuit law forecloses this assertion. It does not matter whether PeopleConnect hosts these materials on Classmates.com "and then manually select[s] material to be removed from publication" or instead "manually select[s] material to be published—they are flip sides of precisely the same coin." *Roommates.com*, 521 F.3d at 1171 n.29.[2] The bottom line remains that the content is created by someone else, not PeopleConnect.

## B.   The Copyright Act Preempts All But One Of Plaintiffs' Claims.

PeopleConnect showed in its Motion that "[w]hen a copyrightable work is disseminated to the public and an individual allegedly suffers harm as a result, federal copyright law is the exclusive means of redress." Mot. 9. In response, Plaintiffs argue that "[w]hen a defendant does not hold copyright in a work, there is no preemption." Resp. 8. But there is no such rule. Indeed, the Ninth Circuit has rejected "that the

---

[2] In arguing that the yearbooks were not "provided" to PeopleConnect, Plaintiffs cite *FTC v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009). But that case addresses an entirely different issue—whether defendants' actions made them developers of the content provided. *Id.* at 1199 (holding Accusearch was developer because it "solicited requests for … confidential information and then paid researchers to obtain it," and "knew that its researchers were obtaining the information through fraud or other illegality").

right of publicity is preempted by the Copyright Act only when the distribution is made by the exclusive copyright holder" because "[w]hether a claim is preempted under Section 301 does not turn on what rights the alleged infringer possesses, but on whether the rights asserted by the plaintiff are equivalent to any of the exclusive rights within the general scope of the copyright." *Jules Jordan Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146, 1154-55 (9th Cir. 2010). Courts thus have held that the Copyright Act preemption applies regardless of whether the work at issue is copyrighted *at all*. *E.g. Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1124 (N.D. Cal. 2001) ("WebStash does not necessarily have to be actually protected by a specific copyright or even itself be copyrightable; it just has to be 'within the subject matter' of the Act."); *see also Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (explaining that preemption applies if "subject matter of the state law claim falls within the subject matter of copyright").

The only authority Plaintiffs cite, *KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362 (2000), is not to the contrary. The court there observed that whether the defendant owned the copyright may bear upon the second element of Copyright Act preemption—whether the rights asserted under the plaintiff's causes of action were within the "subject matter of copyright." *Id.* at 374. Of course, as PeopleConnect showed in its Motion, that element is satisfied regardless of who owns the copyright, as the rights Plaintiffs assert take issue with the display and reproduction of yearbooks and excerpts of yearbooks. Mot. 10 (citing *Maloney*, 853 F.3d at 1011). But the point is that *KNB Enterprises* does not set forth the categorical rule Plaintiffs now propose. And to the extent it does, the Ninth Circuit has rejected that aspect of this state court appellate decision because it is contrary to federal copyright law. *See Jules Jordan Video*, 617 F.3d at 1154 (rejecting reasoning of *KNB Enterprise* and holding that where "essence of a claim" is that defendant "reproduced and distributed" intellectual property "without authorization," right of publicity claim preempted).

Plaintiffs then argue that because their "right to publicity claims stem from the misuse of their likenesses," there is no preemption. Resp. 8-10. According to Plaintiffs, where a claim alleges that a defendant "us[es] the photograph as part of an advertising scheme, then the defendant does injury to the uncopyrightable likeness or persona, and there is no preemption." Resp. 9. As an initial matter, this scenario does not even arguably apply to Plaintiffs' claims aimed at the sale of reprinted yearbooks and online access to those yearbooks. And even where Plaintiffs' claims are aimed at the dissemination of yearbooks,

their claims are preempted because they are "seeking to use the right of publicity simply to prevent 'publication' of an artistic, visual work." *Maloney*, 853 F.3d at 1013.

As for Plaintiffs' advertising theory, as PeopleConnect demonstrated in its Motion, its use of yearbook excerpts containing Plaintiffs' likenesses are not advertisements. Mot. 12-15. But even if the uses of yearbook excerpts that Plaintiffs challenge were advertisements, they are for access to Plaintiffs' own yearbook pictures—not products unrelated to Plaintiffs. That distinguishes this case from the one case Plaintiffs cite in which a claim of preemption was rejected, *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001). As the Ninth Circuit has explained, in *Downing*, "it was 'not the publication of the photograph itself, as a creative work of authorship,' that formed the basis of the publicity-right claim. Instead, it was the unauthorized 'use of the plaintiffs' likenesses' to advertise Abercrombie products, and the creation of 't-shirts, exactly like those worn by the plaintiffs in the photograph, for sale' in Abercrombie's catalog. The plaintiffs sustained injury to their individual 'personas' because their likenesses were exploited commercially without their consent." *Maloney*, 853 F.3d at 1013-14 (citations omitted). This rule makes sense. When a defendant uses a photograph of the plaintiff to promote a product with no relationship to the plaintiff, the essence of the claim is that the defendant is profiting from the person's likeness. But when a defendant uses a plaintiff's photograph to promote the sale of that same photograph, the point of the claim is that the defendant is profiting from the copyrighted photograph itself. *See id.* Here, Plaintiffs do not question that the yearbook excerpts used in what they erroneously call advertisements come from the same yearbooks featuring Plaintiffs that the excerpts purportedly promote.

**III.    Plaintiffs Have Not Adequately Pleaded Any Of Their Causes Of Action.**

    **A.    Plaintiffs Failed To State A Claim Under The California Right Of Publicity Law.**

        **1.    Plaintiffs Have Not Pleaded An Actionable Injury Under § 3344.**

Plaintiffs argue that the mere allegation of a commercial misappropriation of their name, photographs and likeness suffices to establish an actionable injury under California Civil Code § 3344. Resp. 10. But courts have consistently rejected that position. *See, e.g.*, *In re Google, Inc., Privacy Pol'y Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *5 & n.37 (N.D. Cal. Dec. 3, 2013) ("[A] plaintiff must do more that point to the dollars in a defendant's pocket; he must sufficient[ly] allege that in the process he lost dollars of his own."). Plaintiffs then claim to have suffered an actual injury because they

allege invasion of a "legally protected privacy right." Resp. 10. But that too is not enough, as courts have recognized that § 3344 requires proof of a specific injury beyond a statutory violation. *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) ("Resulting injury is the *sine qua non* of a cause of action for misappropriation of name.") (quoting *Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799, 807 (1990)); Cal. Civ. Code § 3344(a) (imposing liability where "persons [are] injured as a result").[3]

As PeopleConnect has explained, Mot. 12, § 3344 requires non-celebrity plaintiffs who seek to recover actual damages based on an economic injury to allege "how the mere disclosure" of information "causes them any cognizable harm." *Cohen*, 798 F. Supp. 2d at 1097. This requires pleading facts showing that the plaintiff's likeness has economic value. *Id.* Plaintiffs take the position that they need not make such any such showing, citing *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011). Resp. 10-11. But in *Fraley*, the court distinguished *Cohen* because the plaintiffs in *Cohen* "were unable to show that their names and likenesses had any general commercial value—and in fact plaintiffs denied that they were required to make such a showing." 830 F. Supp. 2d at 800. So it was specifically because the plaintiffs in *Fraley* had "alleged facts showing that their personal endorsement has concrete, measurable, and provable value" that *Farley* progressed beyond a motion to dismiss. Here, like the plaintiffs in *Cohen*, Plaintiffs have made no effort to show that their likenesses have any marketable value. For that reason, under *Cohen* and *Fraley* alike, Plaintiffs have failed to state an actionable claim under § 3344.

Plaintiffs also seek statutory damages. But as the court held in *Perkins v. LinkedIn Corp.*, to plead a claim for statutory damages, a plaintiff must plausibly allege mental anguish. 53 F. Supp. 3d 1222, 1242-46 (N.D. Cal. 2014). Because Plaintiffs have not done so, their claim for statutory damages fails. Plaintiffs claim that *Perkins* holds that under *Fraley* no such allegation is required if a plaintiff also seeks actual damages. *See* Resp. 13. But *Perkins* is clear—it agreed that § 3344's "statutory damages provision applies

---

[3] Plaintiffs cite a string of cases for the proposition that § 3344 confers a substantive right for which a violation alone establishes standing, none of which involve § 3344, but instead different—and distinguishable—statutes. *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1273 (9th Cir. 2019) (Illinois Biometric Information Privacy Act (BIPA) case); *but see Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1242-43 (7th Cir. 2021) (holding that a bare statutory violation of BIPA did not create an injury-in-fact); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018) (dismissing California Computer Data Access and Fraud Act (CDAFA) claim for failure to allege economic harm); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (Telephone Consumer Protection Act (TCPA) claim).

only to claims for mental harm," regardless of what is alleged with respect to a claim for actual damages. 53 F. Supp. 3d at 1242 (quotation omitted).

In sum, because Plaintiffs have not plausibly pleaded either that their likeness has concrete economic value or that they have suffered mental anguish, they have not pleaded a § 3344 injury.

### 2.     Plaintiffs Have Not Plausibly Stated A Claim For Unlawful Advertising.

PeopleConnect has shown that Plaintiffs have not plausibly alleged that PeopleConnect used their names, photographs and likenesses to advertise or solicit purchases. Mot. 12-13. Plaintiffs twist this point to argue that PeopleConnect is engrafting an "endorsement" element onto the statute. Resp. 14. But PeopleConnect does not suggest that endorsement is required for each type of § 3344 claim. Rather, where a § 3344 claim contests use of a likeness in advertising or solicitation, it "does not violate the right to publicity of a person appearing in the advertising, unless the advertisement implies that the person is endorsing the publication." *Local TV, LLC v. Superior Ct.*, 3 Cal. App. 5th 1, 9 (2016) (citations omitted). That is why Plaintiffs' specific advertising theory fails under California law.

### 3.     The "Public Affairs" Exception Applies.

Plaintiffs make two arguments to avoid § 3344's exception for use of names, photographs, or likenesses "in connection with any news [or] public affairs." Cal. Civ. Code § 3344(d). Both are misguided.

*First*, Plaintiffs argue that their information is not subject to § 3344(d) because they are not "public figures" and were not otherwise "involve[d] in an inherently newsworthy event." Resp. 15-16. That misstates the scope of § 3344(d), as even the lone authority they cite makes clear. In *Shulman v. Group W Productions, Inc.*, the California Supreme Court explained that "newsworthiness is not limited to 'news' in the narrow sense of reports of current events. 'It extends also to the use of names, likenesses or facts … for purposes of education, amusement or enlightenment,'" so long as "some reasonable members of the community could entertain a legitimate interest in it." 18 Cal. 4th 200, 225 (1998) (citation omitted); *see also Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 539-40, 546 (1993) (public affairs exception applies to information conveying "real life occurrence[]" that is "of more than passing interest to some"). As PeopleConnect explained in its Motion—and Plaintiffs make no effort to rebut—the presentation of yearbooks on a website fits comfortably within that description of the scope of § 3344(d). Mot. 13-15.

*Second*, Plaintiffs argue that § 3344(d) cannot apply "because Classmates used plaintiffs' likenesses for the commercial purpose of selling." Resp. 16. But as PeopleConnect explained in its Motion, § 3344(d) exempts the use of a person's name or image in products or advertising if those uses were "merely an adjunct of the use" of those likenesses "in the yearbooks themselves." Mot. 14. This means advertisements are actionable only if "the plaintiff's identity is used, without consent, to promote an *unrelated* product." *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 413-414 (2001) (collecting cases). Neither of the cases Plaintiffs cite are to the contrary. In *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 416 (9th Cir. 1996), the Ninth Circuit held that § 3344(d) was "irrelevant" because the use (a car advertisement) bore no relationship to the newsworthiness of plaintiff's basketball career. In *Fraley*, the court held that though plaintiffs' underlying actions (liking certain products on Facebook) *were* newsworthy, Facebook's use of those "likes" to create new advertisements suggesting that plaintiffs endorsed products they did not and that had nothing to do with the plaintiffs was too far afield from the public interest in the plaintiffs' "likes." 830 F. Supp. 2d at 805. So neither case recognizes a *per se* carve out for commercial activity.[4]

In contrast to the cases Plaintiffs cite, the so-called advertisements at issue here are simply excerpts from Plaintiffs' yearbooks that are available on Classmates.com and for reprint. Indeed, when a user searches for a name on the Classmates.com website, what is returned is a list of the yearbooks included in the online library where the person searched appears. Using the yearbook excerpts for this informational purpose regarding the contents of the online library is not the sort of commercial use that falls outside the scope of that § 3344(d), just as Amazon.com providing a list of relevant books in response to a search for the name "Joe Montana" is not a commercial use of Mr. Montana's likeness.

### B.    Plaintiffs Fail To State A California Unfair Competition Law Claim.

Plaintiffs do not deny that they have not pleaded an unfair practice independent of their § 3344 theory, nor do they dispute that the UCL requires them to plead the loss of money or property. *See* Mot. at 15-17. They only argue that they have pled monetary loss, relying solely on *Simpson Strong-Tie Co. v. MiTek Inc.*, No. 20-cv-06957, 2021 WL 1253803, at *5 (N.D. Cal. Apr. 5, 2021). But that case does not

---

[4] Plaintiffs also rely on *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746 (N.D. Ill. 2020), Resp. 16, but that case was resolved under a different exception under a different State's right of publicity statute.

help them. In *Simpson*, the plaintiff alleged he lost sales due to the defendant's alleged misuse of the plaintiff's product names. *Id.* at *6. Here, Plaintiffs make no analogous allegations of lost money or property—they offer only speculative and conclusory allegations that the use of the yearbook excerpts caused them to lose "potential" income. Resp. 17. As PeopleConnect explained in its Motion, such unexplained and implausible assertions do not suffice. Mot. 15-16; *see Cohen*, 798 F. Supp. 2d at 1098.

### C.    Plaintiffs Fail To State An Intrusion On Seclusion Claim.

People Connect explained in its Motion that this case simply does not involve allegations of the sort of "truly egregious conduct" that the intrusion on seclusion tort prohibits. Mot. 18. Plaintiffs have not come close to showing otherwise. Plaintiffs rely entirely on *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767 (N.D. Cal. 2019). But that case does nothing to further their cause.

Plaintiffs read *Facebook* to mean they have "a reasonable expectation of privacy in the photographs and biographical information" regardless of use. Resp. 17. But the information shared widely in *Facebook* was "meant only for a" small group of Facebook "friends." *Id.* at 782-83. Indeed, the court drew a distinction to a user "whose settings allow information to be shared not only with friends, but friends of friends," and thus "loses any expectation of privacy." *Id.* at 783 n.3. Yearbooks are not analogous to private messages on Facebook in which a user can limit who can view their information. Plaintiffs certainly could not restrict distribution of their yearbooks once published. Plaintiffs also cite *Facebook* to assert that PeopleConnect's "conduct is highly offensive." Resp. 18. But unlike the "photographs, videos … religious preferences, posts, and … private one-on-one messages" Facebook users "intended to share only with a limited audience," Plaintiffs' yearbooks are public apart from their inclusion in the database. Plaintiffs sat for their yearbook photos and knew the photos would be published in yearbooks that would be widely distributed—their consent obviates any "intrusion," let alone a "highly offensive" one. And while Plaintiffs seek to cast this as "highly offensive" because it is now online, there is no authority for the notion that the dissemination of non-sensitive personal information is offensive because it occurs on the internet.[5]

---

[5] Plaintiffs do not respond to the fact that they cannot assert an objectively reasonable expectation of privacy in the actual data found in their yearbooks, which included "basic facts" such as "age, address, and the like." *See Facebook*, 402 F. Supp. 3d at 776; *see also* Mot. 17-18. As PeopleConnect noted in its Motion, Plaintiffs' yearbooks are available in their hometown libraries. Mot. 1 n.1 & 2 n.2.

---

### D. Plaintiffs' Unjust Enrichment Claim Fails.

In response to PeopleConnect's showing why Plaintiffs have failed to state a standalone claim for unjust enrichment, Mot. 18-19, Plaintiffs offer a one-sentence conclusory declaration that they "have properly asserted a standalone unjust enrichment claim." Resp. 18. Both of the cases Plaintiffs cite, however, support PeopleConnect. Both recognize that some California courts have allowed standalone unjust enrichment claims only when they are a "quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation omitted); *see also ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (same). Here, because Plaintiffs fail to allege that PeopleConnect was "'unjustly conferred a benefit through mistake, fraud, coercion or request,'" they do not fit within the narrow set of circumstances where a standalone restitution-like claim is available. *Avakian v. Wells Fargo Bank, N.A.*, 827 F. App'x 765, 766 (9th Cir. 2020) (quoting *Astiana*, 783 F.3d at 762).

## IV. PeopleConnect's Alleged Conduct Is Protected By The First Amendment.

Plaintiffs' primary response to PeopleConnect's First Amendment argument is that the scrutiny traditionally used to evaluate First Amendment claims does not apply to right of publicity claims. Resp. 18-20. Plaintiffs are wrong. In *Sarver v. Chartier*, the Ninth Circuit applied strict scrutiny, rejecting a California right of publicity claim brought by private plaintiffs. 813 F.3d 891, 903-04 (9th Cir. 2016).[6] The *Sarver* court held that the California right of publicity law could not constitutionally be applied to the defendants' conduct because (1) the speech at issue was not "commercial speech"; and (2) the plaintiff did not "show a compelling state interest in preventing the defendants' speech." *Id.* at 905-06.

Plaintiffs try to avoid the appropriate legal standard because they have no response to any of PeopleConnect's fundamental points. They do not claim PeopleConnect's alleged conduct constitutes commercial speech. *See Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748,

---

[6] The fact that PeopleConnect's constitutionally protected conduct is the subject of a private suit as opposed to "direct government regulation of speech by law or ordinance," Resp. 20, is a distinction without a difference. *See, e.g.*, *Hoffman v. Cap. Cities/ABC, Inc.*, 255 F.3d 1180, 1186 (9th Cir. 2001) (holding that First Amendment barred right of publicity claim by private plaintiff because speech was "entitled to the full First Amendment protection accorded noncommercial speech"); *Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 442 (S.D.N.Y. 2014) ("[T]he Supreme Court has long made clear that the First Amendment's protections extend to private suits for money damages based on the content of speech.").

762 (1976). Nor do they argue that applying California's right of publicity law to PeopleConnect's conduct can satisfy any government interest—let alone a "compelling" one. *Sarver*, 813 F.3d at 903.

Instead, Plaintiffs ask the Court to ignore this well-settled law and instead "balance" PeopleConnect's First Amendment rights against Plaintiffs' statutory interests. Resp. 18-20. But even if there were merit to this approach, it would support PeopleConnect, not Plaintiffs. PeopleConnect's dissemination of yearbook records is quintessential First Amendment speech. Yearbooks serve both "informative [and] cultural" purposes protected by the First Amendment. *See New Kids on the Block v. News Am. Publ'g, Inc.*, 745 F. Supp. 1540, 1546 (C.D. Cal. 1990), *aff'd*, 971 F.2d 302 (9th Cir. 1992); *Kincaid v. Gibson*, 236 F.3d 342, 351 (6th Cir. 2001). And they allow for the "dissemination of information" among the general public and school communities—which likewise is core protected speech. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011).[7] On the other side of the scale, Plaintiffs' right of publicity interest in their names and photos appearing in yearbooks is, at most, negligible. As discussed above, Plaintiffs have not alleged that their names and likenesses have any independent economic value, they have not alleged to have suffered any mental anguish, and they have not alleged that PeopleConnect "exploited the economic value of any performance or persona [they] had worked to develop." *Sarver*, 813 F.3d at 904-05. Balanced against one another, Plaintiffs' minimal interest in preventing further dissemination of their yearbooks is easily outweighed by PeopleConnect's First Amendment interests.

## V.    Plaintiffs' Claims Are Barred By California's Anti-SLAPP Statute.

Plaintiffs contend that their lawsuit falls within the California anti-SLAPP statute's exception for actions brought "solely in the public interest or on behalf of the general public" under Section 425.17(b). Resp. 21. Section 425.17(b), however, applies only where a plaintiff (1) "does not seek any relief greater than or different from the relief sought for the general public or a class"; (2) the action "would enforce an important right affecting the public interest, and would confer a significant benefit … on the general public

---

[7] Plaintiffs suggest that First Amendment rights can outweigh right of publicity claims in "two situations"—"matters in the public interest" and where "a work contains significant transformative elements." Resp. 19. But these are exceptions to right-of-publicity claims recognized by California law, and courts have not suggested that the First Amendment is so limited. *E.g.*, *Sarver*, 813 F.3d at 904 & n.6 (conducting First Amendment analysis without regard to these exceptions). In any event, Plaintiffs' claims are based on matters in the public interest. *See infra* at § V.

or a large class of persons"; and (3) "[p]rivate enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter." Cal. Civ. P. Code § 425.17(b). The exception is "narrowly construed." *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 22 (2010). None of its elements are satisfied here.

*First*, the exception does not apply when "a litigant seek[s] '*any*' personal relief" in the action. *Club Members for an Honest Election v. Sierra Club*, 45 Cal. 4th 309, 317 (2008). Here, Plaintiffs seek actual damages, statutory damages, and restitution, all of which benefit Plaintiffs—not the public at large. *See Blackburn v. ABC Legal Servs., Inc.*, No. C 11-01298, 2011 WL 8609453, at *3 (N.D. Cal. June 16, 2011) ("Plaintiff seeks an award of actual damages … Because Plaintiff seeks relief to directly benefit herself, the Section 425.17(b) exception is inapplicable."); *Barker v. Avila*, No. 2:09-cv-00001, 2009 WL 10691367, at *2-3 (E.D. Cal. Nov. 19, 2009) (holding that plaintiff seeking "statutory damages" and "restitution" fell outside scope of Section 425.17(b)).

*Second*, the exception "do[es] not apply to" (1) "any person engaged in the dissemination of ideas or expression in any book … while engaged in the gathering, receiving, or processing of information for communication to the public" or (2) "[a]ny action … based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of any dramatic, literary, musical, political, or artistic work." Cal. Civ. P. Code § 425.17(d)(1)-(2). Plaintiffs' claims are based on the dissemination and sale of reprinted and online yearbooks and excerpts thereof, which fall within the scope of both of these categories. *See Stutzman v. Armstrong*, No. 2:13-CV-116, 2013 WL 4853333, at *9 (E.D. Cal. Sept. 10, 2013) (dissemination of books falls within scope of Section 425.17(d) and outside scope of Section 425.17(b)).

Plaintiffs further contend that California's anti-SLAPP statute does not apply because the speech at issue is not "about an issue of public concern" Resp. at 22. *First*, they claim the yearbooks do not "concern a substantial number of people." *Id.* But school alumni communities well exceed the size of communities that California courts have found sufficient to have a public interest. *See, e.g.*, *Ruiz v. Harbor View Cmty. Ass'n*, 134 Cal. App. 4th 1456, 1468-69 (2005) (residents of 523 lots); *Grenier v. Taylor*, 234 Cal. App. 4th 471, 482-83 (2015) (550 to 1,000 church members); *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000) (3,000 homeowners' association members). *Second*, Plaintiffs claim PeopleConnect is attempting to "convert private information" into a matter of public interesting by

"communicating it to a large number of people." Resp. 22. But yearbooks consist of public information that is of interest to "a large number of people"—including school communities, historians, archivists, journalists, genealogists, and others—regardless of whether PeopleConnect sells reprinted or online versions of those yearbooks.  *Third*, Plaintiffs claim that PeopleConnect's speech cannot be in the public interest because its purpose "is simply to sell subscriptions and reprints." Resp. 22. But as Plaintiffs' case acknowledges, "[c]ommercial speech that involves a matter of public interest … may be protected by the anti-SLAPP statute." *L.A. Taxi Coop., Inc. v. The Indep. Taxi Owners Ass'n of L.A.*, 239 Cal. App. 4th 918, 927 (2015); *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1116 (N.D. Cal. 2017) (noting that reach of California's anti-SLAPP is "broader than the scope of constitutionally protected speech"). Moreover, Plaintiffs' claim is belied by their allegation that PeopleConnect violated the law by using their identities in reprinted and online yearbooks themselves (*e.g.*, Compl. ¶ 9), not just in so-called "advertisements." Mot. 12-13.[8]

## CONCLUSION

For the foregoing reasons and those in the Motion, the Complaint should be dismissed and Plaintiffs compelled to adjudicate their claims in arbitration. In the alternative, the Complaint should be dismissed for failure to state a claim upon which relief can be granted. In addition, the Court should grant PeopleConnect's motion to strike the Complaint pursuant to California Code of Civil Procedure § 425.16.

Dated: April 23, 2021

Respectfully submitted,

JENNER & BLOCK LLP

By:    /s/ *Kate T. Spelman*
Kate T. Spelman
Debbie L. Berman
Wade A. Thomson

Attorneys for Defendant PeopleConnect, Inc.

---

[8] Plaintiffs' cite the Court's decision in their case against *Ancestry.com* dismissing their claims but denying Ancestry's anti-SLAPP motion. 2021 WL 783524, at *7. Respectfully, the *Ancestry.com* court erred on this point, as yearbooks serve an important function in allowing school communities to memorialize our collective school experiences and even relive them years later.