UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEREDITH CALLAHAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PEOPLECONNECT, INC.,<br><br>Defendant. | Case No. 20-cv-09203-EMC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Docket No. 26 |

Plaintiffs Meredith Callahan and Lawrence Geoffrey Abraham have filed a class action against Defendant PeopleConnect, Inc.[1] According to Plaintiffs, PeopleConnect misappropriated Plaintiffs' names, photographs, and likenesses and used the same in advertising its products and services, "including reprinted yearbooks and subscription memberships to the website Classmates.com." Compl. ¶ 2. Currently pending before the Court is PeopleConnect's motion to compel arbitration.[2] Having considered the parties' briefs and accompanying submissions, the Court hereby **DENIES** the motion.

**I.   FACTUAL & PROCEDURAL BACKGROUND**

In their complaint, Plaintiffs allege as follows.

PeopleConnect is a company that collects yearbooks, scans the yearbooks, and extracts

---

[1] Plaintiffs initially sued three affiliated entities but, subsequently, they voluntarily dismissed two of the companies, thus leaving PeopleConnect as the sole defendant.

[2] The motion to compel arbitration is actually a part of a broader motion to dismiss and strike. *See* Docket No. 26 (motion to dismiss and strike). The Court informed the parties that it intended to sequence the issues so that it would address first the motion to compel arbitration and then, if necessary, the remainder of the motion to dismiss/strike, as well as a separate motion to stay. *See* Docket No. 28 (motion to stay).

information from the yearbooks (such as names, photographs, schools attended, and so forth) to be put into a database. *See* Compl. ¶ 53; *see also* Compl. ¶ 54 (alleging that "Classmates' Yearbook Collection contains records copied from over 400 thousand yearbooks"). Through a website that it owns and operates – Classmates.com – PeopleConnect "provides free access to some of the personal information in its database in order to [1] drive users to purchase its two paid products . . . and [2] gather registered users, from whom [they] profit by selling targeted ads." Compl. ¶ 3. PeopleConnect's two paid products are (1) "reprinted yearbooks that retail for up to $99.95, and [(2)] a monthly subscription to Classmates.com that retails for up to $3 per month. Compl. ¶ 3. PeopleConnect "did not ask consent from, give[] notice to, or provide compensation to [individuals] before using their names, photographs, and biographical information." Compl. ¶ 55.

"By misappropriating and misusing millions of Californian's names, photographs, and likenesses without consent, [PeopleConnect] has harmed Plaintiffs and the class by denying them the economic value of their likenesses, violating their legally protected rights to exclusive use of their likenesses, and violating their right to seclusion. [PeopleConnect] has also earned ill-gotten profits and been unjustly enriched." Compl. ¶ 10.

Plaintiffs have asserted the following claim for relief:

(1) Violation of California Civil Code § 3344 (*i.e.*, the right of publicity). *See* Cal. Civ. Code § 3344(a) (providing that "[a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable").

(2) Violation of California Business & Professions Code § 17200 (both the unlawful and unfair prongs).

(3) Intrusion upon seclusion.

(4) Unjust enrichment.

///

///

2

## II.     DISCUSSION

In the case at bar, PeopleConnect argues that the dispute should be compelled to arbitration[3] because, in investigating Plaintiffs' case, Plaintiffs' counsel – *i.e.*, their agent –

(1) used the Classmates.com website and thus became bound by the Terms of Service ("TOS") which include an arbitration provision, *see* McGuane Decl. ¶ 5 (testifying that "[t]he TOS is accessible to each user of Classmates.com via a hyperlink in the website's persistent footer and on the non-registered user homepage"), and

(2) registered for two accounts on Classmates.com and, to create these accounts, had to agree to the TOS. *See* McGuane Decl. ¶¶ 12-14 (testifying that counsel created two accounts on December 6, 2020 – about two weeks before filing the instant lawsuit – using the user names "John Doe" and "John Smith")[4]; McGuane Decl. ¶ 6 (testifying that, when a person registers for an account, "he or she sees the following screen which includes the following: "By clicking Submit, you agree to the Terms of Service and Privacy Policy" and "[t]he phrase 'Terms of Service' is hyperlinked to a copy of the current TOS"); McGuane Decl. ¶ 16 (testifying that certain screenshots in Plaintiffs' complaint "could only have been accessed after the [website] user agreed to the Classmates.com TOS").

The TOS are attached as Exhibit 1 to the McGuane Declaration. On the first page of the TOS, there is a section titled "Introduction" and then a section titled "Acceptance of Terms." The Acceptance of Terms includes the following:

> By accessing and using the Websites and Services you are agreeing to the following Terms of Service. We encourage you to review these Terms of Service, along with the Privacy Policy, which is incorporated herein by reference, as they form a binding agreement between us and you. If you object to anything in the Terms of Service or the Privacy Policy, do not use the Websites and Services.
>
> **USE OF THE WEBSITES AND/OR SERVICES REQUIRE**

---

[3] PeopleConnect asserts that the Federal Arbitration Act ("FAA") governs the instant case; Plaintiffs do not make any argument to the contrary.

[4] Ms. McGuane also testifies that counsel created an account on Classmates.com back on August 25, 2019. *See* McGuane Decl. ¶ 12.

3

> **YOU TO ARBITRATE ALL DISPUTES ON AN INDIVIDUAL BASIS, RATHER THAN JURY TRIALS OR CLASS ACTIONS, AND ALSO LIMITS THE REMEDIES AVAILABLE TO YOU IN THE EVENT OF A DISPUTE (SEE SECTION 13 BELOW).**

McGuane Decl., Ex. 1 (emphasis in original).

As indicated above, § 13 (out of 14) addresses "Mandatory Arbitration, Dispute Resolution and Class Action Waiver." (The TOS has a section titled "Index of Provisions" right after the Acceptance of Terms, which lists the 14 different sections that follow.) Section 13 provides in relevant part as follows:

> **PLEASE READ THIS SECTION CAREFULLY – IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT. YOU AND THE PEOPLECONNECT ENTITIES EACH AGREE THAT ANY AND ALL DISPUTES THAT HAVE ARISEN OR MAY ARISE BETWEEN YOU AND THE PEOPLECONNECT ENTITIES SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT, EXCEPT THAT YOU MAY ASSERT CLAIMS IN SMALL CLAIMS COURT, IF YOUR CLAIMS QUALIFY.**
>
> You and PeopleConnect and/or its parent companies, subsidiaries, affiliates, and/or any and all of their respective directors, officers, employees and contractors (each a "PeopleConnect Entity" and, together, the "PeopleConnect Entities") agree to arbitrate any and all disputes and claims between them ("Dispute(s)"), except as otherwise specifically provided below. . . .
>
> This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to: (1) Disputes related in any way to the Services, billing, privacy, advertising or our communications with you; (2) Disputes arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; (3) Disputes that arose before your agreement to these Terms of Services or any prior agreement; (4) Disputes that are currently the subject of purported class action litigation in which you are not a member of a certified class; and (5) Disputes that may arise after the termination of your use of the Services.
>
> . . . .
>
> **B.     MANDATORY AND BINDING ARBITRATION PROCEDURES**
>
> **YOU UNDERSTAND THAT BY THIS PROVISION, YOU AND THE PEOPLECONNECT ENTITIES ARE FOREGOING THE RIGHT TO SUE IN COURT AND HAVE A JURY**

**TRIAL. THE FEDERAL ARBITRATION ACT GOVERNS THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT TO ARBITRATE.**

    i. Rules. The arbitration will be governed by the Consumer Arbitration Rules of the American Arbitration Association ("AAA"), if applicable, as modified by this section. The AAA's rules and a form for initiating the proceeding are available at www.adr.org or by calling the AAA at 800.778.7879. The arbitration will be presided over by a single arbitrator selected in accordance with the AAA rules.

    ii. Unless otherwise required by the AAA rules, the arbitration shall be held in Seattle, Washington. . . .

. . . .

**C.     CLASS ACTION WAIVER.**

**ANY PROCEEDINGS WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION. NEITHER PARTY SHALL BE A MEMBER IN A CLASS, CONSOLIDATED, OR REPRESENTATIVE ACTION OR PROCEEDING, AND THE ARBITRATOR MAY AWARD RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT PARTY'S INDIVIDUAL DISPUTE OR CLAIM. UNLESS THE PARTIES AGREE OTHERWISE, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S DISPUTES, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. THE PEOPLECONNECT ENTITIES DO NOT CONSENT TO CLASS ARBITRATION. THE PARTIES HEREBY WAIVE ANY RIGHT TO A JURY TRIAL.**

**D.     ARBITRATION OPT-OUT.** You have the right to opt-out and not be bound by this arbitration provision by sending written notice of your decision to opt-out to: PeopleConnect Arbitration Opt-Out, 1501 Fourth Avenue, Suite 400, Seattle, WA 98101. This notice must be sent within thirty (30) days of your first use of the Services or, if you are already a user of the Services upon initial release of this arbitration provision, within thirty (30) days of our email notice to you of that initial release.

The opt-out notice must state that you do not agree to this agreement to arbitrate and must include your name, address, phone number and email address(es) used to register with or use the Services. You must sign the opt-out notice for it be effective. Any opt-out not received within the applicable thirty (30) day period set forth above will not be valid.

If you opt-out of the agreement to arbitrate, you and the PeopleConnect Entities agree that any Disputes will be resolved by a state or federal court located in King County, Washington, and you

> consent to the jurisdiction and venue of such court.
>
> **E.     SMALL CLAIMS.** You may choose to pursue your Dispute in small claims court (rather than arbitration) where jurisdiction and venue over the applicable PeopleConnect Entity and you are proper, and where your claim does not include a request for any type of equitable relief, and so long as the matter advances on an individual (non-class) basis.

McGuane Decl., Ex. 1.

A. <u>Who Decides Motion to Compel Arbitration:  Court or Arbitrator</u>

As an initial matter, the Court must consider whether it or an arbitrator should decide the issues raised in PeopleConnect's motion to compel arbitration.  The Court is required to decide at least part of the motion.  Specifically, one of the issues raised in the motion is whether a principal who does not enter into an arbitration agreement himself or herself – *i.e.*, a nonsignatory to the agreement – can still be compelled to arbitrate if an agent of the principal (such as an attorney) was a signatory to the arbitration agreement.  This is a contract formation issue and, as such, should be decided by the Court.  *See Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979 (9th Cir. 2017) (stating that, "[a]lthough challenges to the validity of a contract with an arbitration clause are to be decided by the arbitrator [based on a delegation clause], challenges to the very existence of the contract are, in general, properly directed to the court"); *see also Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126-27 (9th Cir. 2013) (in addressing whether a nonsignatory to certain purchase agreements could compel plaintiffs to arbitrate, stating that "whether parties have agreed to submi[t] a particular dispute to arbitration is typically an issue for judicial determination" and that, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide") (internal quotation marks omitted).  PeopleConnect agrees that contract formation is a decision for this Court to address.  *See* Reply at 3.

B. <u>Nonsignatory-Principal and Signatory-Agent</u>

A nonsignatory-principal can be compelled to arbitrate based on the agreement to arbitrate made by a signatory-agent, but

> [n]ot every agency relationship . . . will bind a nonsignatory to an arbitration agreement.  "Every California case finding nonsignatories to be bound to arbitrate is based on facts that demonstrate, in one way or another, the signatory's implicit authority to act on behalf of the nonsignatory."  Courts also have stated that

6

> the agency relationship between the nonsignatory and the signatory must make it "'equitable to compel the nonsignatory'" to arbitrate.

*Cohen v. TNP 2008 Participating Notes Program*, LLC, 31 Cal. App. 5th 840, 859-60 (2019); *see also id.* at 861 (noting that the issue of "whether an arbitration agreement signed by an agent also binds the agent's nonsignatory principal[] is less commonly litigated").

In the instant case, there is no real dispute that Plaintiffs' counsel is, in fact, their agent. However, the scope of counsel's authority is contested – *i.e.*, did counsel have the authority to enter into the arbitration agreement on Plaintiffs' behalf? It is PeopleConnect's burden to prove the scope of counsel's authority. *See Inglewood Teachers Ass'n v. Pub. Emp't Relations Bd.*, 227 Cal. App. 3d 767, 780 (1991).

Although the extent of an agent's authority is often a question of fact, *see id.*, the California Supreme Court has addressed the specific issue of when a lawyer, as agent, can bind a client to an arbitration agreement – *i.e.*, waive the right to a judicial forum. *See Blanton v. Womancare, Inc.*, 38 Cal. 3d 396 (1985). In *Blanton*, the California Supreme Court indicated that, if the lawyer had *express* actual authority to enter into an arbitration agreement, then the client would be bound. The Court also indicated that, if the lawyer entered into an arbitration agreement without authorization, but the client subsequently *ratified* the act, the client would be bound as well. *See id.* at 403.

This left the Court with the question of whether a lawyer has *implied* actual authority or *apparent* authority to enter into an arbitration agreement. Regarding actions taken by a lawyer with respect to representation in connection with litigation, the lawyer has apparent authority "to do that which attorneys are normally authorized to do in the course of litigation manifested by the client's act of hiring an attorney." *Id.* at 404. Also, a lawyer has implied actual authority on certain procedural matters (efficiency driven) and tactical decisions (such as whether to call particular witness) that are a "necessary incident to the function he is engaged to perform." *Id.* But an attorney is not authorized,

> merely by virtue of his retention in litigation, to "impair the client's substantial rights or the cause of action itself." For example, "the law is well settled that an attorney must be specifically authorized to settle and compromise a claim, that merely on the basis of his employment he has no implied or ostensible authority to bind his

7

>client to a compromise settlement of pending litigation." Similarly, an attorney may not "stipulate to a matter which would eliminate an essential defense. He may not agree to the entry of a default judgment, may not . . . stipulate that only nominal damages may be awarded and he cannot agree to an increase in the amount of the judgment against his client. Likewise, an attorney is without authority to waive findings so that no appeal can be made . . . ." Such decisions differ from the routine and tactical decisions which have been called "procedural" both in the degree to which they affect the client's interest, and in the degree to which they involve matters of judgment which extend beyond technical competence so that any client would be expected to share in the making of them.

*Id.* at 404-05; *cf. New York v. Hill*, 528 U.S. 110, 114 (2000) (indicating that "[w]hat suffices for waiver depends on the nature of the right at issue" and that, "[f]or certain fundamental rights, the defendant must personally make an informed waiver") (emphasis added); *Winters v. Cook*, 489 F.2d 174, 179 (5th Cir. 1973) (noting that personal fundamental rights that can be waived by a defendant only and not waived by an attorney include the right to plead guilty, the right to waive trial by jury, the right to waive appellate review, and the right to testify personally).

The *Blanton* Court went on to recognize that a client has substantial rights where the issue is whether the client waives a judicial forum in favor of binding arbitration. *See Blanton*, 38 Cal. 3d at 407 (noting that binding arbitration "entail[ed] a waiver of all but minimal judicial review"; adding that the arbitration provision at issue also had other significant terms – *e.g.*, "unilateral selection of the arbitrator by the defendant's attorney, from among attorneys whose practice consists primarily in defending medical malpractice actions" and "waive[r] [of] any right to recovery beyond $ 15,000"). Thus, "'[a]bsent express authority, it is established that an attorney does not have *implied* plenary authority to enter into contracts on behalf of his client.'" *Id.* at 407 (emphasis added).

>[S]imilarly, an attorney, merely by virtue of his employment as such, has no *apparent* authority to bind his client to an agreement for arbitration. We find no reason in logic, or policy, for holding his apparent authority in that respect is enlarged by reason of the fact that he has been retained to engage in litigation. When a client engages an attorney to litigate in a judicial forum, the client has a right to be consulted, and his consent obtained, before the dispute is shifted to another, and quite different, forum, particularly where the transfer entails the sort of substantial consequences present here.

*Id.* at 407-08 (emphasis added).

In short, absent client consent or ratification, a lawyer cannot bind a client to an arbitration

8

agreement by virtue of the attorney-client relationship alone. *Blanton* is binding on this Court because the issue of whether a lawyer (signatory-agent) can bind a client (nonsignatory-principal) to an arbitration agreement is a matter of state law. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (stating that, "[i]n determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts'"). That holding is consistent with federal law, which requires a *knowing* waiver of the right to a judicial forum. *See Kummetz v. Tech Mold*, 152 F.3d 1153, 1155 (9th Cir. 1998) (in ADA employment case, asking whether employee knowingly waived right to judicial forum and agreed to arbitrate). Here, there is no indication that Plaintiffs expressly authorized their counsel to enter into the arbitration agreement. In fact, at the hearing, counsel stated that he did not have express authorization; PeopleConnect did not dispute such. Nor is there any suggestion that Plaintiffs, after the fact, ratified the agreement to arbitrate. This leaves implied actual authority and apparent authority. Under *Blanton*, the mere fact of the attorney-client relationship does not give rise to either authority with respect to any agreement to arbitrate. PeopleConnect's attempts to distinguish *Blanton* (*e.g.*, that the client there had expressly told the lawyer not to agree to arbitrate, that the agreement to arbitrate took place during the litigation rather than before) are not persuasive. Counsel's action in accessing the Classmates.com website and registering for two accounts just before filing suit were clearly done in the course of counsel's representation of Plaintiffs for and in anticipation of litigation. The distinction PeopleConnect seeks to draw as to the precise timing of the registration has no logical basis.

Although PeopleConnect has cited authority to support its general position on agency, *Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*, No. 18-cv-06503-RS, 2019 U.S. Dist. LEXIS 127072 (N.D. Cal. July 30, 2019) [hereinafter "*Uber*"], *Uber* is not binding. Significantly, *Uber* did not address *Blanton* or the concerns raised therein.

As a final point, it is worth noting that the actions of Plaintiffs' counsel here do not serve as the *basis* of Plaintiffs' claims – *i.e.*, counsel's use of the Classmates.com website is not the factual predicate for Plaintiffs' claims. Rather, counsel's use of the website was undertaken as part of the investigation – an investigation consistent with counsel's Rule 11 obligations, *see* Fed.

9

R. Civ. P. 11, and Plaintiffs' duty to plead with specificity a plausible claim under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) – into whether Plaintiffs did, in fact, have claims against PeopleConnect.  The Court is troubled by PeopleConnect's suggestion that a plaintiff's access to a judicial forum may be cut off simply because counsel for the plaintiff fulfilled a duty under Rules 11 and 12 to investigate prior to filing suit.  Under PeopleConnect's position, Plaintiffs here would either file suit without doing the necessary pre-suit investigation, raising serious concerns, or would waive the right to a judicial forum, a right protected under the First Amendment.  *See White v. Lee*, 227 F.3d 1214, 1227 (9th Cir. 2000) (stating that "[t]he First Amendment . . . guarantees the right 'to petition the Government for a redress of grievances'").  Whether one calls this being on the horns of a dilemma, Hobson's choice, stuck between a rock and a hard place, or caught between Scylla and Charybdis, the resulting policy dilemma created by PeopleConnect's position underscores the aptness of *Blanton*'s holding.

### III. CONCLUSION

For the foregoing reasons, the Court denies the motion to compel arbitration.  The Court further sets the remaining issues raised in the motion to dismiss and strike and motion to stay (Docket Nos. 26 and 28) for hearing on **June 24, 2021, at 1:30 p.m.**

**IT IS SO ORDERED**.

Dated: May 18, 2021

_____
EDWARD M. CHEN
United States District Judge