**JENNER & BLOCK LLP**
Kate T. Spelman (Cal. Bar. No. 269109)
kspelman@jenner.com
633 West Fifth Street, Suite 3600
Los Angeles, California 90071
Telephone:    213 239-5100
Facsimile:    213 239-5199


**JENNER & BLOCK LLP**
Debbie L. Berman (*pro hac vice*)
dberman@jenner.com
Wade A. Thomson (*pro hac vice*)
wthomson@jenner.com
353 N. Clark Street
Chicago, Illinois 60654-3456
Telephone:    312 222-9350
Facsimile:    312 527-0484

Attorneys for Defendant PeopleConnect, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MEREDITH CALLAHAN AND LAWRENCE GEOFFREY ABRAHAM, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs.<br><br>     v.<br><br>PEOPLECONNECT, INC., a Delaware Corporation,<br>                              Defendant. | Case No. 3:20-cv-09203-EMC<br><br>**DEFENDANT PEOPLECONNECT, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY PROCEEDINGS PENDING APPEAL OF THE COURT'S DECISION TO DENY DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Hearing Date: August 5, 2021<br>Hearing Time: 1:30 p.m.<br>Judge: Hon. Edward M. Chen<br>Courtroom: 5 |

Plaintiffs urge the Court to deny PeopleConnect's Motion to Stay, primarily by re-arguing their Opposition to Defendant's Motion to Compel Arbitration. But that is not the appropriate standard. Whether a stay pending appeal is appropriate requires the balancing of four elements: (1) PeopleConnect's likelihood of success on the merits, (2) irreparable harm to PeopleConnect absent a stay, (3) the harm (if any) to Plaintiffs if the case is stayed, and (4) the public interest. PeopleConnect has shown that those factors all favor a stay.

*First*, despite Plaintiffs' arguments to the contrary, PeopleConnect's burden is *not* to show that this Court's Order was indefensibly wrong; it is to show *either* a likelihood of prevailing on appeal or that the appeal raises a serious legal question. PeopleConnect has shown both. The Court's novel extension of *Blanton v. Womancare, Inc.*, 38 Cal. 3d 396 (Cal. 1985), conflicts with *Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*, 18-cv-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019). There is a likelihood that the Ninth Circuit will conclude that *Uber,* not *Blanton,* states the applicable rule in the context of a pre-suit agreement to arbitrate. At a minimum, the conflict shows that the question PeopleConnect's appeal presents—whether an attorney may bind his client to an arbitration agreement when doing so is within the scope of an authorized act—is a serious one.

*Second*, PeopleConnect will suffer irreparable harm absent a stay. If the Ninth Circuit reverses the Court's denial of the Motion to Compel, a ruling on the Motion to Dismiss would either become a non-binding advisory opinion or prejudice PeopleConnect's position in arbitration. Allowing discovery to begin before resolving the Motion to Dismiss would also deprive PeopleConnect of the very benefits the defenses provide: immunity from suit. Further, because the arbitration rules strictly limit potential discovery, permitting discovery now risks requiring PeopleConnect to engage in discovery that the arbitrator may refuse.

*Third*, Plaintiffs will not be harmed by a stay. Plaintiffs argue that they would be harmed by a delay in removing their yearbook images from Classmates.com and a risk of lost evidence. But Plaintiffs' images have already been removed, and their argument about lost evidence is unsubstantiated speculation.

*Fourth*, a stay serves the public interest by forwarding the clear federal policy in favor of arbitration and judicial efficiency, which outweighs any purported interest California *may* have in preventing the presentation of publicly available yearbook photos on the internet.

For these reasons, as further detailed below and in PeopleConnect's moving papers, PeopleConnect respectfully requests that the Court grant its Motion to Stay.

## I. PeopleConnect Is Likely To Succeed On The Merits Of Its Appeal.

As explained in PeopleConnect's Motion (ECF No. 49 at 2–3 ("Mot.")), to support a stay, a moving party is not required to prove it is more likely than not that its appeal will succeed. *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). Rather, the moving party may either "make a 'strong showing' on the merits" of its appeal or show "that its appeal raises 'serious legal questions,' even if the moving party has only a minimal chance of prevailing[.]" *Mohamed v. Uber Techs.*, 115 F. Supp. 3d 1024, 1028 (N.D. Cal. 2015) (granting partial stay). PeopleConnect meets both standards and Plaintiffs' arguments to the contrary are meritless.

### A. PeopleConnect Can Make A "Strong Showing" On The Merits.

PeopleConnect has made a "strong showing" on the merits of its appeal by demonstrating that *Blanton* is readily distinguishable from this case. *See* Mot. 3–5. In response, Plaintiffs seek to convince the Court that its reliance on the "well-settled contract and agency principles established in *Blanton*" (so well-settled that Plaintiffs did not even cite *Blanton* in their own Motion to Compel briefing) was correct. ECF No. 54 at 2 ("Opp."). This focus, however, is flawed on several levels.

Plaintiffs begin by misrepresenting the issue, declaring that "Classmates will attempt to convince the Ninth Circuit that *Blanton* 'conflicts directly with *Uber*.'" Opp. 4 (citation omitted). What PeopleConnect argued in its Motion, however, is that "the Court's *application* of *Blanton* conflicts directly with *Uber*." Mot. 4 (emphasis added). Because *Uber* is on point authority (and *Blanton* is distinguishable), PeopleConnect has made a strong showing it will prevail on appeal. *Id*. at 4–5. To the extent Plaintiffs acknowledge this point, they recycle their Motion to Compel briefing and claim *Uber* is distinguishable because the *Uber* plaintiffs' claims "arose from their agent's use of the Uber application." Opp. 4. But as PeopleConnect has shown, the inquiry in *Uber* was not that the suit involved the plaintiffs' use of the Uber application; it was that the lawyer acted as the plaintiffs' agent while testing Uber's application to gather pre-suit information used in the complaint. ECF No. 35 at 2. Here, Plaintiffs' counsel acted as Plaintiffs' agent while using Classmates.com to develop their claim and gather information that was then used in the Complaint. Indeed, the Court dispensed with *Uber* not because it was distinguishable, but because it "did

not address *Blanton* or the concerns raised therein," ECF No. 40 at 9 ("Order").[1] Given the numerous facts that distinguish this case from *Blanton*, the Ninth Circuit easily could reach a different conclusion.

Additionally, Plaintiffs attempt to distinguish *Hui Ma v. Golden State Renaissance Ventures, LLC* misses the point. No. 21-cv-00856, 2021 WL 2190912 (N.D. Cal. May 31, 2021). The key takeaway from *Hui Ma* was that even though the agent did not have specific authority to agree to arbitration, the court found the arbitration agreement binding because the agent acted within the scope of his authority. *Id.* at *3–4. That is what occurred here. Plaintiffs' counsel do not dispute that they were authorized by their clients to investigate and file a suit on their behalf. As part of that authorization, Plaintiffs' counsel used the Classmates.com website and, by doing so, agreed to arbitrate on their clients' behalf.

Despite arguing it is "not persuasive" that the *Blanton* plaintiff expressly instructed counsel *not* to agree to arbitration, Plaintiffs argue, without authority, that an "express instruction to prepare and file a lawsuit is reasonably interpreted to include an instruction *not* to enter an arbitration agreement that may preclude filing suit." Opp. 3. Even if Plaintiffs' view as to what instructions may be reasonably implied from an express instruction to prepare and file a suit (and it is not reasonable, because a party can still pursue the same claims in arbitration), it does not change that the Court's application of *Blanton* conflicts with *Uber* such that the Ninth Circuit may well reach a different conclusion. Moreover, if Plaintiffs' position was correct, they want the Court to believe their attorneys acted contrary to their instructions and yet *still* represent them. That further distinguishes this case from *Blanton*, where the plaintiff immediately repudiated the agreement to arbitrate by firing her attorney. *Blanton*, 38 Cal. 3d at 400–02.

Plaintiffs devote much of their Opposition to arguing it should not matter that the Terms of Service ("TOS") allow users to opt-out of arbitration within 30 days of registering. Opp. 5–6. But the concern the Court identified as the basis for its ruling was a scenario whereby users could only conduct the required pre-suit investigation by necessarily agreeing to arbitration, thereby forcing plaintiffs to choose between violating Rule 11 or waiving the right to a judicial forum. Order at 10. This dilemma does not exist here precisely because of the right to opt-out. Mot. 5. Plaintiffs thus try to cure their counsel's failure to opt-out

---

[1] While the Court did note that Plaintiffs' counsel's use of the Classmates.com website was not the factual predicate for Plaintiffs' claims, it did so to support its view that counsel's use of the website was undertaken as part of an investigation consistent with Rule 11. Order at 9.

by relying on inapposite events that occurred when Plaintiffs' counsel sought to opt-out of a wholly different alter-ego account created shortly before the hearing on the Motion to Compel Arbitration that was not used to conduct a pre-suit investigation,[2] going so far as to insist that the termination of this alter-ego account "deprived [counsel] of the ability to conduct pre-suit investigation." Opp. 6. But counsel has been deprived of nothing—utilizing a different account, he gathered an array of screenshots collected from Classmates.com that he included in Plaintiffs' Complaint, never losing access to that account. Additionally, the terminated alter-ego account was restored immediately upon PeopleConnect learning of the mistaken termination (a fact counsel does not dispute) and is available to him right now. Declaration of Lynne Gross, ¶¶ 6–7, *Bonilla v. PeopleConnect, Inc.*, No. 21-cv-00051 (N.D. Ill. June 21, 2021), ECF No. 52-3.[3]

### B. PeopleConnect's Appeal Presents A Serious Legal Question.

Even if the Court were to find that PeopleConnect has not made a strong showing on the merits, a stay still is warranted because PeopleConnect's appeal raises a "serious legal question." *See* Mot. 5–6. A "serious legal question" can be established when an appeal raises an issue of first impression or resolves a split in authority. *See Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, No. 19-cv-00792, 2021 WL 1772808, at *2-3 (N.D. Cal. Mar. 19, 2021); *Pokorny v. Quixtar Inc*., No. 07-00201, 2008 WL 1787111, at *1 (N.D. Cal. Apr. 17, 2008). Both exist here.

Plaintiffs' inability to rebut this showing is transparent from the fact their response begins by insisting "[i]t is not clear what issue Classmates believes to be one of first impression, because its motion never bothers to define one." Opp. 6. But PeopleConnect *did* define the question presented in the *very first sentence* of the relevant section of its Motion: "whether under California law an attorney has actual or

---

[2] Before filing this suit, Plaintiffs' counsel created multiple Classmates.com accounts that he used to collect screenshots included in the Complaint. ECF No. 27, McGuane Decl. ¶¶ 12–14, 16. Counsel never sought to opt-out of arbitration for these accounts. The account at issue in Plaintiffs' Opposition and declaration refers to a recent account counsel created on April 16, 2021, shortly before the hearing on the Motion to Compel Arbitration under the name Ben Whipple, Opp. Ex. 1 ¶ 7, ostensibly for the purpose of testing the opt-out procedure, *id*. ¶¶ 9, 14.

[3] As PeopleConnect explained in its Motion, the termination of counsel's alter-ego account reflected inadvertence in a single case, rather than a practice that would render the opt-out procedure as a whole "illusory." *See* Mot. 5, n.2; Reply in Supp. of Mot. to Dismiss at 3, *Bonilla*, No. 21-cv-00051 (N.D. Ill. June 21, 2021), ECF No. 52. PeopleConnect notes that the ECF numbers for the *Bonilla* record citations in footnote 2 of its Motion (ECF No. 49), are incorrect and clarifies here that in *Bonilla*, Plaintiffs' Opposition to Defendant's Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint is ECF No. 51, and Defendant's Reply in Support of its Motion to Dismiss is ECF No. 52.

apparent authority to bind his client to an arbitration agreement where doing so is within the scope of an authorized act." Mot. 5–6.

Apparently conceding this is an issue of first impression for the Ninth Circuit, Plaintiffs try to reframe "the relevant issue" as "whether *Blanton* controls when an attorney may compromise her client's rights to pursue a claim," to justify their reliance on two cases "weigh[ing] in to the affirmative." Opp. 6. Both cases cited by Plaintiffs involve attorneys agreeing to settlement, however, not arbitration and not pre-suit activities. *Blackthorne Publ'g, Inc. v. Black*, 210 F.3d 381, 2000 WL 123225, at *1 (9th Cir. 2000) (analyzing whether plaintiffs' attorney "had express authority to bind his clients to a *settlement agreement*") (emphasis added); *Allen v. Barnes*, 329 F. App'x 740, 741 (9th Cir. 2009) (citing *Blanton* for the proposition that an attorney must have "specific authority to settle" a "client's claims"). Plaintiffs thus never deny (or even address) that the Ninth Circuit has never grappled with the actual issue on appeal.

Plaintiffs then repeat their argument that there "is no conflict" between the Court's Order and *Uber*, but this argument fails for the reasons articulated above. Thus, the question on appeal is a serious one because it is a matter of first impression within the Ninth Circuit and because the Order *does* conflict with virtually identical facts in *Uber* (as well as the decision in *Hui Ma*). *See Yeomans*, 2021 WL 1772808, at *2 ("When it comes to cases dealing with enforcement of arbitration agreements, courts have . . . 'found that a serious legal question was raised when . . . the appeal asked the Ninth Circuit to resolve a split in authority.'" (citation omitted))[4]; *see also Pokorny*, 2008 WL 1787111, at *1 (granting stay and finding serious legal question existed where it would resolve "an apparent split between [the] Court's ruling on the motion to compel arbitration" and other rulings because "[s]uch conflicting rulings demonstrate that the law is unsettled and guidance from the appellate court would be beneficial").

**II.     PeopleConnect Will Suffer Irreparable Harm Absent A Stay.**

Whether PeopleConnect must show that "the balance of hardships tips sharply in [PeopleConnect]'s favor," or only that there is a "possibility of irreparable injury," *Leiva-Perez*, 640 F.3d at 964,

---

[4] Plaintiffs state that PeopleConnect "incorrectly cites" the *Yeomans* case "as one in which a 'pressing legal issue' existed because the issue was one that had 'divided district courts in this Circuit.'" Opp. 7 n.2 (citation omitted). *Yeomans*, however, explains that courts have found that a serious legal question was raised when the issue on appeal asked the Ninth Circuit to resolve a split in authority, even if that was not the principal basis for granting the stay in that case. *See Yeomans*, 2021 WL 1772808, at *2.

PeopleConnect has shown it will suffer irreparable harm without a stay. Mot. 6–9. In response, Plaintiffs largely attack a strawman, representing that PeopleConnect is claiming irreparable harm due only to "litigation expenses." Opp. 7. Not so. PeopleConnect cited the risk of "both the monetary and non-monetary harm" of this Court's adjudication of the Motion to Dismiss should the Ninth Circuit find "the arbitration forum [was] wrongly denied." Mot. 7 (quoting *Mohamed*, 115 F. Supp. 3d at 1034). In that circumstance, the Court's ruling on the Motion to Dismiss either would become a "non-binding advisory opinion[]" or— worse—prejudice PeopleConnect's position in arbitration. *Id.* This Court has previously stayed briefing and decision on dispositive motions to avoid precisely this dilemma. *E.g.*, *id*. Plaintiffs' only further response regarding the Motion to Dismiss is the assertion that "[a]n 'adjudication . . . on the merits' is far down the road." Opp. 8. This is a strange argument. After all, PeopleConnect's Motion to Dismiss currently is pending with argument slated to take place within weeks of the date of this filing, and granting that motion as to any of Plaintiffs' claims would "operate[] as an adjudication on the merits" of those claims. Fed. R. Civ. P. 41(b); *see Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981).

Failing to stay discovery also would irreparably harm PeopleConnect. Allowing discovery before adjudicating PeopleConnect's threshold immunity and constitutional arguments would deprive it of the very benefit—immunity from suit—those defenses are meant to provide. Mot. 7–9. Plaintiffs do not deny this harm. They merely seek to diminish the injury. They do so, however, by mischaracterizing the AAA Consumer Rules. For instance, they note that an arbitrator is not required to hear a motion to dismiss, as a court must. *See* Opp. 8. But the key fact is that "the AAA Consumer Rules allow arbitrators to entertain 'a dispositive motion' prior to any document production *at all*," which could end the arbitration before discovery. Mot. 9. The loss of this possibility—even if it is not guaranteed—irreparably harms PeopleConnect. Plaintiffs then note that the AAA Rules do not contain explicit "limitations on the topics or breadth of discovery." Opp. 8. This again misses the point. Unlike the Federal Rules of Civil Procedure, the AAA Rules limit information exchange to that which allows the arbitration to "remain a fast and economical process." Am. Arbitration Ass'n, Consumer Arbitration Rules R. R-22(a) (eff. Sept. 1, 2014). And unlike the Federal Rules' guarantee of discovery, the AAA Consumer Rules only permit information exchanges if the arbitrator allows them. *Id*. Thus, permitting *any* discovery in this case would deprive PeopleConnect of its right to have the *arbitrator* decide whether to allow it. Again, "[t]he contrast, in time

and expense, between the arbitration process . . . and the process of litigation in federal court is substantial." *Ward v. Est. of Goossen*, No. 14-cv-03510, 2014 WL 7273911, at *4 (N.D. Cal. Dec. 22, 2014).

### III. A Stay Will Not Harm Plaintiffs.

While the first two stay factors "are the most critical," *Leiva-Perez*, 640 F.3d at 964, the remaining factors also favor a stay. As to any resulting harm to Plaintiffs, they argue a stay will delay removal of their yearbook photos from Classmates.com and "increase the risk of lost evidence." Opp. 8–9. Plaintiffs' first argument is moot because Plaintiffs' images are no longer available on the website. Declaration of Lynne Gross, ("Decl.") ¶ 2.[5] Plaintiffs' second argument about increased risk of lost evidence is pure conjecture. Plaintiffs' opposition does not identify any "particular witnesses or documents that may be adversely affected by a stay." *Echevarria v. Aerotek, Inc.*, No. 16-cv-04041, 2019 WL 3207812, at *3 (N.D. Cal. July 16, 2019) (citation omitted). Nor do Plaintiffs provide anything but unsubstantiated (and incorrect) speculation that PeopleConnect might not comply with its obligations to preserve evidence. Opp. 8–9. Moreover, and contrary to Plaintiffs' speculation, PeopleConnect has an appropriate litigation hold in place.

Of course, any plaintiff can claim the same injury from a stay. But courts find such harms less substantial where, as here, "plaintiffs have only cited generic concerns regarding delay and have not identified any specific harms." *Richards v. Ernst & Young LLP*, No. C-08-04988, 2012 WL 92738, at *4–5 (N.D. Cal. Jan. 11, 2012) (granting stay pending appeal of denial of motion to compel arbitration). Regardless, "when a defendant appeals an order refusing to compel arbitration, the general disadvantage to plaintiff caused by delay of proceedings is usually outweighed by the potential injury to defendant from proceeding in district court." *Echevarria*, 2019 WL 3207812, at *3 (citation omitted).

### IV. A Stay Is In The Public Interest.

Finally, a stay of proceedings supports the "clear federal policy in favor of arbitration" that the Federal Arbitration Act embodies. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). That interest outweighs any interest in litigating Plaintiffs' state-law claims in federal court when the parties may have agreed to arbitrate claims. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Contrary to Plaintiffs' assertions, Opp. 9, while a "presumption in favor of arbitrability"

---

[5] The July 19, 2021 Declaration of Lynne Gross will be filed concurrently with this reply brief.

may not apply here, *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014), the broader federal *interest* in arbitration does not simply fall by the wayside because the parties dispute arbitrability. *See Moses H. Cone*, 460 U.S. at 24 (requiring "a healthy regard for the federal policy favoring arbitration"). "Courts considering public interest issues similar to those in this case have found that the federal policy favoring arbitration embodied in the FAA and the economical use of judicial resources lead the public interest to favor a stay, even when other interests are at play." *Richards*, 2012 WL 92738, at *4.

Plaintiffs' argument that California has an interest in preventing publication of yearbook photos already available at Plaintiffs' local libraries, *see* Opp. 9, does not compel a different result.  That interest, real or not, does not depend on the forum in which those state-law claims are adjudicated.  The same is true for protecting Plaintiffs' alleged property interest in those photographs. Moreover, to the extent any such public interest exists, it is irrelevant here because PeopleConnect currently is not publishing Plaintiffs' yearbook photos. Gross Decl. ¶ 2. Accordingly, the public interest considerations further weigh in favor of granting a stay.

## **CONCLUSION**

For the reasons set forth above and in the Motion to Stay, the Court should stay proceedings in this case, including the pending motion to dismiss and potential discovery, pending resolution of the appeal of its decision denying PeopleConnect's motion to compel arbitration.

Dated: July 22 2021                                  Respectfully submitted,

JENNER & BLOCK LLP

By: /s/ *Kate T. Spelman*
    Kate T. Spelman
    Debbie L. Berman
    Wade A. Thomson

Attorneys for Defendant PeopleConnect, Inc.