**JENNER & BLOCK LLP**
Kate T. Spelman (Cal. Bar. No. 269109)
kspelman@jenner.com
515 S. Flower Street, Suite 3300
Los Angeles, California 90071
Telephone:   213 239-5100
Facsimile:   213 239-5199

**JENNER & BLOCK LLP**
Benjamin T. Halbig (Cal. Bar. No. 321523)
bhalbig@jenner.com
455 Market Street, Suite 2100
San Francisco, California 94105
Telephone:   628 267-6800
Facsimile:   628 267-6859

**JENNER & BLOCK LLP**
Debbie L. Berman (*pro hac vice*)
dberman@jenner.com
Wade A. Thomson (*pro hac vice*)
wthomson@jenner.com
353 North Clark Street
Chicago, Illinois 60654
Telephone:   312 222-9350
Facsimile:   312 527-0484

Attorneys for Defendant PeopleConnect, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MEREDITH CALLAHAN AND LAWRENCE GEOFFREY ABRAHAM, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs.<br><br>v.<br><br>PEOPLECONNECT, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:20-cv-09203-EMC<br><br>**NOTICE OF DEFENDANT'S MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS OR IN THE ALTERNATIVE TO CERTIFY AN IMMEDIATE APPEAL UNDER 28 U.S.C. § 1292(b)**<br><br>Complaint Filed: December 18, 2020<br><br>Hearing Date: May 19, 2022<br>Hearing Time:  1:30 p.m.<br>Judge: Judge Edward M. Chen<br>Courtroom: 5 |

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on May 19, 2022, at 1:30 p.m., or as soon thereafter as the Court is available, in Courtroom 5 of the federal courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant PeopleConnect, Inc. ("PeopleConnect") will and hereby does move for judgment on the pleadings regarding Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(c) or in the alternative moves this Court to certify its Order of November 1, 2021, Dkt. No. 76, Granting In Part And Denying In Part Defendant's Motion To Dismiss And Strike, for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

PeopleConnect's Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, any additional briefing on this subject, and any evidence and arguments that will be presented to the Court at the hearing on this matter.

**Statement of issue to be decided**: Whether Plaintiffs are precluded from arguing that Section 230 does not bar their claims now that the decision in *Callahan v. Ancestry.Com Operations Inc.*, No. 20-cv-08437 (N.D. Cal.) is final, or, in the alternative, whether the Court should certify the controlling question of law for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) so that the Ninth Circuit can definitively resolve whether Section 230 applies in cases like this one.

Dated: April 12, 2022                          Respectfully Submitted,


                                   By: */s/ Kate T. Spelman*
                                     Kate T. Spelman
                                     Debbie L. Berman
                                     Wade A. Thomson

                                     Attorneys for Defendant PeopleConnect, Inc.

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 1

    I.      Plaintiffs' Materially Identical Complaints Against Ancestry.com And PeopleConnect. ............................................................................................... 1

    II.     The Dismissal Of Plaintiffs' Complaint In *Ancestry* ........................................ 3

    III.    This Court's Denial Of PeopleConnect's Motion To Dismiss ........................... 4

    IV.    Plaintiffs Dismiss Their Appeal In *Ancestry* .................................................. 5

ARGUMENT ....................................................................................................................... 6

    I.      Plaintiffs Are Collaterally Estopped From Pursuing Their Claims. ................... 6

          A.    Following Plaintiffs' Dismissal Of Their Appeal In *Ancestry*, All The Elements For Defensive Non-Mutual Collateral Estoppel Under California Law Are Now Met. ................................................................... 7

          B.    The Equities Dictate That Plaintiffs Be Estopped From Re-litigating This Action After Voluntarily Dismissing Their Appeal In *Ancestry*. ........... 8

    II.     In the Alternative, Certification Under § 1292(b) Is Warranted To Resolve The Intra-Circuit Split Regarding The Application Of Section 230. ......................... 11

          A.    Whether PeopleConnect Is Immune Under Section 230 Is A Controlling Question Of Law. ................................................................................. 12

          B.    There Is A Substantial Ground For Difference Of Opinion On Whether Websites Like PeopleConnect Are Immune Under CDA-230. ................ 13

          C.    Allowing An Intermediate Appeal Will Materially Advance The Ultimate Termination Of This Litigation. ............................................................. 17

CONCLUSION .................................................................................................................. 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Analogic Techs., Inc. v. Linear Tech. Corp.*,
No. C-06-00735, 2006 WL 2850017 (N.D. Cal. Oct. 4, 2006) ......................................12

*Ashe v. Swenson*,
397 U.S. 436 (1970) ...........................................................................................................9

*Asis Internet Servs. v. Active Response Grp.*,
No. C07 6211, 2008 WL 4279695 (N.D. Cal. Sept. 16, 2008) ........................................13

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) .........................................................................................14

*Beeman v. TDI Managed Care Servs., Inc.*,
449 F.3d 1035 (9th Cir. 2006) .........................................................................................12

*Bennett v. Islamic Republic of Iran*,
927 F. Supp. 2d 833 (N.D. Cal. 2013) .............................................................................17

*Boshears v. PeopleConnect, Inc.*,
No. C21-1222, 2022 WL 888300 (W.D. Wash. Mar. 25, 2022) .....................................16

*Callahan v. Ancestry.com Inc.*,
No. 20-cv-08437, 2021 WL 2433893 (N.D. Cal. June 15, 2021) ...........................1, 4, 14

*Callahan v. Ancestry.com Inc.*,
No. 20-cv-08437, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021) ................................*passim*

*Campbell v. Scripps Bank*,
78 Cal. App. 4th 1328 (Cal. Ct. App. 2000) ......................................................................7

*Caraccioli v. Facebook, Inc.*,
700 F. App'x 588 (9th Cir. 2017) ...............................................................................13, 15

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ...................................................................................13, 16

*City of Oakland v. Wells Fargo Bank, N.A.*,
No. 15-cv-04321, 2018 WL 7575537 (N.D. Cal. Sept. 5, 2018) ..........................11–12, 16

*Coffee v. Google, LLC*,
No. 20-cv-03901, 2022 WL 94986 (N.D. Cal. Jan. 10, 2022) .........................................16

*CollegeSource, Inc. v. AcademyOne, Inc.*,
No. 08CV1987, 2015 WL 5638104 (S.D. Cal. Sept. 24, 2015) ...................................9, 11

*Collins v. D.R. Horton, Inc.*,
  505 F.3d 874 (9th Cir. 2007) ..................................................................................................9

*Delannoy v. Woodlawn Colonial, L.P. (In re Delannoy)*,
  615 B.R. 572 (9th Cir. B.A.P. 2020).......................................................................................8

*Dennis v. MyLife.com, Inc.*,
  No. 20-cv-954, 2021 WL 6049830 (D.N.J. Dec. 20, 2021)...................................................16

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ................................................................................14, 15, 16

*Fodrey v. City of Rialto*,
  860 F. App'x 505 (9th Cir. 2021) ............................................................................................7

*Force v. Facebook, Inc.*,
  934 F.3d 53 (2d Cir. 2019)....................................................................................................16

*Gonzalez v. Google LLC*,
  2 F.4th 871 (9th Cir. 2021) ...................................................................................................15

*Henderson v. Source for Public Data*,
  No. 3:20-cv-294, 2021 WL 2003550 (E.D. Va. May 19, 2021)............................................16

*Holder v. Holder*,
  305 F.3d 854 (9th Cir. 2002) ..................................................................................................7

*J. B. v. G6 Hosp., LLC*,
  No. 19-cv-07848, 2021 WL 6621068 (N.D. Cal. Dec. 16, 2021).................................12, 14

*Jurin v. Google Inc.*,
  695 F. Supp. 2d 1117 (E.D. Cal. 2010)..................................................................................13

*Kaiser Indus. Corp. v. Jones & Laughlin Steel Corp.*,
  515 F.2d 964 (3d Cir. 1975)...................................................................................................11

*Kimzey v. Yelp! Inc.*,
  836 F.3d 1263 (9th Cir. 2016) ...............................................................................................16

*Knapke v. PeopleConnect, Inc.*,
  553 F. Supp. 865 (W.D. Wash. 2021).....................................................................................16

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
  925 F.3d 1263 (D.C. Cir. 2019)..............................................................................................16

*Masson v. New Yorker Mag., Inc.*,
  85 F.3d 1394 (9th Cir. 1996) ..................................................................................................9

*McShannock v. JP Morgan Chase Bank N.A.,*
   No. 18-cv-01873, 2019 WL 955289 (N.D. Cal. Feb. 27, 2019) ....................................13, 17

*Miss. Chem. Corp. v. Swift Agric. Chems. Corp.,*
   717 F.2d 1374 (Fed. Cir. 1983)...............................................................................................11

*Missud  v City & Cnty, of S.F.,*
   No. 15-cv-05596, 2017 WL 1064984 (N.D. Cal. Mar. 21, 2017) ...........................................10

*Owens v. Kaiser Found. Health Plan, Inc.,*
   244 F.3d 708 (9th Cir. 2001) ....................................................................................................7

*Parklane Hosiery Co. v. Shore,*
   439 U.S. 322 (1979).................................................................................................................10

*Perfect 10, Inc., v. CCBill, LLC,*
   340 F. Supp. 2d 1077 (C.D. Cal. 2004) ...................................................................................15

*Phil-Insul Corp. v. Airlite Plastics Co.,*
   854 F.3d 1344 (Fed Cir. 2017)..................................................................................................8

*Pirani v. Slack Techs., Inc.,*
   No. 19-CV-05857-SI, 2020 WL 7061035 (N.D. Cal. June 5, 2020) ........................................17

*Producers Dairy Delivery Co. v. Sentry Ins. Co.,*
   41 Cal. 3d 903 (1986) ...............................................................................................................7

*Reese v. BP Expl. (Alaska) Inc.,*
   643 F.3d 681 (9th Cir. 2011) ...................................................................................................13

*Rudnick v. Allustiarte,*
   974 F.2d 1343 (9th Cir. 1992) ..................................................................................................8

*SEC v. Stein,*
   906 F.3d 823 (9th Cir. 2018) ....................................................................................................8

*Sessa v. Ancestry.com Operations Inc.,*
   No. 20-cv-02292, __F. Supp. 3d __,2021 WL 4245359 (D. Nev. Sept. 16, 2021) .......................15, 16

*Shah v. MyLife.Com, Inc.,*
   No. 3:12-CV-1592 -ST, 2012 WL 4863696 (D. Or. Sept. 21, 2012) .......................................15

*Wall v. Donovan,*
   113 Cal. App. 3d 122 (Cal. Ct. App. 1980) ...............................................................................8

*In re Westgate-Cal. Corp.,*
   642 F.2d 1174 (9th Cir. 1981) ...................................................................................................8

*White Motor Corp. v. Teresinski*,
    214 Cal. App. 3d 754 (Ct. App. 1989) ................................................................................. 10

**Statutes**

28 U.S.C. § 1292(b) ........................................................................................................ *passim*

47 U.S.C. § 230(c)(1) ................................................................................................................ 12

**Other Authorities**

Restatement (Second) of Judgments § 68 ............................................................................. 8, 10

16 Wright & Miller Federal Practice & Procedure § 3930, Westlaw (3d ed.) ........................... 17

18 Wright & Miller, Federal Practice & Procedure § 4423, Westlaw (3d ed. database
    updated Apr. 2020) ............................................................................................................. 11

## INTRODUCTION

In *Callahan v. Ancestry.com Operations Inc.*, No. 20-cv-08437 (N.D. Cal.) ("*Ancestry*"), the same Plaintiffs (Meredith Callahan and Lawrence Geoffrey Abraham) sued another website (Ancestry.com), pleading the same causes of action (violations of California Civil Code § 3344 and the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, intrusion upon seclusion, and unjust enrichment), based on the same theory (the unauthorized presentation of images from their school yearbooks on a website). The *Ancestry* court dismissed their claims with prejudice because *inter alia* all those claims are barred by Section 230 of the Communications Decency Act ("Section 230"). *Callahan v. Ancestry.com Inc.*, No. 20-cv-08437, 2021 WL 2433893 (N.D. Cal. June 15, 2021) ("*Ancestry.com II*"); *Callahan v. Ancestry.com Inc.*, No. 20-cv-08437, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021) ("*Ancestry.com I*"). Plaintiffs appealed that decision to the Ninth Circuit.

Despite the *Ancestry* court's decision, the Court previously allowed Plaintiffs to relitigate whether Section 230 bars their claims for two reasons. First, the *Ancestry* court's decision was not "final" while that was on appeal. Dkt. No. 76 at 6 (Nov. 1, 2020). That is no longer the case, however, as Plaintiffs recently voluntarily dismissed their appeal, making the *Ancestry* decision final. Second, because courts in the Ninth Circuit are divided on the application of Section 230 to similar websites, the Court held that it would be inequitable to preclude Plaintiffs from disputing that Section 230 bars their claims. *Id.* at 7–8.

Because *Ancestry* now is final, PeopleConnect respectfully submits that the Court should hold that Plaintiffs cannot relitigate whether Section 230 bars their claims in this suit, as there is nothing inequitable about precluding Plaintiffs who by their own actions have ensured that the district court's resolution of that issue in *Ancestry* is now final. But if the Court again declines to preclude Plaintiffs from contesting the application of Section 230 because of the intra-circuit conflict on that question, then the Court should certify that controlling question of law for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) so that the Ninth Circuit can definitively resolve whether Section 230 applies in cases like this one.

## BACKGROUND

### I.    Plaintiffs' Materially Identical Complaints Against Ancestry.com And PeopleConnect.

On November 30, 2020, Meredith Callahan and Lawrence Geoffrey Abraham—the Plaintiffs in this case—filed suit in the Northern District of California against three entities affiliated with

Ancestry.com. Compl., *Ancestry*, No. 20-cv-08437 (N.D. Cal. Nov. 30, 2021), ECF No. 1. After the court dismissed their complaint without prejudice, Plaintiffs filed an amended complaint that pleaded four causes of action under California law: (1) violation of the California Right of Publicity Statute, Cal. Civ. Code § 3344; (2) violation of the California Unfair Competition Law, Cal. Bus. & Pro. Code § 17200; (3) intrusion upon seclusion; and (4) unjust enrichment. Am. Compl. ("FAC"), *Ancestry*, No. 20-cv-08437 (N.D. Cal. Mar. 22, 2021), ECF No. 32 at 35–38.

On December 18, 2020, Plaintiffs filed a separate Complaint in this Court against PeopleConnect, pleading the same four causes of action under California law that they asserted in their amended complaint in *Ancestry*. *See PeopleConnect*, Dkt. No. 2 at 28–31 (Dec. 18, 2020). The two complaints contain materially identical factual allegations. For example:

| PeopleConnect Complaint | Ancestry Amended Complaint |
|---|---|
| "Plaintiffs bring this class action complaint against [PeopleConnect] for knowingly misappropriating the names, photographs, and likenesses of Plaintiffs and the class; knowingly using those names, photographs, and likenesses to advertise its products and services, including reprinted yearbooks and subscription memberships to the website Classmates.com; and knowingly using those names, photographs, and likenesses on and in reprinted yearbooks and the website Classmates.com, without obtaining prior consent from Plaintiffs and the class." *PeopleConnect*, Dkt. No. 2, ¶2. | "Plaintiffs bring this class action complaint against [Ancestry] for knowingly misappropriating the photographs, likenesses, names, and identities of Plaintiffs and the class; knowingly using those photographs, likenesses, names, and identities for the commercial purpose of selling access to them in Ancestry products and services; and knowingly using those photographs, likenesses, names, and identities to advertise, sell, and solicit purchases of Ancestry services and products; without obtaining prior consent from Plaintiffs and the class." *Ancestry*, ECF No. 32, ¶2. |
| "Classmates' business model relies on extracting personal information from school yearbooks, including names, photographs, schools attended, and other biographical information. Classmates aggregates the extracted information into digital records that identify specific individuals by name, photograph, and other personal information, and stores the digital records in a massive online database." *Id.* ¶3. | "Ancestry's business model relies on amassing huge databases of personal information, including names, photographs, addresses, places of birth, estimated ages, schools attended, and other biological information .... To construct its Yearbook Database, Ancestry extracted personal information from school yearbooks." *Id.* ¶3. |
| "Classmates knowingly uses the names, photographs, cities of residence, schools attended, likenesses, and identities in its Classmates Yearbook Collection on and in its products and services[.]" *Id.* ¶9. | "Ancestry knowingly uses the names, photographs, cities of residence, schools attended, estimated ages, likenesses, and identities in its Ancestry Yearbook Database on and in its products and services." *Id.* ¶6. |

| | |
|---|---|
| "Classmates knowingly uses the names, photographs, cities of residence, schools attended, likenesses, and identities in its Classmates Yearbook Collection to advertise, sell, and solicit the purchase of reprinted yearbooks … and its "CM+" subscription membership[.]" *Id*. ¶7. | "Ancestry knowingly uses the names, photographs, cities of residence, schools attended, estimated ages, likenesses, and identities in its Ancestry Yearbook Database to advertise, sell, and solicit the purchase of its monthly subscription products and services, including its "U.S. Discovery," "World Explorer," and "All Access" subscription plans." *Id*. ¶7. |
| "Although Classmates does not disclose how it created its Yearbook Collection, there is a section of the Classmates website encouraging users to donate old yearbooks to Classmates. At least some, and possibly all, of its Yearbook Collection was built via such donations." *Id*. ¶60. | "Ancestry does not disclose how it created the Ancestry Yearbook Database. Plaintiffs are ignorant of the methods by which Ancestry acquires yearbooks and digitally extracts their contents. There is a section of Ancestry's website encouraging visitors to donate their old yearbooks to Ancestry, so it is possible some of the Yearbook Database was built via such donations." *Id*. ¶64. |
| "Classmates knowing misappropriation of names, likenesses, photographs, and other personal information, and use of those names, likenesses, photographs, and other personal information in selling and advertising its products and services, violates California's Right of Publicity statute, Cal. Civ. Code § 3344; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; California's common law right protecting against Intrusion upon Seclusion; and California Unjust Enrichment law." *Id*. ¶64. | "Ancestry's knowing misappropriation of names, likenesses, photographs, and other personal information, and use of those names, likenesses, photographs, and other personal information in selling and advertising its products and services, violates California's Right of Publicity statute, Cal. Civ. Code § 3344; the California statute protecting publicity rights of deceased persons, Cal. Civ. Code § 3344.1; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; California's common law right protecting against Intrusion upon Seclusion; and California Unjust Enrichment law." *Id.* ¶77. |

## II.    The Dismissal Of Plaintiffs' Complaint In *Ancestry*

Ancestry moved to dismiss Plaintiffs' complaint on numerous grounds, including that Plaintiffs' claims "are foreclosed by Section 230 of the Communications Decency Act." Mot. to Dismiss & Strike at 13–16, 24 *Ancestry*, No. 20-cv-08437 (N.D. Cal. Jan. 4, 2021), ECF No. 13. The court granted Ancestry's motion without prejudice. *See Ancestry.com I*, 2021 WL 783524.

Regarding Section 230, the court explained that "[i]mmunity from liability exists for (1) a provider or user of an interactive computer service, (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker of (3) information provided by another information content provider." *Id*. at *5. The court held that Ancestry "is immune from liability." *Id*. It rejected Plaintiffs' argument that

Ancestry was not entitled to immunity by not "obtain[ing] the content from the author of the content" because it found that Section 230 "immunizes an interactive computer service provider that passively displays content that is created entirely by third parties," regardless of who supplied it to the website. *Id*. at \*6 (internal quotation marks and citations omitted). The court also rejected Plaintiffs' argument that Ancestry "creates content" by "extract[ing] yearbook data (names, photographs, and yearbook date), put[ting] the content on its webpages and in its email solicitations, add[ing] information (such as an estimated birth year and age), and add[ing] interactive buttons (such as a button prompting a user to upgrade to a more expensive subscription)." *Id*. In doing so, it explained that Ancestry "did not contribute 'materially' to the content" but instead took "information and photos from the donated yearbooks and republish[ed] them on its website in an altered format." *Id*. (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008)).

Plaintiffs filed an amended complaint. FAC, *Ancestry*, No. 20-cv-08437, ECF No. 32. Again, Ancestry moved to dismiss. Mot. to Dismiss, *Ancestry*, No. 20-cv-08437 (N.D. Cal. Apr. 5, 2021), ECF No. 33. In dismissing that amended complaint, the court rejected Plaintiffs' argument that Ancestry itself was the "content provider" because Ancestry obtained at least some yearbooks by "scraping [them] from websites or copying [them] from libraries." *Ancestry.com II*, 2021 WL 2433893, at \*5. The court explained that "Ancestry is not a content provider" because it "obviously did not create the yearbooks" and instead "used information provided by another information-content provider[.]" *Id*. The court also rejected Plaintiffs' argument that Section 230 applies only "if the yearbook creator intended the content to be published online," holding that Section 230 "immunizes an interactive computer service provider that passively displays content that is created entirely by third parties," regardless of any such permission. *Id*. at \*6 (internal quotation marks and citations omitted). And the court rejected "that Ancestry created content by taking the records and putting them in popup ads and emails to promote website subscriptions" and instead found "Ancestry did not transform the content and just offered it in a different form." *Id*. at \*7.

### III.   This Court's Denial Of PeopleConnect's Motion To Dismiss

On March 19, 2021, PeopleConnect moved to compel arbitration and to dismiss Plaintiffs' claims on various grounds, including that Section 230 bars Plaintiffs' claims. *PeopleConnect*, Dkt. No. 26 (Mar. 19, 2021). While the motion to dismiss was pending, the *Ancestry* court issued its decisions in *Ancestry.com*

*I* and *Ancestry.com II*. PeopleConnect submitted supplemental briefing to the Court arguing that it was entitled to collateral estoppel on the issue of Section 230 immunity based on the *Ancestry* court's rulings. *PeopleConnect*, Dkt. No. 60-2 (July 27, 2021).

The Court rejected PeopleConnect's collateral estoppel argument, holding that *Ancestry* did not bar Plaintiffs' claims against PeopleConnect because: (1) Plaintiffs' then-pending appeal of that decision meant the judgment was not final; and (2) it would be inequitable to give *Ancestry* preclusive effect when other district courts have reached different conclusions in similar cases regarding Section 230 immunity. *PeopleConnect*, Dkt. No. 76 at 6–8.

On the merits, the Court held that Section 230 did not apply. The Court did not question that PeopleConnect is a "provider or user of an interactive computer service" and that Plaintiffs in this litigation seek to treat PeopleConnect "under a state law cause of action, as a publisher or speaker." *Id*. at 9. It held, however, that PeopleConnect did not satisfy the final element—that the information that would be the source of liability was "provided by another information content provider." *Id*. The Court held that the information was not provided by "another information content provider" because "the only third parties who are plausibly creators or developers of the yearbooks are the yearbook authors/publishers" and that the term does not encompass yearbook users or purchasers. *Id*. at 9–10. In doing so, the Court rejected that a website operator like PeopleConnect "should be allowed to assume that the person or entity who provided the information to the service provider was the creator or developer of the information." *Id*. at 11. The Court also held that PeopleConnect had not shown that the yearbooks were "provided by" another information content provider, holding that "there is a question of fact as to whether a reasonable person in the position of PeopleConnect (the service provider) would conclude that the yearbook authors/publishers (the information content providers) intended the yearbooks to be published on the internet." *Id*. at 10.

## IV.  Plaintiffs Dismiss Their Appeal In *Ancestry*

On July 12, 2021, Plaintiffs appealed the *Ancestry II* decision. Notice of Appeal, *Ancestry*, No. 20-cv-08437 (N.D. Cal. July 12, 2021), ECF No. 52. Both parties filed their opening briefs. Opening Br., *Ancestry*, No. 21-16161 (9th Cir. Nov. 19, 2021), ECF No. 11-1; Resp. Br., *Ancestry*, No. 21-16161 (9th Cir. Jan. 19, 2022), ECF No. 17. And on February 27, 2022, the Ninth Circuit scheduled oral argument in *Ancestry* for May 10, 2022. Notice, *Ancestry*, No. 21-16161 (9th Cir. Feb. 27, 2022), ECF No. 25.

One week later, Plaintiffs moved pursuant to Federal Rule of Appellate Procedure 42(b) to voluntarily dismiss their appeal. Mot. for Voluntary Dismissal, *Ancestry*, No. 21-16161 (9th Cir. Mar. 7, 2022), ECF No. 26. Plaintiffs only stated that "for reasons unrelated to the strength of their arguments or the likelihood of prevailing before this Court, Plaintiffs no longer wish to pursue this appeal." *Id.* at 2. Ancestry opposed the motion, arguing that dismissing the appeal would "only perpetuate *further* litigation by denying this Court its fair say on the merits and from providing clarity in a broad wave of cases consuming district court attention." Opp'n at 2, *Ancestry*, No. 21-16161 (9th Cir. Mar. 14, 2022), ECF No. 28. The Ninth Circuit granted the motion, but awarded Ancestry its costs pursuant to Federal Rule of Appellate Procedure 39(a)(1). Order, *Ancestry*, No. 21-16161 (9th Cir. Mar. 16, 2022), ECF No. 29. The mandate issued on April 7, 2022. Mandate, *Ancestry*, No. 21-16161 (9th Cir. Apr. 7, 2022), ECF No. 30.

## ARGUMENT

Given Plaintiffs' decision to voluntarily dismiss their appeal in *Ancestry*, all the elements for collateral estoppel on the issue of whether Section 230 bars their claims in this case are present. Plaintiffs were a party to the *Ancestry* action. The issue as between this case and *Ancestry* is identical. The *Ancestry* decision now is final. What is more, given that the Section 230 issue was not definitively resolved by the Ninth Circuit only because of Plaintiffs' unilateral action in dismissing their appeal, there now can be no argument that it would be unfair or inequitable to preclude them from contesting that Section 230 bars their claims, regardless of the intra-circuit conflict that exists over that question of law to websites similar to PeopleConnect.

The Court thus should grant PeopleConnect judgment on the pleadings based on Plaintiffs being estopped from denying that Section 230 bars their claims. But if the Court does not so rule, it should certify the question of whether Section 230 bars their claims for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). It should do so for the reason it identified in its prior Order as an alternative basis for declining to find collateral estoppel—there is an intra-circuit conflict over that question of law that the Ninth Circuit should definitively resolve.

## I.    Plaintiffs Are Collaterally Estopped From Pursuing Their Claims.

PeopleConnect seeks a judgment on the pleadings precluding Plaintiffs from pursuing their claims. A judgment on the pleadings is "properly granted" when, "taking all the allegations in the pleadings as

true, the moving party is entitled to judgment as a matter of law." *Owens v. Kaiser Found. Health Plan*, *Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). When such a motion concerns collateral estoppel based on rulings in another case, the Court can take judicial notice of the judgments in that other matter. *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of prior judgments of other courts to determine whether collateral estoppel applies).

Here, PeopleConnect's motion is *not* one for reconsideration of this Court's prior Order. PeopleConnect seeks a new determination on the merits of its collateral estoppel argument as a matter of law now that the mandate in the *Ancestry* appeal has issued. *See Fodrey v. City of Rialto*, 860 F. App'x 505, 507 (9th Cir. 2021) (affirming judgment on the pleadings on collateral estoppel grounds).

### A.   Following Plaintiffs' Dismissal Of Their Appeal In *Ancestry*, All The Elements For Defensive Non-Mutual Collateral Estoppel Under California Law Are Now Met.

Under California law, a defendant may invoke collateral estoppel against a plaintiff for a judgment in another case if three conditions are met: (1) "the party against whom [collateral estoppel] is asserted was a party, or in privity with a party, to the previous suit"; (2) there was "a final judgment on the merits of the previous suit"; and (3) "the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated." *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903, 910 (1986).[1] In its prior decision, the Court correctly did not question that the first two elements are met. *See* Dkt. No. 76 at 6–9. First, for defensive collateral estoppel, only the plaintiffs need to be the same or in privity. *See Campbell v. Scripps Bank*, 78 Cal. App. 4th 1328, 1334 (Cal. Ct. App. 2000) (recognizing application of "defensive issue preclusion" where a "stranger to the prior action" precluded a plaintiff from relitigating an issue the plaintiff litigated unsuccessfully against a different party). Plaintiffs here are the same plaintiffs in *Ancestry*. Second, the issue the *Ancestry* court resolved regarding Section 230's application is identical as

---

[1]   PeopleConnect previously maintained, and continues to believe, that federal interests compel the application of federal preclusion principles to a federal preemption statute. *See* Dkt. No. 64-2 at 1–3 (Aug. 4, 2021); *but see* Dkt. No. 76 at 6–7 (holding that California law applies). As that distinction between state and federal preclusion law no longer is material to the resolution of this matter, PeopleConnect for purposes of this motion only does not dispute the appropriate choice of preclusion law.

between this case and the *Ancestry* case. *See SEC v. Stein*, 906 F.3d 823, 828–29 (9th Cir. 2018) (describing when issues are identical).[2]

The only element the Court previously held was not satisfied was the second one—a final judgment in the prior action. The Court so concluded because under California law "a judgment is not final for purposes of collateral estoppel while open to direct attack, *e.g.*, by appeal." Dkt. No. 76 at 6 (internal quotation marks and citation omitted). But the finality requirement now is met. Following Plaintiffs' dismissal of their appeal, *see* Order, *Ancestry*, No. 21-16161, ECF No. 29, the Ninth Circuit mandate issued on April 7, 2022. Mandate, *Ancestry*, No. 21-16161, ECF No. 30. So *Ancestry* is final under California law for purposes of collateral estoppel. *See Rudnick v. Allustiarte*, 974 F.2d 1343 (9th Cir. 1992) (holding that voluntarily dismissal of appeal made the judgment final for purposes of applying collateral estoppel). Accordingly, under California preclusion law, all the elements of issue preclusion now are present.

**B. The Equities Dictate That Plaintiffs Be Estopped From Re-litigating This Action After Voluntarily Dismissing Their Appeal In *Ancestry*.**

In its previous decision, the Court held that under California preclusion law "[e]ven where the technical requirements [of issue preclusion] are all met, the doctrine is to be applied 'only where such application comports with fairness and sound public policy.'" Dkt. No. 76 at 8 (quoting *Direct Shopping Network, LLC v. James*, 206 Cal. App. 4th 1551, 1562 (Cal. Ct. App. 2012)). Whether and to what extent

---

[2] Plaintiffs disputed that the application of Section 230 was "necessarily decided" in the *Ancestry* case, at least as a matter of federal preclusion law, because the district court ruled in the alternative in *Ancestry* that Plaintiffs lacked Article III standing to pursue their claims. Dkt. No. 63 at 5–6 (Aug. 3, 2021). As PeopleConnect explained in its prior submission to the Court, which Plaintiffs ignored, this argument fails for two reasons. First, the Ninth Circuit has held that "if the defendant interposes two defenses … and both of the issues are found in favor of the defendant, a judgment for the defendant is not based on one of the issues more than on the other," and preclusion applies to "both" alternative grounds. *See* Dkt. 60-2 at 12–13 & n.5; *see also Restatement (Second) of Judgments* § 68 cmt. n (Am. L. Inst. 1942); *see In re Westgate-Cal. Corp.*, 642 F.2d 1174, 1176–77 (9th Cir. 1981) (adopting Restatement); *Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1356 n.2 (Fed Cir. 2017) (listing Ninth Circuit as among the majority of circuits that follow the Second Restatement); *Wall v. Donovan*, 113 Cal. App. 3d 122, 126 (Cal. Ct. App. 1980) (noting that California applies same rule); *see also Delannoy v. Woodlawn Colonial, L.P. (In re Delannoy)*, 615 B.R. 572, 585–86 (9th Cir. B.A.P. 2020) (recognizing that California adheres to the same rule as the Ninth Circuit), *aff'd* 852 F. App'x 279 (9th Cir. 2021). Second, because a claim that Section 230 preempts state law is a subject matter jurisdiction defense just like Article III standing, the two rationales stand on equal footing when it comes to preclusion law. *See* Dkt. No. 60-2 at 13; *Restatement (Second) of Judgments* § 68 cmt. o.

---

this consideration applies as a matter of California law in the defensive posture is unclear, as discussed below. But assuming *arguendo* that the Court may consider whether estopping Plaintiffs from contesting the application of Section 230 to their claims "comports with fairness and sound public policy," *see id.* at 8 (quotation and citation omitted), the equities strongly favor barring Plaintiffs from relitigating here an issue they already lost *and* declined to see through to final resolution.

Viewed purely as a matter of fairness, Plaintiffs have nothing to complain about. Unquestionably, Plaintiffs had a "full and fair opportunity to litigate" this issue both in the district court and in the Ninth Circuit. *CollegeSource, Inc. v. AcademyOne, Inc.*, No. 08CV1987, 2015 WL 5638104, at *8 (S.D. Cal. Sept. 24, 2015), *aff'd*, 709 F. App'x 440 (9th Cir. 2017). This is not a case where, as may happen in the context of *offensive* estoppel, a defendant that might be bound was not a party to the underlying judgment where another defendant may not have adequately defended the case. *See Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 881 (9th Cir. 2007) (noting concern that in the *offensive* collateral estoppel context the defendant might have had "little incentive to defend [a prior lawsuit] vigorously, particularly if future suits are not foreseeable"). Plaintiffs *themselves* were parties in *Ancestry*; they chose to bring both cases. And if Plaintiffs did not wish to be bound by the *Ancestry* judgment, they had every opportunity to challenge it before the Ninth Circuit. But having taken an appeal and abandoned it—over the objection of the defendants and after the appeal was briefed and scheduled for oral argument—Plaintiffs cannot now be heard to complain that it would be unfair to hold them to that result. *See* Opp'n at 9, *Ancestry*, No. 21-16161, ECF No. 28 (arguing that Plaintiffs' dismissal request is an attempt to "*perpetuate* uncertainty, avoid a potentially adverse precedent, and foment further litigation in the district courts").

Moreover, it is not fair to PeopleConnect for Plaintiffs to be able to continue denying that Section 230 bars their claims, as PeopleConnect should not have to bear "the burden of relitigating an identical issue with the same party or his privy[.]" *Masson v. New Yorker Mag., Inc.*, 85 F.3d 1394, 1400 (9th Cir. 1996) (precluding the plaintiff from continuing case against magazine after losing case against article's author). More broadly, putting a stop to Plaintiffs relitigation "promot[es] judicial economy by preventing needless litigation." *Id.* Indeed, if this Court endorses Plaintiffs' strategic decision to treat the *Ancestry* appeal as nothing more than a "dry run," *see Ashe v. Swenson*, 397 U.S. 436, 447 (1970), it will embolden other litigants to do the same. If collateral estoppel does not apply here, any plaintiffs facing an adverse

judgment against one defendant would just refile against another similar defendant, as Plaintiffs did in this case, hoping for a do over.

To the extent the Court remains concerned that other courts have reached different conclusions regarding the application of Section 230 immunity in this context, that concern no longer justifies overlooking Plaintiff's preclusion for two reasons. First, that concern stems from the *offensive* use of collateral estoppel in a manner that would be unfair to the *defendant*. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330–31 & n.15 (1979) (noting that the "problem of unfairness is particularly acute in cases of offensive estoppel"). Second, Plaintiffs' decision to accept that ruling in another case and forego an opportunity to have a definitive resolution of that question by the Ninth Circuit undercuts any claim they might make that the inconsistency in the law makes it unfair to subject them to one rule rather than another. Put simply, whatever the equities were before, they have changed.

Lastly, whether overall considerations of "fairness and sound public policy" is properly considered at all in the defensive posture under California preclusion law is far from settled. Dkt. No. 76 at 8. While the Court acknowledged that this principle was developed in the context of offensive collateral estoppel, it stated that "[s]imilar concerns should inform defensive collateral estoppel as well." *See id.* at 8–9. In doing so, the Court relied principally on Section 29(4) and comment f of the Restatement Second of Judgments, which does not examine one way or the other the difference between offensive and defensive uses of issue preclusion with respect to this issue. *See id.*[3] Moreover, Plaintiffs have never cited, and PeopleConnect is not aware of, any California decision that has ever cited this part of the Second Restatement in the context of *defensive* estoppel, let alone adopted it as a matter of California preclusion law. And California courts have recognized that "the *offensive* use of collateral estoppel is more closely scrutinized than the *defensive* use of the doctrine." *White Motor Corp. v. Teresinski*, 214 Cal. App. 3d 754, 763 (Ct. App. 1989). What is more, this distinction explains why in the context of *defensive* estoppel numerous federal courts have indicated that a court's ability to decline to find estoppel is limited to determining "whether the plaintiff

---

[3] The one decision the court cited was *Missud v. City & Cnty. of S.F.*, *see* Dkt. No. 76 at 8, which applied *federal* (not California) preclusion law, cited only cases applying the equitable exception in the context of *offensive* estoppel, and ultimately held that this factor did not rescue the plaintiff's claim from a finding of estoppel, *see* No. 15-cv-05596, 2017 WL 1064984, at *12–13 n.13 (N.D. Cal. Mar. 21, 2017).

had a full and fair opportunity to litigate" her position. *CollegeSource, Inc.*, 2015 WL 5638104, at *8 (citing *Blumcraft of Pittsburgh v. Kawneer Co.*, 482 F.2d 542, 547 (5th Cir. 1973)); *accord Kaiser Indus. Corp. v. Jones & Laughlin Steel Corp.*, 515 F.2d 964, 978–79 (3d Cir. 1975), *cert. denied*, 423 U.S. 876 (1975); *Miss. Chem. Corp. v. Swift Agric. Chems. Corp.*, 717 F.2d 1374, 1379 (Fed. Cir. 1983); *see also* 18 Wright & Miller, *Federal Practice & Procedure* § 4423, Westlaw (3d ed. database updated Apr. 2020) (explaining that courts now focus "directly on the existence of a full and fair opportunity to litigate in the first action" in context of defensive collateral estoppel). There is no question that Plaintiffs had a full and fair opportunity to litigate in *Ancestry*.

In all events, whatever the scope of the Court's discretion to decline to apply collateral estoppel where all the elements are met, at this point there simply is no good reason to allow Plaintiffs to relitigate an issue they declined to pursue in the Ninth Circuit.

## II.     In the Alternative, Certification Under § 1292(b) Is Warranted To Resolve The Intra-Circuit Split Regarding The Application Of Section 230.

If this Court nonetheless determines that the application of defensive collateral estoppel remains inappropriate in this case despite Plaintiffs' actions in *Ancestry*, PeopleConnect respectfully requests that the Court certify an interlocutory appeal pursuant to 28 U.S.C.§ 1292(b) of its decision regarding the application of Section 230. *See* 28 U.S.C. § 1292(b). The Court should do so for the very reason it previously indicated it would overlook an otherwise fully established basis for estoppel—there is an intra-circuit conflict in the law. To resolve that conflict, PeopleConnect therefore would propose certification of the following question:

> Whether a website operator that displays in an online format school yearbooks that it did not create or develop and excerpts thereof is immune from liability under 47 U.S.C. § 230 for state law causes of action that seek to attach liability based on the way in which the website operator obtains and displays the information extracted from those yearbooks and yearbook excerpts.

Pursuant to 28 U.S.C. § 1292(b), the Court may permit the interlocutory appeal of an order where it certifies that "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b). Certification is appropriate "when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions." *City of Oakland v.*

*Wells Fargo Bank, N.A.*, No. 15-cv-04321, 2018 WL 7575537, at *1 (N.D. Cal. Sept. 5, 2018) (quoting *Reese v. BP Expl. (Alaska) Inc.,* 643 F.3d 681, 688 (9th Cir. 2011)); *see* Fed. R. App. P. 5(a)(3) (where district court permission is necessary for appeal, "the district court may amend its order, either on its own or in response to a party's motion, to include the required permission or statement"). This Court's Order regarding Section 230 immunity satisfies all three criteria.

### A.    Whether PeopleConnect Is Immune Under Section 230 Is A Controlling Question Of Law.

As this Court has explained, certification is warranted when an order involves "a controlling question of law," such that "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *Advanced Analogic Techs., Inc. v. Linear Tech. Corp*., No. C-06-00735, 2006 WL 2850017, at *2 (N.D. Cal. Oct. 4, 2006) (quotation omitted). Those components are present here.

*First*, the question PeopleConnect has proposed for certification is a "purely legal one that can be resolved quickly without delving into a particular case's facts." *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848, 2021 WL 6621068, at *3–4 (N.D. Cal. Dec. 16, 2021) (granting § 1292(b) certification of legal question regarding the extent to which FOSTA-SESTA abrogates CDA immunity). That is because whether Section 230 makes PeopleConnect immune from suit flows directly from the interpretation of Section 230 and "[t]he district court's interpretation of a statute is a question of law[.]" *Beeman v. TDI Managed Care Servs., Inc*., 449 F.3d 1035, 1038 (9th Cir. 2006). PeopleConnect has argued that under the plain language of Section 230 it is immune from Plaintiffs' claims because its website displays yearbooks and excerpts from those yearbooks that it played no part in creating. This Court held that this is not enough to trigger immunity under Section 230, which it held applies only if the original creator of that third-party material specifically "intended" for that material to be presented online. Dkt. No. 76 at 10 (interpreting "provided by" phrase in statutory language to include intent requirement); *see also* 47 U.S.C. § 230(c)(1). This is a purely legal question—does Section 230 apply in the absence of evidence that the original creator of the third-party material intended for that material to be presented online.

*Second*, this question is "controlling" as "reversal of the [district] [c]ourt's order would, at a minimum, terminate the instant action." *Advanced Analogic Techs., Inc*, 2006 WL 2850017, at *2. Here, whether PeopleConnect is entitled to immunity under Section 230 is dispositive of all of Plaintiffs' claims.

*See, e.g.*, *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (applying CDA immunity to bar "intrusion upon seclusion" and California's Unfair Competition Law claims); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122, 1125 (9th Cir. 2003) (applying CDA immunity to bar California right of publicity claim); *Jurin v. Google Inc.*, 695 F. Supp. 2d 1117, 1122–23 (E.D. Cal. 2010) (applying CDA immunity to bar claim for unjust enrichment); *see also McShannock v. JP Morgan Chase Bank N.A.*, No. 18-cv-01873, 2019 WL 955289, at *1 (N.D. Cal. Feb. 27, 2019) (certifying under § 1292(b) where issue was "a dispositive question of law").

Accordingly, PeopleConnect is asking the Court to certify for interlocutory appellate review of a controlling question of law to the Ninth Circuit. That satisfies the first element for certification under Section 1292(b).

**B.  There Is A Substantial Ground For Difference Of Opinion On Whether Websites Like PeopleConnect Are Immune Under CDA-230.**

As to the second element, if this Court reaffirms its determination that applying collateral estoppel to Plaintiffs does not comport with "fairness and sound public policy" because "other district courts have reached differing conclusions on CDA immunity in similar cases," Dkt. No. 76 at 7–8, then it has confirmed that there is a "substantial ground for difference of opinion" as to the question PeopleConnect has presented. 28 U.S.C. § 1292(b). "To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *McShannock*, 2019 WL 955289, at *1. Usually, this question is resolved by analyzing whether "reasonable jurists *might* disagree on an issue's resolution." *Reese v. Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (emphasis added), or whether there is an "intra-district split" on the issue, *Asis Internet Servs. v. Active Response Grp.*, No. C07 6211, 2008 WL 4279695, at *3 (N.D. Cal. Sept. 16, 2008).

Plainly, "reasonable jurists *might* disagree" as to Section 230's application; indeed, reasonable jurists in this Circuit *have* disagreed. *See* Dkt. No. 76 at 7–8 (recognizing that "other district courts have reached differing conclusions on CDA immunity in similar cases"). To be sure, all the courts to address the issue are in agreement that website operators like PeopleConnect and Ancestry are: (1) providers of "an interactive computer service" and (2) that right of publicity and related claims seek to treat them "under a state law cause of action, as a publisher or speaker" of the information they present on their websites. *See*

*id.* at 9; *see also Ancestry.com I*, 2021 WL 783524, at *5. Courts, however, reach different outcomes as to the proper application of the final element of the test for Section 230 immunity—whether the information displayed was "provided by another information content provider." This, in turn, reduces to different interpretations of the two leading Ninth Circuit authorities regarding this element, *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) and *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003). *See J.B.*, 2021 WL 6621068, at *3–4 (finding element satisfied where, as here, Ninth Circuit has not squarely addressed question and "district courts have reached thoroughly-reasoned but conflicting conclusions").

*First*, most of the courts to have addressed this issue have examined the holding in *Batzel* that a service provider "is immune from liability under § 230(c)(1) when a third person or entity that created or developed the information in question furnished it to the provider or user under circumstances in which a reasonable person in the position of the service provider or user would conclude that the information was provided for publication on the Internet or other 'interactive computer service.'" 333 F.3d at 1032–34 In *Ancestry.com II*, Judge Beeler explained that she did not read *Batzel* to "support[] the conclusion that [Section 230] immunity applies only if the website operator obtained the third-party content from the original author." 2021 WL 2433893, at *6. Rather, Judge Beeler construed that language in *Batzel* as speaking to the facts of that case, in which an email the sender likely "never intended for publication" in any format, anywhere, nonetheless was published online, concluding that was not the case in the *Ancestry.com* suit. *Id.* at *7.[4] This Court, however, construed *Batzel* to mean Section 230 applies only if "a reasonable person in the position of … the service provider[] would conclude that the … information content providers[] intended the yearbooks to be published on the internet," and even then only if the one who provided that information was the original publisher of the information. Dkt. No. 76 at 10. Similarly, a court in the District of Nevada held that Section 230 did not bar similar claims brought under Nevada law against Ancestry.com because there was no basis to find that the original yearbook publishers had

---

[4] *Batzel* did not squarely address the application of Section 230 where someone other than the "original" content creator supplied the information to an interactive service provider for publication. Though *Batzel* did recognize that "the focus should be *not* on the information provider's intentions or knowledge," but instead on whether "a reasonable person in the position of the service provider or user would conclude that the information was provided for publication on the Internet[.]" *Batzel*, 333 F.3d at 1034 (emphasis added).

supplied the yearbooks to Ancestry. *Sessa v. Ancestry.com Operations Inc.*, No. 20-cv-02292, __ F. Supp. 3d __, 2021 WL 4245359, at *11 (D. Nev. Sept. 16, 2021), *appeal docketed,* No. 21-16618 (9th Cir. Oct. 1, 2021).

As for the Ninth Circuit, it has not consistently taken an exacting approach to *Batzel*. In *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 589 (9th Cir. 2017), for example, the Court evaluated whether Facebook was entitled to Section 230 immunity for "*private* images and videos of [the plaintiff] posted on Facebook's website by a third party." *Id.* (emphasis added). Rather than analyze whether the original content creator intended for the information to be published online, the Court held that it was enough that Facebook itself had not created or developed the content and had received it from a third party. *See id.* at 590. The Ninth Circuit also affirmed a narrower articulation of the *Batzel* intent inquiry in *Perfect 10, Inc. v. CCBill, LLC*, where the district court read *Batzel* to require an analysis of the internet content provider's intent only when evaluating whether immunity should attach to "internet service providers who would publish on the Internet *private* communications the provider knew or had reason to know were never intended to be published at all." *Perfect 10, Inc. v. CCBill, LLC*, 340 F. Supp. 2d 1077, 1110–11 (C.D. Cal. 2004), *aff'd on CDA grounds* 488 F.3d 1102 (9th Cir. 2007); *see also Shah v. MyLife.Com, Inc.*, No. 3:12-CV-1592 -ST, 2012 WL 4863696, at *3 (D. Or. Sept. 21, 2012), *report and recommendation adopted*, No. 3:12-CV-01592-ST, 2012 WL 4863271 (D. Or. Oct. 11, 2012) (holding that it was "reasonable to infer" defendants obtained information from third parties such that CDA immunity applied).

*Second*, many of the courts to have examined this issue have scrutinized the Ninth Circuit's holding in *Roommates.com* that Section 230 applies when a website "passively displays content that is created entirely by third parties." 521 F.3d at 1162, 1173–74 (holding website immune under Section 230 that published "comments as written" that "come[] entirely from subscribers and [are] passively displayed" by the website operator). As the most recent Ninth Circuit decision to address this element put it, under *Roommates.com* unless an interactive service provider "materially contribut[ed] to [the information's] *alleged unlawfulness*," it is entitled to immunity. *Gonzalez v. Google LLC*, 2 F.4th 871, 892 (9th Cir. 2021), *cert. petition docketed*, No. 21-1333 (U.S. Apr. 6, 2022). Judge Beeler reasoned that, akin to the interactive service provider in *Roommates.com*, Ancestry.com did not materially contribute to the content and thus was not itself the information content provider as defined by the statute. *See Ancestry.com I*, 2021 WL

783524, at *6. Thus, "by taking information and photos from the donated yearbooks and republishing them on its website in an altered format [Ancestry.com] engaged in 'a publisher's traditional editorial functions [that] [ ] do not transform an individual into a content provider within the meaning of § 230.'" *Id.* (quoting *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 802 (N.D. Cal. 2011)); *see also Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016) (holding Yelp! had immunity despite adding a star rating to reviews from other websites); *Coffee v. Google, LLC*, No. 20-cv-03901, 2022 WL 94986, at *7 (N.D. Cal. Jan. 10, 2022) (holding Google had immunity despite adding industry standards and requiring app developers to disclose odds of winning).[5]

The court in *Sessa* disagreed, however, finding that "Ancestry alone is responsible for posting the material on its website." *Sessa*, 2021 WL 4245359, at *10. So too did Judge Pechman in the Western District of Washington, who twice has held that "content is generated expressly by Classmates and the advertisement is not merely a passive display of content created by another entity, even if it contains a picture from a school yearbook." *Boshears v. PeopleConnect, Inc.*, No. C21-1222, 2022 WL 888300, at *12 (W.D. Wash. Mar. 25, 2022) (citing *Roommates*, 521 F.3d at 1162), *appeal docketed*, No. 22-35262 (9th Cir. Mar. 28, 2022); *see Knapke v. PeopleConnect, Inc.*, 553 F. Supp. 3d 865, 875 (W.D. Wash. 2021) (same), *appeal docketed*, No. 21-35690 (9th Cir. Aug. 20, 2021).

Regardless of how this Court views the comparative strength of these readings of *Batzel* and *Roommates.com*, as well as of the Section 230 issue more generally, from the perspective of whether PeopleConnect has proposed certification of a question that warrants interlocutory review pursuant to

---

[5] In *Gonzalez*, the Ninth Circuit applied this standard to conclude that even where Google "targets users for advertising based on the content they have selected. … a user's voluntary actions inform Google about that user's preferences" and, as such Google does not materially contribute to the publication of the harmful information viewed. 2 F.4th at 894–95. Other circuits also take this view. *See Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1269 (D.C. Cir. 2019) (holding that where the "underlying information is entirely provided by the third party, … the choice of presentation does not itself convert the search engine into an information content provider"); *Force v. Facebook, Inc.*, 934 F.3d 53, 81–82 (2d Cir. 2019) (holding that publishers may organize or distribute third-party content without having "developed" it for CDA purposes); *see also Carafano*, 339 F.3d at 1123 (collecting out of circuit cases). Lower courts in these circuits have also "issued varying opinions." *City of Oakland*, 2018 WL 7575537, at *1. *See, e.g.*, *Dennis v. MyLife.com, Inc.*, No. 20-cv-954, 2021 WL 6049830, at *6–7 (D.N.J. Dec. 20, 2021) (holding that website that uses "information created by third parties" to prepare background reports is entitled to CDA immunity), *appeal docketed*, No. 22-1110 (3d Cir. Jan. 20, 2022); *Henderson v. Source for Public Data*, No. 3:20-cv-294, 2021 WL 2003550, at *3–6 (E.D. Va. May 19, 2021) (same).

---

Section 1292(b), plainly there is considerable confusion in the law regarding this issue. The proposed question for certification thus is one over which there is a substantial ground for a difference of opinion. And this important question is one that has evaded appellate review—in no small part due to Plaintiffs' voluntary dismissal of their appeal in *Ancestry*. So even if this Court does not find that Plaintiffs are collaterally estopped from continuing to press their claims here, this Court should certify that question, which was squarely presented and addressed in its prior Order, for immediate interlocutory appeal pursuant to Section 1292(b). *See, e.g.*, *McShannock*, 2019 WL 955289, at *2 (certifying order where "frequency with which this question comes up weigh[ed] in favor of allowing the Ninth Circuit to resolve the question").

## C. Allowing An Intermediate Appeal Will Materially Advance The Ultimate Termination Of This Litigation.

Immediate appellate review of this Section 230 immunity question would also "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). That requirement is met when an interlocutory appeal "would conserve judicial resources and spare the parties from possibly needless expense if it should turn out that [the district court's] rulings are reversed." *Bennett v. Islamic Republic of Iran*, 927 F. Supp. 2d 833, 846 n.15 (N.D. Cal. 2013). Here, as explained above, resolution as to the Section 230 immunity issue would fully resolve this action. Because an immediate appeal may fully end the litigation, this case is an "exceptional situation" that warrants certification. *Pirani v. Slack Techs., Inc.*, No. 19-CV-05857-SI, 2020 WL 7061035, at *1 (N.D. Cal. June 5, 2020).

In sum, this Court's Order Granting In Part And Denying In Part Defendant's Motion To Dismiss And Strike presents a quintessential candidate for interlocutory review under § 1292(b): "a highly debatable question that is easily separated from the rest of the case, that offers an opportunity to terminate the litigation completely, and that may spare the parties the burden of a trial that is expensive for them even if not for the judicial system." 16 Wright & Miller *Federal Practice & Procedure* § 3930, Westlaw (3d ed. database updated Apr. 2021). PeopleConnect thus respectfully requests that the Court certify its Order for immediate interlocutory review.

## <u>CONCLUSION</u>

For the foregoing reasons and those identified in the Motion to Dismiss and to Strike, the Complaint should be dismissed with prejudice because PeopleConnect is immune from suit under Section 230 of the Communications Decency Act, or in the alternative, the Court should amend the Order and certify it for immediate appeal under 28 U.S.C. § 1292(b).

Dated: April 12, 2022                          Respectfully submitted,

                                               JENNER & BLOCK LLP

                                        By:    /s/ Kate T. Spelman
                                               Kate T. Spelman
                                               Debbie L. Berman
                                               Wade A. Thomson
                                               Benjamin T. Halbig

                                               Attorneys for Defendant PeopleConnect, Inc.