UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEREDITH CALLAHAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PEOPLECONNECT, INC.,<br><br>Defendant. | Case No. 20-cv-09203-EMC<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, TO CERTIFY IMMEDIATE APPEAL**<br><br>Docket No. 99 |

Plaintiffs Meredith Callahan and Lawrence Geoffrey Abraham have filed a class action against Defendant PeopleConnect, Inc. According to Plaintiffs, PeopleConnect misappropriated Plaintiffs' names, photographs, and likenesses and used the same in advertising its products and services, such as "subscription memberships to the website Classmates.com." Compl. ¶ 2. Currently pending before the Court is PeopleConnect's motion for judgment on the pleadings or, in the alternative, for leave to file an interlocutory appeal. In essence, PeopleConnect is trying to resuscitate its argument that Plaintiffs are collaterally estopped from arguing that PeopleConnect does not have CDA immunity (as Judge Beeler held in the similar *Ancestry* case). In the alternative, PeopleConnect argues that the issue of immunity under the Communications Decency Act ("CDA") should be certified for immediate appeal to the Ninth Circuit.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** PeopleConnect's motion for relief.

### I.   FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs initiated this lawsuit in December 2020. *See* Docket No. 2 (complaint). Subsequently, PeopleConnect moved to compel arbitration or for dismissal pursuant to Federal

Rule of Civil Procedure 12(b)(6). In May 2021, the Court denied the motion to compel arbitration. *See* Docket No. 40 (order). The following month, PeopleConnect appealed that ruling.

Several months later, in November 2021, the Court denied PeopleConnect's motion to stay pending appeal. The Court also addressed the merits of PeopleConnect's motion to dismiss. *See* Docket No. 76 (order).

One of the issues raised in the motion to dismiss was whether PeopleConnect had immunity under the Communications Decency Act ("CDA"). *See* 47 U.S.C. § 230(c)(1) (providing that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider"); *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (stating that the statute "'protects from liability (1) a provider or user of an interactive computer service [*e.g.*, a website] (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider'"). PeopleConnect argued that it did have CDA immunity – but first asserted that the merits issue need not be decided because Plaintiffs were precluded from contending that PeopleConnect did not have such immunity. PeopleConnect pointed out that Plaintiffs had brought the same basic suit against a different defendant, Ancestry, and that, in that case, Judge Beeler found that Ancestry was protected by CDA immunity. *See Callahan v. Ancestry.com Inc.*, No. 20-cv-08437-LB, 2021 U.S. Dist. LEXIS 37811 (N.D. Cal. Mar. 1, 2021) (hereinafter "*Ancestry I*"); *Callahan v. Ancestry*, No. 20-cv-08437-LB, 2021 U.S. Dist. LEXIS 112036 (N.D. Cal. June 15, 2021) (hereinafter "*Ancestry II*"). In other words, PeopleConnect invoked defensive collateral estoppel. *See Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 884 (9th Cir. 2007) (stating that defensive collateral estoppel "'occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant'").

The Court rejected PeopleConnect's defensive collateral estoppel argument for two reasons. First, the Court had to apply California law on collateral estoppel and, under California law, there is no final judgment where a case is on appeal –which was the case in *Ancestry* (*i.e.*,

2

1  Plaintiffs had appealed Judge Beeler's decisions).  Second, the Court held that, even if the
2  technical requirements of collateral estoppel had been met, "the doctrine is to be applied only
3  where such application comports with fairness and sound public policy."  Docket No. 76 (Order at
4  8) ( internal quotation marks omitted).  The Court noted that this was true for offensive collateral
5  estoppel; "[s]imilar concerns should inform defensive collateral estoppel as well."  Docket No. 76
6  (Order at 8) (citing in support a decision from Judge Spero of this District as well as the
7  Restatement (Second) on Judgments).  The Court concluded that fairness and sound public policy
8  weighed against application of collateral estoppel because, although Judge Beeler had found CDA
9  immunity applicable in a similar case, "other district courts have reached differing conclusions."
10  Docket No. 76 (Order at 7).

11  The Court went on to address the merits of the CDA immunity argument.  The Court took
12  note of the Ninth Circuit's decision in *Batzel v. Smith*, 333 F.3d 1018 (9thCir. 2003), which held
13  that "a service provider or user is immune from liability under § 230(c)(1) when a third person or
14  entity that created or developed the information in question furnished it to the provider or user
15  under circumstances in which a reasonable person in the position of the service provider or user
16  would conclude that the information was provided for publication on the Internet or other
17  'interactive computer service.'"  *Id.* at 1033.  The Court then concluded that, "at the very least,
18  there is a question of fact as to whether a reasonable person in the position of PeopleConnect (the
19  service provider) would conclude that the yearbook authors/publishers (the information content
20  providers) intended the yearbooks to be published on the internet."  Docket No. 76 (Order at 10).
21  After the Court issued its ruling above (in November 2021), the parties agreed to a stay of
22  proceedings pending PeopleConnect's appeal of the arbitration decision.  PeopleConnect did not
23  ask the Court at that time for an interlocutory appeal with respect its CDA immunity ruling –either
24  with respect to collateral estoppel or with respect to the merits.

25  In the meantime, Plaintiffs' appeal in the *Ancestry* case was proceeding.  In February 2022,
26  the Ninth Circuit scheduled oral argument for the *Ancestry* appeal.  But just one week later,
27  Plaintiffs voluntarily moved to dismiss their appeal.  Although Ancestry opposed the motion, the
28  Ninth Circuit granted it in March 2022 (although the court also awarded Ancestry its costs).  *See*

3

1   Mot. at 5-6.  Also in March 2022, the Ninth Circuit issued its decision affirming this Court's order

2   denying PeopleConnect's motion to compel arbitration.  *See* Docket No. 92 (order).

3           On April 11, 2022, Plaintiffs filed an unopposed motion to lift the stay on proceedings in

4   this case.  The Court lifted the stay on the same day.  *See* Docket No. 97 (order).  The next day,

5   PeopleConnect filed the currently pending motion.  PeopleConnect argues that it is entitled to

6   judgment on the pleadings because of collateral estoppel.  PeopleConnect acknowledges the

7   Court's prior ruling but contends that (1) the *Ancestry* case is now final for purposes of collateral

8   estoppel since the appeal has been resolved and (2) assuming that it is appropriate to consider

9   equities for defensive collateral estoppel (as opposed to offensive), the equities now weigh in

10  PeopleConnect's favor because Plaintiffs chose to voluntarily dismiss the appeal in *Ancestry* even

11  though that would have addressed the issue of whether CDA immunity was appropriate.  In the

12  alternative, PeopleConnect asks for an interlocutory appeal so that it may get the CDA immunity

13  issue resolved by the Ninth Circuit (as Ancestry had tried to do).

## II.     DISCUSSION

A.    Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).

> A Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, and the same legal standard applies to both.  Thus, when considering a Rule 12(c) motion, a district court "must accept the facts as pled by the nonmovant."  The district court then must apply the *Iqbal* standard to determine "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief."

*Knoles v. Teva Pharm. USA, Inc.*, No. 17-cv-06580-BLF, 2019 U.S. Dist. LEXIS 11131, at *3 (N.D. Cal. Jan. 23, 2019).  As indicated above, in the instant case, PeopleConnect argues that Plaintiffs no longer have plausible claims because it is now clear that they are collaterally estopped from disputing that PeopleConnect has CDA immunity.  PeopleConnect, in essence, asks the Court to take judicial notice that the *Ancestry* case is now final for purposes of collateral estoppel.  PeopleConnect also asserts that the other elements of collateral estoppel have clearly

4

been met. *See Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903, 910 (1986) (stating that "[t]he doctrine of collateral estoppel precludes relitigation of an issue previously adjudicated if: (1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the plea is asserted was a party, or in privity with a party, to the previous suit"); *see also* Mot. at 7-8 (noting that "Plaintiffs here are the same plaintiffs in *Ancestry*" and that "the issue the *Ancestry* court resolved regarding Section 230's application is identical as between this case and the *Ancestry* case").

The problem for PeopleConnect is that the Court's prior decision did not rest alone on the fact that there was no final decision (at that time) in *Ancestry*. Rather, as noted above, the Court also found fairness/public policy reasons not to apply collateral estoppel – specifically, the fact that other courts had disagreed with Judge Beeler on the CDA immunity issue. PeopleConnect acknowledges as much but contends that the equities have now changed such that the Court should revisit its fairness/public policy assessment. PeopleConnect emphasizes that Plaintiffs lost the CDA immunity issue in *Ancestry* and then "declined to see [the issue] through to final resolution [before the Ninth Circuit]." Mot .at 9 (emphasis added). In other words, according to PeopleConnect, "having taken an appeal and abandoned it – [even] after the appeal was briefed and scheduled for oral argument – Plaintiffs cannot be heard to complain that it would be unfair to hold them to that result." Mot. at 9.

As a preliminary matter, the Court reaffirms its earlier ruling that fairness and public policy are proper considerations whether offensive collateral estoppel is at issue or defensive (as here). Admittedly, PeopleConnect has not asked the Court to reconsider this issue. *See* Reply at 3 n.1 (stating that, although "there is reason to question whether the equitable exception applies in the defensive application of collateral estoppel context, . . . PeopleConnect assumes arguendo that it applies for purposes of this Motion"). Nevertheless, in the interest of justice, the Court has reconsidered it and arrives at the same conclusion.

First, collateral estoppel is an equitable doctrine. That fact alone suggests fairness/public policy concerns may be considered for offensive and defensive collateral estoppel alike. *See*

5

*White Motor Corp. v. Teresinski*, 214 Cal. App. 3d 754, 763 (1989) (noting that "'[c]ollateral estoppel is an equitable concept based on fundamental principles of fairness,'" although adding that "the offensive use of collateral estoppel is more closely scrutinized than the defensive use of the doctrine"); *see also PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) (stating that "collateral estoppel is an equitable doctrine – not a matter of absolute right[;] [i]ts invocation is influenced by considerations of fairness in the individual case"); *cf. Blonder-Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313, 334 (1971) (in discussing collateral estoppel, stating that, "[i]n the end, decision [on an issue of collateral estoppel] will necessarily rest on the trial courts' sense of justice and equity").

Second, the Court finds persuasive an opinion from Judge Whyte of this District that favors application of fairness/public policy considerations in the defensive collateral estoppel context. *See Hynix Semiconductor Inc. v. Rambus Inc.*, No. C-00-20905 RMW, 2009 U.S. Dist. LEXIS 10944 (N.D. Cal. Feb. 3, 2009). There, Judge Whyte noted as follows:

> Hynix urges that the court only possesses discretion regarding the application of non-mutual issue preclusion in "offensive" situations, and that in "defensive" contexts, the court has no discretion regarding the application of issue preclusion. The Supreme Court's jurisprudence rejects the blanket application of preclusion principles urged by Hynix. "'[T]here is no intrinsic difference between 'offensive' as distinct from 'defensive' issue preclusion, although a stronger showing that the prior opportunity to litigate was adequate may be required in the former situation than the latter.'" *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 fn.16 (1979) (quoting the Restatement (Second) of Judgments § 88, Reporter's Note). Indeed, the first endorsement by the Supreme Court of non-mutual issue preclusion related to the "defensive" use of a prior judgment that a patent was invalid. *Blonder-Tongue*, 402 U.S. at 334. Yet the Court, as quoted above, emphasized the need for careful, equitable application of the doctrine. *See id.* at 333-34.

*Id.* at *12-13.

To be sure, the Court recognizes that, as a general matter, there is a greater possibility of unfairness in applying offensive collateral estoppel as opposed to defensive collateral estoppel. For instance, as the Supreme Court has explained in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979), in the offensive context, the defendant in the first suit may be sued for small or nominal damages, in which case he would have little incentive to defend, especially if future suits

6

are not foreseeable. There is also the prospect of multiple suits against the same defendant by a series of plaintiffs, each waiting to prevail. *See id.* at 329-30. But that does not mean there is never a valid fairness/public policy consideration in the defensive context. The differences in context suggest at most that, where defensive collateral estoppel is at issue, a plaintiff may need to make a stronger showing of the equities in her favor before a court should decline to apply issue preclusion.

In the instant case, even if the Court were to require that Plaintiffs make a stronger showing of the equities in their favor (*i.e.*, because defensive collateral estoppel is at issue and not offensive), they have sufficiently made that showing. At the time the Court rejected CDA immunity for 12(b)(6) purposes, there were only a few cases that had addressed the issue of CDA immunity in similar circumstances – most favored Plaintiffs rather than PeopleConnect. Since the Court's decision, more courts have issued decisions on CDA immunity in similar situations and overwhelmingly they are favorable to Plaintiffs, not PeopleConnect. *See* Opp'n at 3 (citing multiple "courts, including this one, [that] have rejected PeopleConnect's CDA immunity argument, holding that websites that use personal information or photographs to advertise subscriptions without permission from the subjects or content creators do not have CDA immunity"[1]; adding that several of the cases of which this Court expressly took note – *e.g.*, *Sessa*

---

[1] *See, e.g.*:

- *Kellman v. Spokeo, Inc.*, No. 3:21-cv-08976-WHO, 2022 U.S. Dist. LEXIS 71985, at *35 (N.D. Cal. Apr. 19, 2022) (noting that CDA immunity applies only if the defendant/interactive computer service provider is not also an information content provider; "Spokeo [which runs a website that provides information about particular individuals aggregated from various sources] is not alleged to merely host *user-generated* content, it is alleged to actively take content from other sources, curate it, and upload it to its site in a novel configuration for repurposes uses") (emphasis in original).

- *Boshears v. PeopleConnect, Inc.*, No. C21-1222 MJP, 2022 U.S. Dist. LEXIS 54277, at *34-35 (W.D. Wash. Mar. 25, 2022) (noting that an interactive computer servicer provider that creates content itself is also an information content provider and not entitled to CDA immunity; the "issue in this case is whether Classmates' decision to create advertisements using Boshears' persona to sell subscription services violates the [law–] [t]hat content is generated expressly by Classmates and the advertisement is not merely a passive display of content created by another entity, even if it contains a picture from a school yearbook").

and *Knapke* – have "expressly rejected the reasoning in *Ancestry II*"). Judge Beeler's *Ancestry* decision seems to be the only case that lends real support to PeopleConnect. The fact that cases now weigh even more against PeopleConnect tilts the equities strongly in Plaintiffs' favor. As Judge Whyte observed in *Hynix*, "'[t]he existence of inconsistent prior judgments is perhaps the single most easily identified factor that suggests strongly that neither should be given preclusive effect.'" *Hynix*, 2009 U.S. Dist. LEXIS 10944, at *16-17. Moreover, as Judge Whyte and others have noted, the unfairness of applying collateral estoppel in the face of conflicting adjudications is

---

- *Bonilla v. Ancestry.com Ops. Inc.*, No. 20-C-07390, 2021 U.S. Dist. LEXIS 233870, at *13-14 (N.D. Ill. Dec. 7, 2021) (rejecting CDA immunity at 12(b)(6) because "Plaintiff has alleged that Ancestry collected and organized records and subsequently used Plaintiff's and the putative class members' names, likenesses, and identities in these records they curated for commercial gain").

- *Krause v.Rocketreach*, No. 21 CV 1938, 2021 U.S. Dist. LEXIS 179676, at *10-11 (N.D. Ill. Sept. 21, 2021) (rejecting CDA immunity because "[t]he complaint's description of defendant's website [which offers paid subscription access to a database of emails and direct dials] is inconsistent with the inference that it functions as a 'passive conduit'"; "the complaint alleges that defendant curated . . . information for commercial gain and used plaintiff's and the class members' identities to do so").

- *Sessa v. Ancestry.com Ops. Inc.*, No. No. 2:20-cv-02292-GMN-BNW, 2021 U.S. Dist. LEXIS 177337, at *29-32 (D. Nev. Sept. 16, 2021) (concluding that defendant acted as information content provider and adding that, even if it were not, "the Court cannot grant dismissal based on the facts alleged in the Complaint because it is unclear whether the yearbook providers [i.e., publishers] –the 'information content providers' who are 'responsible . . . for the creation or development' of the yearbooks – consented to the information's publication on the internet").

- *Knapke v. Peopleconnect Inc.*, 553 F. Supp. 3d 865, 875 (W.D. Wash 2021) (concluding that PeopleConnect's "customized advertisement" involving the use of a yearbook photograph was not protected by the CDA; PeopleConnect was not just the publisher of content provided by someone else but rather was "the publisher of its own content, which is unprotected by the CDA").

- *Kolebuck-Utz v. Whitepages Inc.*, No. C21-0053-JCC, 2021 U.S. Dist. LEXIS 77300, at *9 (W.D. Wash. Apr. 22, 2021) (denying motion to dismiss filed by Whitepages, which sells background reports and monthly subscription services to access such reports, because plaintiff had alleged that Whitepages "*does*, in fact, generate content") (emphasis in original).

- *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 763 (N.D. Ill. 2020) (stating that "Whitepages [which compiles and generates background reports on people] did not act as a mere passive transmitter or publisher of information that was 'provided by another information content provider' [but] [r]ather . . . is alleged to have actively compiled and collated, from several sources, information regarding Lukis[;] [t]he CDA therefore does not shield Whitepages from liability").

heightened where "'[t]he issue is *one of law* and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based.'" *Id.* (emphasis added). This is consistent with the Ninth Circuit's observation in *Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080 (9th Cir. 2007) that "'[i]ssue preclusion has never been applied to issues of law with the same rigor as to issues of fact.'" *Id.* at 1086.

Accordingly, the Court declines to apply defensive collateral estoppel and thus denies PeopleConnect's motion for judgment on the pleadings.

B.   Motion for Interlocutory Appeal

Because the Court is denying PeopleConnect's motion for judgment on the pleadings, it must address the alternative motion seeking leave to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The issue for appeal would relate to the merits of the Court's prior decision rejecting CDA immunity for purposes of 12(b)(6).

As an initial matter, the Court notes that it could deny the motion outright on the basis of untimeliness. There is not, as Plaintiffs suggest, a thirty-day clock for the filing of an interlocutory appeal. Rather, courts have essentially asked whether the filing was made within a reasonable time, *i.e.*, without undue delay. *See Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc.*, 202 F.3d 957, 958 (7th Cir. 2000) (stating that "[t]here is no time limit in the statute or in any applicable rules for seeking the district judge's permission to appeal under 1292(b), . . . [b]ut a district judge should not grant an inexcusably dilatory request"); *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, 2016 U.S. Dist. LEXIS 28804, at *6 (S.D.N.Y. Mar. 7, 2016) (noting that "[a] movant's delay in filing a motion for interlocutory appeal may alone be sufficient ground for denying such a motion"; indicating that a three-month delay is too long). The Court's 12(b)(6) order on CDA immunity issued on November 1, 2021. PeopleConnect did not file its pending motion for relief until April 12, 2022 – *i.e.*, more than five months later. PeopleConnect's failure to act in a more timely fashion is particularly troubling given that it had already appealed this Court's order denying arbitration. Given that pending appeal, PeopleConnect easily could have asked the Court to certify an interlocutory appeal shortly after it issued its 12(b)(6) decision.

1 Indeed, at the time the Court issued its 12(b)(6) order, Plaintiffs had yet to file their responsive 2 appellate brief on the arbitration issue. PeopleConnect did not.

3 In its papers, PeopleConnect contends that it did not delay in seeking an interlocutory 4 appeal because the Court stayed proceedings (pursuant to an unopposed request by Plaintiffs) 5 pending the appeal of the arbitration order. PeopleConnect points out that the stay was lifted on 6 April 11, 2022, and it filed its motion the very next day. But PeopleConnect easily could have 7 asked for a limited exception to the stay to permit it to seek an interlocutory appeal.

8 In the interest of justice, however, the Court also considers the merits of the motion for an 9 interlocutory appeal. Section 1292(b), which governs such appeals, provides in relevant part as 10 follows:

> When a district judge . . . shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). "[T]he party pursuing the interlocutory appeal bears the burden of . . . demonstrating" that (1) the district court order at issue involves a controlling question of law; (2) there is substantial ground for difference of opinion on that legal question; and (3) an immediate appeal on that legal question may materially advance the ultimate termination of the litigation. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). All three requirements must be met for there to be certification under § 1292(b). *See id.*

In the case at bar, PeopleConnect seeks to certify the following question:

> Whether a website operator that displays in an online format school yearbooks that it did not create or develop and excerpts thereof is immune from liability under 47 U.S.C. § 230 for state law causes of action that seek to attach liability based on the way in which the website operator obtains and displays the information extracted from those yearbooks and yearbook excerpts.

Mot. at 11. According to PeopleConnect, the pure legal question here is whether there can be CDA immunity "in the absence of evidence that the original creator of the third-party material intended for that material to be presented online." Mot. at 12 (arguing that PeopleConnect has

10

immunity because "its website displays yearbooks and excerpts from those yearbooks that it played no part in creating"). Or to state the matter somewhat differently, the legal question is "whether the yearbooks and excerpts thereof that PeopleConnect presents in its purported 'advertisements' are necessarily and categorically 'provided by another content provider' because it is conceded that PeopleConnect played no role in creating those yearbooks."[2] Reply at 6.

As an initial matter, the Court notes that, even if there is a pure question of law here, it is – as defined by PeopleConnect – fairly narrow in scope. The narrowness is significant because § 1292(b) requires that there be a *controlling* question of law. The Ninth Circuit has noted that an issue of law is controlling where resolution of the issue on appeal "could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). This standard is somewhat similar to that contained in the third interlocutory appeal requirement identified above – *i.e.*, that an immediate appeal on the legal question may materially advance the ultimate termination of the litigation.

The Court finds that these standards have not been met in the instant case. As Plaintiffs point out, even if PeopleConnect were to prevail on the specific issue it has identified, that still would not guarantee it CDA immunity because it would still have to show that it is not an information content provider itself. *See Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (stating that the "grant of immunity applies only if the interactive computer service provider is not also an 'information content provider,' which is defined as someone who is 'responsible, in whole or in part, for the creation or development of' the offending content"). Here, Plaintiffs have articulated a plausible basis for asserting that PeopleConnect also acted as an information content provider by using, *e.g.*, their names and likenesses in advertising its subscription membership. *See* Opp'n at 11 (noting that the "Court would still need to resolve the question of whether PeopleConnect is an 'information content provider' because it developed the on-screen advertisements giving rise to Plaintiffs' complaint").

---

[2] The CDA immunity provision states as follows: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

Finally, it is worth noting that even the second interlocutory appeal requirement has not clearly been met in the instant case. Admittedly, Judge Beeler's decision in *Ancestry II* is favorable to PeopleConnect. But her decision in and of itself does not mean there is a substantial ground for difference of opinion.

> To determine if a "substantial ground for difference of opinion" exists under § 1292(b), courts must examine to what extent the controlling law is unclear. Courts traditionally will find that a substantial ground for difference of opinion exists where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." However, "just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal."

*Couch*, 611 F.3d at 633; *see also Tsyn v. Wells Fargo Advisors, LLC*, No. 14-cv-02552-LB, 2016 U.S. Dist. LEXIS 57519, at *10-11 (N.D. Cal. Apr. 29, 2016) (stating that "it would not warrant a § 1292(b) appeal simply because another district court reached a different decision in a broadly similar case"); *Spears v. Wash. Mut. Bk. FA*, No. 08-00868 RMW, 2010 U.S. Dist. LEXIS 1454, at *10 (N.D. Cal. Jan. 8, 2010) (stating that "the mere fact that one district court came to a different conclusion on the same issue is insufficient to establish a substantial ground for difference of opinion"; adding that § 1292 is limited to "'exceptional situations'"). Simply put, there is a dearth of authority supporting PeopleConnect's position. Furthermore, as the Court explained in its prior order, Judge Beeler stated that "[n]othing in *Batzel* requires the original creator's permission for publication," *Ancestry II*, 2021 U.S. Dist. LEXIS 112036, at *18, but Judge Beeler did not address the CDA's definition of "information content provider." *See* Docket No. 75 (Order at 11) (stating that Judge Beeler's "view is not consistent with the express definition of 'information content provider' under the CDA; an information content provider is one who created or developed the information at issue," and, "[i]n the instant case, the yearbook authors/publishers are the only ones who meet that criteria"); *see also Sessa*, 2021 U.S. Dist. LEXIS 177337, at *31 (holding that "the yearbook publishers, not those who sent Ancestry yearbooks, are the relevant information content providers").

12

To the extent PeopleConnect suggests that there is some case law favorable to its position, that position is not well supported. The cases are largely distinguishable. *See, e.g.*, *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 589-90 (9th Cir. 2017) (finding CDA immunity for Facebook for the publication of private images and videos of the plaintiff supplied by a third party; however, not addressing the requirement of "provided by [an] information content provider" and *Batzel*'s interpretation of that phrase); *Perfect 10, Inc. v. CCBill, LLC*, 340 F. Supp. 2d 1077, 1110-11 (C.D. Cal. 2004) (addressing *Batzel* but characterizing *Batzel* as focusing on *private* communications only); *see also Force v. Facebook, Inc.*, 934 F.3d 53, 65-69 (2d Cir. 2019) (indicating that a third party's providing of information to the publisher leads to CDA immunity; however, case related to Facebook's alleged failure to delete content from Hamas members' Facebook pages).

The Court therefore denies PeopleConnect's motion for an interlocutory appeal as well.

### III.	CONCLUSION

For the foregoing reasons, PeopleConnect's motion for judgment on the pleadings, and alternative motion for an interlocutory appeal, are both denied.

This order disposes of Docket No. 99.

**IT IS SO ORDERED**.

Dated: June 14, 2022

_____
EDWARD M. CHEN
United States District Judge