Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Telephone: (415) 358-6293

*Attorneys for Plaintiffs and the Proposed Class*

[Additional Counsel Listed on Signature Page]

## THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| LAWRENCE GEOFFREY ABRAHAM, ALICE ZHANG, WAYNE TSENG, and JAMAAL CARNEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PEOPLECONNECT, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:20-cv-09203-EMC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Complaint Filed: Dec. 18, 2020<br><br>Hearing Date: January 12, 2023<br>Hearing Time: 1:30 p.m.<br>Judge Edward M. Chen, Courtroom 5 |

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on January 12, 2023, at 1:30 p.m. in Courtroom 5 of the United States District Court for the Northern District of California, San Francisco, Plaintiffs Lawrence Geoffrey Abraham, Alice Zhang, Wayne Tseng, and Jamaal Carney will and hereby do move for an Order certifying the following Class pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3):

> All persons residing in the State of California who are not registered users of Classmates.com and whose names and yearbook photographs were searchable on the Classmates.com website at any time between December 18, 2018, and the present.

Plaintiffs further request that the Order appoint them as Class Representatives. Plaintiffs further request the Order appoint Morgan & Morgan LLP, Turke & Strauss LLP, and the Law Office of Benjamin R. Osborn as Class Counsel.

In support of this Motion, Plaintiffs refer to the Memorandum of Points and Authorities below, the accompanying declarations of Cliff Kupperberg, Steven Weisbrot, Michael F. Ram, Raina C. Borrelli, Benjamin R. Osborn, Lawrence Geoffrey Abraham, Alice Zhang, Wayne Tseng, and Jamaal Carney, and the accompanying Proposed Order Granting Class Certification and Proposed Trial Plan.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ............................................................. 2

TABLE OF CONTENTS ............................................................................... 3

TABLE OF AUTHORITIES ........................................................................ 4

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

   I.   Introduction ............................................................................... 1

   II.  Procedural Background and Proposed Class ............................... 3

   III. Legal standard ........................................................................ 4

   IV. Argument ................................................................................ 5

      A.  The Requirements of Rule 23(a) are satisfied ........................ 5

         1.  The proposed Class is so numerous that joinder is impracticable. ........ 5

         2.  There are questions of law and fact common to the proposed Class. ....... 5

         3.  Plaintiffs' claims are typical of those of the proposed Class. ............... 8

         4.  Plaintiffs and their counsel are adequate representatives. ............ 13

      B.  The Predominance Requirement of Rule 23(b)(3) is Satisfied. ........ 15

      C.  The Superiority Requirement of Rule 23(b)(3) is Satisfied. ........... 21

      D.  The Proposed Class Also Satisfies the Requirements of Rule 23(b)(2). ......... 23

CONCLUSION ......................................................................................... 24

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Adarand Constructors, Inc. v. Slater*,
   528 U.S. 216 (2000)................................................................................................ 10

4

5

*Amgen v. Conn. Ret. Plans and Trust Funds*,
   568 U.S. 455 (2013)................................................................................................ 16

6

7

*Bateman v. American Multi-Cinema*,
   623 F.3d 708 (9th Cir. 2010) ................................................................................. 21

8

*Bias v. Wells Fargo & Co.*,
   312 F.R.D. 528 (N.D. Cal. 2015) ........................................................................... 11

9

10

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ................................................................................... 5

11

12

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ........................................................................ 22, 23

13

*Callahan v. PeopleConnect*,
   20-cv-09203-EMC, 2021 WL 5050079 (N.D. Cal. Nov. 11, 2021)................... 2, 6, 17, 18, 21

14

15

*Christoff v. Nestle USA, Inc.*,
   62 Cal. Rptr. 3d 122 (Cal. Ct. App. June 29, 2007)............................................... 12

16

17

*Eisen v. Carlisle Jacquelin*,
   417 U.S. 156 (1974)................................................................................................ 22

18

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011)................................................................................................ 16

19

20

*Espinosa v. Ahearn*,
   926 F.3d 539 (9th Cir. 2019) ................................................................................. 13

21

22

*Estate of Fuller v. Maxfield & Oberton Holdings, LLC*,
   906 F. Supp. 2d 997 (N.D. Cal. 2012) ................................................................... 12

23

*Fischer v. InstantCheckmate LLC*,
   19 C 4892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022)......................... 3, 8, 9, 10, 17, 19

24

25

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)................................................................................................ 10

26

27

*Gutierrez v. Wells Fargo Bank, NA*,
   704 F.3d 712 (9th Cir. 2012) ................................................................................. 18

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998),
*overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) . 5, 14, 15

*Hansen v. The Coca-Cola Co.*,
No. D077588, 2021 WL 2462275 (Cal. Ct. App. June 17, 2021) .......................................... 12

*Hernandez v. Wells Fargo Bank, N.A.*,
No. 18-cv-07354 (N.D. Cal. Jan. 29, 2020)........................................................................... 22

*Huebner v. Radaris, LLC*,
14-cv-04735-VC, 2016 WL 8114189 (N.D. Cal. Apr. 12, 2016)............................................. 3

In *Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ................................................................................................. 21

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015)............................................................................................. 5

*Knapke v. PeopleConnect*,
553 F. Supp. 3d 865 (W.D. Wash. 2021)............................................................................... 10

*Levya v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) ................................................................................................. 22

*Martinez v. ZoomInfo*,
No. 21-cv-5725, 2022 WL 1078630 (W.D. Wash. Apr. 11, 2022) ......................................... 20

*Meyer v. Bebe Stores, Inc.*,
No. 14-cv-00267, 2017 WL 558017 (N.D. Cal. Feb. 10, 2017)............................................. 23

*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012) ................................................................................................. 8

*Miller v. Mercedes-Benz USA*,
No. 06-cv-5382, 2009 WL 1393488 (C.D. Cal., May 15, 2009)............................................ 13

*Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*,
No. 19-56514 (9th Cir. Apr. 8, 2022) ...................................................................................... 4

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ................................................................................................. 23

*Pitts v. Terrible Herbst Inc.*,
653 F.3d 1081 (9th Cir. 2011) ................................................................................................. 9

*Resnick v. Frank*,
779 F.3d 934 (9th Cir. 2015) ........................................................................................... 14, 15

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2009) .................................................................... 8, 13

*Schofield v. Delta Air Lines, Inc.*,
    No. 18-cv-00382-EMC (N.D. Cal. Feb. 27, 2019) ..................................... 13

*Sessa v. Ancestry.com*,
    561 F. Supp. 3d 1008 (D. Nev. 2021) ........................................................ 20

*Shively v. Bozanich*,
    31 Cal.4th 1230 (Cal. 2003) ...................................................................... 12

*Shum v. Intel Corp.*,
    630 F. Supp. 2d 1063 (N.D. Cal. 2009) ..................................................... 18

*Siegel v. ZoomInfo Techs*,
    No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021) ................... 10

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) ..................................................................... 23

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..................................................................... 14

*True Health Chiropractic, Inc. v. McKesson Corp.*,
    896 F.3d 923 (9th Cir. 2018) ..................................................................... 11

*Trustees of Red Dot Corp. Employee Stock Ownership Plan and Trust*,
    268 F.R.D. 670 (W.D. Wash. 2010) ............................................................ 5

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016).............................................................................. 11, 15

*United Steel v. Conocophillips Co.*,
    593 F.3d 802 (9th Cir. 2010) ..................................................................... 13

*West v. California Servs. Bureau, Inc.*,
    323 F.R.D. 295 (N.D. Cal. 2017)................................................................ 23

*Wolin v. Jaguar Land Rover North America, LLC*,
    617 F.3d 1168 (9th Cir. 2010) ..................................................................... 8

*Yeager v. Bowlin*,
    No. CIV. 2:08-102 WBS JFM, 2010 95242 (E.D. Cal. Jan. 6, 2010) ....... 12

**Statutes**

Cal. Bus. & Prof. Code §17200 *et seq.* ........................................... 1, 3, 4, 18

Cal. Civ. Code § 3344.......................................1, 2, 3, 4, 6, 7, 8, 10, 11, 13, 16, 17, 18, 19, 20, 21

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

PeopleConnect, which owns and operates the website www.classmates.com, is in the business of selling individual's names, childhood photographs, and personal information without their consent. PeopleConnect uses California residents' names and childhood photographs in advertisements promoting paid subscriptions to Classmates. California law recognizes the intellectual property and privacy rights of individuals to control the commercial use of their names and likenesses. PeopleConnect's non-consensual use of California residents' names and photographs violates these important and long-standing legal rights.

Plaintiffs move for certification under Rules 23(b)(3) and 23(b)(2) of their California statutory right of publicity (Cal. Civ. Code § 3344), Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §17200 *et seq.*,), and unjust enrichment claims. This is a paradigmatic case for class treatment. Plaintiffs' and Class members' claims arise from PeopleConnect's use of their names and yearbook photographs in public webpages designed to advertise subscriptions to Classmates.com. ██████████████████████████, PeopleConnect obtained digital copies of yearbooks containing the names and photographs of minors belonging to millions of Californians. *See* Osborn Decl., Exs. 1-5. PeopleConnect incorporated each Class members' name and childhood photograph into the same advertising flow in the same way. *See* Dkt. No. 132 ("FAC"), at ¶¶56-65; 70-77; 88-96; 106-114; Osborn Decl., Ex. 7, at ¶¶6-10 (describing the flow of the Classmates website consistently with Plaintiffs' FAC); Osborn Decl., Ex. 9 ("Toivola Tr."), at 42:4-44:25, 48:10-51:23. The flow begins by prompting users to search for Class members they may know. FAC, at ¶¶57, 73, 91, 109; Osborn Decl., Ex. 7, at *18-19, 23, 39-46. After a search is entered, PeopleConnect displays a page of results including low-resolution versions of Class members' photographs as children. FAC, at ¶¶58, 74, 92, 110; Toivola Tr., at 41:2-42:18 (██████████████████████), 54:12-61:25 (████████████ ████████████). Users who click on Class members' names or photographs, or who

click banner ads shown adjacent to the search results, are shown a pop-up and webpage asking the user to register for an account and purchase a recurring subscription for $3.00 per month. FAC, at ¶¶60-61, 75-77, 93-95, 111-113; Toivola Tr., at 41:2-42:18, 45:22-46:24. 54:12-61:25. Because PeopleConnect displays the same advertisements for every Class member in violation of § 3344 of the California Civil Code, liability is subject to Class-wide proof.

Damages are also subject to Class-wide proof. Section 3344 provides for $750 in minimum statutory damages per violation. Class members are entitled to the statutory minimum if they show they "suffered injury." *See Callahan v. PeopleConnect*, 20-cv-09203-EMC, 2021 WL 5050079, at *16-17 (N.D. Cal. Nov. 11, 2021). Here, Class members suffered several forms of injury, all of which are susceptible to common proof. For example, Class members were injured by PeopleConnect's failure to compensate them for its commercial use of their likenesses in advertisements. The Court has held that this constitutes injury. *See Callahan*, 2021 WL 5050079, at *19. That PeopleConnect's failure to compensate Class members caused them economic injury is confirmed by the substantial factual record showing PeopleConnect ascribes tangible economic value to Class members' yearbook photographs. PeopleConnect ███████████████████████ ████████████████████████████████████████████████████████████████████ receives licensing fees from third parties for the same right. Osborn Decl., Exs. 1-3 & 6. At least one of PeopleConnect's licensees uses Class members' yearbook photographs for the same purpose PeopleConnect does: advertising website subscriptions. *See id.*, at Ex. 6 (PeopleConnect licenses its yearbook database to Ancestry.com). Because each Class member is entitled to the same statutory minimum damages so long as they suffered injury in some amount, even were there variation within the Class in the amount PeopleConnect earned from each photograph, this would be irrelevant to the calculation of damages in this case.

At least two courts have granted class certification in highly similar cases involving statutory right of publicity claims. In *Fischer v. InstantCheckmate LLC*, Judge Feinerman certified under Rule 23(b)(3) a class of Illinois residents whose names and personal information

appeared in a searchable database published by InstantCheckmate. 19 C 4892, 2022 WL 971479, at *3, 15 (N.D. Ill. Mar. 31, 2022). Like Classmates.com, InstantCheckmate.com – which is also owned by PeopleConnect – used search results containing individuals' names and identities to advertise subscriptions. *See id.*, at *8. The *Fischer* court considered and rejected many of the arguments PeopleConnect may raise here. Similarly, in *Huebner v. Radaris, LLC*, Judge Chhabria certified under Rules 23(b)(3) and 23(b)(2) a class of individuals asserting Cal. Civ. Code § 3344 claims (among others) against a similar people-search site. 14-cv-04735-VC, 2016 WL 8114189, at *1-2 (N.D. Cal. Apr. 12, 2016). Plaintiffs' counsel are unaware of any court that has denied class certification in a similar case. There is no reason for a different result here. Plaintiffs' motion should be granted.

## II.    PROCEDURAL BACKGROUND AND PROPOSED CLASS

On December 18, 2020, Plaintiff Abraham filed a class action complaint in the United States District Court for the Northern District of California asserting claims under California's Right of Publicity Statute (Cal. Civ. Code § 3344); California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); California intrusion upon seclusion, and California unjust enrichment. Dkt. No. 2 ("Complaint"). Plaintiff Abraham alleged that PeopleConnect used his name and yearbook photograph as a child without his consent to advertise paid subscriptions to the Classmates.com website in violation of his intellectual property and privacy rights. *Id.*

On May 18, 2021, the Court denied PeopleConnect's motion to compel arbitration. Dkt. No. 26. On June 16, 2021, PeopleConnect filed a notice of appeal and sought interlocutory appeal to the Ninth Circuit of this Court's denial of the motion to compel arbitration. Dkt. No. 47.

On November 1, 2021, the Court denied PeopleConnect's motion to stay pending appeal of its motion to compel arbitration; denied PeopleConnect's motion to stay discovery; denied PeopleConnect's motion to strike under California's anti-SLAPP statute; and granted in part and denied in part PeopleConnect's motion to dismiss for failure to state a claim. Dkt. No. 76. The Court dismissed Plaintiffs' intrusion upon seclusion claims with leave to amend and dismissed

Plaintiffs' claims arising from the use of their names and photographs to advertise the sale of reprinted yearbooks as preempted by the Copyright Act. *Id*. The Court denied PeopleConnect's motion to dismiss Plaintiff's § 3344, UCL, and unjust enrichment claims arising from PeopleConnect's non-consensual use of yearbook photographs to advertise subscriptions. *Id.*

On December 19, 2021, at PeopleConnect's request, Plaintiff Abraham filed an unopposed motion to stay the district court case pending resolution of PeopleConnect's arbitration appeal. Dkt. No. 86. On March 18, 2022, a three-judge panel of the Ninth Circuit unanimously affirmed this Court's decision denying PeopleConnect's motion to compel arbitration. Dkt. No. 92.

On June 14, 2022, the Court denied PeopleConnect's motion for judgment on the pleadings or to certify immediate interlocutory appeal on the issue of CDA immunity. Dkt. No. 122.

On August 4, 2022, pursuant to a stipulated agreement with PeopleConnect, Plaintiffs filed a First Amended Complaint ("FAC") adding Alice Zhang, Wayne Tseng, and Jamaal Carney as additional named Plaintiffs and proposed Class Representatives. Dkt. Nos. 130-132.

Plaintiffs now respectfully move for an Order certifying the following Class pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3):

> All persons residing in the State of California who are not registered users of Classmates.com and whose names and yearbook photographs were searchable on the Classmates.com website at any time between December 18, 2020, and the present.

### III.    LEGAL STANDARD

"[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*, No. 19-56514 (9th Cir. Apr. 8, 2022).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## IV.    ARGUMENT

### A.  The Requirements of Rule 23(a) are satisfied.

#### 1.  The proposed Class is so numerous that joinder is impracticable.

There can be no serious dispute that the proposed Class satisfies the numerosity requirement. A search on Classmates.com for "John Smith" limited to yearbooks in California yields 97,128 results (each comprising a name and photograph); "Maria Garcia" yields 22,994 results. Borrelli Decl., at ¶3. Even were the proposed Class limited to California residents with those two common names, numerosity would be satisfied.

Plaintiffs retained Clifford I. Kupperberg, a Certified Public Accountant, to assist in calculating Class damages and estimating the size of the Class. Mr. Kupperberg estimates the size of the class to be approximately 5.2 million. Kupperberg Decl., at ¶24. Mr. Kupperberg began from the number of yearbooks from California schools in PeopleConnect's database and multiplied by a conservative estimate of the average number of seniors whose photographs appear in each yearbook. *Id.*, at ¶¶11-24; *see also* Osborn Decl., Ex. 8 ("Smith Tr.") at 25:21-24. Mr. Kupperberg applied adjustments for migration, mortality, and registered users who are excluded from the Class. Kupperberg Decl., at ¶¶11-24. A class of more than 5 million people easily satisfies numerosity.

#### 2.  There are questions of law and fact common to the proposed Class.

Rule 23(a)(2) requires that there be questions of law or fact common to the class. The requirements for showing commonality are "minimal." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Plaintiffs "need only show the existence of a common question of law or fact that is significant and capable of Class-wide resolution." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 592 (N.D. Cal. 2015) (citations omitted). Where the defendant is alleged to "have engaged in standardized conduct toward the members of the proposed class," commonality is easily satisfied. *See Trustees of Red Dot Corp. Employee Stock Ownership Plan and Trust*, 268 F.R.D. 670, 676

1    (W.D. Wash. 2010). Commonality is not "defeated by slight differences in class members'

2    positions." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

3        The Class satisfies commonality. PeopleConnect's liability hinges on its commercial use

4    of Class members' names and yearbook photographs in an on-site advertising flow that begins

5    with a prompt to search for names of people the user may know (*see* FAC, at ¶57; Osborn Decl.,

6    Ex. 7, at *18-19, 23, 39-46); proceeds to screens displaying the Class member's names and low-

7    resolution versions of their photographs as children (*see id.*, at ¶¶58-59; Toivola Tr., at 41:2-42:18,

8    54:12-61:25); and ends with solicitations for website subscriptions (*see id.*, at ¶¶60-62; Toivola

9    Tr., at 41:2-42:18, 45:22-46:24. 54:12-61:25). In a related action, PeopleConnect represented that

10   it displays the same webpages and pop-ups shown in the FAC in response to a search for any

11   name. Osborn Decl., Ex. 7, at ¶¶6, *21, 29-33 (declaration by Classmates employee depicting

12   screenshots of "the series of webpages" Classmates shows in response to "search[es] for a specific

13   person"). ████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████

16   ████████████. Toivola Tr. at 54:12-59:12. Because PeopleConnect incorporates every Class

17   member's name and likeness into the same advertising flow in the same way, liability may be

18   established by common proof.

19       Damages may also be established by common proof. Class members may claim statutory

20   minimum damages under § 3344 of $750 per use if they can show they "suffered injury." *See*

21   *Callahan*, 2021 WL 5050079, at *16-17. That Class members suffered injury may be established

22   by proof that PeopleConnect used and earned a benefit from their names and likenesses without

23   compensating them. *See id.*, at *19 ("Plaintiffs have alleged an economic injury; they were not

24   paid – implicitly, by PeopleConnect – for the use of their names and likenesses"). That

25   PeopleConnect ascribes an economic value to, and earns a benefit from, Class members'

26   likenesses may be established by:

27

(1) PeopleConnect's use of Class members' names and likenesses to advertise.

(2) PeopleConnect's receipt of licensing fees from third parties (such as Ancestry.com ███████████) in exchange for the right to make commercial use of Class members' yearbook photographs. *See* Osborn Decl., at Ex. 6; *see also* Smith Tr. at 101:3-6.

(3) PeopleConnect's ███████████████████████████████████████
███████████████████████████████████████████████
████████████████████. *See* Osborn Decl., Ex. 1, §§1.1 and 2.1
████████████████████████████████████████████████
████████████████████████████████████
████████████████████████████; *see also* Ex. 11, Response to
Interrogatory 1; Exs. 2, 3 (████████████████████████████);
*see also* Smith Tr. at 55:1-15.

(4) PeopleConnect's ████████████████████████████████████
███████████. *See* Osborn Decl., Exs. 4, 5; *see also* Smith Tr. at 55:23-59:7.

Each of these proofs is independently sufficient to establish Class-wide injury, and each may be shown using common evidence.

Thus, while only one common question of law or fact is required, there are many questions of law and fact common to the Proposed Class, including:

- Whether PeopleConnect used Class members' names and likenesses to advertise website subscriptions in an advertising flow identical or substantially similar to the flow shown in the FAC;

- Whether PeopleConnect's regular practices and policies include obtaining consent from Class members prior to using their names and likenesses;

- Whether PeopleConnect ascribes economic value to and derives an economic benefit from its commercial use of Class members' names and likenesses;

- Whether the provision for statutory damages in Cal. Civ. Code § 3344 entitles each Class member to $750 for each of their yearbook photographs PeopleConnect used to advertise Classmates memberships;

- Whether Class members are entitled to injunctive relief, including but not limited to, changes to the Classmates website that would de-associate the display of Class members' names and yearbook photographs from solicitations for the purpose of a website subscription.

The courts in *Fischer* and *Heubner* found commonality was satisfied in cases presenting the same common issues. *See Fischer*, 2022 WL 971479, at *4 (commonality satisfied in right of publicity case against website owned by PeopleConnect that, like Classmates, uses profiles of personal information to advertise subscriptions); *Heubner*, 2016 WL 8114189, at *1 (granting class certification under Rule 23(b)(3) because the defendant people-search website "seems to have acted uniformly in all respects relevant to the plaintiffs' Civil Code § 3344 . . . claims").

### 3.  Plaintiffs' claims are typical of those of the proposed Class.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The "test of typicality [] is whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168 (9th Cir. 2010). This test is met when the claims of the named plaintiffs are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (quotation omitted). "Defenses unique to a class representative counsel against class certification only where they threaten to become the focus of the litigation." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009). In determining whether a unique defense "threatens to become the focus," a court may consider the plausibility of the defense and its own prior rulings regarding the defense. *See id.* (rejecting argument that unique defense undermined typicality because the court had already rejected the defense).

Here, typicality is satisfied because Plaintiffs' claims arise from the same course of conduct, are based on the same legal theories, and seek the same relief as those of Class members. As explained above, Plaintiffs' names and photographs were incorporated in PeopleConnect's on-site advertising flow in the same manner as those of absent Class members. Plaintiffs never

created accounts with Classmates.com, *see* FAC, at ¶¶17, 20, 32, 44; Abraham Decl., at ¶¶3-4; Zhang Decl., at ¶¶3-4; Tseng Decl., at ¶¶3-4; Carney Decl., at ¶¶3-4. By definition, neither have the absent Class members. Any issues arising from account creation – for example, any alleged agreement to a Terms of Service – are therefore common. Plaintiffs seek the same relief as absent Class members, most notably an injunction prohibiting PeopleConnect from advertising using Class members' names and likenesses, and statutory minimum damages in the amount of $750 per photograph.

PeopleConnect may argue, as its subsidiary InstantCheckmate did in *Fischer*, that Plaintiffs' claims are subject to various issues and "unique" defenses that render their claims atypical. *See Fischer*, 2022 WL 971479, at *4-7. None of its potential arguments would hold water.

**Suppression**: PeopleConnect may argue that Plaintiff Abraham's claims are atypical because after he filed suit, ██████████████████████████████████████████ ██████████████████████████████). *See* Osborn Decl., at Ex. 10, Response to Interrogatory 11. First, this does not even arguably affect Mr. Abraham's ability to serve as Class representative with respect to the Rule 23(b)(3) damages class, because PeopleConnect has never compensated Mr. Abraham for the commercial use it made of his name and likeness prior to "suppressing" his photograph. Second, that Classmates temporarily made Mr. Abraham's photograph invisible does not moot his claim for injunctive relief. The Ninth Circuit has ruled that where, as here, a defendant attempts to "pick off" a representative plaintiff by deliberately mooting his claim, the claim becomes "transitory by its very nature" and therefore "relate[s] back to the filing of the complaint." *See Pitts v. Terrible Herbst Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011). This rule prevents defendants from "buy[ing] off the individual private claims of the named plaintiffs before the . . . motion for class certification," which would "contravene Rule 23's core concern: the aggregation of similar, small, but otherwise doomed claims." *Id.* (cleaned up).

Furthermore, "[v]oluntary cessation of challenged conduct moots a case . . . only if it is *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 221 (2000) (quotation omitted) (emphasis in original). PeopleConnect cannot carry its "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc*., 528 U.S. 167, 189 (2000). Absent an injunction, PeopleConnect would be free to "un-suppress" Mr. Abraham's photograph. Therefore, Mr. Abraham's request for injunctive relief is not moot. *See Fischer*, 2022 WL 971479, at \*14-15 (rejecting similar attempt to moot named plaintiff's claim by "suppressing" his personal information).

**Viewing by a Member of the Public**: PeopleConnect may argue that Plaintiffs' claims are atypical because, while the advertising flow incorporating their names and yearbook photographs have been viewed by other individuals, for some members of the Class, it is possible the advertisements incorporating their photographs have not yet been viewed by a member of the public, because no one has yet searched for their names on www.classmates.com. This argument fails because, as multiple courts have held, whether the advertisement was viewed by a member of the public is not relevant to the claims. The right of publicity "does not impose a viewership requirement." *See id.*, at \*11; *Siegel v. ZoomInfo Techs*, No. 21-cv-2032, 2021 WL 4306148, at \*3 (N.D. Ill. Sep. 22, 2021) (rejecting argument that "actual view[ing]" must be alleged); *Knapke v. PeopleConnect*, 553 F. Supp. 3d 865, 876 (W.D. Wash. 2021) (while common law false light claims require "some allegation that members of the public saw the offending image," there is "no valid basis" to import this requirement into the right of publicity). As with the Illinois and Ohio laws at issue in *Fischer*, *Siegel*, and *Knapke*, there is no viewership requirement in § 3344. Plaintiffs' and Class members' claims arise from PeopleConnect's creation of advertisements making unauthorized commercial use of their likenesses. The Class is not required to show whether or how often the advertisements were viewed by members of the public. *See Fischer*,

2022 WL 971479, at *10 ("how many (if any) InstantCheckmate users saw a putative class member's search result . . . is immaterial to whether InstantCheckmate violated the IRPA").[1]

**Statute of Limitations**: PeopleConnect may argue Mr. Abraham's §3344 claim is subject to a "unique" statute of limitations defense because PeopleConnect asserts that it first began advertising using his name and image "on June 13, 2014," which is more than two years prior to the date on which the complaint was filed. *See* Dkt. No. 46, at *46; *Spangler v. Abercrombie & Fitch*, 79 F. App'x 325, 326 (9th Cir. 2003) ("The statute of limitation in California for infringement of the right of publicity is two years"). PeopleConnect may advance a similar argument with respect to the other three named Plaintiffs. This argument does not defeat typicality. First, affirmative defenses do not typically defeat typicality.  "[C]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members." *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 542 (N.D. Cal. 2015). A court may certify a Rule 23(b)(3) class "even though [] important matters will have to be tried separately, such as some affirmative defenses peculiar to some individual Class members." *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018) (alterations omitted) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

Second, there is a substantial likelihood that, were this Court to address the issue, it would find that the statute of limitations does not bar Mr. Abraham's § 3344 claims, those of the other named Plaintiffs, or those of anyone else in the Class. Like the other Class members, Plaintiffs are not users of the website www.classmates.com. Accordingly, they have "had no meaningful opportunity to discover the violation" of their publicity rights. *See Christoff v. Nestle USA, Inc.*,

---

[1] Alternatively, PeopleConnect may argue that its display of the advertisements incorporating Plaintiffs' name and photograph to Plaintiffs' counsel does not qualify as a commercial use of his likeness under Cal. Civ. Code § 3344, and therefore that Plaintiffs' claims are atypical of those whose advertising flows <u>were</u> viewed by members of the public. This variation on the argument fails for the same reason. Because actual viewing by a member of the public is not required to state a right of publicity claim, it does not matter whether PeopleConnect's display of the advertisement to Plaintiffs' counsel "counts" as an "actual viewing."

62 Cal. Rptr. 3d 122, 126 (Cal. Ct. App. June 29, 2007). Plaintiffs had no idea, and no reasonable way of knowing, that PeopleConnect was using their childhood yearbook photographs to advertise subscriptions until counsel informed them of that fact. In these circumstances, California courts apply the "discovery rule," under which the limitations period runs from the time the plaintiff discovered the infringing publication, rather than the date of first publication. *See id.*; *Shively v. Bozanich*, 31 Cal.4th 1230, 1249-50 (Cal. 2003). Furthermore, the record shows that PeopleConnect generates and customizes its interactive advertising flow in a manner that is specific to the user and the search terms she entered. *See* FAC, at ¶58; Osborn Decl., Ex. 7, at *30 (PeopleConnect's search results update interactively depending on the search terms entered); FAC, at ¶29; Osborn Decl., Ex. 7, at *22 (PeopleConnect's payment solicitation page incorporates the searching user's name and yearbook). Because each display is customized to the user who entered the search, each display is a "republication" that re-triggers the limitations period under California law. *See, e.g.*, *Hansen v. The Coca-Cola Co.*, No. D077588, 2021 WL 2462275, at *25 (Cal. Ct. App. June 17, 2021) (unpublished) (finding that distribution of content "identical in form and content to the original" is a "republication" if it was "intended to and did reach a new" audience); *Yeager v. Bowlin*, No. CIV. 2:08-102 WBS JFM, 2010 95242, at *13 (E.D. Cal. Jan. 6, 2010) (alterations to website "constituted a republication . . . so as to restart the statute of limitations"). ██████████████████████████████████████████████████████ ███████████████████████████████████████████████████. Osborn Decl., at Exs. 1-3 & 7; Smith Tr. at 101:3-6 & 55:1-15. ██████████████████ "conscious, deliberate choice to continue, renew or expand the use" of infringing material causing the limitations period to "start[] anew." *Estate of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997, 1009 (N.D. Cal. 2012) (quotation omitted). PeopleConnect is also equitably estopped from applying the statute of limitations to Plaintiffs' claim, because it has repeatedly asserted that, had Plaintiffs searched the website – the only way they could have discovered their claims without

1    assistance – they necessarily would have agreed to the arbitration clause in the Terms of Service

2    and thereby immediately forfeited their claims. *See* Dkt. No. 26.

3         Third, at class certification the relevant question is not how the statute of limitations

4    inquiry ultimately would be resolved, but whether the issue is unique to the named Plaintiffs and,

5    if so, whether the issue would threaten to become the "focus of the litigation." *See Rodriguez*,

6    591 F.3d at 1124; *United Steel v. Conocophillips Co*., 593 F.3d 802, 808-809 (9th Cir. 2010).

7    Whether and how § 3344's statute of limitations applies to PeopleConnect's conduct in this case

8    is an issue that affects the Class as a whole. *See Schofield v. Delta Air Lines, Inc.*, No. 18-cv-

9    00382-EMC, at *5-6 (N.D. Cal. Feb. 27, 2019) (statute of limitations defense did not defeat

10   typicality because "when members should have learned of [the publication] is likely to turn on

11   common evidence or patterns of evidence.").  Even were the issue unique to the named Plaintiffs,

12   it would not threaten to become the focus of the litigation. Were this court to determine that timely

13   § 3344 claims are available only to Class members whose photographs were added to

14   PeopleConnect's dataset on or after a date two years prior to filing and were it the case none of

15   the Plaintiffs meet this condition, Plaintiffs could amend to add named Plaintiffs who do. *See,*

16   *e.g.*, *Miller v. Mercedes-Benz USA*, No. 06-cv-5382, 2009 WL 1393488, at *1 (C.D. Cal., May 15,

17   2009) (citation omitted) ("Courts regularly allow replacement of the named plaintiff.").

18        In summary, Plaintiffs' claims are typical of those of the Class because they suffered the

19   same injury and seek the same relief. PeopleConnect's potential arguments against typicality fail.

20                    **4.  Plaintiffs and their counsel are adequate representatives.**

21        Rule 23(a)(4) requires that the parties will "fairly and adequately protect the interests of

22   the class." A court must "resolve two questions: (1) do the named plaintiffs and their counsel have

23   any conflicts of interest with other class members and (2) will the named plaintiffs and their

24   counsel prosecute the action vigorously on behalf of the class?" *Espinosa v. Ahearn*, 926 F.3d

25   539 (9th Cir. 2019) (quotation omitted). Here, both questions resolve in favor of certification.

26

27

1

**a. There is no fundamental conflict of interest.**

2    Courts "do not favor denial of class certification on the basis of speculative conflicts."

3   *Resnick v. Frank*, 779 F.3d 934, 942 (9th Cir. 2015) (quotation omitted). Nor will "trivial"

4   conflicts defeat adequacy. *Id.* "Only conflicts that are fundamental to the suit and that go to the

5   heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement."

6   *Id.* (quotation omitted). "[R]elatively small differences in damages and potential remedies" do

7   not constitute a fundamental conflict of interest. *Hanlon*, 150 F.3d at 1020.

8    Here, no fundamental conflict exists between the proposed Class and Plaintiffs and their

9   counsel. Plaintiffs seek the same monetary compensation for themselves that they do for absent

10  Class members, *i.e.*, $750 in minimum statutory damages per yearbook photograph. An injunction

11  prohibiting PeopleConnect from using Class members' names and photographs to advertise

12  subscriptions would affect all Class members in the same way. The claims of all Class members

13  arise under the same state's law. Because "the requested relief applies equally throughout the

14  class," as Plaintiffs prove their claims, they will also be proving the claims of millions of absent

15  Class members. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (quotation omitted).

16  Therefore, there are no fundamental conflicts of interest.

17   PeopleConnect may argue Mr. Abraham is bound by the arbitration clause in the

18  Classmates Terms of Service by virtue of his counsel's visiting the website. This Court has

19  already ruled counsel's use of the website does not bind Mr. Abraham to the Terms of Service,

20  *see* Dkt. No. 40, a ruling that was unanimously affirmed by a three-judge panel of the Ninth

21  Circuit. *See* Dkt. No. 92. Mr. Abraham himself has never created an account on

22  www.classmates.com and therefore never saw or agreed to any Terms of Service. Accordingly,

23  there is no arbitration issue that would affect his ability to adequately represent the Class. Nor can

24  PeopleConnect advance a good faith argument that Ms. Zhang, Mr. Tseng, or Mr. Carney agreed

25  to arbitrate. They have never used Classmates.com, never authorized their counsel to agree to

26  arbitration or visit Classmates.com, preemptively repudiated any agreement to arbitrate, and the

27

staff member who gathered the information supporting their claims never created an account, never saw a TOS, and never visited any portion of the site requiring agreement to a TOS. FAC, at ¶¶20-55; Zhang Decl.; Tseng Decl.; and Carney Decl. Even were Plaintiffs subject to a viable arbitration defense, the issue would not present a "fundamental" conflict because it does not render their interests adverse to the Class, nor does it "go to the heart of the litigation." *See Resnick*, 779 F.3d at 942.

### b. Plaintiffs and their counsel have and will prosecute vigorously.

Plaintiffs submit with this motion declarations demonstrating their ability and interest in representing the Class and prosecuting this action, as Mr. Abraham has done since the Complaint was filed nearly two years ago. *See* Abraham Decl.; Zhang Decl.; Tseng Decl.; Carney Decl. With respect to proposed Class counsel, Morgan & Morgan, LLP, Turke & Strauss, LLP, and the Law Office of Benjamin R. Osborn seek to represent the Class and include qualified lawyers experienced in the successful prosecution of consumer class actions. To support the determinations required under Rules 23(a)(4) and 23(g), the firms each submit with this motion declarations and/or firm resumes setting forth their relevant experience and expertise. *See* Osborn Decl., at ¶¶14-21; Borrelli Decl. and Ex. A; Ram Decl. and Ex. A. These firms stand ready, willing, and able to devote the resources necessary to litigate this case vigorously and see it through to the best possible resolution. Counsel have already devoted substantial resources to this matter, litigating substantial motion practice before this Court (*see, e.g.*, Dkt. Nos. 40, 76, and 122), prevailing in an interlocutory appeal to the Ninth Circuit (*see* Dkt. No. 92) and conducting discovery.

### B. The Predominance Requirement of Rule 23(b)(3) is Satisfied.

Rule 23(b)(3) requires that common questions of law or fact predominate over individual ones. This inquiry focuses on whether the "common questions present a significant aspect of the case and [if] they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022 (internal quotations and citation omitted); *see also Tyson Foods*, 577 U.S. at 453.

1   Each element of a claim need not be susceptible to class-wide proof, *see Amgen v. Conn. Ret.*

2   *Plans and Trust Funds*, 568 U.S. 455, 469 (2013), and the "important questions apt to drive the

3   resolution of the litigation are given more weight in the predominance analysis over

4   individualized questions which are of considerably less significance." *Ruiz Torres*, 835 F.3d

5   at 1134. Rule 23(b)(3) permits certification when "one or more of the central issues in the action

6   are common to the class and can be said to predominate . . . even though other important matters

7   will have to be tried separately, such as damages or some affirmative defenses peculiar to some

8   individual class members." *Tyson*, 577 U.S. at 453.

9           **c.   Common issues predominate.**

10          The elements of Plaintiffs' § 3344 claim may be proved for the entire Class using the same

11  evidence. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (the

12  predominance inquiry "begins, of course, with the elements of the underlying cause of action.")

13  (quotation omitted). Whether PeopleConnect's on-site advertising flow is a "knowing use of

14  another's name, voice, signature or likeness . . . on or in products . . . or for purposes of

15  advertising or selling . . . products" can be determined by examining the flow itself, which

16  PeopleConnect presents in substantially the same form for all members of the Class. *See* Cal. Civ.

17  Code § 3344; FAC, at ¶¶57-120 (showing and/or describing the flow for Plaintiffs); Osborn Decl.,

18  Ex. 7, at ¶6 (admitting Classmates.com shows the same webpages in response to any "search for

19  a specific person"); Toivola Tr. at 54:12-59:12 (

20  ██████████████████████████████████████████████

21  ██████████████████ ). Whether any statutory exceptions apply, such as the exception for use

22  in connection with "news [or] public affairs," may also be established by reference to the common

23  advertising flow. Likewise, that PeopleConnect did not obtain "prior consent" can be established

24  by showing that ████████████████████████████████████

25  ████████████████████████████████████████████ . *See*

26  Osborn Decl., at Ex. 11, Response to Interrogatory 3; Toivola Tr. at 64:2-10 ████████

1 ██████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████

3 ████████████████ *id.*, at 66:12-22 ████████████████████████████

4 ██████████████████████████████████████████████ *Fischer*, 2022

5 WL 971479, at *8-9 (rejecting argument that individualized issues of consent would predominate

6 when defendant admitted it did not receive consent apart from the Terms of Use). Whether Class

7 members are "persons injured" as required by the statute is also subject to Class-wide proof. That

8 PeopleConnect profited from, and failed to compensate Class members for its use of their

9 likenesses can be proved by: (1) the advertising flow, which PeopleConnect would not display if

10 it did not attract subscribers, and (2) its agreements with third parties, which show PeopleConnect

11 ascribes monetary value to all Class members' photographs.[2]

12        Damages under § 3344 are also subject to Class-wide proof. Class members are entitled

13 to statutory minimum damages in the amount of $750 so long as they prove they "suffered injury."

14 *See Callahan*, 2021 WL 5050079, at *16-17. Class members suffered economic injury because

15 "they were not paid – implicitly, by PeopleConnect – for the use of their names and likeness." *Id.*,

16 at *19. As further discussed in the Declaration of Cliff Kupperberg, there are at least three

17 independent methods by which Plaintiffs may prove they suffered economic injury and are

18 therefore entitled to statutory damages. First, as this Court held, "a reasonable inference may be

19 made that Plaintiffs' names and likenesses had value in advertising the subscription services"

20 because PeopleConnect in fact used them for this purpose. *Id.* ████████████████████████

21 ██████████████████████████████████████████. *See Osborn*

22 Decl., at Ex. 6; Smith Tr. at 101:3-6. ████████████████████████████

23 ██████████████████████████████████████. *See, e.g.*, Osborn

24 Decl., at Ex. 2, §3.1 (████████████████████████████████████████

25 _____

26 [2] Even were there some Class member photographs in the database for whom PeopleConnect

27 ████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████  █████████████████████████████████████

█████████████████████████████████████████████████████████,

and therefore that they suffered economic injury entitling them to § 3344's statutory damages of $750.

As an alternative to statutory damages, Cal. Civ. Code § 3344 allows recovery of "profits from the unauthorized use." Plaintiffs are required to show "proof only of the gross revenue attributable to such use." *Id.* Should Plaintiffs elect to pursue PeopleConnect's profits in lieu of statutory damages, Plaintiffs expect to prove that a portion of PeopleConnect's revenue from website subscriptions is attributable to its commercial use of Class members' names and likenesses, and that a reasonable method for calculating this portion is to multiply PeopleConnect's total subscription sales by the proportion of California yearbooks in the database. PeopleConnect has produced these data points. *See* Kupperberg Decl., at ¶¶36-38; Osborn Decl., at Ex. 10, Response to Interrogatory 4; Smith Tr. at 25:21-24; 142:19-25.

Plaintiffs' claims under the unlawfulness prong of the UCL and under California unjust enrichment law are also provable via common evidence. With respect to the UCL, in addition to proving the elements of their § 3344 claims, Plaintiffs and the Class must show they "lost money or property," *see Callahan*, 2021 WL 5050079, at *19, which may be shown through the same common proof with which Plaintiffs will show they "suffered injury" under § 3344. The UCL "authorizes injunctive relief and restitution as remedies." *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712 (9th Cir. 2012). Should Plaintiff seek restitution under the UCL, ████████████ █████████████████████████████████████ is a reasonable measure of the amount they would have received had PeopleConnect properly compensated them for its use. *See* Kupperberg Decl., at ¶¶39-42. With respect to unjust enrichment, Plaintiffs must show PeopleConnect unjustly retained a benefit at their expense. *See Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1073 (N.D. Cal. 2009) (citation omitted). Should Plaintiffs pursue a monetary remedy

1    under their unjust enrichment claim, the amount of PeopleConnect's unauthorized profits is a

2    reasonable measure, which as discussed above is subject to common proof.

3                    **d.  PeopleConnect's potential arguments do not defeat predominance.**

4            PeopleConnect may argue, as its subsidiary InstantCheckmate did in *Fischer*, that various

5    individualized issues preclude a finding of predominance. *See Fischer*, 2022 WL 971479, at *8.

6    None of its potential arguments are persuasive.

7            **Consent**: PeopleConnect may argue that determining whether Class members have

8    consented to PeopleConnect's use of their names and likenesses requires individualized proof.

9    However, as discussed above, ████████████████████████████████████████████████████

10   ██████████████████████████████████████████████████████████████. *See* Osborn

11   Decl., at Ex. 10, Response to Interrogatory 3.[3] Because the Class excludes account holders, by

12   PeopleConnect's admission it has not obtained consent from any Class member.

13           PeopleConnect speculates that ██████████████████████████████████████

14   ████████████████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████████████████

16   *Id.* But these speculations, even if true, are irrelevant to Plaintiffs' claims. The relevant question

17   under §3344 is whether *PeopleConnect* obtained Class members' "prior consent" to make

18   commercial use of their names and photographs, not whether some other "third-party website" or

19   yearbook publisher did so. *See Fischer*, 2022 WL 971479, at *9 ("[W]hatever consent a putative

20   class member gave to a non-party to use or share her identity has no bearing on whether that

21   putative class member consented to [PeopleConnect's subsidiary]'s use of her identity."); Toivola

22   Tr. at 64:2-10 ██████████████████████████████████████████████████

23

24   [3] PeopleConnect claims that it ██████████████████████████████████████████████████
     ████████████████████████████████████ Osborn Decl., Ex. 10, at Response to

25   Interrogatory 3. But this is not an independent method of obtaining consent because donating a
     yearbook requires creating an account on Classmates.com and agreeing to the Terms of Service.

26   *See* Osborn Decl., at Ex. 7, at *27 (donation form). Because the Class excludes account holders,
     no one who has donated a yearbook is a member of the Class.

27

1    **Arbitration**: PeopleConnect may argue that arbitration presents an individualized issue

2    because some Class members may have agreed to the Classmates.com Terms of Service, which

3    at some points in time included an arbitration clause. However, the Class definition ensures that

4    no Class members have agreed to a Classmates.com Terms of Service because the definition

5    excludes registered users of Classmates.com. The webpage on which users must indicate their

6    agreement to the Terms of Service appears only as part of the registration process. FAC, at ¶60

7    (registration screen stating that "By clicking submit, you agree to the Classmates Terms of

8    Service"); *see also* Osborn Decl., at Ex. 11, Response to Interrogatory 3 (█████████████

9    ████████████████████████████████████████████████████████████████████

10   ███). Because registered users are excluded from the Class definition, none of the Class members

11   have agreed to any Classmates.com Terms of Service, and therefore arbitration is not a relevant

12   issue.

13   **Privacy:** PeopleConnect may argue that the degree to which individual Class members

14   voluntarily share their own personal information and photographs with the public – for example

15   by posting information on social networking sites – presents an individualized issue.

16   PeopleConnect may argue that Class members who have voluntarily shared their own

17   photographs have "less" of a claim than those who have not. This argument fails. Plaintiffs' and

18   Class members' claims arise not from the disclosure of otherwise "private" information, but rather

19   from PeopleConnect's *commercial use* of their information to advertise subscriptions without

20   consent. *See, e.g.*, *Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008, 1022 n.3 (D. Nev. 2021) ("[R]ight

21   of publicity claims do not depend on publication of private photos, but rather the use of one's

22   likeness for commercial purposes"); *see also Martinez v. ZoomInfo*, No. 21-cv-5725, 2022 WL

23   1078630, at *5 (W.D. Wash. Apr. 11, 2022). That some Class members may voluntarily share

24   some photographs and personal information with the public does not affect their right to prevent

25   PeopleConnect from using their photographs and personal information to advertise its product.

26   Section 3344 makes no such distinction.

27

**Celebrities:** PeopleConnect may argue that whether individual Class members are celebrities or have otherwise previously invested in the commercial value of their likenesses presents an individualized issue. To the extent this argument relates to <u>liability</u>, this argument fails because Plaintiffs' claims do not require alleging celebrity status or commercial value independent of the defendants' use. *See, e.g.*, *Callahan*, 2021 WL 5050079, at *14.

To the extent this argument relates to <u>damages</u>, Plaintiffs acknowledge that, although few in number, there are likely some celebrities in the Class for whom the potential value of their claim against PeopleConnect may exceed the $750 statutory minimum damages provided for under Cal. Civ. Code § 3344. If these individuals wish to pursue recovery in a larger amount, they may opt out of the Class and pursue their own action against PeopleConnect. In *Lane v. Facebook, Inc.*, 696 F.3d 811, 824 (9th Cir. 2012), the Ninth Circuit wrote that Rule 23(b)(3) provides Class members the "opportunity to opt out . . . to pursue their claims separately" precisely because "individual class members will often claim differing amounts of damages."

### C.  The Superiority Requirement of Rule 23(b)(3) is Satisfied.

Rule 23 provides a non-exhaustive list of factors for consideration when determining whether a class action is superior to other methods for adjudicating the controversy:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and]
>
> (D) the difficulties likely to be encountered in the management of a class action.

*See Bateman v. American Multi-Cinema*, 623 F.3d 708, 713 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3)). These factors weigh in favor of class treatment here.

With respect to the first factor, the Class members' claims are so relatively small – $750 per photograph – that it would cost more to litigate an individual case than they could hope to

recover. Class certification is "the only feasible means for them to adjudicate their claims." *See Levya v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013).

The second and third factors also weigh in favor of certification. This case has been pending for nearly two years. Plaintiffs' counsel are not aware of any other action asserting California right of publicity claims against PeopleConnect. This Court has become familiar with the factual and legal issues by handling the Defendant's motion to dismiss, anti-SLAPP motion to strike, motion to stay, and motion for judgment on the pleadings or to certify interlocutory appeal. *See Hernandez v. Wells Fargo Bank, N.A.*, No. 18-cv-07354 (N.D. Cal. Jan. 29, 2020) (third factor weighed in favor of certification because "this Court has overseen this case for well over a year and is familiar with the underlying issues"). Holding separate trials for claims that could be tried together would be costly, inefficient, and a burden on the court system.

The fourth "management" factor focuses on the "practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle Jacquelin*, 417 U.S. 156, 163 (1974). Here, Plaintiffs do not foresee any serious manageability problems, and certainly none that would render millions of individual actions a better alternative.

Although manageability does not require "demonstrating an administratively feasible way to identify class members," *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017), Plaintiffs submit with this motion the Declaration of Steven Weisbrot, an experienced claims administrator, attesting to the feasibility of Class member identification and Class notice. *See* Weisbrot Decl. The proposed Class is defined by "objective and definite" criteria, all of which would be easily verified as part of a claims process. *See Briseno*, 844 F.3d at 1126 n.6. First, Class members are California residents, which may be established by the claimant providing their address or averring their state of residence. Second, Class members are not registered users of www.classmates.com, which may be established by averment and by PeopleConnect checking the claimant's name, email address, and high school against their database of registered users. PeopleConnect collects this information as part of the registration process, *see* FAC, at ¶60;

Osborn Decl., at Ex. 7, at *17. Third, Class members must be the subject of one or more photographs searchable on www.classmates.com. This can be established by the claimant searching for their own name and yearbook record on the classmates.com site. That Class members may self-identify is sufficient. *See Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267, 2017 WL 558017, at *3 (N.D. Cal. Feb. 10, 2017). PeopleConnect may "challenge the claims of absent Class members if and when they file claims." *West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 306 (N.D. Cal. 2017).

Class notice is also feasible. "[T]he Due Process Clause does not require actual, individual notice in all cases." *Briseno*, 844 F.3d at 1129. Here, individual notice is not practicable because the Class is limited to people who have not registered for an account on www.classmates.com, and for whom PeopleConnect therefore does not possess contact information. In his Declaration, Mr. Weisbrot describes a notice plan that he estimates would reach 95% of the class. Weisbrot Decl. The plan incorporates programmatic display advertising, social media, paid search, and publication in print media. *See id*. "Court have routinely held that notice" by similar methods such as "publication in a periodical, on a website, or even at an appropriate physical location is sufficient." *Briseno*, 844 F.3d at 1129 (quoting *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994)).

For these reasons, the superiority requirement is satisfied.

### D. The Proposed Class Also Satisfies the Requirements of Rule 23(b)(2).

The requirements of Rule 23(b)(2) "are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014). Here, Plaintiffs seek an injunction prohibiting PeopleConnect from using names and yearbook photographs to advertise subscriptions without consent, a practice that PeopleConnect engages in with respect to every member of the Class. Because Plaintiffs seek uniform injunctive relief from practices generally applicable to the class, the Class should be certified under Rule 23(b)(2).

**CONCLUSION**

For the reasons above, Plaintiffs respectfully request the Court GRANT their motion to certify the Class pursuant to Rules 23(b)(3) and 23(b)(2).

Dated: August 5, 2022                    By:  */s/ Raina C. Borrelli*
                                             Raina Borrelli (*pro hac vice*)
                                             raina@turkestrauss.com
                                             Sam Strauss (*pro hac vice*)
                                             sam@turkestrauss.com
                                             TURKE & STRAUSS LLP
                                             613 Williamson St., Suite 201
                                             Madison, Wisconsin 53703-3515
                                             Telephone: (608) 237-1775
                                             Facsimile: (608) 509-4423

                                             Michael F. Ram (SBN 104805)
                                             mram@forthepeople.com
                                             Marie N. Appel (SBN 187483)
                                             mappel@forthepeople.com
                                             MORGAN & MORGAN
                                             COMPLEX LITIGATION GROUP
                                             711 Van Ness Avenue, Suite 500
                                             San Francisco, CA 94102
                                             Telephone: (415) 358-6913
                                             Facsimile: (415) 358-6923

                                             Benjamin R. Osborn (*pro hac vice*)
                                             ben@benosbornlaw.com
                                             LAW OFFICE OF BENJAMIN R. OSBORN
                                             102 Bergen St.
                                             Brooklyn, NY 11201
                                             Telephone: (347) 645-0464

                                             *Attorneys for Plaintiffs and the Proposed Class*

1

## <u>CERTIFICATE OF SERVICE</u>

2

     I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk

3

of the Court using the CM/ECF system, which will send notification of such filing to counsel of

4

record via the ECF system.

5

     DATED this 5th day of August, 2022.

6

7
                         By:  */s/ Raina C. Borrelli*

8
                               Raina Borrelli (*pro hac vice*)
                               raina@turkestrauss.com

9
                               TURKE & STRAUSS LLP
                               613 Williamson St., Suite 201

10
                               Madison, Wisconsin 53703-3515
                               Telephone: (608) 237-1775

11
                               Facsimile: (608) 509-4423

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27