**JENNER & BLOCK LLP**
Benjamin T. Halbig (Cal. Bar. No. 321523)
bhalbig@jenner.com
455 Market Street, Suite 2100
San Francisco, California 94105
Telephone:     628 267-6800
Facsimile:      628 267-6859

**JENNER & BLOCK LLP**
Debbie L. Berman (*pro hac vice*)
dberman@jenner.com
Wade A. Thomson (*pro hac vice*)
wthomson@jenner.com
353 North Clark Street
Chicago, Illinois 60654
Telephone:     312 222-9350
Facsimile:      312 527-0484

**JENNER & BLOCK LLP**
Kate T. Spelman (Cal. Bar. No. 269109)
kspelman@jenner.com
515 S. Flower Street, Suite 3300
Los Angeles, California 90071
Telephone:     213 239-5100
Facsimile:      213 239-5199

*Attorneys for Defendant PeopleConnect, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYNE TSENG, on behalf of himself and on behalf of all others similarly situated,<br><br>                              Plaintiff.<br><br>     v.<br><br>PEOPLECONNECT, INC., a Delaware Corporation,<br><br>                              Defendant. | Case No. 3:20-cv-09203-EMC<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>First Amended Complaint Filed: August 4, 2022<br><br>Hearing Date: March 23, 2023<br>Hearing Time: 1:30 p.m.<br>Judge: Judge Edward M. Chen<br>Courtroom: 5 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................................. ii

INTRODUCTION ................................................................................................................................. 1

ARGUMENT ......................................................................................................................................... 1

I.     Plaintiff's Claims Are Untimely. ................................................................................................ 1

       A.     Controlling Precedent Precludes Application Of The Discovery Rule. ............................ 2

       B.     The Discovery Rule Does Not Apply To Plaintiff's Untimely UCL Claim. ..................... 4

       C.     Plaintiff's Tolling Argument Based On Fraudulent Concealment Fails. ........................... 6

II.    Plaintiff's Attack On The Terms Of Service Is Baseless. ........................................................ 10

III.   The Court Should Resolve Whether Plaintiff's Claims Are Time-Barred Now. ..................... 11

CONCLUSION .................................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arroyo v. OLS Hotels & Resorts LLC*,
    No. 21-CV-01354, 2021 WL 4145966 (N.D. Cal. May 26, 2021) ........................................... 9

*Aryeh v. Canon Business Solutions, Inc.*,
    292 P.3d 871 (Cal. 2013) ................................................................................................... 4, 5

*B-K Lighting, Inc. v. Fresno Valves & Casting*,
    No. CV 06-02825, 2008 WL 11338299 (C.D. Cal. Jan. 7, 2008) ............................................. 8

*Berube v. Homesales, Inc.*,
    No. H041422, 2015 WL 5697655 (Cal. App. Sept. 29, 2015) ................................................. 8

*Britton v. Girardi*,
    235 Cal. App. 4th 721 (2015) ................................................................................................... 7

*Christoff v. Nestle USA, Inc.*,
    213 P.3d 132 (Cal. 2009) ..................................................................................................... 2, 3

*Christoff v. Nestle USA, Inc.*,
    62 Cal. Rptr. 3d 122 (Ct. App. 2007) ....................................................................................... 3

*In re Cypress Semiconductor Sec. Litig.*,
    No. C-92-20048, 1995 WL 241441 (N.D. Cal. Apr. 19, 1995) .............................................. 12

*Finney v. Ford Motor Co.*,
    No. 17-cv-06183, 2018 WL 2552266 (N.D. Cal. June 4, 2018) ........................................... 6, 8

*Fox v. Ethicon Endo-Surgery, Inc.*,
    110 P.3d 914 (Cal. 2005) .......................................................................................................... 2

*Glue-Fold, Inc. v. Slautterback Corp.*,
    82 Cal. App. 4th 1018 (2000) ................................................................................................... 2

*Godine v. Montgomery*,
    No. CV 16-2534, 2019 WL 982412 (C.D. Cal. Jan. 7, 2019) .................................................. 6

*Hebrew Acad. of S.F. v. Goldman*,
    42 Cal. 4th 883 (2007) ......................................................................................................... 2, 3

*Hexcel Corp. v. Ineos Polymers, Inc.*,
    681 F.3d 1055 (9th Cir. 2012) ........................................................................................ 6, 7, 9

*Jacobs v. J. Publ'g Co.*,
    No. 21-cv-00690, 2022 WL 1554737 (D.N.M. May 17, 2022) ............................................... 3

*Jones v. Cnty. of Contra Costa*,
    No. C-13-4350, 2014 WL 1154109 (N.D. Cal. Mar. 20, 2014) ..............................................10

*Jones v. Reekes*,
    No. F082499, 2022 WL 594117 (Cal. Ct. App. Feb. 28, 2022) ..........................................3, 4

*Long v. Walt Disney Co.*,
    116 Cal. App. 4th 868 (2004) ...............................................................................................6

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
    89 Cal. App. 4th 1042 (2001) ..............................................................................................10

*Nelson v. Int'l Paint Co.*,
    716 F.2d 640 (9th Cir. 1983) ............................................................................................6, 8

*Rare 1 Corp. v. Moshe Zwiebel Diamond Corp.*,
    13 Misc. 3d 279 (N.Y. Sup. Ct. 2006) ...................................................................................4

*Rita M. v. Roman Cath. Archbishop*,
    187 Cal. App. 3d 1453 (1986) ........................................................................................... 6-7

*Ryan v. Microsoft Corp.*,
    147 F. Supp. 3d 868 (N.D. Cal. 2015) ...................................................................................5

*Ryan v. Microsoft Corp.*,
    No. 14-CV-04634, 2015 WL 1738352 (N.D. Cal. Apr. 10, 2015) ............................................5

*Stein v. Disciplinary Bd. of Sup. Ct. of N.M.*,
    No. CIV-04-0840, 2006 WL 4079022 (D.N.M. May 31, 2006).............................................12

*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*,
    334 N.E.2d 160 (Ill. 1975) ......................................................................................................4

*Wood v. McDonald*,
    No. C 97-2636 SI, 1998 WL 296365 (N.D. Cal. June 1, 1998), *aff'd*, 176 F.3d 486
    (9th Cir. 1999) ......................................................................................................................10

*Woods v. Vector Mktg. Corp.*,
    No. C-14-0264, 2015 WL 10607576 (N.D. Cal. June 5, 2015) ............................................12

*Wu v. Sunrider Corp.*,
    793 F. App'x 507 (9th Cir. 2019) ..........................................................................................5

*Yeager v. Bowlin*,
    693 F.3d 1076 (9th Cir. 2012) ...............................................................................................4

*Yetter v. Ford Motor Co.*,
    428 F. Supp. 3d 210 (N.D. Cal. 2019) .................................................................................11

**Other Authorities**

*Boshears v. PeopleConnect, Inc.*
    No. 22-35262 (9th Cir. Aug. 22, 2022), ECF No. 12 ............................................................. 7

Classmates.com, *What Is A Classmates+ Membership?*, https://rb.gy/dgf4mb ............................. 9

Jonathan Strickland, How Stuff Works, *How Classmates.com Works*, Oct. 12, 2009,
    https://rb.gy/vi7lfx ................................................................................................................. 9

Kim Peterson, Seattle Times, *No. 2 Internet Service Provider Buying Classmates Online*,
    Oct. 26, 2004, https://rb.gy/wvm4el ..................................................................................... 9

**INTRODUCTION**

In his response to PeopleConnect's Motion for Judgment on the Pleadings ("Motion"), Dkt. 155, Plaintiff does not challenge the underlying premises of that motion. Specifically, he does not deny that PeopleConnect has correctly characterized his theory of liability, which is that PeopleConnect supposedly infringed upon his right of publicity when it first added his yearbook to the Classmates.com library. He never questions that his claims therefore accrued on June 14, 2014. He does not dispute that his claims are governed by a two-year statute of limitations. He admits that he did not file his claims until 2022. And he never rebuts that unless the statute of limitations is tolled, his claims are untimely. Plaintiff instead urges the Court to toll the statute of limitations based on the discovery rule and purported fraudulent concealment. His arguments fail, however, because controlling authority is clear that the discovery rule does not apply to his claims, and his fraudulent concealment argument is based almost entirely on alleged events that occurred years *after* the limitations period lapsed. As a last-ditch effort, Plaintiff asks the Court to invalidate the Classmates.com Terms of Service, but Plaintiff, not being a party to the Terms of Service, cannot challenge their enforceability. Plaintiff's additional, belated intent to add yet more new plaintiffs to this litigation does not change that *his* claims are untimely.

Accordingly, the Motion should be granted and judgment should be entered for PeopleConnect.

**ARGUMENT**

**I.    Plaintiff's Claims Are Untimely.**

On the merits, as PeopleConnect demonstrated in its Motion and as Plaintiff does not and cannot deny: (1) his name and images became viewable on Classmates.com on June 14, 2014, Mot. at 3-4; (2) under his theory of liability, his claim accrued on June 14, 2014, *id.*; (3) the statute of limitations for claims brought under Section 3344 is two years, *id.* at 4; (4) the single publication rule applies to claims brought pursuant to Section 3344, *id.* at 4-5; or (5) that the discovery rule generally does not apply to claims subject to the single publication rule, *id.* at 5-6. That means his claims were untimely under the two-year statute of limitations as of June 14, 2016. Yet Plaintiff did not file his claims until August 4, 2022. Thus, they are time-barred.

In response, Plaintiff abandons both of the arguments he previously made for why his claims are not time-barred—that the statute of limitations resets each time PeopleConnect either receives licensing

fees related to the Classmates.com library or a user runs a search for an individual. *See* Dkt. 133 at 11-12. He was right to do so, for as PeopleConnect explained in its Motion, those arguments are baseless. *See* Mot. at 6-8. His new theories are that his claims are timely under the discovery rule, or alternatively that his claims were tolled by PeopleConnect's alleged fraudulent concealment. These new arguments, however, are without merit. Controlling authority is clear that the discovery rule does not apply to his causes of action. And fraudulent concealment cannot toll claims that lapsed before the purported concealment occurred.

### A. Controlling Precedent Precludes Application Of The Discovery Rule.

Plaintiff's argument that the statute of limitations should be extended under the discovery rule is contrary to controlling precedent and thus should be rejected. That authority makes clear that the discovery rule does not apply to claims subject to the single publication rule, including all Section 3344 claims, except in the extraordinary case that the offending material is published "in an inherently secretive manner." *See Hebrew Acad. of S.F. v. Goldman*, 42 Cal. 4th 883, 894 (2007) (citation omitted); *see* Mot. at 5. Plaintiff does not try to rebut that point. Nor does Plaintiff mention, let alone distinguish, the controlling California Supreme Court decisions in *Goldman* and *Christoff v. Nestle USA, Inc.*, 213 P.3d 132 (Cal. 2009), both of which recognize that where the single publication rule applies to a cause of action, "courts uniformly have *rejected* the application of the discovery rule." 213 P.3d at 141 (emphasis in original); *see Goldman*, 42 Cal. 4th at 894. Plaintiff's arguments to the contrary are without merit.

***First***, unable to distinguish these cases, Plaintiff cites the appellate court decision in *Christoff* for the proposition that the discovery rule delays accrual wherever the plaintiff lacked "a meaningful ability" to discover his claim.[1] Resp. at 8, 17-18 (citing *Christoff v. Nestle USA, Inc.*, 62 Cal. Rptr. 3d 122, 136 (Ct. App. 2007) (cleaned up)). His reliance is misplaced.

His argument overreads the appellate decision in *Christoff*, which did not purport to expand application of the discovery rule. Indeed, the court recognized that the discovery rule is "general[ly]

---

[1] Plaintiff cites two other cases in this argument, Resp., Dkt. 162 at 17, but each is inapposite. *Fox v. Ethicon Endo-Surgery, Inc.* does not involve claims where the single publication rule applies. 110 P.3d 914 (Cal. 2005) (evaluating limitations applicable to a products liability claim). The same is true of *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018 (2000), which examines limitations applicable to the Uniform Trade Secrets Act.

incompatib[le]" with the single publication rule, save for the "narrow circumstances" when plaintiff faces a complete "inability to discover" the offending publication. *See Christoff*, 62 Cal. Rptr. 3d at 136 (citation omitted) (noting with citation to California Supreme Court precedent that the discovery rule could apply if offending publication was secreted in a confidential file). Moreover, even if the appellate decision were to support his argument, Plaintiff ignores entirely the controlling state Supreme Court authority in *Goldman* (and *Christoff* itself) that rejects his arguments and instead reaffirms that the discovery rule applies only in the exceptional case. *See Goldman*, 42 Cal. 4th at 894; *Christoff*, 213 P.3d at 141.

***Second***, to the extent Plaintiff is trying to invoke this narrow exception by implying that PeopleConnect presented his school yearbooks on Classmates.com "in an inherently secretive manner," the argument is a dead end. *Goldman*, 42 Cal. 4th at 894. For that narrow exception to apply, the allegedly offending publication must be so secret as to be "utterly inaccessible" to the plaintiff. *Id.* In *Goldman*, even though only ten copies were printed of the allegedly offending transcript and were available only in a few libraries, the California Supreme Court held that said transcripts still were "available to the public," and therefore, the discovery rule did not apply. *Id.*; *cf. Jacobs v. J. Publ'g Co.*, No. 21-cv-00690, 2022 WL 1554737, at *8 (D.N.M. May 17, 2022) (cleaned up) ("California has been extremely clear that this narrow version of the discovery rule does not apply to materials available to the public, no matter how small or limited the circulation.").

Courts accordingly have refused to apply the discovery rule even where the allegedly offending material only could be accessed after users registered for an online account, which may require the agreement to terms of service. *See, e.g.*, *Jones v. Reekes*, No. F082499, 2022 WL 594117, at *9 (Cal. Ct. App. Feb. 28, 2022) (refusing to apply discovery rule where content was accessible only to users who registered an account with Facebook). In *Jones*, the California Court of Appeal refused to apply the discovery rule to allegedly defamatory comments posted on a Facebook page with access "limited … to those who subscribed to that Facebook account." *Id*. at *5. The *Jones* court refused to apply the discovery rule even though a subscription was required to view those comments, explaining that the single publication rule governs even those publications "that are not widely distributed to the general public." *Id.* Instead, the single publication rule applied because the statements were "made on a web site" and thus "made in a public forum." *Id.* at *5, *10 (citation omitted). Moreover, the court rejected the discovery rule even though

the Facebook page owner had specifically "blocked" the plaintiff's account from accessing the page: that blockage "did not change the fundamentally public nature" of the page so the online posts were not "inherently undiscoverable." *Id.* at *8-9; *cf. Rare 1 Corp. v. Moshe Zwiebel Diamond Corp.*, 13 Misc. 3d 279 (N.Y. Sup. Ct. 2006) (dismissing untimely claims and holding under New York law that the single publication rule applies to comments posted to a website accessible only to paying subscribers).

Under these cases, it is clear that the discovery rule does not apply to Plaintiff's claims. Plaintiff's reliance on *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 334 N.E.2d 160 (Ill. 1975)—a pre-Internet case applying Illinois law—does not change this result. There, the Illinois court applied the discovery rule where, long before the Internet, an allegedly defamatory, subscription-only hard-copy newsletter could not be publicly accessed. Moreover, the court there noted that under Illinois law, just like California law, publications that are accessible to the public suffice to put plaintiffs on notice. *See id.*

Also, Plaintiff's attempts to distinguish the Ninth Circuit's decision in *Yeager v. Bowlin*, 693 F.3d 1076 (9th Cir. 2012), fail. Plaintiff does not dispute that *Yeager* holds that Section 3344 claims targeting online material are governed by the single publication rule. *See* Mot. at 4-5. Instead, Plaintiff tries to distinguish that case on the ground that plaintiff Chuck Yeager did not have to register for an account to access the allegedly offending material on defendant's website. Resp. at 19-20. But given that *Yeager* does not analyze the discovery rule whatsoever, Plaintiff's analysis makes no sense. The only accrual question in *Yeager* was whether the single publication rule governed the defendant's allegedly improper publication of advertisements online. The Ninth Circuit unambiguously held that it did, that Chuck Yeager's claims accordingly accrued when the defendant first published that allegedly offending material on its website, and that Yeager's claim—filed more than two years later—came too late. Plaintiff, of course, does not dispute that the single publication rule governs his claims as well.

It is clear under controlling authority that the discovery rule is inapplicable to Plaintiff's claims.

**B.      The Discovery Rule Does Not Apply To Plaintiff's Untimely UCL Claim.**

Plaintiff's reliance on the discovery rule to save his UCL claim also fails because he misreads the controlling law. Plaintiff invokes *Aryeh v. Canon Business Solutions, Inc.*, 292 P.3d 871 (Cal. 2013) for the proposition that "UCL claims are 'governed by' … the discovery rule." Resp. at 20. But under *Aryeh*,

1  UCL claims are *not* governed by the discovery rule *unless* the plaintiff's predicate claim warrants it. *Ryan v. Microsoft Corp.*, No. 14-CV-04634, 2015 WL 1738352, at *16 (N.D. Cal. Apr. 10, 2015) (analyzing *Aryeh*); *see Aryeh*, 292 P.3d at 877-88 (holding that the UCL neither "categorically foreclose[s] application of … the discovery rule" nor "categorically guarantee[s]" it).

Accordingly, in *Ryan*, for example, the Court rejected the plaintiff's argument that the discovery rule applied to his claims under the Cartwright Act, California Business & Professionals Code Section 16600, and the UCL.[2] 2015 WL 1738352, at *16. The Court observed that under *Aryeh*, "the nature of the right sued upon and the circumstances attending its invocation control the point of accrual" for UCL claims. *Id.* (citation omitted). So, when a UCL claim relies on a predicate claim like fraud, which is subject to the discovery rule by force of statute, the UCL claim will be governed by the discovery rule. *Id.* But where a UCL claim relies on claims like the *Ryan* plaintiff's claims under the Cartwright Act, which eschew the discovery rule, the UCL claim likewise will eschew the discovery rule. *Id.* Based on that principle, the Court in *Ryan* refused to apply the discovery rule and held that the plaintiff's claims were time-barred.[3] *Id.*; *accord Wu v. Sunrider Corp.*, 793 F. App'x 507, 510 (9th Cir. 2019) ("As [plaintiff] premises her UCL claim on the [Endless Chain Scheme Law], when [plaintiff's] UCL claim accrued will depend upon when her ECL claim accrued.").

The same result should obtain here. As this Court has recognized, Plaintiff's UCL claim is "derivative" of his Section 3344 claim. *See* Dkt. 76 at 29. Because, as demonstrated above, controlling authority precludes application of the discovery rule to Section 3344 claims, the discovery rule likewise does not apply to Plaintiff's UCL claim. *See Ryan*, 2015 WL 1738352, at *16; *Aryeh*, 292 P.3d at 877-78. That means Plaintiff's UCL claim accrued at the same time as his Section 3344 claim: June 2014, when PeopleConnect uploaded Plaintiff's yearbooks to the website library and thereby satisfied each element of Plaintiff's theory of harm. *See* Mot. at 4. And the result is the same whether Plaintiff's UCL claim is

---

[2] The Cartwright Act is a California antitrust statute, Cal. Bus. & Prof. Code § 16720, *et seq.*, and Section 16600 allows for the nullification of contracts that impose restraints on "engaging in a lawful profession, trade, or business," Cal. Bus. & Prof. Code § 16600.

[3] The *Ryan* Court permitted leave to amend, but when the amended complaint likewise failed to adequately plead a UCL claim relying on conduct, like fraud, to which the discovery rule could apply, the Court dismissed the claims with prejudice. *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 895-97 (N.D. Cal. 2015).

governed by the two-year statute of limitations applicable to Section 3344 or the four-year statute of limitations he suggests. Either way, Plaintiff's claim is untimely, for even if Plaintiff were to enjoy the benefit of relation back under Federal Rule of Civil Procedure 15(c) or tolling under *American Pipe*, his action did not commence until December 18, 2020, which is too late.[4]

### C. Plaintiff's Tolling Argument Based On Fraudulent Concealment Fails.

Because the discovery rule is not available to him, Plaintiff devotes most of his response to repackaging (meritless) arguments for how the discovery rule should apply as arguments for why the statute of limitations should be tolled under the doctrine of fraudulent concealment. *See* Resp. at 5-17. Plaintiff's arguments are incorrect.

As Plaintiff himself acknowledges, to establish fraudulent concealment he bears the burden of showing that: (1) PeopleConnect undertook an affirmative act to mislead Plaintiff with the "intent to conceal";[5] (2) Plaintiff reasonably relied on PeopleConnect's alleged misrepresentation; and (3) Plaintiff acted with "diligence in trying to uncover [the] facts" supporting his claim during the time the facts were concealed. *See Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (refusing tolling where, prior to running of limitations period, plaintiff at least "should have been alerted to facts that, following duly diligent inquiry, could have advised it of its claim"); *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 646 (9th Cir. 1983); *Finney v. Ford Motor Co.*, No. 17-cv-06183, 2018 WL 2552266, at *3-4 (N.D. Cal. June 4, 2018). Furthermore, "whatever the lengths to which a defendant has gone to conceal the wrongs," tolling will not apply where the plaintiff had constructive notice of his potential claim. *Rita M.*

---

[4] Plaintiff does not argue he is entitled to relation back and simply asserts without analysis that he is entitled to tolling under *American Pipe*. *See* Resp. at 3 n.1. Neither doctrine can rescue his untimely claims. For the "relation back" doctrine to apply, the original complaint "must have been timely filed in the first instance." *Godine v. Montgomery*, No. CV 16-2534, 2019 WL 982412, at *3 (C.D. Cal. Jan. 7, 2019) (cleaned up). That was not the case here, where the original Plaintiffs, Meredith Callahan and Lawrence Abraham, filed their claims more than four and six years after they accrued, respectively, and so were not timely. As for *American Pipe*, Plaintiff recognizes that that doctrine only tolls certain claims during the pendency of a class action, Resp. at 3 n.1, meaning that even if Plaintiff qualified for *American Pipe* tolling, it would not help him. The statutes of limitations governing his claims had run before this action originally was commenced in December 2020.

[5] In lieu of this element, Plaintiff may also establish that PeopleConnect misled him by nondisclosure or silence, but only if Plaintiff separately shows that PeopleConnect owed him a duty to speak. *See Long v. Walt Disney Co.*, 116 Cal. App. 4th 868, 874 (2004) ("Absent a fiduciary relationship, nondisclosure is not fraudulent concealment—affirmative deceptive conduct is required."). Given that Plaintiff nowhere asserts that PeopleConnect had a legal duty to disclose information to him, this exception does not apply.

*v. Roman Cath. Archbishop*, 187 Cal. App. 3d 1453, 1460 (1986) (refusing to toll); *see Hexcel*, 681 F.3d at 1060 (no fraudulent concealment unless plaintiff shows it "*neither* [*had*] *actual nor constructive knowledge* of the facts giving rise to its claims" for relief). Plaintiff's fraudulent concealment argument fails at each of these steps.

*First*, Plaintiff does not identify any action PeopleConnect took with the intent of misleading him as to whether he had a claim. This element of fraudulent concealment is a particularly demanding one. It requires that he show "the substantive elements of fraud and an excuse for late discovery of the facts." *Britton v. Girardi*, 235 Cal. App. 4th 721, 734 (2015) (citation omitted) (rejecting tolling where allegations revealed plaintiff was on notice of claims despite alleged concealment). That is, he must identify an act that amounts to both *fraud* and *actual concealment*. He has done neither. The affirmative actions he cites—a purported "campaign of concealment … since this lawsuit was filed in December 2020," and the fact that a user must agree to the Terms of Service before accessing portions of Classmates.com, Resp. at 6—fall far short of this requirement.

Regarding the supposed "campaign" of concealment "since this lawsuit was filed in December 2020," Plaintiff is entitled to tolling only if he shows fraudulent concealment occurred before his claims lapsed—*i.e.*, after 2014 when his yearbooks were added, but before 2016 when the two-year statute of limitations ran. Resp. at 6. Actions to conceal a claim after the statute has expired are of no consequence. Plaintiff's alleged "campaign of concealment" took place beginning in 2020—four years after his claims had lapsed.[6] Even crediting Plaintiff's specific allegations, which are inaccurate,[7] the critical point is that his only alleged evidence of fraudulent concealment occurred long after his claims were barred. He thus

---

[6] *E.g.*, Plaintiff alleges that PeopleConnect: improperly refused to recognize his counsel's opt out in 2021, Resp. at 12 (citing Ex. B); improperly terminated accounts in 2022, *id.* (citing Exs. C, E); set forth its interpretation of its own Terms of Service in legal filings in 2021 and 2022, *id.* at 13-14; refused in 2022 to provide Plaintiff's counsel with special access to the Classmates website, free of the Terms of the Service that all registered users must accept, *id.* at 15; and advised Plaintiff's counsel in 2023 that PeopleConnect would consider all rights available to it should counsel continue to knowingly violate the website's Terms, *id.* at 15-16 (citing Exs. K, L). None of those allegations support Plaintiff's concealment argument.

[7] For example, Plaintiff insists that PeopleConnect "refused to recognize" his counsel's opt out of the arbitration provision in the website's Terms of Service. Resp. at 2. Not true. Counsel could have opted out by sending, within 30 days of registering for his account, an arbitration opt-out notice. *See* Opening Brief, *Boshears v. PeopleConnect, Inc.* No. 22-35262 (9th Cir. Aug. 19, 2022), ECF No. 12 at 31–35. Counsel failed to do so, and instead tried to create multiple accounts by adopting new aliases to opt out of the arbitration provision. *Id.*

cannot possibly show "active conduct by [PeopleConnect] … to prevent [him] from suing in time." *B-K Lighting, Inc. v. Fresno Valves & Casting*, No. CV 06-02825, 2008 WL 11338299, at *5 n.20 (C.D. Cal. Jan. 7, 2008) (rejecting fraudulent concealment theory where the only alleged concealment conduct "occurred after the statute of limitations had already run"); *see also Berube v. Homesales, Inc.*, No. H041422, 2015 WL 5697655, at *5 (Cal. App. Sept. 29, 2015) (substantially same).

Plaintiff's argument that he could not discover his claims because PeopleConnect required that users agree to its Terms of Service before they access the remainder of Classmates.com does not constitute an affirmative misrepresentation intended to conceal a claim. Plaintiff does not identify anything in the Terms of Service concerning his claims, let alone anything in them that is demonstrably *false*. And there is nothing to suggest that any purported misrepresentation in the Terms of Service was made with the *intent* of deceiving Plaintiff. *See Nelson*, 716 F.2d at 646 ("[F]raudulent concealment requires a misrepresentation" and "an intent to conceal."). Indeed, if the bare existence of such terms were sufficient to establish fraudulent concealment, nearly every consumer-facing website would by definition commit fraud upon the public every day and would thereby be excluded from the ordinary protection of statutes of limitations afforded to every other kind of defendant. That rule is untenable, it ignores that terms of service for websites serve a host of ordinary and non-tortious business purposes, and therefore, it is not surprising that Plaintiff cites zero authorities in support of his argument.

***Second***, even if the Terms of Service had made an affirmative misrepresentation of fact, Plaintiff fails to show that he reasonably relied on such a misrepresentation. *See Finney*, 2018 WL 2552266, at *3-4. Indeed, he says the opposite. Plaintiff declares that he has "never visited the website www.classmates.com" and has "never seen or agreed to any Classmates Terms of Service." Tseng Decl., Dkt. 164 ¶¶3-4. Plaintiff could not have reasonably relied on an alleged misrepresentation never communicated to him.

***Third***, Plaintiff comes nowhere close to showing that he acted with reasonable diligence in trying to discover his claims. Again, Plaintiff does not identify *any* actions he took to discover his claims prior to the expiration of the limitations period in 2016. Instead, he asserts only that his attorneys acted diligently to discover his claims in June 2022 when he retained them as counsel. This will not do. To establish

fraudulent concealment, Plaintiff had to act diligently *before* the statute of limitations ran on his claim, not years later.

***Fourth***, even if Plaintiff had carried his burden to show that PeopleConnect made an affirmative, intentional misrepresentation that Plaintiff relied upon to his detriment, and that Plaintiff was diligent in trying to uncover his claim, Plaintiff still would not prevail on his fraudulent concealment defense. That is because he had constructive notice of his claims as soon as PeopleConnect uploaded his yearbooks to the website in 2014. Plaintiff concedes that as of 2014, any member of the public could, for free and without registering, discover that Plaintiff's yearbooks were searchable on the website. *See* Resp. at 2. Yet Plaintiff insists that to be on notice of his claim he also would have had to know that the website used his yearbooks commercially, something he contends he "could not possibly have discovered" because the website purportedly does not reveal that PeopleConnect marketed and sold paid subscriptions until the user registers. *Id*. at 1. But this is wrong because Plaintiff readily could have discovered, prior to the expiration of the limitations period in 2016, that Classmates.com marketed and sold paid subscriptions, as those facts have long been a matter of public record.[8] *See Arroyo v. OLS Hotels & Resorts LLC*, No. 21-cv-01354, 2021 WL 4145966, at *1 n.3 (N.D. Cal. May 26, 2021) (courts may properly take judicial notice of "publicly accessible websites") (citation omitted). Because facts available to Plaintiff thus put him on notice of his claims, California law disallows tolling via fraudulent concealment. *Hexcel*, 681 F.3d at 1060-61 (Plaintiff's case recognizing fraudulent concealment cannot apply where plaintiff had constructive notice of his claims).

---

[8] *E.g.*, Jonathan Strickland, How Stuff Works, *How Classmates.com Works*, Oct. 12, 2009 (including screenshots of the website showing purported banner advertisements and explaining that once a user registers for a free account, the website "leads the [user] to a membership form" and that "[o]nce you've filled out that information, you'll be prompted to purchase a membership package"), https://rb.gy/vi7lfx; Kim Peterson, Seattle Times, *No. 2 Internet Service Provider Buying Classmates Online*, Oct. 26, 2004 (reporting that Classmates.com's "Core business" is "[s]elling subscriptions to people looking to connect with past acquaintances"), https://rb.gy/wvm4el. Moreover, both the website itself and the Terms of Service disclose the website's subscription sales even to users that have not registered. *E.g.*, Classmates.com, *What Is A Classmates+ Membership?* (describing benefits of a paid membership), https://rb.gy/dgf4mb; Terms of Service, Dkt. 163-17, Ex. Q at 2 (detailing provisions concerning "Paid Services").

### II. Plaintiff's Attack On The Terms Of Service Is Baseless.

Because Plaintiff cannot rescue his time-barred claims, he tries to change the subject by arguing that the Classmates.com Terms of Service are unconscionable and thus unenforceable. The obvious problems with this argument are that he has no standing to challenge the Terms of Service and the issue of whether the Terms of Service are unconscionable is wholly irrelevant to the Motion.

Plaintiff lacks standing to argue that the Terms of Service are unconscionable because only signatories to an agreement have standing to challenge its enforceability. *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001) (the unconscionability defense cannot arise "without a contract"); *see Jones v. Cnty. of Contra Costa*, No. C-13-4350, 2014 WL 1154109, at *3 (N.D. Cal. Mar. 20, 2014) (Chen, J.) ("The federal courts' 'role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution.'" (citation omitted)). Tseng repeatedly emphasizes that he has never agreed to the Terms of Service. *E.g.*, Compl., Dkt. 132 ¶35. He thus lacks standing to challenge them. Plaintiff's request for a ruling that the Terms are unconscionable accordingly seeks an impermissible advisory opinion, which the Court cannot issue. *See Wood v. McDonald*, No. C 97-2636, 1998 WL 296365, at *6 (N.D. Cal. June 1, 1998) (decisions sought in "[t]he absence of a dispute" are "impermissible advisory opinion[s]" that federal courts will not render), *aff'd*, 176 F.3d 486 (9th Cir. 1999). Even if he had standing, the unconscionability, or not, of the Terms of Service is not relevant to resolving the issue presented in this Motion—namely whether Plaintiff's claims are time-barred.[9] Plaintiff either sufficiently established the exacting elements of fraudulent concealment, or he did not, but the enforceability of a contract that Plaintiff never signed does not weigh into that analysis whatsoever. The discovery rule is inapplicable as a matter of law.

As to the substantive challenges to the Terms of Service themselves, Plaintiff improperly is asking the Court to issue an advisory opinion and rule as a matter of law that five provisions in the current

---

[9] That unconsionability is of no moment here is underscored by the fact that Plaintiff objects to several provisions that did not even appear in the website's Terms of Service in 2014, 2015, or 2016, when PeopleConnect purportedly used those Terms to somehow "conceal" Plaintiff's claims. *E.g.*, Dkt. 163-17, Ex. Q, §14(C) (the venue-selection provision in the 2014 terms did not select the venue of PeopleConnect's headquarters but rather the venue where the registered user resided).

Classmates.com Terms of Service are unconscionable and to then void the Terms of Service against any putative class member that agreed to them. Moreover, there are a multitude of problems with Plaintiff's unconscionability analysis, and PeopleConnect stands by its Terms of Service as fully in accord with the law. For now, it suffices to say that all Plaintiff has presented is a side show aimed at distracting from the basic and obvious reality—his claims are untimely.

**III.     The Court Should Resolve Whether Plaintiff's Claims Are Time-Barred Now.**

Finally, Plaintiff tries to avoid the limitations issue altogether by mounting procedural attacks on the Motion. Those efforts go nowhere.

Plaintiff first contends that the Court should deny PeopleConnect's Motion outright because it cites to materials beyond the First Amended Complaint. Resp. at 4. But Plaintiff never disputes the key facts establishing that his claims are untimely: that his yearbooks first were uploaded in June 2014; that absent application of an equitable exception, he had to file by June 2016; and that he did not file until years later. There is thus "no issue of material fact in dispute," and judgment on the pleadings should enter. *See Yetter v. Ford Motor Co.*, 428 F. Supp. 3d 210, 219 (N.D. Cal. 2019).

Plaintiff next argues that the proper procedural course is for the Court to permit his counsel to amend the First Amended Complaint so that he may add additional plaintiffs and leave the same statute of limitations issue now fully briefed before the Court for a future filing. Resp. at 3-5, 21. The Court should not countenance the wasteful use of procedure to stymie the resolution of straightforward issues that are critical to the resolution of this litigation. Though Plaintiff has advised both the Court and PeopleConnect that he intends to seek leave to amend the First Amended Complaint to add additional plaintiffs, that is no reason for the Court to leave unresolved the timeliness of Plaintiff's claims. For one thing, Plaintiff has not indicated he intends to voluntarily dismiss his claims so the timeliness of his claims will remain a live issue in this case regardless of any amendment. As that issue now is fully briefed and ripe for disposition, it only wastes the Court's and the parties' resources to scrap the parties' 12(c) papers and require them to begin that contest anew. For another, because Plaintiff seeks to pursue his claims as a representative of a class, the prompt resolution of the limitations issue is particularly beneficial to this litigation as a whole. Indeed, given that Plaintiff has defined the putative class to include all California residents whose yearbook photographs were searchable on the website between December 18, 2020, to the present, it is likely that

many other putative class members will be subject to the same limitations bar. Dkt. 133 at 4. Resolving the timeliness issue now will narrow the scope of the issues the Court must weigh at class certification and summary judgment.

Courts rightly disfavor allowing plaintiffs to avoid motions for judgment as a matter of law by amending their complaints. This Court too should not allow Plaintiff to "sidestep" an adverse ruling on the fully briefed, dispositive motion now before it. *See In re Cypress Semiconductor Sec. Litig.*, No. C-92-20048, 1995 WL 241441, at *1 (N.D. Cal. Apr. 19, 1995) (denying leave to amend and noting that when a plaintiff uses a motion for leave to amend to sidestep a dispositive ruling, the "tactic … has bad faith and prejudice written all over it"); *see also Stein v. Disciplinary Bd. of Sup. Ct. of N.M.*, No. CIV-04-0840, 2006 WL 4079022, at *1 (D.N.M. May 31, 2006) ("Where a party proposes amendments while dispositive motions are pending, a court should not allow an amendment whose purpose is to prevent termination of the case on a motion to dismiss or on summary judgment."); *cf. Woods v. Vector Mktg. Corp.*, No. C-14-0264, 2015 WL 10607576, at *1 (N.D. Cal. June 5, 2015) (Plaintiff's case permitting leave to amend only after Court's ruling on pending dispositive motion). That is especially true because PeopleConnect advised Plaintiff's counsel by letter on December 19, 2022, that Plaintiff's current claims are time-barred. Berman Decl. ¶2. Instead of voluntarily dismissing Plaintiff's claims, his counsel forged ahead, forcing upon PeopleConnect the expense of challenging Plaintiff's undisputedly untimely claims via this motion practice. At the same time, Plaintiff's counsel repeatedly has demanded that PeopleConnect agree to a briefing schedule for class certification that would not permit PeopleConnect even to conduct the necessary discovery. Berman Decl. ¶¶4-6. The potential prejudice to PeopleConnect is clear.

Accordingly, PeopleConnect respectfully requests that the Court resolve this Motion before entertaining any motion for leave to amend.

## CONCLUSION

For the foregoing reasons and those stated in PeopleConnect's motion for judgment on the pleadings, the Court should enter judgment for PeopleConnect.

| | |
|---|---|
| Dated: March 6, 2023 | Respectfully submitted, |
| | JENNER & BLOCK LLP |
| | By: /s/ *Debbie L. Berman* |
| | Debbie L. Berman (*pro hac vice*)<br>dberman@jenner.com<br>Wade A. Thomson (*pro hac vice*)<br>wthomson@jenner.com<br>JENNER & BLOCK LLP<br>353 North Clark Street<br>Chicago, Illinois 60654<br>Telephone:     312 222-9350<br>Facsimile:     312 527-0484 |
| | Benjamin T. Halbig (Cal. Bar. No. 321523)<br>bhalbig@jenner.com<br>JENNER & BLOCK LLP<br>455 Market Street, Suite 2100<br>San Francisco, California 94105<br>Telephone:     628 267-6800<br>Facsimile:     628 267-6859 |
| | Kate T. Spelman (Cal. Bar. No. 269109)<br>kspelman@jenner.com<br>JENNER & BLOCK LLP<br>515 S. Flower Street, Suite 3300<br>Los Angeles, California 90071<br>Telephone:     213 239-5100<br>Facsimile:     213 239-5199 |
| | Attorneys for Defendant PeopleConnect, Inc. |