Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Telephone: (415) 358-6293

*Attorneys for Plaintiffs and the Proposed Class*

[Additional Counsel Listed on Signature Page]

## THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYNE TSENG, ALEXANDRA OVERTON and ALICIA NOLEN, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>v.<br><br>PEOPLECONNECT, INC., a Delaware Corporation,<br><br>              Defendant. | Case No. 3:20-cv-09203<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF CAL. CIV. CODE § 3344, CAL. BUS. & PROF. CODE § 17200, AND CALIFORNIA UNJUST ENRICHMENT**<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

1.      Plaintiffs WAYNE TSENG, ALEXANDRA OVERTON and ALICIA NOLEN, by and through their attorneys, make the following allegations on information and belief, except as to factual allegations pertaining to Plaintiffs, which are based on personal knowledge.

## INTRODUCTION

2.      Plaintiffs bring this class action complaint against PEOPLECONNECT, INC. ("Classmates") for knowingly misappropriating the names, photographs, and likenesses of Plaintiffs and the class; knowingly using those names, photographs, and likenesses to advertise its products and services, including subscription memberships to the website Classmates.com;

and knowingly using those names, photographs, and likenesses on and in the website Classmates.com, without obtaining prior consent from Plaintiffs and the class.

3.      Classmates' business model relies on extracting personal information from school yearbooks, including names, photographs, schools attended, and other biographical information. Classmates aggregates the extracted information into digital records that identify specific individuals by name, photograph, and other personal information, and stores the digital records in a massive online database. Classmates provides free access to some of the personal information in its database in order to drive users to purchase a paid product – a monthly subscription to Classmates.com that retails for up to $3 per month – and to gather registered users, from whom Classmates profits by selling targeted ads.

4.      According to the Classmates.com website, Classmates' Yearbook Collection contains records copied from over 400 thousand yearbooks. While Classmates does not publish figures about the total number of records in the Collection or a breakdown by state, it is likely the Collection contains records corresponding to millions of Californians.

5.      Classmates has not received consent from, given notice to, or provided compensation to the millions of Californians whose names, photographs, biographical information, and identities appear in its Classmates Yearbook Collection.

6.      The names, photographs, cities of residence, schools attended, likenesses, and identities contained in the Classmates Yearbook Collection uniquely identify specific individuals.

7.      Classmates knowingly uses the names, photographs, cities of residence, schools attended, likenesses, and identities in its Classmates Yearbook Collection to advertise, sell, and solicit the purchase of its "CM+" subscription membership, which retails for up to $3 per month.

8.      Classmates knowingly uses the names, photographs, cities of residence, schools attended, likenesses, and identities in its Classmates Yearbook Collection to advertise the free version of its website, which is available to both unregistered users and registered non-paying users. Classmates derives profit from the free version of its website by (1) selling targeted ads;

(2) driving users of the free version to purchase its paid products and services; and (3) on information and belief, selling the personal information it collects from registered and unregistered users to third parties.

9.      Classmates knowingly uses the names, photographs, cities of residence, schools attended, likenesses, and identities in its Classmates Yearbook Collection on and in its products and services, by (1) selling access to the records to paying subscribers via its CM+ online membership plan; and (2) including these records on the free version of its website that is available to unregistered users and registered non-paying users, which Classmates distributes for free to the public as a means of advertising its services and attracting paying subscribers.

10.     By misappropriating and misusing millions of Californian's names, photographs, and likenesses without consent, Classmates has harmed Plaintiffs and the class by denying them the economic value of their likenesses, violating their legally protected rights to exclusive use of their likenesses, infringing their intellectual property without compensation, and disturbing their peace of mind. Classmates has also earned ill-gotten profits and been unjustly enriched.

11.     These practices, as further detailed in this complaint, violate the California right to publicity as codified in Cal. Civ. Code § 3344; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.; and California Unjust Enrichment law.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act ("CAFA")), because: (A) members of the putative class are citizens of a state different from at least one defendant. According to available public records, defendant PeopleConnect Inc. is incorporated in Delaware and has its principal place of business in Seattle, Washington. The class members are residents of California. (B) The proposed class consists of at least 100 members. Classmates advertises that its Classmates Yearbook Collection comprises records collected from "over 400,000 yearbooks."  While Classmates does not publish statistics concerning the total number of records in each yearbook, or a breakdown by state, a conservative estimate would place the number of individual records

corresponding to Californians in the millions. And (C) the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Cal. Civ. Code § 3344 provides for damages equal to the greater of $750 per violation, the actual damages suffered by Plaintiffs, or the profits earned by Defendants attributable to the unauthorized use. Given millions of likely records in California, the amount in controversy is well over the jurisdictional amount.

13.     This Court has personal jurisdiction over the claims of Plaintiffs and the non-named class members. Classmates maintains substantial connections to the state of California and this district. Classmates maintains an office in Woodland Hills, California. Classmates advertises its products and services to prospective customers in this state and district, provides its products and services to existing customers in this state and district, and uses the misappropriated names, photographs, likenesses, images, and identities of residents of this state and district as described in this complaint.

14.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this district. A substantial portion of the class members reside in this state and district. Named Plaintiffs Lawrence Geoffrey Abraham, Alice Zhang, Wayne Tseng, and Jamaal Carney reside in this district.

**INTRADISTRICT VENUE**

15.     Venue in this Division of the Northern District is proper because a substantial part of the events or omissions which give rise to the claim occurred in San Francisco County and because the named Plaintiffs live in this District.

**PARTIES**

**Defendant Classmates**

16.     Defendant PEOPLECONNECT, INC. is a Delaware corporation with its headquarters in Seattle, Washington. It conducts business under the brand names "Classmates.com," "Classmates," and other brand names associated with the various website and services it owns and operates. It conducts business throughout this district, California, and the United States. PeopleConnect, Inc. owns and operates the website Classmates.com.

**Plaintiff Wayne Tseng**

17.     Plaintiff Wayne Tseng is a resident of El Sobrante, California, in Contra Costa County. Mr. Tseng is not a subscriber of any Classmates products or services and is not subject to any Terms of Service or any other agreement with Classmates.

18.     Mr. Tseng has never provided consent to Classmates, written or otherwise, for the commercial use of his name, photograph, or likeness.

19.     Classmates has never notified, requested consent from, or provided compensation to Mr. Tseng for its misappropriation and commercial exploitation of his name, photograph, and likeness.

20.     There is no agreement to arbitrate between Mr. Tseng and Classmates or PeopleConnect. At no time has Mr. Tseng believed any agreement between himself and Classmates or PeopleConnect exists or existed.

21.     Mr. Tseng hereby expressly repudiates any agreement to arbitrate that Classmates or PeopleConnect may contend exists or existed.

22.     Mr. Tseng instructed his attorneys to pursue a claim against Classmates in federal court. Mr. Tseng has never authorized, and does not authorize, his attorneys to agree to arbitration on his behalf.

23.     Mr. Tseng is not aware of any agreements between any of his attorneys and Classmates/PeopleConnect.

24.     Mr. Tseng is not aware of any accounts on Classmates.com created by his attorneys.

25.     Mr. Tseng did not instruct his attorneys to investigate the Classmates.com website. Mr. Tseng did not instruct his attorneys to register for an account or agree to a Terms of Service.

26.     To confirm the presence of Mr. Tseng's photograph on Classmates.com and collect the single screenshot shown in the Complaint below, a non-attorney staff member of Turke & Strauss LLP searched for Mr. Tseng's name on the publicly available portion of the Classmates.com website. At the time she performed the search, the publicly available portion of

the Classmates.com website did not require agreement to any TOS. The staff member never saw a TOS and did not agree to any TOS.

27.     None of Mr. Tseng's attorneys or their staff visited any portion of the Classmates.com website that requires agreement to a TOS to gather information related to his claim.

28.     All the information supporting Mr. Tseng's complaint is publicly available without agreeing to any TOS. That Mr. Tseng's photograph is on Classmates.com is verifiable by searching for his name on portions of the site that do not require agreeing to the TOS. The advertising flow Classmates uses to promote website subscriptions is described in detail in publicly available documents, including the initial Complaint filed in this case. That Classmates publicly displays a version of the advertising flow that incorporates Mr. Tseng's photograph is reasonably alleged on information and belief, because Classmates uses all student yearbook photographs in the same way.

**Plaintiff Alexandra Overton**

29.     Plaintiff Alexandra Overton is a resident of Ventura, California, in Ventura County. Ms. Overton is not a subscriber of any Classmates products or services and is not subject to any Terms of Service or any other agreement with Classmates.

30.     Ms. Overton has never visited, used, or subscribed to the website Classmates.com.

31.     Ms. Overton attended Villanova Preparatory School in Ojai, California, from which she graduated in 2019.

32.     Ms. Overton's claims are functionally identical to the claims Plaintiffs Meredith Callahan and Lawrence Geoffrey Abraham filed before this Court on December 18, 2020. Ms. Overton is a member of the Class Ms. Callahan and Mr. Abraham alleged in their complaint. *See* Dkt. 2. Accordingly, the statute of limitations was tolled for Ms. Overton at least from the time Ms. Callahan and Mr. Abraham filed their Complaint. Ms. Overton's claims are therefore timely.

33.     Even if tolling did not apply, Ms. Overton's claims would still be timely because

she could not have discovered her claim prior to December 18, 2020.

34. Even if tolling did not apply, and even if the discovery rule did not apply, Ms. Overton's claims would still be timely because, on information and belief, PeopleConnect first uploaded her photograph to www.classmates.com less than two years prior to the date on which Ms. Overton brought her claim.

35. Prior to filing her Complaint, Ms. Overton requested through her counsel that PeopleConnect inform her when it first uploaded her photograph. PeopleConnect refused to provide her this information.

36. Ms. Overton has never provided consent to Classmates, written or otherwise, for the commercial use of her name, photograph, or identity.

37. Classmates has never notified, requested consent from, or provided compensation to Ms. Overton for its misappropriation and commercial exploitation of her name, photograph, and identity.

38. There is no agreement to arbitrate between Ms. Overton and PeopleConnect. Ms. Overton has never visited the Classmates.com website and has never seen or agreed to any PeopleConnect or Classmates Terms of Service. At no time has Ms. Overton believed any agreement between herself and PeopleConnect exists or existed.

39. Counsel on behalf of Ms. Overton sent a letter to PeopleConnect's counsel on February 14, 2023. **Ex. 1**. Counsel wrote that "Ms. Overton and Ms. Nolen do not agree, and have never agreed, to arbitrate their claims against PeopleConnect. Ms. Overton and Ms. Nolen expressly disclaim and repudiate any purported agreement to arbitrate." *Id*. The letter also stated that "to ensure that PeopleConnect does not misrepresent or misunderstand Ms. Overton's, Ms. Nolen's, and their counsel's unequivocal intentions **not** to enter any agreement to arbitrate, Ms. Overton and Ms. Nolen both signed" Acknowledgements attached to the letter. *Id.* (Emphasis in original.).

40. In her signed Acknowledgment attached to the February 14 letter, Ms. Overton acknowledged and confirmed that: (1) she "expressly disclaims and repudiates any purported agreement to arbitrate"; (2) she "has never seen or agreed to any terms of service or any other

agreement" with PeopleConnect; (3) she "has no knowledge of any terms, material or otherwise, that might exist in any agreement to arbitrated [PeopleConnect] might have with anyone"; (4) she "does not believe any agreement to arbitrate exists" between herself and PeopleConnect; (5) she "does not believe [she] is bound by any agreement to arbitrate that may exist between [PeopleConnect] and any other person," including her attorneys. **Ex. 2**.

41.     Ms. Overton also acknowledged and confirmed that she "instructed her [counsel]": (1) "[n]ot to enter any agreement to arbitrate with PeopleConnect on [her] behalf"; (2) [t]o pursue this action in federal or state court and not in an arbitral forum"; (3) "[t]o inform [PeopleConnect] on [her] behalf that [she] does not affirm or ratify any agreement to arbitrate that might exist now, that might exist in the future, or that [PeopleConnect] might claim exists or existed"; and (4) "[t]o inform [PeopleConnect] on [her] behalf that [she] expressly disaffirms, disavows, and repudiates any agreement to arbitrate that might exist now, that might exist in the future, or that [PeopleConnect] might claim exists or existed." *Id.*

42.     Ms. Overton hereby again disaffirms, disavows, and repudiates any agreement to arbitrate.

43.     None of the allegations in this Complaint relating to PeopleConnect's use of Ms. Overton's name and photograph to advertise are based on any information gathered from www.classmates.com. Rather, Ms. Overton's allegations are based on the fact that PeopleConnect incorporates each of the yearbook photographs in its database into advertisements for website subscriptions in the same way. Descriptions of PeopleConnect's advertising techniques and the relevant functioning of its website appear in public filings available to Ms. Overton, including the prior complaints filed in this case.

44.     Ms. Overton highly values her personal privacy and intellectual property. She highly values the ability to control and prevent the commercial use of her identity without consent.

45.     PeopleConnect uses Ms. Overton's yearbook photograph as a minor child in advertisements promoting website subscriptions. PeopleConnect possesses at least one photograph of Ms. Overton it uses for this purpose, which it appropriated without her

permission from his yearbook from Villanova Preparatory School.

46.     44.     PeopleConnect incorporates Ms. Overton's photograph in advertisements for website subscriptions as described below. This allegation, and the succeeding allegations related to PeopleConnect's use of Ms. Overton's photographs, are not based on direct observation of the Classmates.com website. Rather, these allegations are based on Plaintiffs' knowledge that PeopleConnect incorporates all yearbook photographs in its database into advertisements in the same way.

47.     PeopleConnect's legal posturing in this case forced Ms. Overton to prepare her Complaint without referring to any portion of the Classmates website that requires account creation. PeopleConnect has asserted that anyone who creates an account for any reason – including for the purpose of investigating a potential legal claim – has thereby expressly consented to PeopleConnect's use of their name and likeness to advertise. PeopleConnect has also asserted that any attorney or other agent who creates an account to investigate someone else's potential legal claim has also thereby expressly consented to PeopleConnect's use of their client's name and likeness on that client's behalf. As a result, according to PeopleConnect, neither Ms. Overton nor her counsel can visit any portion of the website that requires agreement to the Terms without thereby sacrificing Ms. Overton's right to sue.

48.     PeopleConnect provides a publicly accessible webpage on which users may search, and have searched, by name and/or location for Ms. Overton and other Class members.

49.     Users who searched for Ms. Overton received in response a list of results, which include low-resolution photographs depicting Ms. Overton as a child.

50.     Users who clicked on Ms. Overton's photographs seeking higher-resolution versions, or who attempted to view more than a proscribed number of photographs, received a pop-up message asking the user to register with the site and agree to the Terms of Service. The user was required to interact with the pop-up to continue viewing Ms. Overton's photographs.

51.     After a user agreed to the Terms and registered with the site, PeopleConnect displayed a screen soliciting the purchase of a paid subscription to Classmates.com.

52.     PeopleConnect's sole purpose in using Ms. Overton's photograph, name, and

identity on the free version of its website is to solicit the purchase of paid subscriptions to www.classmates.com.

53.     Ms. Overton does not know how PeopleConnect obtained her photographs as a child. On information and belief, it is likely PeopleConnect obtained her photographs by paying a licensing fee to a third party in exchange for digitized copies of Ms. Overton's photographs and the right to make commercial use of those copies.

54.     PeopleConnect misappropriated Ms. Overton photographs without permission from Ms. Overton, the photographer who took her pictures, the authors who created her yearbooks, or the publishers of her yearbooks.

55.     PeopleConnect does not hold a copyright in yearbooks from Ms. Overton's school, nor does it have permission from the copyright holder the republish or distribute the yearbooks or the photographs contained therein.

56.     Ms. Overton has intellectual property and privacy interests in her photographs, name, likeness, and persona recognized by California statutory and common law. She has the right to exclude anyone from making commercial use of her persona without her permission.

57.     PeopleConnect has injured Ms. Overton by taking her intellectual property without compensation; by invading her privacy rights protected by statute; by unlawfully profiting from its exploitation of her personal information; and by disturbing her peace of mind.

58.     Ms. Overton is upset and disturbed by PeopleConnect's commercial use of her name, photograph, and persona without her consent. Ms. Overton believes her persona is rightly hers to control. Ms. Overton does not support or endorse the website www.classmates.com. She finds it offensive to her dignity that PeopleConnect is using her name and photograph without her permission to advertise a product of which she does not approve.

59.     PeopleConnect's illegal use of her name and photograph has left Ms. Overton worried and uncertain about her inability to control how her name and personality are used.

60.     Ms. Overton is deeply uncomfortable in the knowledge that PeopleConnect is using her name and photographs as a minor to promote a service she does not support.

61.     PeopleConnect deliberately concealed its commercial use of Ms. Overton's photograph from Ms. Overton. She could not have discovered PeopleConnect's illegal use of her name and photograph without the assistance of her counsel.

62.     PeopleConnect's advertisements incorporating Ms. Overton's name and likeness do not solicit paid subscriptions until <u>after</u> the user has created an account agreed to the Terms. Accordingly, Ms. Overton could not have discovered PeopleConnect's commercial use of her name and photograph to advertise without creating an account on PeopleConnect and agreeing to the Terms.

63.     Even had Ms. Overton visited the public portion of the Classmates.com website and discovered the low-resolution versions of her photographs, she would not have created an account or agreed to the Terms.

64.     Account registration requires that the user share their name and email address with PeopleConnect. Ms. Overton did not and does not wish to share this information with PeopleConnect. Ms. Overton does not want PeopleConnect to profit from or use her personal information in any way. Nor does she trust that PeopleConnect would properly safeguard her name and email address.

65.     Ms. Overton's fears on this front are well-founded. This month PeopleConnect admitted to a data breach in which the names and email addresses of tens of millions of its users were exposed. *See* https://www.idstrong.com/sentinel/peopleconnect-data-breach/

66.     Account registration also requires that the user agree to the Terms. Although Ms. Overton has never seen any PeopleConnect Terms and does not know what they contain, Plaintiffs' counsel have explained to Ms. Overton that the Terms include a number of provisions designed to impede a potential plaintiff from bringing suit in court. Had Ms. Overton visited www.classmates.com for the purpose of investigating a potential legal claim, she would not have agreed to any restrictions on her ability to bring suit. Accordingly, she would not have agreed to the Terms.

67.     Because Ms. Overton would not have been willing to create an account on

www.classmates.com, she could not have learned that PeopleConnect uses her low-resolution photographs to promote subscriptions. By placing the solicitation webpage behind the page requiring account creation and agreement to the Terms, PeopleConnect concealed Ms. Overton's cause of action from Ms. Overton.

68.      PeopleConnect also concealed Ms. Overton's cause of action from her counsel by deliberately impeding their investigation of her claim.

69.      PeopleConnect's affirmative actions aimed at concealing Ms. Overton cause of action from her counsel include, but are not limited to: (1) deleting accounts it knew counsel were using to investigate their clients' claims; (2) refusing counsel's repeated requests that PeopleConnect provide counsel access to www.classmates.com for the purpose of investigating their clients' claims; (3) blocking counsel's email addresses from creating accounts; (4) threatening counsel with legal action should they continue to visit www.classmates.com to investigate their clients' claims; and (5) refusing to recognize counsels' valid opt-outs of the arbitration clause in PeopleConnect's Terms.

**Plaintiff Alicia Nolen**

70.      Plaintiff Alicia Nolen is a resident of Tulare, California, in Tulare County. Ms. Nolen is not a subscriber of any Classmates products or services and is not subject to any Terms of Service or any other agreement with Classmates.

71.      Ms. Nolen has never visited, used, or subscribed to the website Classmates.com.

72.      Ms. Nolen attended Tulare Union High School in Tulare, California, from which she graduated in 2019.

73.      Ms. Nolen's claims are functionally identical to the claims Plaintiffs Meredith Callahan and Lawrence Geoffrey Abraham filed before this Court on December 18, 2020. Ms. Overton is a member of the Class Ms. Callahan and Mr. Abraham alleged in their complaint. *See* Dkt. 2. Accordingly, the statute of limitations was tolled for Ms. Nolen at least from the time Ms. Callahan and Mr. Abraham filed their Complaint. Ms. Nolen's claims are therefore timely.

74.      Even if tolling did not apply, Ms. Nolen's claims would still be timely because she could not have discovered her claim prior to December 18, 2020.

75.     Even if tolling did not apply, and even if the discovery rule did not apply, Ms. Nolen's claims would still be timely because, on information and belief, PeopleConnect first uploaded her photograph to www.classmates.com less than two years prior to the date on which Ms. Nolen brought her claim.

76.     Prior to filing her Complaint, Ms. Nolen requested through her counsel that PeopleConnect inform her when it first uploaded her photograph. PeopleConnect refused to provide her this information.

77.     Ms. Nolen has never provided consent to Classmates, written or otherwise, for the commercial use of her name, photograph, or identity.

78.     Classmates has never notified, requested consent from, or provided compensation to Ms. Nolen for its misappropriation and commercial exploitation of her name, photograph, and identity.

79.     There is no agreement to arbitrate between Ms. Nolen and PeopleConnect. Ms. Nolen has never visited the Classmates.com website and has never seen or agreed to any PeopleConnect or Classmates Terms of Service. At no time has Ms. Nolen believed any agreement between herself and PeopleConnect exists or existed.

80.     Counsel on behalf of Ms. Nolen sent a letter to PeopleConnect's counsel on February 14, 2023. **Ex. 3**. Counsel wrote that "Ms. Overton and Ms. Nolen do not agree, and have never agreed, to arbitrate their claims against PeopleConnect. Ms. Overton and Ms. Nolen expressly disclaim and repudiate any purported agreement to arbitrate." *Id*. The letter also stated that "to ensure that PeopleConnect does not misrepresent or misunderstand Ms. Overton's, Ms. Nolen's, and their counsel's unequivocal intentions **not** to enter any agreement to arbitrate, Ms. Overton and Ms. Nolen both signed" Acknowledgements attached to the letter. *Id.* (Emphasis in original.).

81.     In her signed Acknowledgment attached to the February 14 letter, Ms. Nolen acknowledged and confirmed that: (1) she "expressly disclaims and repudiates any purported agreement to arbitrate"; (2) she "has never seen or agreed to any terms of service or any other agreement" with PeopleConnect; (3) she "has no knowledge of any terms, material or otherwise,

that might exist in any agreement to arbitrated [PeopleConnect] might have with anyone"; (4) she "does not believe any agreement to arbitrate exists" between herself and PeopleConnect; (5) she "does not believe [she] is bound by any agreement to arbitrate that may exist between [PeopleConnect] and any other person," including her attorneys. **Ex. 4**.

82.     Ms. Nolen also acknowledged and confirmed that she "instructed her [counsel]": (1) "[n]ot to enter any agreement to arbitrate with PeopleConnect on [her] behalf"; (2) [t]o pursue this action in federal or state court and not in an arbitral forum"; (3) "[t]o inform [PeopleConnect] on [her] behalf that [she] does not affirm or ratify any agreement to arbitrate that might exist now, that might exist in the future, or that [PeopleConnect] might claim exists or existed"; and (4) "[t]o inform [PeopleConnect] on [her] behalf that [she] expressly disaffirms, disavows, and repudiates any agreement to arbitrate that might exist now, that might exist in the future, or that [PeopleConnect] might claim exists or existed." *Id.*

83.     Ms. Nolen hereby again disaffirms, disavows, and repudiates any agreement to arbitrate.

84.     None of the allegations in this Complaint relating to PeopleConnect's use of Ms. Nolen's name and photograph are based on any information gathered from www.classmates.com. Rather, Ms. Nolen's allegations are based on the fact that PeopleConnect incorporates each of the yearbook photographs in its database into advertisements for website subscriptions in the same way. Descriptions of PeopleConnect's advertising techniques and the relevant functioning of its website appear in public filings available to Ms. Nolen, including the prior complaints filed in this case.

85.     Ms. Nolen highly values her personal privacy and intellectual property. She highly values the ability to control and prevent the commercial use of her identity without consent.

86.     PeopleConnect uses Ms. Nolen's yearbook photograph as a minor child in advertisements promoting website subscriptions. PeopleConnect possesses at least one photograph of Ms. Nolen it uses for this purpose, which it appropriated without her permission from his yearbook from Tulare Union High School.

87.    44.    PeopleConnect incorporates Ms. Nolen's photograph in advertisements for website subscriptions as described below. This allegation, and the succeeding allegations related to PeopleConnect's use of Ms. Nolen's photographs, are not based on direct observation of the Classmates.com website. Rather, these allegations are based on Plaintiffs' knowledge that PeopleConnect incorporates all yearbook photographs in its database into advertisements in the same way.

88.    PeopleConnect's legal posturing in this case forced Ms. Nolen to prepare her Complaint without referring to any portion of the Classmates website that requires account creation. PeopleConnect has asserted that anyone who creates an account for any reason – including for the purpose of investigating a potential legal claim – has thereby expressly consented to PeopleConnect's use of their name and likeness to advertise. PeopleConnect has also asserted that any attorney or other agent who creates an account to investigate someone else's potential legal claim has also thereby expressly consented to PeopleConnect's use of their client's name and likeness on that client's behalf. As a result, according to PeopleConnect, neither Ms. Nolen nor her counsel can visit any portion of the website that requires agreement to the Terms without thereby sacrificing Ms. Nolen's right to sue.

89.    PeopleConnect provides a publicly accessible webpage on which users may search, and have searched, by name and/or location for Ms. Nolen and other Class members.

90.    Users who searched for Ms. Nolen received in response a list of results, which include low-resolution photographs depicting Ms. Nolen as a child.

91.    Users who clicked on Ms. Nolen's photographs seeking higher-resolution versions, or who attempted to view more than a proscribed number of photographs, received a pop-up message asking the user to register with the site and agree to the Terms of Service. The user was required to interact with the pop-up to continue viewing Ms. Nolen's photographs.

92.    After a user agreed to the Terms and registered with the site, PeopleConnect displayed a screen soliciting the purchase of a paid subscription to Classmates.com.

93.    PeopleConnect's sole purpose in using Ms. Nolen's photograph, name, and identity on the free version of its website is to solicit the purchase of paid subscriptions to

www.classmates.com.

94.     Ms. Nolen does not know how PeopleConnect obtained her photographs as a child. On information and belief, it is likely PeopleConnect obtained her photographs by paying a licensing fee to a third party in exchange for digitized copies of Ms. Nolen's photographs and the right to make commercial use of those copies.

95.     PeopleConnect misappropriated Ms. Nolen photographs without permission from Ms. Nolen, the photographer who took her pictures, the authors who created her yearbooks, or the publishers of her yearbooks.

96.     PeopleConnect does not hold a copyright in yearbooks from Ms. Nolen's school, nor does it have permission from the copyright holder the republish or distribute the yearbooks or the photographs contained therein.

97.     Ms. Nolen has intellectual property and privacy interests in her photographs, name, likeness, and persona recognized by California statutory and common law. She has the right to exclude anyone from making commercial use of her persona without her permission.

98.     PeopleConnect has injured Ms. Nolen by taking her intellectual property without compensation; by invading her privacy rights protected by statute; by unlawfully profiting from its exploitation of her personal information; and by disturbing her peace of mind.

99.     Ms. Nolen is upset and disturbed by PeopleConnect's commercial use of her name, photograph, and persona without her consent. Ms. Nolen believes her persona is rightly hers to control. Ms. Nolen does not support or endorse the website www.classmates.com. She finds it offensive to her dignity that PeopleConnect is using her name and photograph without her permission to advertise a product of which she does not approve.

100.    PeopleConnect's illegal use of her name and photograph has left Ms. Nolen worried and uncertain about her inability to control how her name and personality are used.

101.    Ms. Nolen is deeply uncomfortable in the knowledge that PeopleConnect is using her name and photographs as a minor to promote a service she does not support.

102.    PeopleConnect deliberately concealed its commercial use of Ms. Nolen's

photograph from Ms. Nolen. She could not have discovered PeopleConnect's illegal use of her name and photograph without the assistance of her counsel.

103.    PeopleConnect's advertisements incorporating Ms. Nolen's name and likeness do not solicit paid subscriptions until <u>after</u> the user has created an account agreed to the Terms. Accordingly, Ms. Nolen could not have discovered PeopleConnect's commercial use of her name and photograph to advertise without creating an account on PeopleConnect and agreeing to the Terms.

104.    Even had Ms. Nolen visited the public portion of the Classmates.com website and discovered the low-resolution versions of her photographs, she would not have created an account or agreed to the Terms.

105.    Account registration requires that the user share their name and email address with PeopleConnect. Ms. Nolen did not and does not wish to share this information with PeopleConnect. Ms. Nolen does not want PeopleConnect to profit from or use her personal information in any way. Nor does she trust that PeopleConnect would properly safeguard her name and email address.

106.    Ms. Nolen's fears on this front are well-founded. This month PeopleConnect admitted to a data breach in which the names and email addresses of tens of millions of its users were exposed. *See* https://www.idstrong.com/sentinel/peopleconnect-data-breach/

107.    Account registration also requires that the user agree to the Terms. Although Ms. Nolen has never seen any PeopleConnect Terms and does not know what they contain, Plaintiffs' counsel have explained to Ms. Nolen that the Terms include a number of provisions designed to impede a potential plaintiff from bringing suit in court. Had Ms. Nolen visited www.classmates.com for the purpose of investigating a potential legal claim, she would not have agreed to any restrictions on her ability to bring suit. Accordingly, she would not have agreed to the Terms.

108.    Because Ms. Nolen would not have been willing to create an account on www.classmates.com, she could not have learned that PeopleConnect uses her low-resolution

photographs to promote subscriptions. By placing the solicitation webpage behind the page requiring account creation and agreement to the Terms, PeopleConnect concealed Ms. Nolen's cause of action from Ms. Nolen.

109.     PeopleConnect also concealed Ms. Nolen's cause of action from her counsel by deliberately impeding their investigation of her claim.

110.     PeopleConnect's affirmative actions aimed at concealing Ms. Nolen's cause of action from her counsel include, but are not limited to: (1) deleting accounts it knew counsel were using to investigate their clients' claims; (2) refusing counsel's repeated requests that PeopleConnect provide counsel access to www.classmates.com for the purpose of investigating their clients' claims; (3) blocking counsel's email addresses from creating accounts; (4) threatening counsel with legal action should they continue to visit www.classmates.com to investigate their clients' claims; and (5) refusing to recognize counsels' valid opt-outs of the arbitration clause in PeopleConnect's Terms.

### NAMED PLAINTIFFS' FACTUAL ALLEGATIONS

**Plaintiff Wayne Tseng**

111.     Plaintiff Wayne Tseng is a private individual who has no relationship with Classmates or PeopleConnect. He has never visited, used, or subscribed to Classmates.com.

112.     Mr. Tseng did not give consent to Classmates to use his photographs, likeness, name, or persona in any way. Had Classmates requested his consent, Mr. Tseng would not have provided it.

113.     Mr. Tseng highly values his personal privacy and his ability to control and prevent the commercial use of his likeness without his consent.

114.     Classmates uses Mr. Tseng's yearbook photograph as a minor child in advertisements promoting website subscriptions. Classmates possesses at least one photograph of Mr. Tseng it uses for this purpose, which it misappropriated without his permission from Mr. Tseng's yearbook from Albany High School in Albany, California.

115.     A screenshot taken from Classmates.com showing the yearbook page from which Classmates extracted Mr. Tseng's photograph appears below. For Mr. Tseng's privacy and the privacy of others displayed, counsel present the screenshot here in a low-resolution format. As it appears on the Classmates website, Mr. Tseng's name and likeness are plainly visible and identifiable. The screenshot shown below was collected by a staff member at Turke & Strauss from a part of the Classmates.com website that does not require assent to the TOS to access. The staff member did not see a TOS and did not agree to a TOS.



116.     Classmates provides a publicly accessible landing page on which non-registered users may search, and have searched, for Mr. Tseng by name and location.

117.     Users who search for Mr. Tseng receive in response a list of results, which include a low-resolution version of the photograph depicting Mr. Tseng as a minor.

118.     Users who click on Mr. Tseng's photograph seeking a high-resolution version receive a pop-up message asking the user to register with Classmates.com "to view full-size yearbooks." The user must interact with the pop-up to continue viewing Mr. Tseng's photograph.

119.     Once users have clicked "Submit" on the pop-up, Classmates displays a screen soliciting the purchase of a paid subscription to Classmates.com.

120.     Classmates also displays banner ads promoting Classmates.com subscriptions adjacent to the search results containing Mr. Tseng's photograph.

121.     As shown above, Classmates' uses Mr. Tseng's photograph, name, and likeness in advertisements it displays publicly on the Internet for the commercial purpose of soliciting

subscriptions.

122.    Mr. Tseng does not know how Classmates obtained his name and photograph as a child. It appears to have been misappropriated from his high school yearbook.

123.    On information and belief, Classmates received no indication, and had no reasonable belief, that the people who created Mr. Tseng's yearbook intended the yearbook to be published on the Internet or used to promote website subscriptions.

124.    On information and belief, Classmates did not obtain permission from the yearbooks' authors, the photographer who took Mr. Tseng's photograph, or the yearbook's copyright holder prior to incorporating Mr. Tseng's photograph and other photographs from the yearbook in its advertisements. On information and belief, Classmates does not hold the copyright in Mr. Tseng's yearbook or his photograph.

125.    Mr. Tseng has intellectual property and privacy interests in his name, likeness, and persona recognized by California statutory and common law. He has the right to exclude anyone from making commercial use of his likeness without his consent.

126.    Classmates has injured Mr. Tseng by profiting from its use of his name and likeness without compensating him; by misappropriating and infringing his intellectual property rights without compensation; by violating his statutorily protected right to control the commercial use of his name and likeness; and by disturbing his peace of mind.

127.    Classmates' illegal actions caused Mr. Tseng mental anguish and harmed his peace of mind. Upon learning about Classmates' actions, Mr. Tseng was upset and disturbed by Classmates' use of his name and photograph without his consent. Mr. Tseng believes his likeness is rightly his to control. Classmates' illegal use has left him worried and uncertain about his inability to control how his name and likeness is used. Mr. Tseng feels that Classmates' use of his photograph represents an alarming invasion of his privacy. Mr. Tseng feels deeply uncomfortable in the knowledge that Classmates is using his name and likeness to advertise a subscription product he does not endorse or approve of.

**Plaintiff Alexandra Overton**

128.    Plaintiff Alexandra Overton is a private individual who has no relationship with

Classmates or PeopleConnect. She has never visited, used, or subscribed to Classmates.com.

129.    Ms. Overton did not give consent to Classmates to use her photographs, likeness, name, or persona in any way. Had Classmates requested her consent, Ms. Overton would not have provided it.

130.    Ms. Overton highly values her personal privacy and her ability to control and prevent the commercial use of her likeness without her consent.

131.    Classmates uses Ms. Overton's yearbook photograph as a minor child in advertisements promoting website subscriptions. Classmates possesses at least one photograph of Ms. Overton it uses for this purpose, which it misappropriated without her permission from Ms. Overton's yearbook from Villanova Preparatory School in Ojai, California.

132.    Ms. Overton is not able to include a screenshot showing the yearbook page from which Classmates extracted her photograph because, at some point after Ms. Overton informed Classmates of her claim and before her counsel prepared this Complaint, it appears Classmates removed her yearbook from its website. Counsel anticipate discovery will reveal Classmates did so for the express purpose of preventing Ms. Overton from investigating her claim and preparing her Complaint.

133.    Classmates provides a publicly accessible landing page on which non-registered users may search, and have searched, for Ms. Overton by name and location.

134.    Users who search for Ms. Overton receive in response a list of results, which include a low-resolution version of the photograph depicting Ms. Overton as a minor.

135.    Users who click on Ms. Overton 's photograph seeking a high-resolution version receive a pop-up message asking the user to register with Classmates.com "to view full-size yearbooks." The user must interact with the pop-up to continue viewing Ms. Overton's photograph.

136.    Once users have clicked "Submit" on the pop-up, Classmates displays a screen soliciting the purchase of a paid subscription to Classmates.com.

137.    Classmates also displays banner ads promoting Classmates.com subscriptions adjacent to the search results containing Ms. Overton's photograph.

138.     As shown above, Classmates' uses Ms. Overton's photograph, name, and likeness in advertisements it displays publicly on the Internet for the commercial purpose of soliciting subscriptions.

139.     Ms. Overton does not know how Classmates obtained her name and photograph as a child. It appears to have been misappropriated from her high school yearbook.

140.     On information and belief, Classmates received no indication, and had no reasonable belief, that the people who created Ms. Overton's yearbook intended the yearbook to be published on the Internet or used to promote website subscriptions.

141.     On information and belief, Classmates did not obtain permission from the yearbooks' authors, the photographer who took Ms. Overton's photograph, or the yearbook's copyright holder prior to incorporating Ms. Overton's photograph and other photographs from the yearbook in its advertisements. On information and belief, Classmates does not hold the copyright in Ms. Overton's yearbook or her photograph.

142.     Ms. Overton has intellectual property and privacy interests in her name, likeness, and persona recognized by California statutory and common law. She has the right to exclude anyone from making commercial use of his likeness without his consent.

143.     Classmates has injured Ms. Overton by profiting from its use of her name and likeness without compensating her; by misappropriating and infringing her intellectual property rights without compensation; by violating her statutorily protected right to control the commercial use of her name and likeness; and by disturbing her peace of mind.

144.     Classmates' illegal actions caused Ms. Overton mental anguish and harmed her peace of mind. Upon learning about Classmates' actions, Ms. Overton was upset and disturbed by Classmates' use of her name and photograph without her consent. Ms. Overton believes her likeness is rightly hers to control. Classmates' illegal use has left her worried and uncertain about her inability to control how her name and likeness is used. Ms. Overton feels that Classmates' use of his photograph represents an alarming invasion of her privacy. Ms. Overton feels deeply uncomfortable in the knowledge that Classmates is using her name and likeness to advertise a subscription product she does not endorse or approve of.

**Plaintiff Alicia Nolen**

145.    Plaintiff Alicia Nolen is a private individual who has no relationship with Classmates or PeopleConnect. She has never visited, used, or subscribed to Classmates.com.

146.    Ms. Nolen did not give consent to Classmates to use her photographs, likeness, name, or persona in any way. Had Classmates requested her consent, Ms. Nolen would not have provided it.

147.    Ms. Nolen highly values her personal privacy and her ability to control and prevent the commercial use of her likeness without her consent.

148.    Classmates uses Ms. Nolen's yearbook photograph as a minor child in advertisements promoting website subscriptions. Classmates possesses at least one photograph of Ms. Nolen it uses for this purpose, which it misappropriated without her permission from Ms. Nolen's yearbook from Tulare Union High School in Tulare, California.

149.    A screenshot taken from Classmates.com showing the yearbook page from which Classmates extracted Ms. Nolen's photograph appears below. For Ms. Nolen's privacy and the privacy of others displayed, counsel present the screenshot here in a low-resolution format. As it appears on the Classmates website, Ms. Nolen's name and likeness are plainly visible and identifiable. The screenshot shown below was collected by a staff member at Turke & Strauss from a part of the Classmates.com website that does not require assent to the TOS to access. The staff member did not see a TOS and did not agree to a TOS.



150.    Classmates provides a publicly accessible landing page on which non-registered users may search, and have searched, for Ms. Nolen by name and location.

151.    Users who search for Ms. Nolen receive in response a list of results, which include a low-resolution version of the photograph depicting Ms. Nolen as a minor.

152.    Users who click on Ms. Nolen 's photograph seeking a high-resolution version receive a pop-up message asking the user to register with Classmates.com "to view full-size yearbooks." The user must interact with the pop-up to continue viewing Ms. Nolen's photograph.

153.    Once users have clicked "Submit" on the pop-up, Classmates displays a screen soliciting the purchase of a paid subscription to Classmates.com.

154.    Classmates also displays banner ads promoting Classmates.com subscriptions adjacent to the search results containing Ms. Nolen's photograph.

155.    Classmates uses Ms. Nolen's photograph, name, and likeness in advertisements it displays publicly on the Internet for the commercial purpose of soliciting subscriptions.

156.    Ms. Nolen does not know how Classmates obtained her name and photograph as a child. It appears to have been misappropriated from her high school yearbook.

157.    On information and belief, Classmates received no indication, and had no reasonable belief, that the people who created Ms. Nolen's yearbook intended the yearbook to be published on the Internet or used to promote website subscriptions.

158.    On information and belief, Classmates did not obtain permission from the yearbooks' authors, the photographer who took Ms. Nolen's photograph, or the yearbook's copyright holder prior to incorporating Ms. Nolen's photograph and other photographs from the yearbook in its advertisements. On information and belief, Classmates does not hold the copyright in Ms. Nolen's yearbook or her photograph.

159.    Ms. Nolen has intellectual property and privacy interests in her name, likeness, and persona recognized by California statutory and common law. She has the right to exclude anyone from making commercial use of his likeness without his consent.

160.    Classmates has injured Ms. Nolen by profiting from its use of her name and likeness without compensating her; by misappropriating and infringing her intellectual property rights without compensation; by violating her statutorily protected right to control the commercial use of her name and likeness; and by disturbing her peace of mind.

161.    Classmates' illegal actions caused Ms. Nolen mental anguish and harmed her peace of mind. Upon learning about Classmates' actions, Ms. Nolen was upset and disturbed by Classmates' use of her name and photograph without her consent. Ms. Nolen believes her likeness is rightly hers to control. Classmates' illegal use has left her worried and uncertain about her inability to control how her name and likeness is used. Ms. Nolen feels that Classmates' use of his photograph represents an alarming invasion of her privacy. Ms. Nolen feels deeply uncomfortable in the knowledge that Classmates is using her name and likeness to advertise a subscription product she does not endorse or approve of.

### STATEMENT OF COMMON FACTS

162.    Classmates' business model relies on collecting personal information from hundreds of thousands of school yearbooks. Classmates scans yearbooks into a digital format, then extracts personal information including names, photographs, schools attended, years of attendance, cities of residence, and biographical details. Classmates aggregates the extracted information into digital records associated with specific individuals. Classmates then uses the records to advertise and sell its products and services. Those products and services include memberships to the website Classmates.com, which Classmates sells for up to $3 per month.

163.    According to the Classmates.com website, Classmates' Yearbook Collection contains records copied from over 400 thousand yearbooks. While Classmates does not publish figures about the total number of records in the Collection or a breakdown by state, it is likely the class includes millions of Californians whose names, photographs, and likenesses appear in the Classmates Yearbook Collection.

164.    Classmates did not ask consent from, given notice to, or provide compensation to Plaintiffs or the class before using their names, photographs, and biographical information.

165.    The names, photographs, cities of residence, likeness, and identities that Classmates aggregates into individual records uniquely identify specific individuals.

166.    Classmates knowingly uses the names, photographs, and likenesses of Plaintiffs and the class to advertise, sell, and solicit the purchase of its products and services, including (1) its "CM+" subscription membership; and (2) the free version of its website, from which

Classmates profits by selling targeted advertisements and driving users to its paid products and subscriptions.

167.    Classmates employs a variety of advertising techniques through which it exploits the names, photographs, and likenesses of Plaintiffs and the class, many of which are detailed in the Plaintiff-specific portion of this complaint. Across all of the advertising techniques it uses, Classmates seeks to translate its users' interest in seeing pictures of and learning personal details about Plaintiffs and the class, into the purchase of a Classmates product or service (or the use of a website from which Classmates drives profit).

168.    Classmates knowingly uses the names, photographs, and likenesses of Plaintiffs and the Class on and in its products and services by including the records it has created about Plaintiffs and the Class on its website.

169.    On information and belief, Classmates makes no attempt to contact or gain the consent of the people whose names, photographs, likenesses, biographical information, and identities it uses to advertise website subscriptions.

170.    On information and belief, Classmates has received no indication that the authors, publishers, or copyright holders of the yearbooks in its database intended the yearbooks to be published on the Internet or used to promote paid subscriptions.

171.    The vast majority of people whose personal information Classmates has digitally extracted and aggregated in its Classmates Yearbook Collection have no business relationship with Classmates, are not Classmates subscribers, and are not subject to a Terms of Service or any other agreement with Classmates.

172.    Through its actions, Classmates has caused harm to Plaintiffs and the Class by depriving them the fair economic value of their likenesses; violating their exclusive rights to control their likenesses; infringing their intellectual property without compensation; and disturbing their peace of mind. Classmates has earned ill-gotten profits and been unjustly enriched through its use of the names, photographs, and likenesses of Plaintiffs and the class.

173.    Classmates knowing misappropriation of names, likenesses, photographs, and other personal information, and use of those names, likenesses, photographs, and other personal

information in selling and advertising its products and services, violates California's Right of Publicity statute, Cal. Civ. Code § 3344; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.; and California Unjust Enrichment law.

## CLASS ALLEGATIONS

174.    Plaintiffs bring this complaint on behalf of themselves and a Class of all California residents who (a) are not currently subscribers of any Classmates services, (b) have never donated a yearbook to Classmates, and (c) whose names, photographs, and/or likenesses were extracted from yearbooks by Classmates and placed on the Classmates website as part of its Yearbook Collection, without Classmates obtaining their consent. Excluded from the class are (a) Plaintiffs' counsel; (b) Classmates, its officers and directors, counsel, successors and assigns; (c) any entity in which Classmates has a controlling interest; and (d) the judge to whom this case is assigned and the judge's immediate family.

175.    The members of the proposed class are so numerous that joinder of individual claims is impracticable. Classmates represents that its Yearbook Collection contains records from over 400,000 yearbooks in the United States. Each yearbook contains the names and likeness of hundreds, sometimes thousands of individuals. Even accounting for the fact that only a portion of the yearbooks are from California, that some individuals in Classmates' database are deceased or no longer reside in California, and that the class excludes current Classmates subscribers (Classmates has about 4 million subscribers worldwide), the class likely numbers in the millions.

176.    There are significant questions of fact and law common to the members of the class. These issues include:

a.   Whether Classmates' extraction and aggregation of personal information about Plaintiffs and the class members, including names, yearbook photographs, yearbook years, cities of residence, schools attended, and interest and hobbies, in its Classmates Yearbook Collection, and selling of that information via paid subscription plans, constitute the knowing use of another's name, photograph, or likeness, in any manner, on or in products, merchandise or goods within the

meaning of Cal. Civ. Code § 3344;

    b.   Whether Classmates' extraction and aggregation of personal information about Plaintiffs and the class members, including names, yearbook photographs, yearbook years, cities of residence, schools attended, and interests and hobbies, and use of that information in the advertising techniques described in this complaint, constitutes the knowing use of another's name, photograph, or likeness for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, within the meaning of Cal. Civ. Code § 3344;

    c.   Whether Plaintiffs and the class consented to the use of their names, photographs, and likenesses in Classmates products and advertisements;

    d.   Whether Classmates' use of names, photographs, and likeness constitutes a use in connection with news or public affairs for which consent is not required;

    e.   Whether Classmates' conduct as described in this complaint violated California's Unfair Competition Law;

    f.   Whether Classmates was unjustly enriched as a result of the conduct described in this complaint; and

    g.   Whether Plaintiffs and members of the class are entitled to injunctive, declaratory and monetary relief as a result of Classmates' conduct as described in this complaint.

177.   Plaintiffs' claims are typical of those of the proposed class. Plaintiffs and all members of the proposed class have been harmed by Classmates misappropriation and misuse of their names, likenesses, photographs, and other personal information.

178.   The proposed class representatives will fairly and adequately represent the proposed class. The class representatives' claims are co-extensive with those of the rest of the class, and they are represented by qualified counsel experienced in class action litigation of this nature.

179.   A class action is superior to other available methods for the fair and efficient

adjudication of these claims because individual joinder of the claims of all members of the proposed class is impracticable. Many members of the class do not have the financial resources necessary to pursue this claim, and even if they did, the size of their interest in the case may not be large enough to merit the cost of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in which individualized cases would proceed. Individual litigation would greatly increase the time and expense needed to resolve a dispute concerning Classmates' common actions towards an entire group. Class action procedures allow for the benefits of unitary adjudication, economy of scale, and comprehensive supervision of the controversy by a single court.

180. The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Classmates has acted on ground generally applicable to the proposed class, such that final injunctive and declaratory relief is appropriate with respect to the class as a whole.

181. The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of law and fact common to class members predominate over questions affecting individual members, and a class action is superior to other available methods for fairly and efficiency adjudicating the controversy.

## FIRST CAUSE OF ACTION
### (Cal. Civ. Code § 3344)

182. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

183. California's Right of Publicity Statute, California Civil Code § 3344, prohibits and provides damages for the knowing misappropriation of a name, voice, signature, photograph, or likeness in advertising or soliciting without prior consent.

184. By engaging in the forgoing acts and omissions, Classmates knowingly used class members' names, photographs, and likenesses in its products and services for the purpose of advertising and selling its services, without class members' consent.

185. Each use of a class member's name, photograph, or likeness is a separate and

distinct violation of California Civil Code § 3344 giving rise to damages.

186.   Plaintiffs seek declaratory, injunctive, and monetary damages for themselves and on behalf of each member of the proposed class as provided for in California Civil Code § 3344, including statutory damages equal to the greater of $750 per violation, actual damages, or profits from Classmates' illegal actions, punitive damages, and the award of attorneys' fees and costs in the event Plaintiffs prevail in this action.

187.   Defendants, and each of them, have been guilty of oppression, fraud, and/or malice and despicable conduct warranting an award of exemplary and/or punitive damages under the provisions of Cal. Civ. Code § 3294.  The foregoing conduct has been approved, authorized and/or ratified by each Defendants' officers, directors and/or managing agents as required by the provisions section 3294.

## SECOND CAUSE OF ACTION
### (Cal. Bus. & Prof. Code § 17200 *et seq.*)

188.   Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

189.   Classmates has and is engaged in unfair competition, as that term is defined in the California Unfair Competition Law, Cal. Bus. & Prof. Code. § 17200 *et seq.* ("UCL").

190.   As described in this complaint, Classmates' misappropriation and use without consent of Plaintiffs' and class members' names, photographs, likenesses, and personal information is a violation of California's Right to Publicity Statute, Cal. Civ. Code § 3344.

191.   By engaging in the conduct described in this complaint and violating California law, Classmates engaged in and continues to engage in "unlawful" business acts and practices prohibited by the UCL.

192.   As a result of Classmates' actions, Plaintiffs and the class have been injured. Plaintiffs and members of the class each lost the economic value of their likenesses, their exclusive right to control their likenesses, their right to the value of their intellectual property, and their right to freedom from intrusion on their peace of mind. Plaintiffs and members of the

class also lost the right to refuse consent and protect their privacy, as guaranteed by California law.

**THIRD CAUSE OF ACTION**
**(Unjust Enrichment)**

193.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

194.     Plaintiffs and members of the class have conferred an unwarranted benefit on Classmates. Classmates' business model centers around using personal information that rightfully belongs to Plaintiffs and members of the class to sell its products and services. Classmates uses the personal information it misappropriated without consent. Each "CM+" subscription sold to users who then gain access to records that rightfully belong to class members, and all advertising revenue collected from the delivery of ads on pages displaying records that rightfully belong to class members, represents an unwarranted benefit conferred upon Classmates by the class.

195.     Under principles of equity and good conscience, Classmates should not be permitted to retain the benefits it gained by its actions.

196.     Plaintiffs and members of the class have suffered loss as a direct result of Classmates' conduct.

197.     Among other remedies, Plaintiffs, on their own behalf and on behalf of absent class members, seek the imposition of a constructive trust and restitution of proceeds Classmates received as a result of the conduct described in this complaint, as well as an award of attorneys' fees, costs, and interest pursuant to Cal. Civ. Proc. Code § 1021.5.

**PRAYER FOR RELIEF**

198.     WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situation, hereby demand judgment against Defendant Classmates as follows:

       (a) For an order certifying the proposed class and appointing Plaintiffs and their counsel to represent the class;

       (b) For a declaration that Classmates' acts and omissions constitute a knowing

misappropriation of names, likeness, photographs, and other personal information, and infringe on protected privacy rights, in violation of California law;

(c) For preliminary and permanent injunctive relief enjoining and preventing Classmates from continuing to operate its Classmates website and expand its databases without appropriate safeguards to ensure people's personal information is not used illegally without their consent;

(d) For an order enjoining Classmates from continuing the unlawful and unfair conduct described in this complaint;

(e) For restitution for Plaintiffs and members the class for the value that Defendants derived from misappropriating their likenesses;

(f) For an award of damages, including without limitation damages for actual harm, profits earned by Classmates, and statutory damages;

(g) For an award of reasonable attorneys' fees and costs incurred by Plaintiffs and the class members; and

(h) For an award of other relief in law and equity to which Plaintiffs and the class members may be entitled.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial for all individual and Class claims so triable.

Dated: March 23, 2023

By:  */s/ Raina C. Borrelli*
Raina Borrelli (*pro hac vice*)
raina@turkestrauss.com
Sam Strauss (*pro hac vice*)
sam@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (608) 509 4423

Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)

mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

Benjamin R. Osborn (*pro hac vice*)
ben@benosbornlaw.com
LAW OFFICE OF BENJAMIN R. OSBORN
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464

*Attorneys for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 23rd day of March, 2023.

By: *<u>/s/ Raina C. Borrelli</u>*
Raina Borrelli (*pro hac vice*)
raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (608) 509 4423