1

2

3

4                  UNITED STATES DISTRICT COURT

5                 NORTHERN DISTRICT OF CALIFORNIA

6

7   WAYNE TSENG, et al.,                    Case No.  20-cv-09203-EMC

8              Plaintiffs,

9        v.                                 **ORDER GRANTING DEFENDANT'S
                                            MOTION FOR SUMMARY
10  PEOPLECONNECT, INC.,                    JUDGMENT**

11             Defendant.                   Docket No. 155

12

13

14              **I.       INTRODUCTION**

15        Defendant PeopleConnect moves for an order entering judgment on the pleadings against

16  Plaintiff Wayne Tseng.  Defendant alleges that Plaintiff's claims are time-barred.  Plaintiff filed

17  suit against Defendant for (1) violating California's Right of Publicity Statute, California Civil

18  Code § 3344; (2) violating California's Unfair Competition Law, California Business and

19  Professions Code § 17200 (the unlawful prong); and (3) unjust enrichment under California

20  common law.  These claims stem from Defendant's non-consensual commercial use of Plaintiff's

21  likeness.  Plaintiff seeks injunctive relief, restitution, damages, and attorney's fees.

22        Having considered the parties' briefs and accompanying submissions, as well as the oral

23  argument of counsel, the Court hereby converts Defendant's motion for judgment on the pleadings

24  to a motion for summary judgment and **GRANTS** the motion for summary judgment.

25              **II.      FACTUAL AND PROCEDURAL BACKGROUND**

26        Former Plaintiffs Meredith Callahan and Lawrence Geoffrey Abraham filed a complaint

27  against PeopleConnect on December 18, 2020.  Compl.  PeopleConnect is a company that collects

28  yearbooks, scans the yearbooks, and extracts information from the yearbooks (such as names,

United States District Court
Northern District of California

photographs, schools attended, and so forth) to be put into a database.  *See id.* ¶ 53.  It "aggregates the extracted information into digital records associated with specific individuals," and then the digital records are exploited commercially – to promote and sell PeopleConnect's products – but without the individuals' consent.  *Id.*  PeopleConnect sells products through its website (Classmates.com).  The products sold on the website are (1) reprinted yearbooks and (2) a subscription membership.  *Id.* ¶¶ 4, 7.

The initial complaint alleged claims against PeopleConnect for (1) violating California's Right of Publicity Statute, California Civil Code § 3344; (2) violating California's Unfair Competition Law, California Business and Professions Code § 17200 (both the unlawful and unfair prongs); (3) intrusion upon seclusion under California common law; and (4) unjust enrichment under California common law.  *Id.* ¶¶ 73-96.

PeopleConnect moved to dismiss the Complaint, which the Court granted in part and denied in part.  Docket Nos. 26, 76.  The Court wholly dismissed the intrusion upon seclusion claim and found the unfair prong of the Unfair Competition Law claim waived.  Docket No. 76 at 29, 32.  The Court found that the Copyright Act preempted the portion of the § 3344, § 17200, and unjust enrichment claims that related to the sales of reprinted yearbooks.  *Id.* at 20-21.  The Court dismissed these claims as they related to the reprinted yearbooks, but allowed the portions of the § 3344, § 17200, and unjust enrichment claims that related to the sales of subscription memberships to proceed.  *Id.* at 20-21, 29, 33.

Plaintiff Wayne Tseng joined the case on August 4, 2022, when he filed the first amended complaint ("FAC").  Plaintiff Tseng is now the sole remaining named plaintiff, as the other named plaintiffs from the complaint and amended complaint have voluntarily dismissed their claims.  *See* Docket Nos. 151, 153.  In the amended complaint, Plaintiff alleges claims against PeopleConnect for (1) violating California's Right of Publicity Statute, California Civil Code § 3344; (2) violating California's Unfair Competition Law, California Business and Professions Code § 17200 (unlawful prong); and (3) unjust enrichment under California common law.  FAC ¶¶ 141-156.  Neither Plaintiff nor Defendant dispute that California law governs Plaintiff's claims.  *See* *generally id.*; Mot.; Opp'n; Reply (all analyzing California law).

2

1    Plaintiff Tseng gives examples of how Defendant has allegedly exploited his name,

2    likeness, and so forth for commercial purposes.  For example, Plaintiff alleges that Defendant has

3    at least one digital record related to him that come from a yearbook.  *See* FAC ¶ 88.  Users of

4    Classmates.com can search for Plaintiff's name from a publicly accessible page.  *See id.* ¶ 91.  The

5    search results provide a low-resolution image of Plaintiff as a minor.  *See id.* ¶ 92.  "Users who

6    click on Mr. Tseng's photograph seeking a high-resolution version receive a pop-up message

7    asking the user to register with Classmates.com 'to view full-size yearbooks.'  The user must

8    interact with the pop-up to continue viewing Mr. Tseng's photograph."  *Id*. ¶ 93.  "Once users

9    have clicked 'Submit' on the pop-up, [thus registering for an account and agreeing to the

10   Classmates.com Terms of Service,] Classmates displays a screen soliciting the purchase of a paid

11   subscription to Classmates.com."  *Id.* ¶¶ 59-61, 94.

12   According to Plaintiff, "[b]y misappropriating and misusing millions of Californian's

13   names, photographs, and likenesses without consent, [PeopleConnect] has harmed Plaintiff[] and

14   the class by denying them the economic value of their likenesses, violating their legally protected

15   rights to exclusive use of their likenesses, infringing their intellectual property without

16   compensation, and disturbing their peace of mind. [PeopleConnect] has also earned ill-gotten

17   profits and been unjustly enriched."  *Id.* ¶ 10.

18   In Defendant's answer to the amended complaint, they raise the affirmative defense that

19   Plaintiff's § 3344 and unjust enrichment claims are untimely under the applicable two-year

20   statutes of limitations.  Docket No. 154 at 44-45.  Plaintiff's images were added to the

21   Classmates.com library and became publicly accessible on June 14, 2014, more than five years

22   before either the complaint or amended complaint were filed.  *Id.* at 44; Docket No. 164 ¶ 12.

23                          **III.    LEGAL STANDARD**

24   A.    Converting a 12(c) Motion into a Motion for Summary Judgment

25   Defendant moves for judgment on the pleadings.  Under Federal Rule of Civil Procedure

26   12(c), "a party may move for judgment on the pleadings" after the pleadings are closed "but early

27   enough not to delay trial."  Fed. R. Civ. P. 12.  A Rule 12(c) motion is "functionally identical" to a

28   Rule 12(b)(6) motion to dismiss for failure to state a claim, and therefore the same legal standard

applies.  *Cafasso v. General Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1055 n.4 (9th Cir. 2011).

"However, if a party presents evidence outside the pleadings and the court does not exclude that

evidence, then 'the motion must be treated as one for summary judgment under Rule 56.'"  *Bain v.*

*United Healthcare Inc.*, No. 15-CV-03305-EMC, 2016 WL 4529495, at *5 (N.D. Cal. Aug. 30,

2016) (quoting Fed. R. Civ. P. 12(d)).

> In their motion for judgment on the pleadings, Defendant presents evidence outside of the
pleadings.  *See, e.g.*, Docket No. 155 at 2 (relying on an internal chart they produced during
discovery to determine when Defendant added Plaintiff's image to Classmates.com); *id.*
(discussing a 30(b)(6) deposition); Reply at 9 n.8 (discussing articles that outline
Classmates.com's advertising flow).[1]  In response, Plaintiff moves for the Court to either exclude
the evidence on which Defendant relies or to convert their 12(c) motion to a motion for summary
judgment.  Opp'n at 4.  Defendant opposes this, arguing that there is "'no issue of material fact in
dispute,' and judgment on the pleadings should enter."  Reply at 11 (quoting *Yetter v. Ford Motor*
*Co.*, 428 F. Supp. 3d 210, 219 (N.D. Cal. 2019)).  Defendant's position is without merit, as *Yetter*
merely lays out the standard for granting a 12(c) motion and does not consider when converting
such a motion to a motion for summary judgment is appropriate.  *See Yetter*, 428 Supp. 3d at 219.

> In support of its motion, Defendant refers to an internal chart, a 30(b)(6) deposition, and
articles regarding advertising flow.  Defendant has also referenced material outside the pleadings
in support of their reply to Plaintiff's opposition.  *See* Docket No. 167, 167-1 (containing the
declaration of Debbie L. Berman and accompanying exhibit).  Before converting a motion for
judgment on the pleadings into a motion for summary judgment, the Court must provide the

---

[1] Although the parties do not discuss this, there are two methods whereby extraneous material is allowed in a Rule 12 motion.  First, material a court judicially notices is allowed.  *See Cohen v. Apple Inc.*, No. C 19-05322 WHA, 2020 WL 619790, at *1 (N.D. Cal. Feb. 10, 2020).  This material must be "'*not subject to reasonable dispute*' because it 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"  *Id.*  (quoting Fred. R. Evid. 201(b) (emphasis added by *Cohen*)).  The Court cannot now determine whether, for example, Defendant's internal chart is beyond dispute, and so cannot judicially notice all of Defendant's extraneous material.  Second, a court can incorporate by reference material from documents that plaintiffs omitted from their complaints while selectively referring to other portions of the same document.  *Id.*  Since some material, such as the internal chart, was produced for the first-time during discovery, incorporation by reference is inappropriate here.

United States District Court
Northern District of California

parties with "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  Defendant has thus been given a reasonable opportunity to submit pertinent material.   Plaintiff moves to convert the Rule 12(c) motion into one for summary judgment and also submits evidence outside the pleadings along with his motion.  *See* Opp'n; Docket No. 163, 163-1 to 163-18 Exs. A-R (containing the declaration of Raina C. Borelli and eighteen related exhibits); Docket No. 164 (containing the declaration of Plaintiff Wayne Tseng).  Plaintiff not only had an opportunity to respond to the pertinent material Defendant references, but Plaintiff also affirms some of it.  *See* Docket No. 164 ¶ 12 (affirming the contents of Defendant's internal chart by stating "Counsel inform me that Classmates claims it first uploaded my photographs to its website in January 2014"[2]); *McKinney v. Berryhill*, No. C17-5584-JCC, 2017 WL 6760676, at *1 n.1 (W.D. Wash. Dec. 29, 2017) ("The defendant had an opportunity to reply to the claimant's response but chose not to do so.  As such, the Court finds the parties have had a reasonable opportunity to present all the material that is pertinent to the motion.").

Accordingly, the Court finds it proper to grant Plaintiff's request and convert Defendant's motion for judgment on the pleadings to a motion for summary judgment (the "Motion").  *See* *Bain*, 2016 WL 4529495, at *5 (converting a Rule 12(c) motion to a motion for summary judgment after plaintiffs "submitted evidence outside the pleadings along with their motion"). Each party has been given a chance to respond and submit evidence.

B.    Motion For Summary Judgment Legal Standard

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Id.* at 252.  At the summary judgment stage, evidence

United States District Court
Northern District of California

---

[2] Because the *June* 2014 upload date stated by Defendant occurs later and is therefore more favorable to the non-moving party, *i.e.*, Plaintiff, this is the date to which the Court refers.

1  must be viewed in the light most favorable to the nonmoving party and all justifiable inferences

2  are to be drawn in the nonmovant's favor.  *See id.* at 255.[3]

3      Where a defendant moves for summary judgment based on a claim for which the plaintiff

4  bears the burden of proof, the defendant need only point to the plaintiff's failure "to make a

5  showing sufficient to establish the existence of an element essential to [the plaintiff's] case."

6   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

7                    **IV.**    **DISCUSSION**

8      In their motion for summary judgment, Defendant argues that Plaintiff's claims are time-

9  barred.  Plaintiff opposes this, arguing that 1) the discovery rule delayed the accrual of his claims,

10  2) the fraudulent concealment doctrine tolled the applicable statutes of limitations, and 3)

11  regardless of if Plaintiff's claims are time-barred, the Court should find Defendant's Terms of

12  Service unconscionable.  The Court addresses these arguments below.

13  A.    Claim Accrual

14      The parties do not dispute that under California law the statutes of limitations period for

15  Plaintiff's § 3344 and unjust enrichment claims are each two years.  Opp'n at 3, 5; Mot. at 4; *see*

16  *also Christoff v. Nestle USA*, Inc., 47 Cal. 4th 468, 476 n.7, 483, 213 P.3d 132, 136 n.7, 141

17  (2009) (affirming appellate court's application of a two-year statute of limitations to plaintiff's §

18  3344 claim); *Wu v. Sunrider Corp.*, 793 F. App'x 507, 510 (9th Cir. 2019) (noting that under

19  California law a two-year statute of limitations period applied to plaintiff's unjust enrichment

20  claim).  Although Plaintiff's UCL "unlawfulness claim is derivative of the § 3344 claim," the

21  applicable statute of limitations for his UCL claim is four years.  Docket No. 76 at 29; *see Aryeh v.*

22  *Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192, 292 P.3d 871, 876 (2013) (noting that the UCL has

23  a four-year statute of limitations period); *RA Med. Sys., Inc. v. PhotoMedex, Inc.*, 373 F. App'x

24  784, 786 (9th Cir. 2010) (noting that under California law the UCL "four-year statute of

25

26  [3] Evidence may be presented in a form that is not admissible at trial so long as it could ultimately
    be capable of being put in admissible form.  *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that
27  the material cited to support or dispute a fact cannot be presented in a form that would be
    admissible in evidence"); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir.
28  2004) ("Even the declarations that do contain hearsay are admissible for summary judgment
    purposes because they 'could be presented in an admissible form at trial'").

United States District Court
Northern District of California

United States District Court
Northern District of California

1    limitations 'applies even if the borrowed statute has a shorter limitations statute.'" (quoting *Blanks*

2    *v. Seyfarth Shaw LLP*, 171 Cal. App. 4th 336, 364, 89 Cal. Rptr. 3d 710, 731 (2009))).

3         The parties do not dispute that the single-publication rule applies to Plaintiff's claims.

4    Opp'n at 18 (stating that "[t]he appeals court recognized that the discovery rule is not inconsistent

5    with the single publication rule"); Mot. at 4; *see also Christoff*, 47 Cal. 4th at 137, 141 (affirming

6    appellate court's ruling that the single-publication rule applied to plaintiff's "cause of action for

7    unauthorized commercial use of his likeness").  Under the single-publication rule, claims accrue

8    (and statutes of limitations begin to run) when the relevant material is first made publicly

9    available.  *See Yeager v. Bowlin*, 693 F.3d 1076, 1081-82 (9th Cir. 2012); Cal. Civ. Code § 3425.3

10   (West) (statute codifying the single-publication rule).  Were the single-publication rule to apply

11   without equitable exceptions, Plaintiff's claims would accrue on June 14, 2014, when his image

12   became publicly available on the Classmates.com website.  Docket No. 154 ¶¶ 6-8.  A 2014

13   accrual would put Plaintiff's claims well beyond the two-year or four-year statutes of limitations.

14        However, there are two equitable exceptions to the single-publication rule that could

15   potentially toll or delay that start of the statutes of limitations: the discovery rule and the

16   fraudulent concealment doctrine.  Should either of these exceptions apply, Plaintiff's claims would

17   accrue in or be tolled until December 2020, when the initial complaint in this matter was filed.

18   Compl.  Plaintiff claims that he only gained constructive knowledge of his claims at this time.

19   Opp'n at 16, 20.  Plaintiff filed his first amended complaint on August 4, 2022.  FAC.  Should the

20   discovery rule apply, Plaintiff's claims would be timely since he would have filed his claim within

21   two years of the time he contends he was put on constructive notice of Defendant's non-

22   consensual commercial use of his image.[4]

23   B.   Discovery Rule

24        1.   Right of Publicity and Unjust Enrichment Claims

25        Plaintiff argues that his Right of Publicity and unjust enrichment claims are subject to the

26

27   _____

28   [4] Plaintiff claims that his first amended complaint, filed on August 4, 2022, relates back to the
     initial complaint; however, whether the first amended complaint relates back does not affect if
     Plaintiff's claims are time-barred, and the Court will not analyze the issue at this time.

7

discovery rule exception.  The discovery rule is an exception to the general rules of accrual. *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807, 110 P.3d 914, 920 (2005).  It generally delays when the statutes of limitations start running "until the plaintiff has, or should have, inquiry notice of the cause of action. . . . [P]laintiffs are charged with presumptive knowledge of an injury if they have 'information of circumstances to put [them] *on inquiry*' or if they have '*the opportunity to obtain knowledge* from sources open to [their] investigation.'"  *Id.* at 807-08 (quoting *Gutierrez v. Mofid*, 39 Cal. 3d 892, 896–97, 705 P.2d 886, 888 (1985)) (internal quotation marks omitted).  To rely on the discovery rule, a plaintiff must plead facts showing "(1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence."  *Id.* at 808 (quoting *McKelvey v. Boeing N. Am., Inc.*, 74 Cal. App. 4th 151, 86 Cal. Rptr. 2d 645 (1999), *as modified* (July 14, 1999)).  The discovery rule is rooted in an equitable basis: "that a plaintiff should not forfeit a cause of action based on a confidential communication that he or she had no reasonable basis for discovering."  *Shively v. Bozanich*, 31 Cal. 4th 1230, 1253, 80 P.3d 676, 690 (2003), *as modified* (Dec. 22, 2003).

However, when claims are governed by the single-publication rule, California courts strongly disfavor the application of the discovery rule exception.  *See Christoff*, 47 Cal. 4th at 482–83 ("[C]ourts uniformly have *rejected* the application of the discovery rule to libels published in books, magazines, and newspapers, pointing out that application of the discovery rule would undermine the protection provided by the single-publication rule." (quoting *Shively*, 31 Cal. 4th at 1250)).  Courts only apply the discovery rule to material governed by the single-publication rule when the material is "published in an inherently secretive manner" or is "inherently undiscoverable."  *Hebrew Acad. of San Francisco v. Goldman*, 42 Cal. 4th 883, 894, 173 P.3d 1004 (2007) (in the context of defamation); *Shively*, 31 Cal. 4th at 1237 (in the context of defamation); *see Christoff*, 47 Cal. 4th at 482-83 (stating "[t]he same logic [used to analyze the application of the discovery rule to a defamation claim] applies to a product label" at issue in a § 3344 claim); *see also Jones v. Reekes*, No. F082499, 2022 WL 594117, at *8 (Cal. Ct. App. Feb. 28, 2022) (using a "neither secret nor inherently undiscoverable" standard); *NBCUniversal Media, LLC v. Superior Ct.*, 225 Cal. App. 4th 1222, 1235, 171 Cal. Rptr. 3d 1, 11 (2014) (using the

8

"secretive" standard); *Jones v. Tozzi*, No. 1:05-CV-0148 OWW DLB, 2006 WL 1582311, at *13 (E.D. Cal. June 2, 2006) (same).  Courts also consider whether a party had a "'cause to seek access,' that is, a reason to suspect wrongdoing on the part of" the publishing party.  *Reekes*, 2022 WL 594117, at *9 (quoting *Shively*, 31 Cal. 4th at 1249).  Defendant's use of Plaintiff's image was neither secret nor inherently undiscoverable, and Plaintiff had cause to seek access to how Defendant was using his image after users agreed to the Terms of Service.

Plaintiff admits that his image has been publicly accessible on Classmates.com since 2014. Opp'n. at 6, 10; Docket No. 164 ¶ 12.  True, users had to click on his image and agree to Defendant's Terms of Service before Defendant solicited them to purchase a Classmates.com membership.  FAC ¶¶ 59-61, 93-94.  Plaintiff thus claims that he only had a meaningful ability to discover Defendant's use of his image to solicit paid subscriptions on December 18, 2020, when the initial complaint in this matter was filed and entered the public record.  Opp'n at 3, 18-19. However, even without clicking his image and agreeing to Defendant's Terms of Service, Defendant's use of Plaintiff's image to solicit unpaid registrations, advertise Classmates.com, and induce viewers to subscribe to access the Yearbook was evident and clearly done for a commercial purpose.  *See* FAC ¶¶ 3, 8 (noting that Classmates.com "gather[s] registered users, from whom Classmates profits by selling targeted ads" and that Defendant profits "from selling the personal information it collects from registered and unregistered users to third parties.").  Defendant's use of Plaintiff's image was neither secretive nor inherently undiscoverable.

Even if the public use of Plaintiff's image in the solicitation for the Yearbook subscription were not enough, the fact that Plaintiff and the public had to take steps such as agreeing to terms of service in order to fully access the offending material (the high-resolution photo of the Plaintiff) and understand precisely the product being sold, the discovery rule would not apply.  An additional step does not render Defendant's commercial use of Plaintiff's likeness inherently secretive.  *See Reekes*, 2022 WL 594117, at *9 (finding that Facebook post was not published in an inherently secretive manner); *Glassdoor, Inc. v. Andra Grp., LP*, 575 S.W.3d 523, 530 (Tex. 2019) (declining to apply the discovery rule to a defamation claim regarding reviews on Glassdoor that were behind the site's terms and conditions).  That there were no express challenges to the

9

terms and conditions in *Reekes* and *Glassdoor* and thus there was no discussion about the role of those terms and conditions is immaterial.  In *Reekes*, although defendant had blocked plaintiff from the Facebook account that she had used to make the communication at issue, the court did not apply the discovery rule—partly because "the blockage was easily circumvented with reasonable and proper diligence."  2022 WL 594117 at *9.

Moreover, there was at least one publicly available source that described what happened with Classmates.com images.  An online article written in 2009 "include[es] screenshots of the [Classmates.com] website showing purported banner advertisements," "explain[s] that once a user registers for a free account, the website 'leads the [user] to a membership form[,]' and [states] that '[o]nce you've filled out that information, you'll be prompted to purchase a membership package.'"  Reply at 9 n.8 (quoting Jonathan Strickland, *How Classmates.com Works*, How Stuff Works, (Oct. 12, 2009), https://computer.howstuffworks.com/internet/social-networking/networks/classmates-com.htm.  There were also at least three additional public online sources stating that Classmates.com sells subscription memberships.  *See Id.*; Kim Peterson, *No. 2 Internet Service Provider Buying Classmates Online*, Seattle Times, (Oct. 26, 2004), https://web.archive.org/web/20071104005039/http://archives.seattletimes.nwsource.com/cgi-bin/texis.cgi/web/vortex/display?slug=classmates26&date=20041026 (reporting that Classmates.com's "Core business" is "[s]elling subscriptions to people looking to connect with past acquaintances"); Classmates.com, *What Is A Classmates+ Membership?*, https://help.classmates.com/hc/en-us/articles/115002034072-What-types-of-memberships-are-available (describing benefits of a paid membership); Docket No. 163-17, Ex. Q at 2 (Defendant's Terms of Service, circa 2014, detailing provisions concerning "Paid Services").  Since Defendant publicly used Plaintiff's image, Plaintiff had presumptive knowledge of that use.  Plaintiff thus had presumptive knowledge that immediately after users registered for free accounts subsequent to viewing photos such as his, Defendant solicited them to purchase paid memberships.  Defendant's manner of use of Plaintiff's photo was knowable and not secretive for purposes of the discovery rule.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Furthermore, seeing his image used to invite viewers to accept Defendant's Terms of Service gave Plaintiff cause to seek access to how Defendant was using his image.  In *Shively*, plaintiff had no cause to seek access because he had no ability to learn about an offending publication placed in a confidential file.  *See Shively*, 31 Cal. 4th at 687.  Conversely, in *Goldman*, plaintiff had cause to seek access because he "had access to the document from the time it was published."  *Goldman*, 42 Cal. 4th at 895.  Plaintiff's circumstance is like the one in *Goldman*, as Plaintiff had access to his image on Classmates.com immediately following its publication and thus had cause to seek access to how Defendant was using it. Defendant's use of the Terms of Service to prevent Plaintiff from observing how Defendant used his image after users registered gave Plaintiff even further cause to seek access. *See Reekes*, 2022 WL 594117, at *9 (describing how the Facebook block should have given Plaintiff "a reason to suspect wrongdoing on the part of" Defendant and thus gave him cause to seek access to the offending page).

The narrowness of the discovery rule in the context of the single publication rule is illustrated by *Goldman*.  In *Goldman*, the Court declined to apply the discovery rule in a defamation case where only ten copies of an oral history were disseminated to libraries, one library restricted access to three of the copies, and the record did not reflect the restriction policies of the other libraries.  42 Cal. 4th at 888-89; *id.* at 896-97 (Kennard, J., concurring in part and dissenting in part).  "California has been extremely clear that this narrow version of the discovery rule does not apply to materials available to the public, no matter how small or limited the circulation." *Jacobs v. J. Publ'g Co.*, No. 1:21-CV-00690-MV-SCY, 2022 WL 1554737, at *8 (D.N.M. May 17, 2022), *report and recommendation adopted*, No. 1:21-CV-00690-MV-SCY, 2022 WL 2751718 (D.N.M. July 14, 2022); *cf. Manguso v. Oceanside Unified Sch. Dist.*, 88 Cal. App. 3d 725, 727, 152 Cal. Rptr. 27, 28 (Ct. App. 1979) (applying the discovery rule where the *only* copy of the relevant letter was stored in plaintiff's *confidential* personnel file).[5]

---

[5] Plaintiff cites to a decision where the Illinois Supreme Court applied the discovery rule to claims involving a credit report that was distributed to an indeterminate number of a credit agency's subscribers; however, this almost fifty-year old case decided under *Illinois* law is inapposite.  *See* Opp'n at 19; *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill. 2d 129, 137–38, 334 N.E.2d 160, 164–65 (1975).

Defendant did not use Plaintiff's image to solicit paid subscriptions in an inherently secretive manner, and Plaintiff had cause to seek access to how his image was being used after users agreed to Defendant's Terms of Service.  Plaintiff's presumptive knowledge of his claims began in June 2014, since at that time he could both view his image on Classmates.com and access the *How Stuff Works* article outlining Classmates.com's advertising flow.  The Court finds that the discovery rule does not apply to Plaintiff's Right of Publicity and unjust enrichment claims.

### 2.   Unfair Competition Law Claim

Plaintiff contends that even if the discovery rule does not apply to his Right of Publicity and unjust enrichment claims, the rule should apply to his UCL claim.  It is true that the discovery rule *can* apply to UCL claims, but it does not apply to all UCL claims.  *See Aryeh*, 55 Cal. 4th at 1195 ("That a cause of action is labeled a UCL claim is not dispositive; instead, 'the nature of the right sued upon' and the circumstances attending its invocation control the point of accrual." (quoting *Jefferson v. J.E. French Co.*, 54 Cal. 2d 717, 718, 355 P.2d 643 (1960)) (internal citations omitted)); *Ryan v. Microsoft Corp.*, No. 14-CV-04634-LHK, 2015 WL 1738352, at *16 (N.D. Cal. Apr. 10, 2015) ("[T]he *Aryeh* Court held only that the UCL does not categorically *forbid* the application of equitable exceptions like the discovery rule under appropriate circumstances. . . . [it] did not hold that the UCL *requires* application of particular equitable exceptions to every cause of action." (internal citation omitted)).

Where, as in the instant action, unlawful prong of the Unfair Competition Law is at issue, "the UCL is a chameleon. . . . [U]nder the unlawful prong, the UCL '"borrows" violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'"  *Aryeh,* 55 Cal. 4th at 1196 (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 973 P.2d 527, 539–40 (1999)) (internal quotation marks omitted).  Here, Plaintiff's UCL "unlawfulness claim is derivative of the § 3344 claim."  Docket No. 76 at 29.  As discussed above, the discovery rule does not apply to Plaintiff's § 3344 claim. Plaintiff gives no reason—nor is any reason apparent—why the discovery rule should apply to Plaintiff's UCL claim when it does not apply to Plaintiff's § 3344 claim upon which the UCL is derived.  *See Crown Chevrolet v. Gen. Motors, LLC*, 637 F. App'x 446, 447 (9th Cir. 2016)

1  (stating that plaintiff "concedes that the statute of limitations for its [UCL] claim is tied to the

2  limitations period for its RICO claim.  Because [plaintiff's] RICO claim is barred by the statute of

3  limitations, the district court did not err in dismissing the UCL claim as well." (citing *Aryeh*, 55

4  Cal. 4th at 1195-96)).

5  The discovery rule does not apply to Plaintiff's UCL claim.

6  C.   Fraudulent Concealment

7  Regardless of when Plaintiff's claims accrued, Plaintiff argues that, because Defendant

8  fraudulently concealed Plaintiff's claims, the statutes of limitations were tolled until December

9  2020, when the initial complaint in this matter was filed.  Opp'n at 5-6.  Since Plaintiff did not

10 rely on any affirmative misrepresentations supposedly made by Defendant, the Court finds that the

11 doctrine of fraudulent concealment is inapplicable to Plaintiff's claims.

12 A plaintiff may toll a statute of limitations if they prove that the defendant fraudulently

13 concealed plaintiff's cause of action.  *Finney v. Ford Motor Co.*, No. 17-CV-06183-JST, 2018 WL

14 2552266, at *3 (N.D. Cal. June 4, 2018) (quoting *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal.

15 4th 623, 744 (2007)).  Any "tolling will last as long as a plaintiff's reliance on the

16 misrepresentations is reasonable."  *Id.* (quoting *Grisham*, 40 Cal. 4th at 744).

> "[W]hen a plaintiff alleges the fraudulent concealment of a cause of
> action, the same pleading and proof is required as in fraud cases: the
> plaintiff must show (1) the substantive elements of fraud, and (2) an
> excuse for late discovery of the facts."  The second element requires
> the plaintiff to allege "(1) when the fraud was discovered; (2) the
> circumstances under which it was discovered; and (3) that the
> plaintiff was not at fault for failing to discover it or had no actual or
> presumptive knowledge of facts sufficient to put him on inquiry."
> "Fraudulent concealment tolling must be pled with particularity
> under Fed. R. Civ. P. 9(b)."

23 *Id.* (quoting *Cmty. Cause v. Boatwright*, 124 Cal. App. 3d 888, 900, 177 Cal. Rptr. 657, 664 (Ct.

24 App. 1981); *In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *8 (N.D. Cal.

25 Mar. 12, 2014), *order corrected on denial of reconsideration*, No. 11-CV-2953-RS, 2014 WL

26 12649204 (N.D. Cal. Apr. 15, 2014)) (internal citations omitted).  In California, a plaintiff alleging

27 fraud must prove "(a) misrepresentation (false representation, concealment, or nondisclosure); (b)

28 knowledge of falsity (or scienter); (c) intent to defraud i.e., to induce reliance; (d) justifiable

United States District Court
Northern District of California

13

1    reliance; and (e) resulting damage." *Wheeler v. Am. Fam. Home Ins. Co.*, No. 20-CV-01502-JSW,

2    2022 WL 4624863, at *9 (N.D. Cal. Sept. 30, 2022) (quoting *Lazar v. Super. Ct.*, 12 Cal. 4th 631,

3    638, 49 Cal. Rptr.2d 377, 909 P.2d 981 (1996)).

4         Plaintiff contends that Defendant took two affirmative acts to conceal Plaintiff's claims

5    from him: (1) "[S]ince this lawsuit was filed in December 2020, PeopleConnect has engaged in a

6    campaign of suppression, misrepresentation, and threats, designed to prevent Plaintiff, his counsel,

7    and other members of the Class from visiting the website to discover their claims," and (2)

8    Defendant hid their commercial use of Plaintiff's image behind an allegedly unconscionable

9    Terms of Service.  Opp'n at 6, 11-16.  Plaintiff claims to have had no knowledge of his claims or

10    ability to learn of his claims until this case was filed in December 2020, and states that his counsel

11    acted diligently in uncovering his claims.  *Id*. at 16.

12         Plaintiff's first contention occurs too late.  If Plaintiff's claims were not tolled, the statutes

13    of limitations would run in 2016 and 2018, two and four years after Plaintiff's image became

14    publicly accessible on Classmates.com.  Because Defendant's alleged campaign against Plaintiff

15    did not begin until 2020, it could not toll the statutes of limitations for claims that were by then

16    already time-barred.  *See B-K Lighting, Inc. v. Fresno Valves & Casting*, No. CV 06-02825, 2008

17    WL 11338299, at *5 n.20 (C.D. Cal. Jan. 7, 2008) (finding fraudulent concealment doctrine

18    inapplicable where "the only active conduct alleged occurred after the statute of limitations had

19    already run"); *Berube v. Homesales, Inc.*, No. H041422, 2015 WL 5697655, at *5 (Cal. App. Sept.

20    29, 2015) (same).

21         As to Plaintiff's second contention, he does not show justifiable reliance.  Even assuming,

22    *arguendo*, that Defendant's Terms of Service constituted a knowing misrepresentation intended to

23    induce Plaintiff's reliance and that Plaintiff was not at fault for failing to discover his claims,[6]

24    Plaintiff still does not claim that he justifiably relied on Plaintiff's misrepresentation in delaying

25    suit.  For Plaintiff to have justifiably relied on Defendant's Terms of Service, he would have had

26

27    ──────────────

28    [6] Plaintiff's presumptive knowledge of his claims in the context of the discovery rule does not
necessarily mean he would have presumptive knowledge in the context of the fraudulent
concealment doctrine.

United States District Court
Northern District of California

1  to, at minimum, (1) know of his image's use on Classmates.com, (2) know that after clicking on

2  his image he would have to agree to Defendant's Terms of Service to proceed further into the site,

3  (3) decline to proceed further into the site because of the Terms of Service, and (4) thus not see

4  that, after users agreed to the Terms of Service, Defendant solicited them to purchase paid

5  subscriptions to Classmates.com.[7]  Instead, Plaintiff acknowledges that he "never visited the

6  website www.classmates.com" and has "never seen or agreed to any Classmates Terms of

7  Service."  Docket No. 164 at ¶¶ 3-4.  Without ever visiting Classmates.com or seeing its Terms of

8  Service, it is impossible for Plaintiff to have relied on those Terms.

9          Therefore, the fraudulent concealment doctrine to toll the statutes of limitations.  Because

10  neither the discovery rule nor fraudulent concealment doctrine apply to Plaintiff's claims, the

11  Court finds them time-barred.

12                          **V.**          **CONCLUSION**

13          For the foregoing reasons the Court converts Defendant's motion for judgment on the

14  pleadings to a motion for summary judgment and grants the motion for summary judgment.

15  Plaintiff Tseng's claims are time-barred.  The case may otherwise proceed as to the claims of

16  newly added Plaintiffs subject to whatever defenses Defendant may have.

17          This order disposes of Docket No. 155.

18

19          **IT IS SO ORDERED**.

20

21  Dated: March 30, 2023

22

23  _____

24  EDWARD M. CHEN
    United States District Judge

25

26

27

28  ───────────────────────
[7] The Court again sets aside Defendant's use of Plaintiff's image to solicit registrations, a use
which appears to be commercial.