Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Telephone: (415) 358-6293

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed in Signature*

# THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEXANDRA OVERTON and ALICIA NOLEN, individually and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br><br>vs.<br><br>PEOPLECONNECT, INC., a Delaware Corporation,<br><br>  Defendant. | Case No.: 3:20-cv-09203-EMC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTIONS TO COMPEL ARBITRATION AND TO DISMISS**<br><br>Date:   May 18, 2023<br>Time:  1:30 pm<br>Hon. Edward M. Chen, Courtroom 5<br><br>Complaint Filed: Dec. 18, 2020 |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

LEGAL STANDARD ...........................................................................................................1

ARGUMENT.........................................................................................................................2

    A.  Plaintiff Properly Stated Claims Under Cal. Civ. Code § 3344. ........................2

        1.  As Numerous Courts Have Held When Construing Parallel Statutes, Use of a Plaintiff's Likeness for Advertising, Selling, or Soliciting Violates § 3344 Regardless of Who Views the Advertisement. ....................................................................................................2

        2.  Even Were Third-Party Viewing Required to Establish "Commercial Use," Plaintiff Alleged Third-Party Viewing. ........................................................................................7

        3.  This Court Has Already Rejected PeopleConnect's Argument that Plaintiff's Photographs are Not Connected to Advertising. ..........................................................7

    B.  PeopleConnect's Motion to Compel Ms. Overton to Arbitrate her Claims Should Be Denied as Moot.................................................................................9

CONCLUSION ...................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................ 2

*Bonilla v. Ancestry.com*,
Case No. 20-cv-07390, --- F. Supp. 3d ---, 2022 WL 4291359 (N.D. Ill. Sep. 16, 2022) ............ 6

*Cairns v. Franklin Mint Co.*,
107 F. Supp. 2d 1212 (C.D. Cal. 2000) .................................................................................... 9

*Cross v. Facebook, Inc.*
14 Cal.App.5th 190 (Cal. Ct. App. 2017) ............................................................................. 4, 9

*Daniels v. FanDuel, Inc.*,
109 N.E.3d 390 (Ind. 2018) ..................................................................................................... 6

*Dobrowolski v. Intelius*,
No. 17-CV-1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018) ............................................. 5

*Fischer v. InstantCheckmate LLC*,
No. 19-cv-4892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022) .................................................. 3

*Gautier v. Pro-Football, Inc.*,
278 A.D. 431 (N.Y. App. Div. 1951) ...................................................................................... 9

*Huston v. Hearst Communications, Inc.*
53 F.4th 1097 (7th Cir. 2022) .................................................................................................. 5

*Jackson v. Robinhood Markets, Inc.*,
No, 21-CV-02304, 2021 WL 2435307 (N.D. Cal. Jun. 15, 2021) ........................................... 8

*Kellman v. Spokeo, Inc.*,
599 F. Supp. 3d 877 (N.D. Cal. 2022) ..................................................................................... 9

*Knapke v. PeopleConnect*,
553 F. Supp. 3d 865 (W.D. Wash. 2021) ................................................................................. 4

*Lukis v. Whitepages*,
542 F. Supp. 3d 831 (N.D. Ill. 2020) ....................................................................................... 5

*Maloney v. T3 Media, Inc.*,
853 F.3d 1004 (9th Cir. 2007) ................................................................................................. 4

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .................................................................................................. 1

*Nayab v. Capital One Bank*,
942 F.3d 480 (9th Cir. 2019) .................................................................................................... 1

*Orthopedic Sys., Inc. v. Schlein*,
202 Cal. App. 4th 529 (2011) .................................................................................................. 4

*Perfect 10, Inc. v. Google, Inc.*
No. CV-9484, 2010 WL 9479060 (C.D. Cal. July 30, 2010) ................................................... 4

*Platt v. Electrical*,
522 F.3d 1049 (9th Cir. 2008) .................................................................................................. 7

*Roe v. Amazon.com*,
170 F. Supp. 3d 1028 (S.D. Ohio 2016),
*aff'd*, 714 F. App'x 565 (6th Cir. 2017) .................................................................................. 4

*Sessa v. Ancestry.com Operations*,
561 F. Supp. 3d 1008 (D. Nev. 2021) ...................................................................................... 8

*Siegel v. ZoomInfo Techs*,
No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021) ................................................. 4

*Yeager v. Bowlin*,
693 F.3d 1076 (9th Cir. 2012) .................................................................................................. 6

**Statutes**

Cal. Civ. Code § 3344 .......................................................................................................... 2, 8

**Rules**

Federal Rules of Civil Procedure, Rule 12 .............................................................................. 1

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTIONS TO COMPEL ARBITRATION AND TO DISMISS (No. 3:20-cv-09203-EMC) – iv

**INTRODUCTION**

Nearly three years into this litigation, PeopleConnect misconstrues Plaintiff's liability theory in an attempt to re-open issues this Court has already decided. Contrary to PeopleConnect's argument, Plaintiff's theory is not, and has never been, that PeopleConnect violates the California Right of Publicity statute "by hosting [Plaintiff's] school yearbooks on Classmates.com." Dkt. No. 180, at *17. Rather, Plaintiff's theory is that PeopleConnect violates California Civil Code § 3344 by publishing and maintaining webpages that incorporate her name and low-resolution photographs as a child in advertisements promoting paid subscriptions to Classmates.com. *See, e.g.*, Dkt. No. 172 ("SAC"), ¶¶28, 77-78, 84, 86-87, 89-93, 95, 146, 148-155. As the Court knows, it is the use of Plaintiff's information to advertise subscriptions, not the mere hosting in a database, that gives rise to the claim. *See* Cal. Civ. Code § 3344(a) (providing that "[a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable"). This Court has already ruled in this case that nearly identical allegations were sufficient to state a California Right of Publicity claim. 2021 WL 5050079, at *18 (N.D. Cal. Nov. 1, 2021). There is no reason for a different result here. PeopleConnect's motion to dismiss under Rule 12(b)(6) should be denied.[1]

**LEGAL STANDARD**

On a Rule 12(b)(6) motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A claim survives if it is "plausible on its face." *Nayab v. Capital One Bank*, 942 F.3d 480, 485 (9th Cir. 2019) (quotation omitted).

---

[1] PeopleConnect also moves to compel one of the named Plaintiffs, Ms. Overton, to arbitrate her claims. As explained below, Ms. Overton disputes the facts on which PeopleConnect's motion is predicated. Nevertheless, so as not to further delay this case, Ms. Overton will dismiss her claim without prejudice.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### A.  Plaintiff Properly Stated Claims Under Cal. Civ. Code § 3344.

Evaluating nearly identical claims brought by different named Plaintiffs in this lawsuit, this Court held, "Plaintiffs have adequately stated a § 3344 claim based on PeopleConnect's use of their names and likenesses." 2021 WL 5050079, at *18. There is no reason for a different result this time. As shown below, PeopleConnect's two arguments to the contrary must fail. In its first argument, PeopleConnect attempts yet again to graft a non-existent element onto California's right of publicity, arguing that a defendant's publication of an advertisement does not qualify as "use . . . for advertising" under § 3344 unless and until a third party views the advertisement. Similar attempts to graft a "third-party viewing" element onto right of publicity statutes have been explicitly rejected by multiple courts. PeopleConnect's position is also inconsistent with this Court's recent Order holding that Plaintiff's claim accrued when PeopleConnect first uploaded the advertising webpages containing her name and photograph, not when those webpages were first viewed by a third party. IIn its second argument, PeopleConnect attempts to re-open an issue this Court already decided, without providing any reason why this Court should reconsider. Once again, the Court should deny PeopleConnect's motion to dismiss for failure to state a section 3344 claim.

> **1. As Numerous Courts Have Held When Construing Parallel Statutes, Use of a Plaintiff's Likeness for Advertising, Selling, or Soliciting Violates § 3344 Regardless of Who Views the Advertisement.**

California's right of publicity statute prohibits the "knowing[] use [of] another's name . . . photograph, or likeness . . . for purposes of advertising or selling, or soliciting purchases of, product . . . or services, without such person's prior consent." Cal. Civ. Code § 3344. Here, Plaintiff alleges that PeopleConnect published and maintains webpages that knowingly use her name and photograph to advertise monthly subscriptions to Classmates.com. *See* SAC, at ¶¶145-61. The

1  webpages containing her name and photograph are publicly displayed and openly available on
2  Classmates.com. *Id.* PeopleConnect knows and intends members of the public will view these
3  webpages as a prelude to purchasing a subscription. Indeed, PeopleConnect's public landing page
4  encourages visitors to search for their "friends, family, coworkers or [their] favorite celebrities,"
5  and then encourages visitors to click on and view low-resolution photographs of those individuals.
6  Dkt. No. 1, at ¶¶23-24; SAC, at ¶¶ 48-50; 89-91. By publishing an online advertising flow that
7  uses Plaintiff's name and photograph to advertise subscriptions, PeopleConnect knowingly used
8  her name, photograph, and likeness for the purpose of advertising, selling, and soliciting purchases
9  of its product, thereby violating section 3344.

10        PeopleConnect cannot plausibly dispute that PeopleConnect published a webpage
11  displaying Plaintiff's name and low-resolution photographs. Nor can it plausibly dispute that the
12  webpage includes a pop-up that leads to a subscription solicitation if the visitor clicks on her
13  photograph. Instead, PeopleConnect contends these allegations are insufficient to state a claim.
14  According to PeopleConnect, publishing an advertisement does not constitute "knowing[] use . . .
15  [to] advertis[e]" unless and until someone sees the advertisement. *See* Dkt. No. 180, at *18-20
16  (arguing that there has been no "actual use" if the advertisements "were not presented to anyone").
17  In other words, PeopleConnect contends Plaintiff does not have a claim unless she can identify a
18  third party who viewed the advertisement incorporating her name and persona. This contention –
19  that the right of publicity contains an implied "third party viewing" element – finds no support in
20  the statutory text or case law. Indeed, it has been explicitly rejected by multiple courts construing
21  similar statutes.

22        Because the right of publicity "does not impose a viewership requirement," "how many (if
23  any) . . . users saw a . . . search result . . . is immaterial to whether [the defendant website] violated"
24  the right of publicity. *Fischer v. InstantCheckmate LLC*, No. 19-cv-4892, 2022 WL 971479,
25  at *10-11 (N.D. Ill. Mar. 31, 2022); *see also id.*, at *3 (certifying a contested class and noting that
26  the "Class definition, by its terms, does not require that a class member's profile have been
27

displayed to any third-party user"); *Knapke v. PeopleConnect*, 553 F. Supp. 3d 865, 876 (W.D. Wash. 2021) (there is no requirement that "members of the public saw the offending image."); *Siegel v. ZoomInfo Techs*, No. 21-cv-2032, 2021 WL 4306148, at *3 (N.D. Ill. Sep. 22, 2021) (same). In *Maloney v. T3 Media, Inc.*, on which PeopleConnect relies, the Ninth Circuit confirmed that "a publicity-right claim may proceed when a likeness is used non-consensually on merchandise or in advertising." 853 F.3d 1004, 1016 (9th Cir. 2007). This reading of the statutory right finds further support in the history of the common law misappropriation tort, which did not require proof that someone witnessed the defendant's actions. Rather, the tort required in relevant part only that plaintiffs show "the defendant's use of the plaintiff's identity . . . to defendant's advantage, commercially or otherwise." *Orthopedic Sys., Inc. v. Schlein*, 202 Cal. App. 4th 529, 544 (2011) (quotation omitted). Plaintiff need not show PeopleConnect's advertising webpages were viewed by a member of the public any more than a plaintiff whose photograph was used without her permission to advertise a self-published book on Amazon.com would have to show that someone visited the webpage on which the advertisement appeared. *See Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1033 (S.D. Ohio 2016), *aff'd*, 714 F. App'x 565 (6th Cir. 2017).

The cases PeopleConnect cites do not support the propositions for which it cites them. To be sure, *Perfect 10, Inc. v. Google, Inc.* and *Cross v. Facebook, Inc.* say that a plaintiff must show the defendant "actually use[d]" their name and likeness to advertise. *Perfect 10*, No. CV-9484, 2010 WL 9479060, at *40 (C.D. Cal. July 30, 2010); *Cross*, 14 Cal.App.5th 190, 210 (Cal. Ct. App. 2017) (quoting *Perfect 10*). But neither case says, nor even implies, that "actual use" means "third-party viewing." Rather, both cases turned on the identity of the publisher– not the viewer. In *Cross*, there was no "actual use" because the plaintiff's name and likeness "did not appear in the ads themselves, but in the content posted . . . by third parties." *Cross*, 14 Cal.App.5th at 209. Because a third party used the name and likeness – and not the defendant website – there was no claim. *Id.* Likewise, in *Perfect 10*, there was no claim because the defendant did not create or publish the webpages at issue, instead merely hosting webpages published by others. *See* 2010 WL

9479060, at *4-5. Here, by contrast, PeopleConnect designed, created, and published the advertising webpages incorporating Plaintiff's name and likeness. Accordingly, under *Perfect 10* and *Cross*, PeopleConnect has "actually use[d]" Plaintiff's name and likeness to advertise.

Likewise, PeopleConnect's reliance on the Seventh's Circuit's decision in *Huston* v. *Hearst Communications, Inc*. is misplaced. *See* 53 F.4th 1097 (7th Cir. 2022). In *Huston,* the Seventh Circuit confirmed that a plaintiff states a right of publicity claim when she alleges that "prospective . . . purchasers were able to see her . . . information . . . prior to their purchase." *Id.*, at 1100. The court observed that in both *Lukis v. Whitepages*, 542 F. Supp. 3d 831, 837-38 (N.D. Ill. 2020) and *Dobrowolski v. Intelius*, No. 17-CV-1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018), the defendant websites engaged in commercial use when they "held out limited information about the plaintiff to entice a commercial transaction" by distributing a searchable "free preview" of information about the plaintiff, which anyone could access by entering the plaintiff's name in a search bar on the defendants' websites. *Huston*, 53 F.4th at 1100-01; *see Lukis*, 542 F. Supp. 3d at 835 ("Anyone can search the Whitepages website for a person's name and gain access to free information connected with that name"); *Dobrowolski*, 2018 WL 11185289, at *3 ("When a consumer searches for a person's first and last name . . . an advertisement is automatically generated"). That is precisely what Plaintiff alleges here. Contrary to PeopleConnect's argument, nothing in *Huston* suggests a plaintiff must allege that a member of the public searched for her name and viewed the webpage incorporating her name and photograph. Rather, the line the Seventh Circuit drew in *Huston* concerned whether the Plaintiff's name and persona are available <u>before</u> or <u>after</u> a purchase is made. The Seventh Circuit affirmed the lower court's dismissal because the plaintiff in that case "did not allege prospective . . . purchasers were **able to see** her or any other subscribers' information, in whole or in part, **prior to their purchase**." *Id.*, at 1100 (emphasis added). Here, Plaintiff alleges that prospective purchasers are able to see her name and low-resolution photograph prior to their purchase. Indeed, such pre-purchase

displays are the primary method PeopleConnect uses to advertise its product and are the factual basis for Plaintiff's complaint. Accordingly, Plaintiff has stated a right of publicity claim.[2]

That third-party viewing is not a required element is further confirmed by the many decisions – including a recent decision by this Court in this case – holding that a cause of action accrues when the defendant first publishes the advertisement by making it available online, not when a member of the public first views it. On March 30, 2023, this Court granted PeopleConnect's motion for summary judgment, ruling that "claims [under § 3344] accrue . . . when the relevant material is first made publicly available." Dkt. No. 177, at *7. Likewise, in the related case *Bonilla v. Ancestry.com*, Case No. 20-cv-07390, --- F. Supp. 3d ---, 2022 WL 4291359 (N.D. Ill. Sep. 16, 2022), the court granted the defendant's motion for summary judgment on the ground the statute of limitations began to run when the defendant's website first uploaded the plaintiff's yearbook photograph. The *Bonilla* court agreed with this Court that a right of publicity action accrues on "the date [the defendant] started to publicly use the yearbook record," not the date on which some third party viewed the record. *Id.*, at *4; *see also Yeager v. Bowlin*, 693 F.3d 1076, 1081–82 (9th Cir. 2012) (holding that a California right of publicity action accrued when the defendant first uploaded the allegedly infringing content to its website, not when the content was first viewed by a member of the public). These holdings would make no sense if, as PeopleConnect now contends, a "use to advertise" occurs only if and when a third party views the advertisement. *See Bonilla*, 2022 WL 4291359, at *3 (rejecting argument that a right of publicity claim arises when Ancestry "actively generates each advertisement in response to a query by a specific user"). PeopleConnect cannot have it both ways. PeopleConnect successfully argued in this case that a plaintiff may bring a right of publicity claim starting from the moment Classmates.com uploads her yearbook photograph to its website. It cannot also be the case that

---

[2] *Daniels v. FanDuel, Inc.,* 109 N.E.3d 390 (Ind. 2018) is also inapposite. The *Daniels* decision turned on the court's conclusion that "the names, pictures and statistics of [professional sports] players . . . falls within the [statutory exception for] material that has newsworthy value." *Id.*, at 392. The decision says nothing about third-party viewing. *See id.*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTIONS TO COMPEL ARBITRATION AND TO DISMISS (No. 3:20-cv-09203-EMC) – 6

the advertising use giving rise to a claim occurs only when a third party views the photograph and associated advertisement. On PeopleConnect's misreading, the statute of limitations would begin running – and might expire – <u>before</u> any use to advertise had even occurred, and therefore <u>before</u> Plaintiff could have sued. This Catch 22 interpretation makes no sense. By definition, "[a] cause of action accrues when the claim is complete with all of its elements." *Platt v. Electrical*, 522 F.3d 1049, 1055 (9th Cir. 2008).

### 2. Even Were Third-Party Viewing Required to Establish "Commercial Use," Plaintiff Alleged Third-Party Viewing.

As shown above, Plaintiff need not allege that a third party saw the advertisements incorporating her likeness. Section 3344 requires that a defendant obtain an individual's consent before publishing an advertisement that incorporates their likeness. Publishing the advertisement constitutes "use to advertise," regardless of when or by whom the advertisement is seen. Nevertheless, Plaintiff alleged that third parties viewed the advertisements incorporating her likeness. The operative Complaint alleges that "PeopleConnect provides a publicly accessible webpage on which users . . . have searched . . . for Ms. Nolen . . . [and] received in response . . . low-resolution photographs depicting Ms. Nolen as a child," followed by "a pop-up message asking the user to register" and "a screen soliciting the purchase of a paid subscription." SAC, ¶¶ 89-92. Further, Plaintiff alleges facts sufficient to show it is likely additional third parties will view the advertisements in the future. *See id.* (alleging the advertising webpages are open displayed and accessible to anyone on the Internet). Thus, even if third-party viewing is required, Plaintiff has alleged it.

### 3. This Court Has Already Rejected PeopleConnect's Argument that Plaintiff's Photographs are Not Connected to Advertising.

PeopleConnect argues that the display of Plaintiff's photographs as children is insufficiently connected to the solicitation of a subscription, such that the likenesses are not "actually *part* of the advertising." *See* Dkt. No. 180, at *20-22; 2021 WL 5050079, at *16. This Court has already rejected this argument at the pleading stage, holding that "it raises at most a

factual dispute." *Id.*, at *17. Further, the Complaint illustrates that PeopleConnect's advertising flow draws a direct link between the purchase of a subscription and the ability to view high-resolution photographs of the Plaintiff. "Users who click on Ms. Nolen's photograph seeking a high-resolution version receive a pop-up message asking the user to register . . . Once users have clicked "Submit" on the pop-up, Classmates displays a screen soliciting the purchase of a paid subscription." *See* Dkt. No. 172, at ¶¶ 152-53; 118-19 (same allegations with respect to Ms. Overton); Dkt. No. 2, at ¶¶ 27-29 (original Complaint showing screenshots of this advertising flow). The allegations in the Second Amended Complaint mirror those in the original Complaint, and PeopleConnect offers no reason this Court's holding on this issue should change.

Seeking reconsideration of an issue this Court has already resolved, PeopleConnect misconstrues Plaintiff's theory of liability, claiming that Plaintiff "take[s] the position that [she has] a claim because PeopleConnect possesses their images and . . . also has 'advertising techniques.'" Dkt. No. 180, at *22. This is not, and has never been, Plaintiff's theory. Rather, as explained above, Plaintiff alleges that PeopleConnect's use of her name and image in advertisements directed to non-subscribers draws a direct connection between her photograph and the purchase of a subscription. Indeed, non-subscribers who click Plaintiff's photograph receive a pop-up and webpage urging them to purchase a subscription to view her "full-size" photographs. Dkt. No. 1, at ¶¶28-29.

The cases PeopleConnect cites are distinguishable. In *Jackson v. Robinhood Markets, Inc.*, Magistrate Judge Beeler dismissed the plaintiff's section 3344 claim because of her belief that to "establish[] Article III standing" a plaintiff must allege the offending publication "suggest[s] that the plaintiff endorsed [the product]." No, 21-CV-02304, 2021 WL 2435307, at *4 (N.D. Cal. Jun. 15, 2021). This Court and many others have since rejected this view. *See, e.g.*, 2021 WL 5050079, at *16 ("Nothing in the text of the statute suggests that endorsement is required . . . Case law also weighs against PeopleConnect's position"); *Sessa v. Ancestry.com Operations*, 561 F. Supp. 3d 1008, 1023 n. 4 (D. Nev. 2021); *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 890 (N.D. Cal.

2022); *Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1214 (C.D. Cal. 2000). Further, *Jackson* involved a newsletter that did not contain any solicitation. Here, by contrast, PeopleConnect's advertising flow links low-resolution photographs of the Plaintiff directly to an explicit solicitation for a paid subscription. SAC, at ¶¶48-51; Dkt. No. 1, at ¶¶28-29.

Similarly, *Gautier v. Pro-Football, Inc.*, 278 A.D. 431 (N.Y. App. Div. 1951), did not involve any solicitation. The defendant simply displayed the plaintiff's performance as part of a television broadcast. *Id.*, at 434. Had the defendant showed only part of the performance, while stating that viewers must purchase a subscription to view the full performance, the use would have been an advertisement violating the plaintiff's right of publicity. *See id.* (when the communication is an advertisement for a product, only the "incidental mention of a name . . . . unrelated to the advertiser's product" is permitted). Here, PeopleConnect's use of Plaintiff's likeness is clearly "related" to PeopleConnect's subscription product. Indeed, the entire thrust of the advertisement is to communicate that visitors will gain access to more and higher-resolution photographs of the Plaintiff if they subscribe.

Finally, in *Cross v. Facebook, Inc.*, 14 Cal.App.5th 190, the defendant hosted content published by third parties while displaying unrelated advertisements adjacent to that content (*i.e.*, traditional "banner ads" on a website). The defendant had no control over the third-party content, and there was no connection between the third-party content and the defendant's advertisements for unrelated products. *Id*. Here, by contrast, there is a direct link between Plaintiff's photograph and PeopleConnect's subscription advertisements. Again, PeopleConnect's sole purpose in making her low-resolution photograph available to the public is to solicit the purchase of website subscriptions. SAC, at ¶93.

### B. PeopleConnect's Motion to Compel Ms. Overton to Arbitrate her Claims Should Be Denied as Moot.

PeopleConnect moves to compel arbitration with respect to one of the two named Plaintiffs, asserting that Ms. Overton created an account and agreed to the Classmates Terms of Service on January 23, 2023. Ms. Overton disputes these assertions. Ms. Overton has never visited

www.classmates.com, has never created a Classmates account, and has never seen or agreed to a Classmates Terms of Service. *See* SAC, ¶¶ 29-30. Ms. Overton recalls creating the email address PeopleConnect claims was used to create a Classmates account on January 23, 2023. But she has not used that email address since 2015. Ms. Overton did not create an account on Classmates in January 2023 using that email address or any other email address. *Id.* Nevertheless, to avoid further delay of this case, including the class certification schedule, Ms. Overton is willing to dismiss her claims without prejudice. Therefore, PeopleConnect's motion to compel arbitration should be denied as moot.

## CONCLUSION

For the reasons above, Plaintiff respectfully requests the Court deny PeopleConnect's motion to dismiss Plaintiff Nolen's claims. Plaintiff also respectfully requests the Court deny as moot PeopleConnect's motion to compel Plaintiff Overton to arbitrate her claims.

Dated: April 27, 2023        By: */s/ Raina C. Borrelli*
                                 Raina Borrelli (*pro hac vice*)
                                 raina@turkestrauss.com
                                 Sam Strauss (*pro hac vice*)
                                 sam@turkestrauss.com
                                 TURKE & STRAUSS LLP
                                 613 Williamson St., Suite 201
                                 Madison, Wisconsin 53703-3515
                                 Telephone: (608) 237-1775
                                 Facsimile: (608) 509-4423

                                 Michael F. Ram (SBN 104805)
                                 mram@forthepeople.com
                                 Marie N. Appel (SBN 187483)
                                 mappel@forthepeople.com
                                 MORGAN & MORGAN
                                 COMPLEX LITIGATION GROUP
                                 711 Van Ness Avenue, Suite 500
                                 San Francisco, CA 94102
                                 Telephone: (415) 358-6913
                                 Facsimile: (415) 358-6923

                                 Benjamin R. Osborn (*pro hac vice*)

ben@benosbornlaw.com
LAW OFFICE OF BENJAMIN R. OSBORN
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464

*Attorneys for Plaintiffs and the Proposed Class*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTIONS TO COMPEL ARBITRATION AND TO DISMISS (No. 3:20-cv-09203-EMC) – 11

# CERTIFICATE OF SERVICE

I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 27th day of April, 2023.

By: /s/ Raina C. Borrelli
Raina Borrelli (*pro hac vice*)
raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (608) 509-4423