**JENNER & BLOCK LLP**
Benjamin T. Halbig (Cal. Bar. No. 321523)
bhalbig@jenner.com
455 Market Street, Suite 2100
San Francisco, California 94105
Telephone: 628 267-6800
Facsimile: 628 267-6859

**JENNER & BLOCK LLP**
Debbie L. Berman (*pro hac vice*)
dberman@jenner.com
Wade A. Thomson (*pro hac vice*)
wthomson@jenner.com
353 North Clark Street
Chicago, Illinois 60654
Telephone: 312 222-9350
Facsimile: 312 527-0484

**JENNER & BLOCK LLP**
Kate T. Spelman (Cal. Bar. No. 269109)
kspelman@jenner.com
515 S. Flower Street, Suite 3300
Los Angeles, California 90071
Telephone: 213 239-5100
Facsimile: 213 239-5199

*Attorneys for Defendant PeopleConnect, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALICIA NOLEN, on behalf of herself and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PEOPLECONNECT, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:20-cv-09203-EMC<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS PURSUANT TO FED. R. CIV. P. 12**<br><br>Second Amended Complaint Filed: March 23, 2023<br><br>Hearing Date: May 18, 2023<br>Hearing Time: 1:30 p.m.<br>Judge: Judge Edward M. Chen<br>Courtroom: 5 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. PLAINTIFF'S THEORY OF LIABILITY FAILS BECAUSE IT DOES NOT REQUIRE AN ACTUAL USE OF HER LIKENESS IN ADVERTISING. ........ 2

II. PLAINTIFF HAS NOT ALLEGED THE ACTUAL USE OF HER NAME AND PHOTOGRAPHS IN ADVERTISING. ........ 7

CONCLUSION ........ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cross v. Facebook, Inc.*,
14 Cal. App. 5th 190 (2017) ....................3, 4

*Daniels v. FanDuel, Inc.*,
109 N.E.3d 390 (Ind. 2018) ....................4–5

*Fischer v. InstantCheckmate LLC*,
2022 WL 971479 (N.D. Ill. Mar. 31, 2022)....................5

*Fry v. Ancestry.com Operations Inc.*,
No. 22-CV-140, 2023 WL 2631387 (N.D. Ind. Mar. 24, 2023) ....................3

*Gautier v. Pro-Football, Inc.*,
Dkt. 184 at 9 106 N.Y.S.2d 553 (N.Y. App. Div. 1951) ....................5

*Habush v. Cannon*,
828 N.W.2d 876 (Wis. Ct. App. 2013) ....................5

*Huston v. Hearst Communications, Inc.*,
53 F.4th 1097 (7th Cir. 2022) ....................4

*Jackson v. Robinhood Markets, Inc.*,
No. 21-cv-02304, 2021 WL 2435307 (N.D. Cal. June 15, 2021)....................5

*Jansen v. Hilo Packing Co.*,
116 N.Y.S.2d 251 (N.Y. Sup. Ct. 1952) ....................5

*Johnson v. Harcourt, Brace, Jovanovich, Inc.*,
43 Cal. App. 3d 880 (1974) ....................4

*Knapke v. PeopleConnect, Inc.*,
553 F. Supp. 3d 865 (W.D. Wash. 2021)....................6

*Knapke v. PeopleConnect, Inc.*,
38 F.4th 824 (9th Cir. 2022) ....................6

*Orellana v. Mayorkas*,
6 F.4th 1034 (9th Cir. 2021) ....................7

*Orthopedic Systems, Inc. v. Schlein*,
202 Cal. App. 4th 529 (2011) ....................4

*Remsburg v. Docusearch, Inc.*,
816 A.2d 1001 (N.H. 2003) ....................5

*Roe v. Amazon.com*,
170 F. Supp. 3d 1028 (S.D. Ohio 2016) ....................................................................................6

*Seven Arts Filmed Entertainment Ltd. v. Content Media Corp.*,
733 F.3d 1251 (9th Cir. 2013) ..............................................................................................7

*Siegel v. ZoomInfo Technologies, Inc.*,
No. 21 C 2032, 2021 WL 4306148 (N.D. Ill. Sept. 22, 2021)..........................................................5–6

**Other Authorities**

J. Thomas McCarthy et al., 1 *The Rights of Publicity and Privacy* § 3:4 (2d ed 2022) ...............................3

Publication, *Black's Law Dictionary* (11th ed. 2019)......................................................................3

*Restatement (Third) of Unfair Competition* § 46 (1995) .................................................................3

**INTRODUCTION**

Most of the time, including in the Second Amended Complaint, Plaintiff has taken the position that she and all other putative class members have valid claims under Section 3344 simply if their "names, photographs, and/or likeness were … placed on the Classmates website as part of its Yearbook Collection," regardless of whether those names and photographs were ever displayed on the website. Dkt. 172 ¶174. As PeopleConnect explained in moving to dismiss the Second Amended Complaint, this would mean Section 3344 applies any time a person's "likeness[] could appear on a website that also has advertisements." Dkt. 180 at 1. Because that primary theory has no support in the case law, Plaintiff now backtracks and argues that her name and photographs have actually been viewed by third parties on Classmates.com.

PeopleConnect moved to dismiss Plaintiff's complaint based on both theories. With respect to Plaintiff's primary theory that being included in a database accessible on a website that also has advertisements is a violation of Section 3344, PeopleConnect demonstrated that claims relying on that theory should be dismissed because of the statutory requirement that any identifying information must actually be displayed as part of a commercial offer. With respect to Plaintiff's "searched" theory, PeopleConnect demonstrated that claims relying on that theory should be dismissed because the allegations in the complaint do not support the bald assertion that her information has ever actually been displayed.

In her opposition, Plaintiff tries to straddle both theories. She concedes that a right of publicity claim requires "publication," yet she defines "publication in advertising" to mean the mere possibility of a future display in an advertisement. Her definition—which is not supported by any case law—does not come close to satisfying the requirement that there be an "actual use" of her likeness in an advertisement. As for Plaintiff's contention that her likeness has been displayed to a third party, that is not alleged in the Second Amended Complaint and in fact conflicts with other allegations in her complaint. Because it is not well-pleaded, it should not be credited when deciding the motion to dismiss.

Plaintiff has pleaded an untenable legal theory designed to inflate the number of putative class members by including anyone who could be displayed in her class allegations, while at the same time she has sought to hedge against the obvious defects in that overbroad approach by including insufficient factual assertions in the Second Amended Complaint alluding to a narrower theory that her name or photographs

have been displayed. In its long and tortured history, this case has had seven different plaintiffs and repeatedly shifting purported theories of liability. The Court should put a stop to the gamesmanship. The parties are currently briefing class certification issues and potential summary judgment motion practice may follow. The theory on which Plaintiff's entire class action case hinges on is a critical threshold issue that informs how the parties will frame these forthcoming issues. It is thus imperative for Plaintiff to articulate her legal theory once and for all and for the Court to address it definitively now.

The Court should hold, consistent with the relevant precedent, that Plaintiff cannot state a claim under Section 3344 unless she alleges that her name and photographs were displayed on Classmates.com as part of an advertisement. Because she has failed to so allege with well-pleaded allegations, the Second Amended Complaint should be dismissed.

## ARGUMENT

### I. Plaintiff's Theory Of Liability Fails Because It Does Not Require An Actual Use Of Her Likeness In Advertising.

In its motion to dismiss, PeopleConnect explained that Plaintiff's theory of liability fails because it does not require the "actual use" of her name and photographs on Classmates.com "for the purposes of advertising" and in a way that has "a direct connection" to an advertisement. Dkt. 180 at 14 (quoting *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, No. CV 12-06972, 2012 WL 12538385, at *8 (C.D. Cal. Oct. 15, 2012), *aff'd* 534 F. App'x 633 (9th Cir. 2013); *see also id.* at 12–16. Rather than address that argument, Plaintiff devotes most of her opposition to maintaining that she does not need to allege "third-party viewing" of her name and photographs on Classmates.com. Dkt. 184 at 2–7. She misses the point. Her theory of liability fails because it does not require that her name or photographs have ever been displayed in what the Second Amended Complaint calls an "advertising technique[]," regardless of what anyone saw.

To the limited extent Plaintiff directly addresses PeopleConnect's argument, she concedes her claims fail unless her name and photographs were "published" on Classmates.com. *See, e.g.*, Dkt. 184 at 1 ("Plaintiff's theory is that PeopleConnect violates [Section 3344] by publishing and maintaining webpages that incorporate her name and low-resolution photographs"). But because this undercuts her expansive theory of liability, she equates "publication in advertising" to the bare existence of what she calls an "online

advertising flow." *See id.* at 3. That is a bridge too far. Plaintiff cannot claim her name and photographs were actually used in advertisements if her name and photographs never actually were displayed in this so-called "advertising flow." *See Restatement (Third) of Unfair Competition* § 46 cmt. d (1995) ("The use must therefore be sufficient to identify the person whose identity the defendant is alleged to have appropriated."); J. Thomas McCarthy et al., 1 *The Rights of Publicity and Privacy* § 3:4 (2d ed 2022) ("[T]he defendant must 'use' the name, likeness or some other attribute of the plaintiff's identity in order to infringe the right of publicity."); *see also* Publication, *Black's Law Dictionary* (11th ed. 2019) (defining publication to mean "the act of declaring or announcing *to the public*") (emphasis added). To hold otherwise would mean a website violates Section 3344 simply by possessing photographs that *could potentially* be displayed in an advertisement.[1] That is not the law. *See, e.g., Fry v. Ancestry.com Operations Inc.*, No. 22-CV-140, 2023 WL 2631387, at *6 (N.D. Ind. Mar. 24, 2023) (explaining that "there is no liability [for right of publicity] for mere possession of a person's photo").

While Plaintiff insists this Court "has already rejected" that Section 3344 requires her to plead that her name and photographs were displayed in an advertisement, Dkt. 184 at 7–8, the argument is a red herring. PeopleConnect is not rearguing the "factual dispute" the Court previously identified on a prior motion to dismiss—namely, whether the way PeopleConnect presents names and photographs on webpages that include what Plaintiff calls "banner ads" sufficiently integrates names and photographs with "banner ads" to create a singular and actionable advertisement. Dkt. 76 at 27 (citing *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190 (2017)).[2] The issue before the Court now is more basic: even assuming these are advertisements, the motion questions whether Plaintiff has an actionable Section 3344 claim even if

[1] Examples from similar contexts illuminate why this must be wrong. A magazine violates the right of publicity if an advertisement appears in a publicly circulated edition, not if the publisher printed the magazine but never distributed it. A billboard is actionable if it is displayed, not if it was built and never left the warehouse. And a television advertisement would have to be run on the air, not be filmed but never aired. The internet does not render these commonsense propositions obsolete.

[2] PeopleConnect maintains there is no integration of individual names and photographs with either the so-called "banner ads" shown to Free Members or with commercial offers shown to Visitors that are separated by multiple webpages from low resolution thumbnails of entire yearbook pages. *See* Dkt. 180 at 1–6 (describing website); *see also Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 211 (2017) (holding that plaintiff failed on an anti-SLAPP motion to dismiss to establish direct connection between actual use and advertising where advertisements only "run adjacent to" plaintiff's likeness).

her name and photographs have never appeared in either of the so-called "advertising techniques" she has described in the Second Amended Complaint. Dkt. 180 at 16. PeopleConnect has shown that she does not.

The problem for Plaintiff is that she cannot reconcile her theory with the relevant authorities. For example, Plaintiff attacks PeopleConnect's reliance on *Cross v. Facebook, Inc.*, even though she cites no California authority at all aside from a fleeting reference to *Orthopedic Systems, Inc. v. Schlein*, 202 Cal. App. 4th 529 (2011), which addresses immaterial issues of damages calculation. *See* Dkt. 184 at 8. But she tries to distinguish this case from *Cross* because Facebook did not author any of the content that appeared on the webpage it hosted. *Id.* at 9. Yet she ignores that in affirming dismissal of the case, the California Court of Appeal held that a direct connection to advertising was lacking not because of authorship, but because the plaintiff's name or photographs simply did not appear in any advertisements—they were, at most, merely "adjacent to" advertisements, though in many cases "no advertisements appeared alongside the pages at all." *Cross*, 14 Cal. App. 5th at 211. More importantly, Plaintiff never responds to the more basic point that if actually displaying a picture of a person on the same webpage as an advertisement is insufficient to state a claim under Section 3344, as *Cross* holds, then not displaying a picture of a person on a webpage that contains a commercial solicitation must also be insufficient to state a claim under Section 3344.[3]

As for other authorities PeopleConnect has cited, Plaintiff ignores that the Seventh Circuit, in *Huston v. Hearst Communications, Inc.*, rejected the plaintiff's claim because she "did not allege that [the defendant] solicited mailing list purchasers by publicizing her information," which is equally true of Plaintiff's theory that there need not be an actual display of her name or photographs prior to an actual commercial solicitation. 53 F.4th 1097, 1100 (7th Cir. 2022). While Plaintiff suggests that *Daniels v.*

---

[3] Plaintiff entirely ignores *Johnson v. Harcourt, Brace, Jovanovich, Inc.*, where the California Court of Appeal held that placing a photograph of the plaintiff in a textbook did not create a direct connection to the sale of that textbook. 43 Cal. App. 3d 880, 895 (1974) ("We are convinced that the article was not so 'directly' connected with the sale of the textbook that it falls within the purview of section 3344, subdivision (a). The article must be viewed in the context in which it was republished. It was only used as an educational tool in an English textbook. It is obvious that the article was not a primary reason for the textbook; nor was it a substantial factor in the students' purchases of the book."). The same is true here, as a thumbnail yearbook photograph on a website does not directly connect to an advertisement that only appears on a completely different webpage.

*FanDuel, Inc.*, 109 N.E.3d 390 (Ind. 2018), is irrelevant because it relied on a "statutory exception" under Indiana law, she overlooks the fact that the Indiana Supreme Court recognized "the risk of unauthorized advertising is minimal" in the context of fantasy sports precisely because the argument that use of a likeness in the games amounted to a "[u]se in [a]dvertisements" was trivial. *Id.* at 397. Also Plaintiff's attempt to distinguish *Jackson v. Robinhood Markets, Inc.* on the grounds that it is a case about Article III standing is misguided, Dkt. 184 at 8–9, for the Court there held that the plaintiff lacked standing because he had not alleged his likeness had been used in an advertisement—in other words, the lack of injury was based on the plaintiff's failure to plead actual use. *See Jackson*, No. 21-cv-02304, 2021 WL 2435307, at *4 (N.D. Cal. June 15, 2021). And Plaintiff simply misstates the facts in *Gautier v. Pro-Football, Inc.*, Dkt. 184 at 9—there, the plaintiff's performance was part of a broadcast that contained advertisements that ran before and after his performance, and the plaintiff based his claim that the defendant was "us[ing] his name and picture for advertising purposes and purposes of trade" on the theory that his performance was bookended by those advertisements. *Gautier*, 106 N.Y.S.2d 553, 555–56 (N.Y. App. Div. 1951). That theory failed, of course, just as Plaintiff's analogous theory should fail here.[4]

In fact, Plaintiff does not identify a single instance—in the more than a century since the right of publicity was recognized as an actionable privacy tort—in which a plaintiff has ever prevailed on the merits after failing to show that the defendant actually displayed his or her likeness in an advertisement. None of the cases Plaintiff cites are to the contrary. In *Fischer v. InstantCheckmate LLC*, the court acknowledged that the requirement of actual publication under Illinois law meant a class could be composed only of those whose likenesses actually appear on "static" webpages, as opposed to those whose likenesses could be displayed based on user searches. No. 19 C 4892, 2022 WL 971479, at *10, *12 (N.D. Ill. Mar. 31, 2022). Because the issue there was one of class certification, however, the court did not address whether the webpages at issue constituted actionable advertisements. *Id.* And *Siegel v. ZoomInfo Technologies, Inc.* addressed whether Illinois law requires proof of third-party viewing, not the requirement of actual

[4] Plaintiff fails even to acknowledge other pre- and post-internet cases that PeopleConnect cited in its Motion reaching similar conclusions, such as *Habush v. Cannon*, 828 N.W.2d 876, 881–82 (Wis. Ct. App. 2013), *Remsburg v. Docusearch, Inc.*, 816 A.2d 1001, 1009–10 (N.H. 2003), and *Jansen v. Hilo Packing Co.*, 116 N.Y.S.2d 251, 252 (N.Y. Sup. Ct. 1952).

publication in advertising. No. 21 C 2032, 2021 WL 4306148, at *1, *3 (N.D. Ill. Sept. 22, 2021). As for *Knapke v. PeopleConnect, Inc.*, that case applied Ohio's right of publicity statute, not California's Section 3344. 553 F. Supp. 3d 865, 876–77 (W.D. Wash. 2021), *vacated and remanded by* 38 F.4th 824 (9th Cir. 2022). Also, that decision was vacated by the Ninth Circuit. *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 833 (9th Cir. 2022). Furthermore, even if it had not been vacated, its holding that publication is only a requirement of false light claims, and not right of publicity claims, is both at odds with Plaintiff's position here regarding California law and inconsistent with the two cases the *Knapke* court cited, both of which treat publication as a requirement of Ohio right of publicity claims. *Id.* at 876 (citing *Jackson v. Playboy Enters., Inc.*, 574 F. Supp. 10, 13 (S.D. Ohio 1983) ("[T]o state a cause of action for invasion of privacy by appropriation, something more than incidental publication of name or likeness must be alleged."), and *Fox v. Nationwide Mut. Ins. Co.*, 117 N.E.3d 121, 145 (Ohio Ct. App. 2018) ("It is only when the *publicity* is given … that the right of privacy is invaded." (citation omitted))). And *Roe v. Amazon.com*, supports PeopleConnect, not Plaintiff, for the court there denied judgment on the pleadings to the author of a self-published book that displayed a photograph of the plaintiff on the cover *because the author had used that photograph to promote sales of the book*. 170 F. Supp. 3d 1028, 1033–34, 1040 (S.D. Ohio 2016) (granting summary judgment for book distributors, explaining "[j]ust as Xerox would not be considered a publisher and held responsible for an invasion of privacy tort carried out with a photocopier, Corporate Defendants will not be liable as publishers for the tort allegedly committed using their technology").

Finally, Plaintiff suggests that the Court has already blessed her theory of liability in its recent statute of limitations ruling. *See* Dkt. 184 at 7–8. But in addressing the timeliness of former Plaintiff Tseng's claim under the theory he had pleaded, the Court did not resolve that the theory was substantively viable. Dkt. 177 at 7. As shown above, a claim under Section 3344 requires that the actual use of a plaintiff's identity be in an advertisement and that an actual use does not occur the instant PeopleConnect possesses a yearbook. The Court's prior ruling did not determine that Plaintiff's theory was meritorious, only that claims under this "searchable" theory accrue upon acquisition of a yearbook. The viability of that theory remains a live issue for the Court that PeopleConnect has properly presented in this motion to dismiss.

The Court thus should reject Plaintiff's suggestion that she may prevail merely by identifying an "online advertising flow" on Classmates.com, even if her name or photographs were never displayed in that flow. *See* Dkt. 184 at 3. Because her position is without merit, she tries to argue that PeopleConnect has "misconstrue[d] Plaintiff's theory of liability." Dkt. 184 at 8. But this theory is exactly what Plaintiff herself alleges in her complaint: anyone "whose name[], photographs, and/or likenesses were … placed on the Classmates website as part of its Yearbook Collection" has an actionable claim. Dkt. 172 ¶174. Her articulated theory of liability explicitly does not require that a person's "name, photographs, and/or likenesses" be a part of a so-called advertisement, and Plaintiff's predecessors as putative class representatives repeatedly disavowed that Section 3344 requires the actual display of a person's image at all, let alone in an advertisement. *E.g.*, Dkt. 133 at 4, 10–11, 11 n.1; Dkt. 162 at 17–18. As that theory is not viable as a matter of California law, Plaintiff's claims should be dismissed.

**II. Plaintiff Has Not Alleged The Actual Use Of Her Name And Photographs In Advertising.**

As a last resort, Plaintiff asserts that even though she does not have to in order to prevail, she has pleaded "that third parties viewed the advertisements incorporating her likeness." Dkt. 184 at 7. But she has pleaded no such thing—the single allegation on which she relies is facially insufficient and should not be credited by the Court.

Plaintiff claims to have pleaded third-party viewing by alleging there are "users" who "have searched" for her on Classmates.com. Dkt. 184 at 7 (citing Dkt. 172 ¶¶89–92). The allegation is insufficient. Most fundamentally, a complaint that contains allegations that contradict or undermine each other cannot survive a motion to dismiss. *See Orellana v. Mayorkas*, 6 F.4th 1034, 1043–44 (9th Cir. 2021) ("[T]he complaint itself undermines [the plaintiff's] theory of the case and renders it implausible." (citing *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 & n.8 (9th Cir. 2014))); *see also Seven Arts Filmed Ent. Ltd. v. Content Media Corp.*, 733 F.3d 1251, 1254 (9th Cir. 2013) (allegations are not well pleaded if they "are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). Because other allegations in Plaintiff's complaint discredit the allegation upon which she relies, that allegation cannot save her complaint from dismissal.

*First*, the Second Amended Complaint does not allege that third parties have viewed the so-called advertisements that purportedly contain Plaintiff's name and photographs. When the ellipses are removed from the allegation she quotes in her opposition, *see* Dkt. 184 at 7, her actual allegation is a compound statement that: "PeopleConnect provides a publicly accessible webpage on which users may search, and have searched, by name and/or location for Ms. Nolen and other Class members." Dkt. 172 ¶89. The unedited allegation waffles between whether Visitors "may search" or "have searched" and does not specify whether such searches were for Plaintiff or other members of the putative class.

*Second*, and more importantly, given other allegations in the Second Amended Complaint, the Court should not read the allegation in the way Plaintiff now proposes because that reading contradicts other allegations in the Second Amended Complaint. For example, elsewhere in her complaint, Plaintiff alleges that "[n]one of the allegations in this Complaint relating to PeopleConnect's use of [her] name and photograph are based on any information gathered from www.classmates.com. Rather, [Plaintiff's] allegations are based on the fact that PeopleConnect incorporates each of the yearbook photographs in its database into advertisements for website subscriptions in the same way." Dkt. 172 ¶84. She further alleges that all "allegations related to PeopleConnect's use of [her] photographs are not based on direct observation of the Classmates.com website. Rather these allegations are based on Plaintiff['s] knowledge that PeopleConnect incorporates all yearbook photographs in its database into advertisements in the same way." *Id.* ¶87. And Plaintiff alleges that "[s]he has never visited, used, or subscribed to Classmates.com." *Id.* ¶145. These allegations all indicate that Plaintiff knows of no person who visited and observed Classmates.com and that her allegations should be read as generic assertions about how Classmates.com works.[5]

In short, the Second Amended Complaint does not adequately allege that Plaintiff's name or photographs have been displayed on Classmates.com. But even if the Court were to disagree, Plaintiff's

[5] If the Court were inclined to believe that Plaintiff's allegation is enough to state a claim, PeopleConnect would move for summary judgment on the basis that there is no genuine dispute that Plaintiff has never been searched for on Classmates.com. In support of such a motion, PeopleConnect anticipates submitting undisputed evidence on the issue, including PeopleConnect's business records and Plaintiff's own recent admission that she is not aware of any person other than herself or her attorneys who have in fact searched for her on Classmates.com.

claims still should be dismissed in part. As PeopleConnect explained in its motion to dismiss, Plaintiff has alleged that Classmates.com has two different advertising techniques that she claims could incorporate her name and photographs. *See* Dkt. 172 ¶¶150–54. One is shown to Visitors and involves low-resolution thumbnails and a pop-up registration window. Dkt. 180 at 1–3. The other is shown to Free Members who use the website's search engine and involves search results that appear adjacent to what Plaintiff calls "banner ads." *Id.* at 4–6. Plaintiff only alleges that users "have searched" for her on the "publicly accessible webpage" shown to Visitors. Dkt. 172 ¶¶89–92. She never alleges that Free Members have searched for her using the Free Member search engine, thus implicating the proximity of the so-called banner ads. All she alleges about the banner ads is that they exist. *See id.* ¶154. Accordingly, the Court at a minimum should dismiss Plaintiff's claims predicated on the purportedly improper use of her name and photographs in conjunction with the so-called banner ads, as she has failed to allege that her name and likeness have ever been displayed as part of that alleged "advertising technique."

## CONCLUSION

For the foregoing reasons and those stated in PeopleConnect's motion to compel arbitration and dismiss, the Court should dismiss Plaintiff's Second Amended Complaint with prejudice.

Dated: May 4, 2023

JENNER & BLOCK LLP

By: */s/ Debbie L. Berman*

Debbie L. Berman (*pro hac vice*)
dberman@jenner.com
Wade A. Thomson (*pro hac vice*)
wthomson@jenner.com
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
Telephone: 312 222-9350
Facsimile: 312 527-0484

Benjamin T. Halbig (Cal. Bar. No. 321523)
bhalbig@jenner.com
JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, California 94105
Telephone: 628 267-6800
Facsimile: 628 267-6859

Kate T. Spelman (Cal. Bar. No. 269109)
kspelman@jenner.com
JENNER & BLOCK LLP
515 S. Flower Street, Suite 3300
Los Angeles, California 90071
Telephone: 213 239-5100
Facsimile: 213 239-5199

Attorneys for Defendant PeopleConnect, Inc.