1  Michael F. Ram (SBN 104805)
   mram@forthepeople.com
2  Marie N. Appel (SBN 187483)
   mappel@forthepeople.com
3  MORGAN & MORGAN
   COMPLEX LITIGATION GROUP
4  711 Van Ness Avenue, Suite 500
   San Francisco, CA 94102
5  Telephone: (415) 358-6913
   Telephone: (415) 358-6293
6

7  *Attorneys for Plaintiff and the Proposed Class*

8  [Additional Counsel Listed on Signature Page]

9

10           **THE UNITED STATES DISTRICT COURT**

11        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12                  **SAN FRANCISCO DIVISION**

13 | ALICIA NOLEN, individually and on behalf | Case No.: 3:20-cv-09203-EMC |
14 | of all others similarly situated, | |
   | | **PLAINTIFF'S NOTICE OF MOTION** |
15 |                         Plaintiff, | **AND AMENDED MOTION FOR** |
   | | **CLASS CERTIFICATION;** |
16 | vs. | **MEMORANDUM OF POINTS AND** |
   | | **AUTHORITIES IN SUPPORT** |
17 | PEOPLECONNECT, INC., a Delaware | |
18 | Corporation, | Complaint Filed:  Dec. 18, 2020 |
19 |                         Defendant. | Hearing Date:    August 31, 2023 |
20 | | Hearing Time:    1:30 P.M. |
   | | Judge:           Edward M. Chen (Rm. 5) |
21

22

23

24

25

26

27

i

PLAINTIFF'S NOTICE OF MOTION AND AMENDED MOTION FOR CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:20-cv-09203-EMC)

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on August 31, 2023, at 1:30 p.m. in Courtroom 5 of the United States District Court for the Northern District of California, San Francisco, Plaintiff Alicia Nolen will and hereby does move for an Order certifying the Class defined in the Memorandum below pursuant to Rule 23 (a), Rule 23(b)(2), and Rule 23(b)(3), and, alternatively, certain issues pursuant to Rule 23(c)(4).

Plaintiff requests that the Court certify the following class pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), or, in the alternative, certain issues pursuant to Rule 23 (c)(4):

> All persons residing in the State of California who are not registered users of Classmates.com and whose names and yearbook photographs are or were searchable on the Classmates.com website, where at least one such yearbook photograph became searchable for the first time on or after December 18, 2018.

Plaintiff further requests the Court appoint her as Class Representative and appoint Morgan & Morgan LLP, Turke & Strauss LLP, and the Law Office of Benjamin R. Osborn as Class Counsel.

In support of this Motion, Plaintiff refers to the Memorandum of Points and Authorities below, the accompanying declarations of Steven Weisbrot, Clifford Kupperberg, Michael F. Ram, Raina C. Borrelli, Benjamin R. Osborn, Alicia Nolen, and the accompanying Proposed Order Granting Class Certification and Proposed Trial Plan.

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................. 1

II.   PROCEDURAL BACKGROUND AND PROPOSED CLASS ............................. 3

III.  LEGAL STANDARD ........................................................................................... 5

IV.   ARGUMENT ........................................................................................................ 5

    A.  The Requirements of Rule 23 (a) are satisfied .............................................. 5

        1.    The proposed Class is so numerous that joinder is impracticable. ......................... 5

        2.    There are questions of law and fact common to the proposed Class. ...................... 6

            a.  PeopleConnect's Liability Turns on Common Questions of Law and Fact. ......... 6

            b.  Entitlement to Damages is a Common Issue of Law and Fact. ............................ 8

            c.  Entitlement to Injunctive Relief Presents Common Issues of Law and Fact. ...... 10

            d.  Plaintiff's UCL and Unjust Enrichment Claims are also Subject to Common Proof. ................................................................................................................. 10

        3.    Plaintiff's claims are typical of those of the proposed Class. ................................. 11

        4.    Plaintiff and her counsel are adequate representatives. ......................................... 13

            a.  There is no fundamental conflict of interest. ...................................................... 13

            b.  Plaintiff and her counsel have and will prosecute vigorously. ............................ 13

    B.  The Predominance Requirement of Rule 23 (b)(3) is Satisfied. ..................................... 14

    C.  The Superiority Requirement of Rule 23 (b)(3) is Satisfied. .......................................... 20

    D.  The Proposed Class Also Satisfies the Requirements of Rule 23 (b)(2). ....................... 22

    E.  In the Alternative, the Proposed Class Satisfies the Requirements of Rule 23 (c)(4). .... 22

V.    CONCLUSION .................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Adarand Constructors, Inc. v. Slater*,
528 U.S. 216 (2000)..................................................................................................... 12

*Amgen v. Conn. Ret. Plans and Trust Funds*,
568 U.S. 455 (2013)..................................................................................................... 14

*Bateman v. American Multi-Cinema*,
623 F.3d 708 (9th Cir. 2010) ....................................................................................... 20

*Betts v. Reliable Collection Agency, Ltd.*,
659 F.2d 1000 (9th Cir. 1981) ..................................................................................... 23

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ......................................................................................... 6

*Bonilla v. Ancestry.com*,
Case No. 20-cv-07390, --- F. Supp. 3d. ---, 2022 WL 4291359 (N.D. Ill. Sep. 16, 2022).......... 19

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ............................................................................... 21, 22

*Callahan v. PeopleConnect, Inc.*,
Case No. 20-cv-09203-EMC, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ............... 2, 8, 10, 17

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)..................................................................................................... 21

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)..................................................................................................... 14

*Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*,
926 F.3d 539 (9th Cir. 2019) ....................................................................................... 13

*Fischer v. InstantCheckmate LLC*,
2022 WL 971479 (N.D. Ill. Mar. 31, 2022)................................... 3, 8, 10, 12, 14, 15, 17

*Fraley v. Facebook, Inc.*,
966 F. Supp. 2d 939 (C.D. Cal. 2013) ............................................................. 3, 10, 17

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)..................................................................................................... 12

*Gutierrez v. Wells Fargo Bank, NA*,
704 F.3d 712 (9th Cir. 2012) ....................................................................................... 10

iv

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................ 6, 13, 14

*Hernandez v. Wells Fargo Bank, N.A.*,
No. 18-cv-07354, 2020 U.S. Dist. LEXIS 15844 (N.D. Cal. Jan. 29, 2020) .............................. 21

*Huebner v. Radaris, LLC*,
2016 WL 8114189 (N.D. Cal. Apr. 12, 2016) ...................................................... 3, 10

*In re NCAA Student-Athlete Name & Likeness Licensing Litigation*,
No. 09-cv-1967 CW, 2013 U.S. Dist. LEXIS 160739, (N.D. Cal. Nov. 8, 2013) ....................... 3

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) ................................................................. 6

*J.K. Harris & Company, LLC v. Kassel*,
No. 02-0400-CW, 2002 U.S. Dist. LEXIS 7862 (N.D. Cal. Mar. 22, 2002) .............................. 18

*Keller v. Electronic Arts, Inc*.,
No. 4:09-cv-1967 CW, 2015 U.S. Dist. LEXIS 113474 (N.D. Cal. Aug. 18, 2015) ..................... 3

*Kellman v. Spokeo, Inc.*,
599 F. Supp. 3d 877 (C.D. Cal. 2022) ......................................................... 9, 16

*Knapke v. PeopleConnect Inc.*,
553 F. Supp. 3d 865 (W.D. Wash. 2021) ......................................................... 18

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) .................................................................. 17

*Levya v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) .................................................................. 20

*Lukis v. Whitepages Inc.*,
454 F. Supp. 3d 746 (N.D. Ill. 2020) ........................................................... 7

*Martinez v. ZoomInfo*,
No. 21-cv-5725, 2022 WL 1078630 (W.D. Wash. Apr. 11, 2022) ................................... 16

*Meyer v. Bebe Stores, Inc.*,
No. 14-cv-00267, 2017 WL 558017 (N.D. Cal. Feb. 10, 2017) .................................... 21

*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012) ................................................................. 11

*Miller v. Glenn Miller Prods., Inc.*,
454 F.3d 975 (9th Cir. 2006) .................................................................. 10

PLAINTIFF'S NOTICE OF MOTION AND AMENDED MOTION FOR CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:20-cv-09203-EMC)

*Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir.),
*cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc., On Behalf of Itself & All Others Similarly Situated*, 214 L. Ed. 2d 233, 143 S. Ct. 424 (2022) ...................................... 5

*Orthopedic Sys., Inc. v. Schlein*,
202 Cal. App. 4th 529 (2011) ................................................................................. 18

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) .................................................................................. 22

*Perkins v. LinkedIn, Corp.*,
No. 13-cv-04303-LHK, 2016 U.S. Dist. LEXIS 18649 (N.D. Cal. Feb. 16, 2016)...................... 3

*Pitts v. Terrible Herbst Inc.*,
653 F.3d 1081 (9th Cir. 2011) ................................................................................ 12

*Platt Elec. Supply, Inc. v. EOFF Electrical, Inc.*,
522 F.3d 1049 (9th Cir. 2008) ................................................................................ 20

*Reitman v. Champion Petfoods USA, Inc.*,
830 F. App'x 880 (9th Cir. 2020) ............................................................................ 23

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*,
779 F.3d 934 (9th Cir. 2015) .................................................................................. 13

*Roberts v. McAfee, Inc.*,
660 F.3d 1156 (9th Cir. 2011) ................................................................................ 18

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2009) ................................................................................ 11

*Roe v. Amazon.com*,
170 F. Supp. 3d 1028 (S.D. Ohio 2016),
*aff'd* 714 F. App'x 565 (6th Cir. 2017).................................................................. 16, 18

*Ruiz Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016) ................................................................................ 14

*Sessa v. Ancestry.com*,
561 F. Supp. 3d 1008 (2021) ............................................................................... 7, 16

*Shum v. Intel Corp.*,
630 F. Supp. 2d 1063 (N.D. Cal. 2009) ..................................................................... 10

*Siegel v. ZoomInfo Techs*,
No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021) ................................................. 18

PLAINTIFF'S NOTICE OF MOTION AND AMENDED MOTION FOR CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:20-cv-09203-EMC)

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) ................................................................. 22

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ................................................................. 13

*Trustees of Red DOT Corp. ESOP and Trust*,
268 F.R.D. 670 (W.D. Wash. 2010) ......................................................... 6

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016).............................................................................. 14

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) ................................................................. 22

*Vinci v. American Can Co.*,
459 N.E.2d 507 (Ohio 1984) .................................................................... 3

*West v. California Servs. Bureau, Inc.*,
323 F.R.D. 295 (N.D. Cal. 2017) ........................................................... 21

*Wolin v. Jaguar Land Rover North Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) ............................................................... 11

*Yeager v. Bowlin*,
693 F.3d 1076 (9th Cir. 2012) ............................................................... 19

*Zinser v. Accufix Research Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) ............................................................... 23

**Statutes**

Cal. Bus. & Prof. Code § 17200 *et seq.* .............................................. 1, 3

Cal. Civ. Code § 3344............................... 1, 2, 3, 4, 6, 7, 9, 10, 11, 15, 17, 18, 19, 23

**Other Authorities**

McCarthy on Trademarks and Unfair Competition (4th ed. 2005) ............................. 10

**Rules**

Federal Rules of Civil Procedure, Rule 23 ............................ 2, 5, 6, 11, 12, 13, 14, 17, 20, 22, 24

PLAINTIFF'S NOTICE OF MOTION AND AMENDED MOTION FOR CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:20-cv-09203-EMC)

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

PeopleConnect owns and operates the website www.classmates.com. PeopleConnect advertises paid subscriptions to Classmates using individual's names, childhood photographs, and personal information without their consent. California law recognizes the intellectual property and privacy rights of individuals to control the commercial use of their names and likenesses. PeopleConnect's non-consensual, commercial use of California residents' names and photographs violates these important and long-standing legal rights.

Plaintiff moves for certification under Rules 23(b)(3) and 23(b)(2) of her California statutory right of publicity (Cal. Civ. Code § 3344), Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 *et seq*.,) and unjust enrichment claims. This is a paradigmatic case for class treatment. Plaintiff's and Class members' claims arise from PeopleConnect's use of their names and yearbook photographs in webpages designed to advertise subscriptions to Classmates.com. ███████████████████████ PeopleConnect obtained digital copies of yearbooks containing the names and childhood photographs of millions of Californians. *See* Osborn Decl., Exs. 1-5. PeopleConnect incorporated each Class member's name and childhood photograph into the same advertising flow in the same way. *See* Dkt. No. 132 (First Amended Complaint ("FAC")) ¶¶56-65 (showing advertising flow for former plaintiff Geoffrey Abraham); Dkt. No. 172 (Second Amended Complaint ("SAC")) ¶¶128-161; Strauss Decl., Ex. 2 (same advertising flow for photographs in Plaintiff Nolen's yearbook); Osborn Decl., Ex. 7, at ¶¶6-10 (Classmates employee describing the flow of the Classmates website consistently with Plaintiff's description); Osborn Decl., Ex. 9 ("Toivola Tr."), at 42:4-44:25, 48:10-51:23 (same).

The flow begins by prompting users to search for Class members they may know. FAC ¶57; SAC ¶150; Osborn Decl., Ex. 7, at *18-19, 23, 39-46; Strauss Decl., Ex. 2. After a search is entered, PeopleConnect displays a page of results including low-resolution versions of Class members' childhood photographs. FAC ¶58; SAC ¶151; Toivola Tr., at 41:2-42:18 (describing the search functionality and results), 54:12-61:25 (confirming accuracy of website flow shown in

1

PLAINTIFF'S NOTICE OF MOTION AND AMENDED MOTION FOR CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:20-cv-09203-EMC)

the Complaint); Strauss Decl., Ex. 2. Users who click on Class members' names or photographs, or who click banner ads shown adjacent to the search results, are shown a pop-up and webpage asking the user to register for an account and purchase a subscription. FAC ¶¶60-61; SAC ¶¶152-53; Toivola Tr., at 41:2-42:18; 45:22-46:24; 54:12-61:25; Strauss Decl., Ex. 2. Because PeopleConnect displays the same advertisements for every Class member in violation of § 3344 of the California Civil Code, liability is subject to Class-wide proof.

Damages are also subject to Class-wide proof. Section 3344 provides for $750 in minimum damages per violation. Class members are entitled to the statutory minimum if they show they "suffered injury." *See Callahan v. PeopleConnect, Inc.*, Case No. 20-cv-09203-EMC, 2021 WL 5050079, at *16-17 (N.D. Cal. Nov. 1, 2021). Here, Class members suffered several forms of injury, all of which are susceptible to common proof. For example, Class members were injured by PeopleConnect's failure to compensate them for its commercial use of their likenesses in advertisements. The Court has held that this constitutes injury. *See id.*, at *19. That PeopleConnect's failure to compensate Class members caused them economic injury is confirmed by the substantial factual record showing PeopleConnect ascribes tangible economic value to Class members' yearbook photographs. PeopleConnect both ███████████████████████ ████████████████████████████████████████ and receives licensing fees from third parties for the same right. Osborn Decl., Exs. 1-3 & 6. At least one of PeopleConnect's licensees uses Class members' yearbook photographs for the same purpose PeopleConnect does: advertising website subscriptions. *See id.*, Ex. 6 (PeopleConnect licenses its yearbook database to Ancestry.com). Because each Class member is entitled to the same statutory minimum damages so long as they suffered injury in some amount, even were there variation within the Class in the amount PeopleConnect earned from each photograph, this would be irrelevant to the calculation of damages in this case.

At least two courts have granted class certification in highly similar cases involving statutory right of publicity claims. In *Fischer v. InstantCheckmate LLC*, Judge Feinerman certified a Rule 23 (b)(3) class of Illinois residents whose names and personal information

2

appeared in a searchable database published by InstantCheckmate. 2022 WL 971479, at *3, 15 (N.D. Ill. Mar. 31, 2022). Like Classmates.com, InstantCheckmate.com – also owned by PeopleConnect – used search results containing individuals' names and identities to advertise subscriptions. *See id.*, at *8. The *Fischer* court considered and rejected many of the arguments PeopleConnect may raise here. Similarly, in *Huebner v. Radaris, LLC*, Judge Chhabria certified under Rules 23(b)(3) and 23(b)(2) a class of individuals asserting Cal. Civ. Code § 3344 claims (among others) against a similar people-search site. 2016 WL 8114189, at *1-2 (N.D. Cal. Apr. 12, 2016). Furthermore, at least two courts have certified, for settlement purposes, classes of individuals whose names and personas were used to promote social media websites in violation of Cal. Civ. Code § 3344. *See Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939 (C.D. Cal. 2013) (granting final approval); *Perkins v. LinkedIn, Corp.*, No. 13-cv-04303-LHK, 2016 U.S. Dist. LEXIS 18649 (N.D. Cal. Feb. 16, 2016) (same).[1] There is no reason for a different result here. Plaintiff's motion should be granted.

## II.   PROCEDURAL BACKGROUND AND PROPOSED CLASS

On December 18, 2020, Plaintiff filed a class action complaint in the United States District Court for the Northern District of California asserting claims under California's Right of Publicity Statute (Cal. Civ. Code § 3344); California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); California intrusion upon seclusion, and California unjust enrichment. Dkt. No. 2 ("Complaint"). Plaintiff alleged that PeopleConnect used their names and childhood yearbook photographs without their consent to advertise paid subscriptions to the Classmates.com website in violation of their intellectual property and privacy rights. *Id.*

---

[1] Courts have also certified classes of individuals pursuing right of publicity claims in other contexts. In *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, No. 09-cv-1967 CW, 2013 U.S. Dist. LEXIS 160739, (N.D. Cal. Nov. 8, 2013), the court certified a class of "current and former student athletes" who alleged "that the NCAA misappropriated their names, images, and likenesses in violation of their statutory and common law rights of publicity." *Id.*, at *10-11; *see also Keller v. Electronic Arts, Inc.*, No. 4:09-cv-1967 CW, 2015 U.S. Dist. LEXIS 113474 (N.D. Cal. Aug. 18, 2015) (confirming certification of similar class for settlement purposes). *See also Vinci v. American Can Co.*, 459 N.E.2d 507 (Ohio 1984) (affirming certification of class of individuals pursuing Ohio misappropriation of name or likeness claims).

3

PLAINTIFF'S NOTICE OF MOTION AND AMENDED MOTION FOR CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:20-cv-09203-EMC)

On May 18, 2021, the Court denied PeopleConnect's motion to compel arbitration. Dkt. No. 26. On June 16, 2021, PeopleConnect filed a notice of appeal and sought interlocutory appeal to the Ninth Circuit of this Court's denial of the motion to compel arbitration. Dkt. No. 47.

On November 1, 2021, the Court denied PeopleConnect's motion to stay pending appeal of its motion to compel arbitration; denied PeopleConnect's motion to stay discovery; denied PeopleConnect's motion to strike under California's anti-SLAPP statute; and granted in part and denied in part PeopleConnect's motion to dismiss for failure to state a claim. Dkt. No. 76. The Court dismissed Plaintiff's intrusion upon seclusion claims with leave to amend and dismissed Plaintiff's claims arising from the use of her names and photographs to advertise the sale of reprinted yearbooks as preempted by the Copyright Act. *Id.* The Court denied PeopleConnect's motion to dismiss Plaintiff's § 3344, UCL, and unjust enrichment claims arising from PeopleConnect's non-consensual use of yearbook photographs to advertise subscriptions. *Id.*

On December 19, 2021, at PeopleConnect's request, Plaintiff filed an unopposed motion to stay the district court case pending resolution of PeopleConnect's arbitration appeal. Dkt. No. 86. On March 18, 2022, the Ninth Circuit affirmed this Court's decision denying PeopleConnect's motion to compel arbitration. Dkt. No. 92.

On June 14, 2022, the Court denied PeopleConnect's motion for judgment on the pleadings or to certify immediate interlocutory appeal on the issue of CDA immunity. Dkt. No. 122.

On August 1, 2022, pursuant to stipulation, Alice Zhang, Wayne Tseng, and Jamaal Carney were added to the First Amended Complaint ("FAC"). Dkt. No. 130.

On March 30, 2023, this Court granted PeopleConnect's motion for summary judgment, ruling that, under the single publication rule, "claims [under § 3344] accrue . . . when the relevant material is first made publicly available." Dkt. No. 177, at *7.  On March 23, 2023, a Second Amended Complaint ("SAC") substituted Ms. Nolen as the new named Plaintiff. Dkt. Nos. 172, 183. Consistent with the Court's summary judgment Order, the SAC asserts claims on behalf of

4

PLAINTIFF'S NOTICE OF MOTION AND AMENDED MOTION FOR CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:20-cv-09203-EMC)

individuals whose yearbook photographs were uploaded to the Classmates.com website within two years of the filing of the initial Complaint in this action. *See* SAC ¶75.

Plaintiff now respectfully moves for an Order certifying the following Class pursuant to Rule 23 (a), Rule 23(b)(2), and Rule 23(b)(3):[2]

> All persons residing in the State of California who are not registered users of Classmates.com and whose names and yearbook photographs are or were searchable on the Classmates.com website, where at least one such yearbook photograph became searchable for the first time on or after December 18, 2018.

### III.      LEGAL STANDARD

"[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir.), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc., On Behalf of Itself & All Others Similarly Situated*, 214 L. Ed. 2d 233, 143 S. Ct. 424 (2022).

### IV.      ARGUMENT

**A.  The Requirements of Rule 23 (a) are satisfied.**

**1.  The proposed Class is so numerous that joinder is impracticable.**

The proposed Class satisfies the numerosity requirement. A search on Classmates.com for "John Smith" limited to yearbooks in California yields more than 97,000 results (each comprising a name and photograph); "Maria Garcia" yields more than 23,000 results. Strauss Decl. ¶¶2-3. Even were the proposed Class limited to California residents with those two common names, numerosity would be satisfied.

Plaintiff retained Clifford Kupperberg, a Certified Public Accountant, to assist in calculating Class damages and estimating the size of the Class. Mr. Kupperberg estimates that the proposed Class comprises at least 104,029 members. *See* Kupperberg Decl.

---

[2] Should this Court determine that only certain issues are appropriate for Class treatment, Plaintiff respectfully requests, alternatively, that the Court certify those issues under Rule 23 (c)(4).

### 2.   There are questions of law and fact common to the proposed Class.

Rule 23 (a)(2) requires that there be common questions of law or fact. The requirements are "minimal." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Plaintiffs "need only show the existence of a common question of law or fact that is significant and capable of Class-wide resolution." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 592 (N.D. Cal. 2015) (citations omitted). Where the defendant is alleged to "have engaged in standardized conduct toward the members of the proposed class," commonality is easily satisfied. *See Trustees of Red DOT Corp. ESOP and Trust*, 268 F.R.D. 670, 676 (W.D. Wash. 2010). Commonality is not "defeated by slight differences in class members' positions." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

Here, the proposed Class satisfies commonality. Indeed, as demonstrated below, every meaningful issue in this case can be resolved on a common basis.

### a.   PeopleConnect's Liability Turns on Common Questions of Law and Fact.

PeopleConnect's liability hinges on its publication of advertising webpages displaying Class members' names and low-resolution photographs; the identifiability of the Class members portrayed in those webpages; and PeopleConnect's failure to obtain consent. *See* Cal. Civ. Code § 3344. All three elements are subject to common proof.

First, PeopleConnect incorporates each Class members' name and yearbook photograph in an on-site advertising flow that is, by design, identical in form and advertising content. The flow begins with a prompt to search for names of people the user may know (*see* FAC ¶57; SAC ¶150; Osborn Decl., Ex. 7, at *18-19, 23, 39-46); proceeds to screens displaying the Class member's names and low-resolution versions of their childhood photographs (*see* FAC ¶¶58-59; SAC ¶¶151-52; Toivola Tr., at 41:2-42:18, 54:12-61:25); and ends with solicitations for website subscriptions (*see* FAC ¶¶60-62; SAC ¶¶151-53; Toivola Tr., at 41:2-42:18, 45:22-46:24. 54:12-61:25); *see also* Strauss Decl., Ex. 2 (same advertising flow incorporating photographs from Ms.

Nolen's yearbook).[3] In a related action, PeopleConnect admitted that it displays the same webpages and pop-ups depicted in the FAC in response to a search for any name. Osborn Decl., Ex. 7, at ¶6, *21, *29-33 (declaration by Classmates employee including screenshots of "the series of webpages" Classmates shows in response to "search[es] for a specific person"). Likewise, PeopleConnect's vice president of marketing confirmed that, whenever "an unregistered user is trying to access the full-size yearbook [photographs]," PeopleConnect displays "the popover" requesting registration and "subscription offer" webpage that are shown in the FAC. Toivola Tr., at 54:12-59:12. Accordingly, whether PeopleConnect's publication of Class members' low-resolution photographs as a means of soliciting subscriptions constitutes "us[ing] another's name . . . photograph, or likeness . . . for purposes of advertising or selling" within the meaning of Cal. Civ. Code § 3344 is a question common to the Class.

Second, PeopleConnect's advertising webpages identify each Class member by at least their name, school, and year they attended. Because this information uniquely identifies each Class member, recognizability can be shown on a Class-wide basis. *See Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008, 1022 (2021) ("The use of an individual's likeness for commercial purposes . . . establishes common law injury for right of publicity claims as long as the individual is recognizable."). It is not required that the photograph alone be sufficiently high-resolution to enable identification. A person's right of publicity is infringed if the information used in the advertisement, taken as a whole and as presented to the prospective purchaser, is sufficient to identify the person. In *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 761 (N.D. Ill. 2020), a teaser profile listing an individual's "name . . . two telephone numbers, a Chicago address, a Virginia address, and as a relation of [another individual]" could "uniquely identif[y]" the plaintiff and therefore gave rise to a right of publicity claim, even though no image of the plaintiff appeared in

---

[3] In an apparent attempt to impede counsel's ongoing investigation of her claim, PeopleConnect temporarily removed Ms. Nolen's name and photograph from its website at some point after Ms. Nolen filed suit. Strauss Decl. ¶3. Accordingly, Plaintiff's counsel used a search for one of her high school friends to illustrate how PeopleConnect used Ms. Nolen's photograph to advertise at the time the Complaint was filed. *Id.* ¶4 & Ex. 2.

the teaser. Here, every advertisement Classmates publishes incorporates the Class members' name, school, year of attendance, and low-resolution photograph. As in *Lukis*, this non-photographic information alone is sufficient to identify the individual portrayed in the photograph.

Third, that PeopleConnect did not obtain prior consent for using Class members' names and photographs in advertisements can be established by showing that PeopleConnect has no policy for obtaining consent other than displaying the Terms of Use to users who register an account and/or donate a yearbook.[4] *See* Osborn Decl., Ex. 10 (response to Interrogatory No. 3); Toivola Tr., at 64:2-10 ("For registered users, we can confirm [consent], and [for] anyone who participated in the SIYY ["send in your yearbook"] program, **but we would have no way to know if they gave consent other ways**.") (emphasis added); *id.*, at 66:12-22 (Rule 30(b)(6) witness failing to identify any policy at PeopleConnect for obtaining consent other than assent to the Terms of Service); *Fischer*, 2022 WL 971479, at *8-9 (rejecting argument that individualized issues of consent would predominate when defendant admitted it did not receive consent apart from the Terms of Use). Here, the Class definition excludes anyone who has registered an account and agreed to PeopleConnect's Terms, and therefore excludes anyone who has even arguably consented.

### b. Entitlement to Damages is a Common Issue of Law and Fact.

Damages may also be established by common proof. Class members are entitled to minimum damages in the amount of $750 so long as they prove they "suffered injury." *See Callahan*, 2021 WL 5050079, at *16-17. Class members suffered economic injury because "they were not paid – implicitly, by PeopleConnect – for the use of their names and likeness." *Id.*, at *19. There are at least two independent methods by which Plaintiff and the Class may prove they suffered economic injury and are therefore entitled to statutory damages. First, as this Court held, "a reasonable inference may be made that Plaintiffs' names and likenesses had value in advertising the subscription services" because PeopleConnect in fact used them for this purpose.

---

[4] As explained below, donating a yearbook requires creating an account on Classmates.com.

*Id.* Second, that PeopleConnect ascribes an economic value to, and earns a benefit from, Class members' likenesses may be established by the payments PeopleConnect pays and receives in exchange for the right to make commercial use of Class members' photographs. Specifically:

(1) PeopleConnect receives licensing fees from competitors (such as Ancestry.com ███ ███████ ) in exchange for the right to make commercial use of Class members' yearbook photographs. *See* Osborn Decl., Ex. 6; *see also id.*, Ex. 8 ("Smith Tr.") at 101:3-6.

(2) PeopleConnect ███████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████ *See* Osborn Decl., Ex. 1, §§1.1 and 2.1 (███████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████ ); *see also id.*, Ex. 11 (response to Interrogatory No. 1); *id.*, Exs. 2-3 (additional agreements with similar licensing terms); *see also* Smith Tr. at 55:1-15.

(3) PeopleConnect's ███████████████████████████████████████ ███████████████████████████████████████████████████████ ██████ " *See* Osborn Decl., Exs. 4, 5; *see also* Smith Tr. at 55:23-59:7.

PeopleConnect would not have paid for Class members' yearbook photographs if it did not derive a commercial benefit from advertising subscriptions with those photographs. Nor would others have paid licensing fees to PeopleConnect were Class members' photographs not valuable.

Even were Plaintiff and the Class unable to prove <u>economic</u> injury (as shown above, they can), Plaintiff and the Class can still show they "suffered injury" under Cal. Civ. Code § 3344 by demonstrating that PeopleConnect "infringed their right to control commercial use of their names and identities." *See Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 889 (C.D. Cal. 2022).

9

Traditionally, the right of publicity protects "the inherent right of every human being to control the commercial use of his or her identity." *Miller v. Glenn Miller Prods., Inc*., 454 F.3d 975, 988 n.6 (9th Cir. 2006) (*quoting* McCarthy on Trademarks and Unfair Competition, § 18:43 (4th ed. 2005)). This principle is embodied in both § 3344 and California's common-law misappropriation tort. *Id*. In *Fraley v. Facebook*, the court found the plaintiffs had suffered injury within the meaning of both Article III and § 3344 because the defendant had violated their "right to prevent others from appropriating elements of one's identity for commercial gain." 830 F. Supp. 2d 785, 806 (C.D. Cal. 2011). That PeopleConnect injured all Class members by infringing their right to control their names and likenesses can be shown by common proof that PeopleConnect used their yearbook photographs for commercial purposes to advertise paid subscriptions without consent.

### c. Entitlement to Injunctive Relief Presents Common Issues of Law and Fact.

Plaintiff seeks injunctive relief on behalf of the Class. Whether Class members are entitled to such relief, and what modifications PeopleConnect must make to bring its advertising practices in compliance with the law, are issues common to every member of the Class.

### d. Plaintiff's UCL and Unjust Enrichment Claims are also Subject to Common Proof.

For the UCL, Plaintiff and the Class must show they "lost money or property," *see Callahan*, 2021 WL 5050079, at *19. This will be shown through the same common proof with which Plaintiff will show she "suffered injury" under § 3344. The UCL "authorizes injunctive relief and restitution as remedies." *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 725 (9th Cir. 2012). With respect to unjust enrichment, Plaintiff must show PeopleConnect unjustly retained a benefit at her expense. *See Shum v. Intel Corp*., 630 F. Supp. 2d 1063, 1073 (N.D. Cal. 2009) (citation omitted). The amount of PeopleConnect's unauthorized profits is a reasonable measure and subject to common proof.

***

Thus, while only one common question of law or fact is required, as shown above, there are many shared questions of law and fact.  The courts in *Fischer* and *Huebner* found

10

commonality in cases presenting the same common issues. *See Fischer*, 2022 WL 971479, at *4 (commonality satisfied in right of publicity case against website owned by PeopleConnect that, like Spokeo, uses profiles of personal information to advertise subscriptions); *Huebner*, 2016 WL 8114189, at *1 (granting class certification under Rule 23 (b)(3) because the defendant people-search website "seems to have acted uniformly in all respects relevant to the plaintiffs' Civil Code § 3344 . . . claims"). The Court should reach the same conclusion here.

### 3.  Plaintiff's claims are typical of those of the proposed Class.

Rule 23 (a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The "test of typicality [] is whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). This test is met when the claims of the named plaintiffs are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (quotation omitted). "Defenses unique to a class representative counsel against class certification only where they threaten to become the focus of the litigation." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009). In determining whether a unique defense "threatens to become the focus," a court may consider the plausibility of the defense and its own prior rulings regarding the defense. *See id.* (rejecting argument that unique defense undermined typicality because the court had already rejected the defense).

Here, typicality is satisfied because Plaintiff's claims arise from the same course of conduct, are based on the same legal theories, and seek the same relief as those of Class members. As explained above, Plaintiff's names and photographs were incorporated in PeopleConnect's on-site advertising flow in the same manner as those of all Class members. Plaintiff never created an account with Classmates.com. *See* SAC ¶¶70-71; Nolen Decl. ¶4. By definition, neither have the absent Class members. Any issues arising from account creation – for example, any alleged

agreement to the Terms of Service – are therefore common. Plaintiff seeks the same relief as absent Class members, most notably an injunction prohibiting PeopleConnect from advertising using Class members' names and likenesses and statutory damages.

**Suppression**: PeopleConnect may argue that Plaintiff Nolen's claims are atypical because after she filed suit, PeopleConnect "suppressed" Ms. Nolen's photograph (*i.e.*, rendered her name and photograph temporarily invisible on the website). *See* Strauss Decl. ¶3. First, this does not even arguably affect Ms. Nolen's ability to serve as a Class representative with respect to the Rule 23 (b)(3) damages class because PeopleConnect has never compensated Ms. Nolen for the commercial use it made of her name and likeness prior to "suppressing" her name and photograph. Second, that Classmates temporarily made Ms. Nolen's name and photograph invisible does not moot her claim for injunctive relief. The Ninth Circuit has ruled that where, as here, a defendant attempts to "pick off" a representative plaintiff by deliberately mooting her claim, the claim becomes "transitory by its very nature" and therefore "relate[s] back to the filing of the complaint." *See Pitts v. Terrible Herbst Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011). This rule prevents defendants from "buy[ing] off the individual private claims of the named plaintiffs before the . . . motion for class certification," which would "contravene Rule 23's core concern: the aggregation of similar, small, but otherwise doomed claims." *Id*. (quotations omitted).

Furthermore, "[v]oluntary cessation of challenged conduct moots a case . . . only if it is *absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 221 (2000) (quotation omitted) (emphasis in original). PeopleConnect cannot carry its "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Absent an injunction, PeopleConnect would be free to "un-suppress" Ms. Nolen's name and photograph. Therefore, Ms. Nolen's request for injunctive relief is not moot. *See Fischer*, 2022 WL 971479, at *14-15 (rejecting similar attempt to moot named plaintiff's claim by "suppressing" his personal information).

12

PLAINTIFF'S NOTICE OF MOTION AND AMENDED MOTION FOR CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:20-cv-09203-EMC)

### 4.   Plaintiff and her counsel are adequate representatives.

Rule 23 (a)(4) requires that the parties will "fairly and adequately protect the interests of the class." A court must "resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d 539, 566 (9th Cir. 2019) (quotation omitted). Here, both questions resolve in favor of certification.

### a.   There is no fundamental conflict of interest.

Courts "do not favor denial of class certification on the basis of speculative conflicts." *Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 942 (9th Cir. 2015) (quotation omitted). Nor will "trivial" conflicts defeat adequacy. *Id.* "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23 (a)(4) adequacy requirement." *Id.* (quotation omitted). "[R]elatively small differences in damages and potential remedies" do not constitute a fundamental conflict of interest. *Hanlon*, 150 F.3d at 1020.

Plaintiff seeks the same monetary compensation for herself that she does for absent Class members, *i.e.*, $750 in statutory damages. An injunction prohibiting PeopleConnect from using Class members' names and photographs to advertise subscriptions would similarly benefit all Class members. The claims of all Class members arise under the same California law. Because "the requested relief applies equally throughout the class," as Plaintiff proves her claims, she will also be proving the claims of the absent Class members. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (quotation omitted). Therefore, no fundamental conflict exists.

### b.   Plaintiff and her counsel have and will prosecute vigorously.

Plaintiff submits with this motion declarations demonstrating her ability and interest in representing the Class and prosecuting this action. *See* Nolen Decl. The law firms seeking to represent the Class include qualified lawyers experienced in the successful prosecution of consumer class actions. To support the determinations required under Rules 23(a)(4) and 23(g),

---

the firms each submit with this motion declarations and/or firm resumes setting forth their relevant experience and expertise. *See* Osborn Decl. ¶¶12-19; Borrelli Decl. & Ex. A; Ram Decl. & Ex. A. These firms stand ready, willing, and able to devote the resources necessary to litigate this case vigorously and see it through to the best possible resolution. Counsel have already devoted ample resources to this matter, litigating substantial motion practice (*see, e.g.*, Dkt. Nos. 40, 76, 122, 174, 177), prevailing in an interlocutory appeal (*see* Dkt. No. 92), and conducting discovery.

### B. The Predominance Requirement of Rule 23 (b)(3) is Satisfied.

Rule 23 (b)(3) requires that common questions of law or fact predominate over individual ones. This inquiry focuses on whether the "common questions present a significant aspect of the case and [if] they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022 (internal quotations and citation omitted); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Each element of a claim need not be susceptible to class-wide proof, *see Amgen v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 469 (2013), and the "important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance." *Ruiz Torres v. Mercer Canyons Inc.,* 835 F.3d 1125, 1134 (9th Cir. 2016). Rule 23(b)(3) permits certification when "one or more of the central issues in the action are common to the class and can be said to predominate . . . even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson*, 577 U.S. at 453.

As shown above in the discussion of commonality, liability and entitlement to relief may be proved for every Class member using the same evidence. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (the predominance inquiry "begins, of course, with the elements of the underlying cause of action.") (quotation omitted). Indeed, while common issues need only "predominate," as shown above, every significant issue in this case is common to the members of the Class. PeopleConnect may argue, as its subsidiary InstantCheckmate did

---

14

in *Fischer*, 2022 WL 971479, that various individualized issues preclude a finding of predominance. None of these potential arguments would hold water.

**Consent**: PeopleConnect may argue that determining whether Class members have consented to PeopleConnect's use of their names and likenesses requires individualized proof. However, the sole method by which PeopleConnect claims to receive consent is by agreement to the Terms of Service when creating a Classmates.com account. *See* Osborn Decl., Ex. 10, (response to Interrogatory No. 3).[5] Because the Class excludes account holders, by PeopleConnect's admission, it has not obtained consent from any Class member.

PeopleConnect speculates that "[s]tudents and/or their guardians may also provide a blanket consent directly to the yearbook publishers" and that "[i]ndividuals may have consented broadly to the use of their names and/or photographs through their use of third-party websites." *Id.* These speculations, even if true, are irrelevant. The relevant question under § 3344 is whether *PeopleConnect* obtained Class members' "prior consent" to make commercial use of their names and photographs, not whether some other "third-party website" or yearbook publisher did so. *See Fischer*, 2022 WL 971479, at *9 ("[W]hatever consent a putative class member gave to a non-party to use or share her identity has no bearing on whether that putative class member consented to [PeopleConnect's subsidiary]'s use of her identity."); Toivola Tr., at 64:2-10 ("[W]e would have no way to know if they gave consent other ways.").

**Arbitration**: PeopleConnect may argue that arbitration presents an individualized issue, because some Class members may have agreed to the Classmates.com Terms of Service, which at some points in time included an arbitration clause. However, the Class definition ensures that no Class members have agreed to a Classmates.com Terms of Service because the definition

---

[5] PeopleConnect claims that it "[a]lso . . . obtains consent from any person who donates their yearbooks by visiting the yearbook donation webpage." Osborn Decl., Ex. 10, (response to Interrogatory No. 3). But this is not an independent method of obtaining consent, because donating a yearbook requires creating an account on Classmates.com and agreeing to the Terms of Service. *See* Osborn Decl., Ex. 7, at *27 (donation form). Because the Class excludes account holders, no one who has donated a yearbook is a member of the Class.

excludes registered users of Classmates.com. The webpage on which users must indicate their agreement to the Terms of Service appears only as part of the registration process. FAC ¶60 (registration screen stating that "By clicking submit, you agree to the Classmates Terms of Service"); *see also* Osborn Decl., Ex. 10 (response to Interrogatory No. 3) (identifying account creation as the sole moment when PeopleConnect presents a Terms of Service agreement to a user). Because registered users are excluded, none of the Class members have agreed to the Terms of Service.

**Voluntary sharing**: PeopleConnect may argue that the degree to which individual Class members voluntarily share their own personal information with the public – for example, by posting photographs on social networking sites – presents an individualized issue. PeopleConnect may argue that Class members who have voluntarily shared their photographs or other information have "less" of a claim than those who have not. This argument fails. Plaintiff's and Class members' claims arise not from the disclosure of otherwise "private" photographs and information, but rather from PeopleConnect's *commercial use* of their names and photographs to advertise paid subscriptions without consent. *See, e.g.*, *Sessa v. Ancestry.com*, 561 F. Supp. 3d at 1022 n.3 ("[R]ight of publicity claims do not depend on publication of private photos, but rather the use of one's likeness for commercial purposes"); *see also Martinez v. ZoomInfo*, No. 21-cv-5725, 2022 WL 1078630, at *5 (W.D. Wash. Apr. 11, 2022). That some Class members may voluntarily share some photographs with the public does not affect their right to prevent PeopleConnect from using their names and photographs to advertise its product. *See Kellman v. Spokeo, Inc.*, 2023 WL 411353, at *5 (N.D. Cal. Jan. 25, 2023) ("[I]t seems doubtful that any information that plaintiffs posted on their private social media accounts is relevant to defend against plaintiffs' claims about unlawful use of their personal information *for commercial purposes and without consent*.") (Court's emphasis).

State right of publicity statutes ensure that individuals can safely place their names, personas, and personal information in the public sphere, without fear that an unscrupulous company will misappropriate and exploit their names and personas for an unauthorized

16

PLAINTIFF'S NOTICE OF MOTION AND AMENDED MOTION FOR CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:20-cv-09203-EMC)

commercial purpose. *See, e.g.*, *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1031-33 (S.D. Ohio 2016), *aff'd* 714 F. App'x 565 (6th Cir. 2017) (non-celebrity plaintiffs who willingly posted their engagement photograph online had a "property right" in refusing commercial use of the photograph on a book cover because they "did not place the photograph on the internet for expropriation" by the defendant author); *Fraley*, 830 F. Supp. 2d 785 (non-celebrity plaintiffs who willingly shared their names and photographs with defendant could bring § 3344 suit when defendant used their photographs for a commercial purpose for which they did not grant consent). If, as PeopleConnect may contend, sharing aspects of one's name and persona with one audience and purpose – for example, posting a photograph on social media – constituted "implicit" consent for the use of one's name and persona by anyone and for any purpose, then the right of publicity would protect no one.

**Celebrities:** PeopleConnect may argue that whether individual Class members are celebrities or have otherwise previously invested in the commercial value of their likenesses presents an individualized issue. To the extent this argument relates to <u>liability</u>, this argument fails because Plaintiff's claims do not require alleging celebrity status or commercial value independent of the defendants' use. *See, e.g.*, *Callahan*, 2021 WL 5050079, at *14.

To the extent this argument relates to <u>damages</u>, Plaintiff acknowledges that, although few in number, there are likely some celebrities in the Class for whom the potential value of their claim against PeopleConnect may exceed the statutory amount. If these individuals wish to pursue recovery in a larger amount, they may opt-out and pursue their own action. In *Lane v. Facebook, Inc.*, 696 F.3d 811, 824 (9th Cir. 2012), the Ninth Circuit observed that Rule 23 (b)(3) provides Class members the "opportunity to opt out . . . to pursue their claims separately" precisely because "individual class members will often claim differing amounts of damages."

**Viewing by a Member of the Public**: PeopleConnect may argue that whether a member of the public has viewed the advertisement incorporating a given Class members' photograph presents an individualized issue. This argument fails because, as multiple courts have held, whether the advertisement was viewed by a member of the public is not relevant to the claims.

17

The right of publicity "does not impose a viewership requirement." *See Fischer*, 2022 WL 971479, at *11; *Siegel v. ZoomInfo Techs*, No. 21-cv-2032, 2021 WL 4306148, at *3 (N.D. Ill. Sep. 22, 2021) (rejecting argument that "actual view[ing]" must be alleged); *Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865, 876 (W.D. Wash. 2021) (while common law false light claims require "some allegation that members of the public saw the offending image," there is "no valid basis" to import this requirement into the right of publicity). As with the Illinois and Ohio laws at issue in *Fischer*, *Siegel*, and *Knapke*, there is no viewership requirement in § 3344. Plaintiff's and Class members' claims arise from PeopleConnect's creation of advertisements making unauthorized commercial use of their names and likenesses. The Class is not required to show whether or how often the advertisements were viewed. *See Fischer*, 2022 WL 971479, at *10 ("how many (if any) InstantCheckmate users saw a putative class member's search result . . . is immaterial to whether InstantCheckmate violated the IRPA"). This reading of the statutory right finds further support in the history of the common law misappropriation tort, which did not require proof that someone witnessed the defendant's actions. Rather, the tort required in relevant part only that plaintiffs show "the defendant's use of the plaintiff's identity . . . to defendant's advantage, commercially or otherwise." *Orthopedic Sys., Inc. v. Schlein*, 202 Cal. App. 4th 529, 544 (2011) (quotation omitted). Plaintiff need not show PeopleConnect's advertising webpages were viewed any more than a plaintiff whose photograph was used to advertise a book on Amazon.com would have to show that someone visited the webpage on which the advertisement appeared. *See Roe v. Amazon.com*, 170 F. Supp. 3d at 1033.

PeopleConnect has published advertisements on the Internet incorporating all Class members' names and yearbook photographs. Posting material to the Internet is publication, regardless of whether anyone has yet visited the website. *See Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1167-68 (9th Cir. 2011) (posting material to the Internet constitutes publishing that material, and is legally identically to publishing "[a] newspaper article"); *J.K. Harris & Company, LLC v. Kassel*, No. 02-0400-CW, 2002 U.S. Dist. LEXIS 7862, at *2 (N.D. Cal. Mar. 22, 2002) (posting "unfavorable information about Plaintiff" at the "URL" through which Defendants "advertis[d]

18

PLAINTIFF'S NOTICE OF MOTION AND AMENDED MOTION FOR CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:20-cv-09203-EMC)

their service on the Internet" constituted "publish[ing]" that information."). Publication for the purpose of advertising is activity regulated by § 3344, which applies to the "knowing[] use[]" of "another's name . . . photograph, or likeness . . . for purposes of advertising or selling." Accordingly, a right of publicity claim arises when a defendant first posts an individual's name and photograph on the Internet for an advertising purpose. Were it otherwise, individuals would have no way to prevent the ongoing commercial misuse of their names and photographs. Websites like Classmates.com do not disclose to the individuals portrayed whether and which names and photographs have been viewed.

That third-party viewing is not a required element is further confirmed by the many decisions – including a recent decision by this Court – that a cause of action accrues when the defendant first publishes the advertisement by making it available online, not when a member of the public first views it. On March 30, 2023, the Court granted PeopleConnect's motion for summary judgment, ruling that "claims [under § 3344] accrue . . . when the relevant material is first made publicly available." Dkt. No. 177, at *7. Likewise, in *Bonilla v. Ancestry.com*, Case No. 20-cv-07390, --- F. Supp. 3d. ---, 2022 WL 4291359 (N.D. Ill. Sep. 16, 2022), the court granted the defendant's motion for summary judgment on the ground the statute of limitations began to run when the defendant's website first uploaded the plaintiff's yearbook photograph. The *Bonilla* court agreed with this Court that a right of publicity action accrues on "the date [the defendant] started to publicly use the yearbook record," not the date on which some third party viewed the record. *Id.*, at *4; *see also Yeager v. Bowlin*, 693 F.3d 1076, 1081–82 (9th Cir. 2012) (holding that a California right of publicity action accrued when the defendant first uploaded the allegedly infringing content to its website, not when the content was first viewed by a member of the public). These holdings would make no sense if, as PeopleConnect now contends, a "use to advertise" occurs only if and when a third party views the advertisement. *See Bonilla*, 2022 WL 4291359, at *3 (rejecting argument that a right of publicity claim arises when Ancestry "actively generates each advertisement in response to a query by a specific user"). PeopleConnect cannot have it both ways. PeopleConnect successfully argued in this case that a plaintiff may bring a

1    right of publicity claim starting from the moment Classmates.com uploads her yearbook

2    photograph to its website. It cannot also be the case that the advertising use giving rise to a claim

3    occurs only when a third party views the photograph and associated advertisement. On

4    PeopleConnect's misreading, the statute of limitations would begin running – and might expire –

5    <u>before</u> any use to advertise had even occurred, and therefore <u>before</u> Plaintiff could have sued.

6    This is nonsensical. By definition, "[a] cause of action accrues when the claim is complete with

7    all of its elements." *Platt Elec. Supply, Inc. v. EOFF Electrical, Inc.*, 522 F.3d 1049, 1055 (9th

8    Cir. 2008).

9            **C.  The Superiority Requirement of Rule 23 (b)(3) is Satisfied.**

10           Rule 23 provides a non-exhaustive list of factors for consideration when determining

11   whether a class action is superior to other methods for adjudicating the controversy:

12           (A) the interest of members of the class in individually controlling the prosecution or

13           defense of separate actions;

14           (B) the extent and nature of any litigation concerning the controversy already commenced

15           by or against members of the class;

16           (C) the desirability or undesirability of concentrating the litigation of the claims in the

17           particular forum; [and]

18           (D) the difficulties likely to be encountered in the management of a class action.

19   *See Bateman v. American Multi-Cinema*, 623 F.3d 708, 713 (9th Cir. 2010) (quoting Fed. R. Civ.

20   P. 23(b)(3)). These factors weigh in favor of class treatment here.

21           With respect to the first factor, the Class members' claims are so relatively small – $750

22   – that it would cost more to litigate an individual case than they could hope to recover. Class

23   certification is "the only feasible means for them to adjudicate their claims." *See Levya v. Medline*

24   *Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013).

25           The second and third factors also weigh in favor of certification. This case has been

26   pending for over two years. Plaintiff is not aware of any other action asserting California right of

27   publicity claims against PeopleConnect. This Court has become familiar with the factual and legal

1    issues by handling the Defendant's motion to dismiss, anti-SLAPP motion to strike, motion to

2    stay, motion for judgment on the pleadings or to certify interlocutory appeal, and motion for

3    summary judgment. *See Hernandez v. Wells Fargo Bank, N.A.*, No. 18-cv-07354, 2020 U.S. Dist.

4    LEXIS 15844, at *15 (N.D. Cal. Jan. 29, 2020) (third factor weighed in favor of certification

5    because "this Court has overseen this case for well over a year and is familiar with the underlying

6    issues"). Holding separate trials for claims that could be tried together would be costly, inefficient,

7    and a burden on the court system. *See* Trial Plan.

8        The fourth "management" factor focuses on the "practical problems that may render the

9    class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S.

10   156, 163 (1974). Here, Plaintiff does not foresee any serious manageability problems, and

11   certainly none that would warrant thousands of individual actions a better alternative. *See* Trial

12   Plan.

13       Although manageability does not require "demonstrating an administratively feasible way

14   to identify class members," *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017),

15   Plaintiff submits with this motion the Declaration of Steven Weisbrot, an experienced claims

16   administrator, attesting to the feasibility of Class member identification and Class notice. *See*

17   Weisbrot Decl. The proposed Class is defined by "objective and definite" criteria, all of which

18   would be easily verified as part of a claims process. *See Briseno*, 844 F.3d at 1126 n.6. First, Class

19   members are California residents, which may be established by the claimant providing their

20   address or averring their state of residence. Second, Class members are not registered users of

21   www.classmates.com, which may be established by averment and by PeopleConnect checking

22   the claimant's name, email address, and high school against their database of registered users.

23   PeopleConnect collects this information as part of the registration process. *See* FAC ¶60; Osborn

24   Decl., Ex. 7, at *17. Third, Class members must be the subject of a photograph searchable on

25   www.classmates.com. This can be established by the claimant searching for their own name and

26   yearbook record on the classmates.com site. Self-identification by Class members is sufficient.

27   *See Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267, 2017 WL 558017, at *3 (N.D. Cal. Feb. 10,

21

2017). Moreover, PeopleConnect may "challenge the claims of absent Class members if and when they file claims." *West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 306 (N.D. Cal. 2017).

Class notice is also feasible. "[T]he Due Process Clause does not require actual, individual notice in all cases." *Briseno*, 844 F.3d at 1129. Here, individual notice is not practicable because the Class is limited to people who have not registered for an account on www.classmates.com, and for whom PeopleConnect therefore does not possess contact information. In his Declaration, Mr. Weisbrot describes a notice plan that he estimates would reach 95% of the class. Weisbrot Decl. The plan incorporates programmatic display advertising, social media, paid search, and publication in print media. *See id*. "Court have routinely held that notice" by similar methods such as "publication in a periodical, on a website, or even at an appropriate physical location is sufficient." *Briseno*, 844 F.3d at 1129 (quoting *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994)).

For these reasons, the superiority requirement is satisfied.

**D.  The Proposed Class Also Satisfies the Requirements of Rule 23 (b)(2).**

The requirements of Rule 23 (b)(2) "are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014). Here, Plaintiff seeks an injunction prohibiting PeopleConnect from using names and yearbook photographs to advertise subscriptions without consent, a practice that PeopleConnect engages in with respect to every member of the Class. Because Plaintiff seeks uniform injunctive relief from practices generally applicable to the class, the Class should be certified under Rule 23(b)(2).

**E.  In the Alternative, the Proposed Class Satisfies the Requirements of Rule 23 (c)(4).**

Should this Court determine that only certain issues are appropriate for Class treatment, Plaintiffs respectfully request in the alternative that the Court certify those issues under Rule 23 (c)(4). "Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted," Rule 23(c)(4) "authorizes the district

court in appropriate cases to isolate the common issues . . . and proceed with class treatment of these particular issues." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (citing Fed. R. Civ. P. 23(c)(4)). An issues class must "have proper representatives and otherwise comply with Rule 23's requirements." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 n.8 (9th Cir. 2001); *see also Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981). Certification of an issues class may be warranted when certifying particular issues "would significantly advance the resolution of the underlying case." *Valentino*, 97 F.3d at 1229; *see also Reitman v. Champion Petfoods USA, Inc.*, 830 F. App'x 880, 882 (9th Cir. 2020) (unpublished) (affirming denial of certification because "numerous individualized issues affecting determinations of liability make Rule 23(c)(4) certification inefficient").

Here, for all of the same reasons discussed above, certification of certain issues would advance the resolution of this action by determining key legal issues common to all Class members. For example:

- whether PeopleConnect used Class members' names and likenesses to advertise website subscriptions in an advertising flow identical or substantially similar to the flow shown in the Complaint;

- whether PeopleConnect's use of names and yearbook photographs to advertise subscriptions without consent is a commercial use;

- whether PeopleConnect's regular practices and policies include obtaining consent from Class members prior to using their names and likenesses;

- whether PeopleConnect's consent defense is valid;

- whether PeopleConnect ascribes economic value to and derives an economic benefit from its commercial use of Class members' names and likenesses;

- whether the provision for statutory damages in Cal. Civ. Code § 3344 entitles each Class member to $750 for each of their yearbook photographs PeopleConnect used to advertise Classmates memberships;

- whether Class members are entitled to injunctive relief, including but not limited to

changes to the Classmates website that would de-associate the display of Class members' names and yearbook photographs from solicitations of a website subscription or require PeopleConnect to obtain informed consent.

*See* Section IV.A.2, *supra*. These issues can all be resolved with generalized proof on a classwide basis without variation among Class members.

## V.    CONCLUSION

For the reasons above, Plaintiff respectfully requests the Court GRANT her motion to certify the Class pursuant to Rules 23(b)(3) and 23(b)(2) or, alternatively, under Rule 23 (c)(4).

Dated: June 8, 2023

By:  */s/ Raina C. Borrelli*
Raina Borrelli (*pro hac vice*)
raina@turkestrauss.com
Sam Strauss (*pro hac vice*)
sam@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (608) 509 4423

Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

Benjamin R. Osborn (*pro hac vice*)
ben@benosbornlaw.com
LAW OFFICE OF BENJAMIN R. OSBORN
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464

*Attorneys for Plaintiff and the Proposed Class*

1

## **CERTIFICATE OF SERVICE**

2      I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk

3 of the Court using the CM/ECF system, which will send notification of such filing to counsel of

4 record via the ECF system.

5      DATED this 8th day of June, 2023.

6

7      By:  */s/ Raina C. Borrelli*
            Raina Borrelli (*pro hac vice*)

8           raina@turkestrauss.com
            TURKE & STRAUSS LLP

9           613 Williamson St., Suite 201
            Madison, Wisconsin 53703-3515

10          Telephone: (608) 237-1775
            Facsimile: (608) 509 4423

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S NOTICE OF MOTION AND AMENDED MOTION FOR CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT (Case No. 3:20-cv-09203-EMC)