**JENNER & BLOCK LLP**
Benjamin T. Halbig (Cal. Bar. No. 321523)
bhalbig@jenner.com
455 Market Street, Suite 2100
San Francisco, California 94105
Telephone:     628 267-6800
Facsimile:     628 267-6859

**JENNER & BLOCK LLP**
Debbie L. Berman (*pro hac vice*)
dberman@jenner.com
Wade A. Thomson (*pro hac vice*)
wthomson@jenner.com
353 North Clark Street
Chicago, Illinois 60654
Telephone:     312 222-9350
Facsimile:     312 527-0484

**JENNER & BLOCK LLP**
Kate T. Spelman (Cal. Bar. No. 269109)
kspelman@jenner.com
515 S. Flower Street, Suite 3300
Los Angeles, California 90071
Telephone:     213 239-5100
Facsimile:     213 239-5199

*Attorneys for Defendant PeopleConnect, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALICIA NOLEN, on behalf of herself and all others similarly situated,<br><br>                        Plaintiff,<br><br>     v.<br><br>PEOPLECONNECT, INC., a Delaware Corporation,<br>                      Defendant. | Case No. 3:20-cv-09203-EMC<br><br>**DEFENDANT PEOPLECONNECT, INC.'S OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CLASS CERTIFICATION** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................Error! Bookmark not defined.

BACKGROUND ...................................................................................................................1

I.   What The Classmates.com Library Contains. .........................................................1

II.  Plaintiff's Yearbook. ...............................................................................................2

III. How Classmates.com Works. ..................................................................................2

    A.  The Visitor Experience .......................................................................................2

    B.  The Free Member Experience .............................................................................4

    C.  The Subscriber Experience .................................................................................5

ARGUMENT .......................................................................................................................6

I.   The Proposed Rule 23(b)(3) Damages Class Cannot Be Certified Because Plaintiff Has Not Sustained Her Burden Of Proving Predominance. ...............................................6

    A.  Plaintiff Cannot Prove With Common Evidence That Every Putative Class Member Is "Readily Identifiable" In An Advertisement On Classmates.com. ...........................7

       1.  The Extent To Which Putative Class Members Are Readily Identifiable In The Purported Advertisements Varies Tremendously. ....................................................9

       2.  Plaintiff's Testimony Shows That Identifiability Is An Individual Issue. ............11

    B.  Plaintiff Cannot Prove Each Class Member Is An Injured Party With Common Proof. .....................................................................................................................13

       1.  Mental Anguish Cannot Be Established With Common Proof. ...........................13

       2.  Economic Injury Cannot Be Established With Common Proof...........................14

    C.  Plaintiff Cannot Prove Lack Of Consent With Common Evidence...........................16

       1.  Many Putative Class Members Consented Through Their Schools. ....................17

       2.  Many Putative Class Members Consented When Donating Yearbooks...............17

       3.  Some Putative Class Members Consented Through Self-Searches.......................18

    D.  Plaintiff Cannot Prove With Common Evidence That Every Putative Class Member's Identity Has Been Part Of An Advertisement On Classmates.com.........................18

    E.  Plaintiff Cannot Defeat The Affirmative Defenses With Common Evidence. ...........21

1.   Plaintiff Cannot Defeat Arbitration Or Class-Waiver With Common Evidence.21

2.   The Section 230 Defense Cannot Be Defeated With Common Evidence. ..............23

II.  A Rule 23(b)(3) Class Cannot Be Certified Because Plaintiff Has Not Proven Superiority. .......................................................................................................................................24

III. No Class Can Be Certified Plaintiff Has Not Proven Commonality And Adequacy.......25

A.  Plaintiff Has Not Proven Commonality Because Individual Issues Pervade. ............26

B.  Plaintiff Cannot Prove Adequacy Due To Inherent And Pervasive Class Conflicts. 27

IV. Plaintiff's Requests For Certification Of Rule 23(c)(4) Issues Should Be Denied. ..........30

CONCLUSION ...............................................................................................................................31

# TABLE OF AUTHORITIES

**CASES**

*Aligo v. Time-Life Books, Inc.*, No. C 94-20707, 1994 WL 715605 (N.D. Cal. Dec. 19, 1994) ...................................................................................................................................16

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) .............................................................28

*Backus v. ConAgra Foods, Inc.*, No. C 16-454, 2016 WL 7406505 (N.D. Cal. Dec. 22, 2016) ...................................................................................................................................28

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) .................................................26

*Bowerman v. Field Asset Services, Inc.*, 60 F.4th 459 (9th Cir. 2023) ..........................................6

*Brown v. Porter McGuire Kiakona & Chow, LLP*, No. CV 17-00554, 2019 WL 254658 (D. Haw. Jan. 17, 2019) ...................................................................................................28

*California Medical Ass'n v. Aetna Health of California Inc.*, 63 Cal. App. 5th 660 (2021).........13

*Castillo v. Bank of America, NA*, 980 F.3d 723 (9th Cir. 2020) .....................................................6

*Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Financial Corp.*, 878 F. Supp. 2d 1009 (C.D. Cal. 2011)..................................................................................11

*Christoff v. Nestle USA, Inc.*, 62 Cal. Rptr. 3d 122 (Ct. App. 2007), *aff'd in part, rev'd in part*, 47 Cal. 4th 468 (2009)..........................................................................................16

*In re Community Bank of North Virginia*, 622 F.3d 275 (3d Cir. 2010) ......................................28

*Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190 (2017) .................................................................20

*Daniel F. v. Blue Shield of California*, 305 F.R.D. 115 (N.D. Cal. 2014)....................................25

*Davis v. Electronic Arts Inc.*, No. 10-CV-03328, 2018 WL 11436326 (N.D. Cal. Aug. 17, 2018) .................................................................................................................................8

*Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011)..................................................15

*Gorss Motels Inc. v. A.V.M. Enterprises, Inc.*, No. 17-CV-01078, 2019 WL 4278951 (D. Conn. Sept. 10, 2019) ....................................................................................................17

*Harris v. Best Buy Stores, L.P.*, No. 17-CV-00446, 2018 WL 3932178 (N.D. Cal. Aug. 16, 2018) ...............................................................................................................................27

*Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097 (7th Cir. 2022)................................................21

*Jones v. Corbis Corp.*, 815 F. Supp. 2d 1108 (C.D. Cal. 2011), *aff'd*, 489 F. App'x 155 (9th Cir. 2012)..................................................................................................................17

*Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217 (N.D. Cal. 2015) ....................................6

*Lightbourne v. Printroom Inc.*, 307 F.R.D. 593 (C.D. Cal. 2015)............................................14, 17

*Lukis v. Whitepages, Inc.*, 454 F. Supp. 3d 746 (N.D. Ill. 2020)............................................9

*Maloney v. T3Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017) ........................................7, 13

*Mateo v. V.F. Corp.*, No. C 08-5313, 2009 WL 3561539 (N.D. Cal. Oct. 27, 2009)....................28

*Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), *overruled by Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ....................................................................................7

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003), *overruled en banc on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010), *rev'd* 564 U.S. 338 (2011) ....................................................................................28

*Muchnick v. Thomson Corp. (In re Literary Works in Electronic Databases Copyright Litigation)*, 654 F.3d 242 (2d Cir. 2011) ....................................................................................28

*Newcombe v. Adolf Coors Co.*, 157 F.3d 686 (9th Cir. 1998) ........................................8

*O'Connor v. Boeing North America, Inc.*, 197 F.R.D. 404 (C.D. Cal. 2000) ..............................22

*In re Optical Disk Drive Antitrust Litigaiton*, 303 F.R.D. 311 (N.D. Cal. 2014)............................6

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ....................................................................................28

*Pesina v. Midway Manufacturing Co.*, 948 F. Supp. 40 (N.D. Ill. 1996) ........................................9

*Pierce v. County of Orange*, 526 F.3d 1190 (9th Cir. 2008) ....................................................................................25

*Rahman v. Mott's LLP*, 693 F. App'x 578 (9th Cir. 2017)............................................30

*Reitman v. Champion Petfoods USA, Inc.*, 830 F. App'x 880 (9th Cir. 2020) ..............................30

*Saunders v. Taylor*, 42 Cal. App. 4th 1538 (1996) ....................................................................................14

*Sessa v. Ancestry.com, Inc.*, 561 F. Supp. 3d 1008 (D. Nev. 2021) ........................................9

*Singh v. Google LLC*, No. 16-cv-03734, 2022 WL 94985 (N.D. Cal. Jan. 10, 2022)..................28

*Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799 (1990) ....................................................................................13

*Stitt v. Citibank*, No. 12-cv-3892, 2015 WL 9177662 (N.D. Cal. Dec. 17, 2015)........................27

*Tasion Communications, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630 (N.D. Cal. 2015) (Chen, J.)............................................30

*Thomas v. County of Los Angeles*, 703 F. App'x 508 (9th Cir. 2017)............................................26

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................26, 27, 28

*Willis v. City of Seattle*, 943 F.3d 882 (9th Cir. 2019).....................................................27

*Young v. Greystar Real Est. Partners, LLC*, No. 18CV02149, 2019 WL 4169889 (S.D. Cal. Sept. 3, 2019)..........................................................................................................8

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180 (9th Cir. 2001) .............................24, 25

STATUTES AND RULES

Cal. Bus. & Prof. Code § 17204 ........................................................................13

Cal. Civ. Code § 3344.......................................................................................7

Cal. Civ. Code § 3344(a) ...........................................................................13, 14, 15

Cal. Civ. Code § 3344(b) ...........................................................................7, 8

Cal. Civ. Code § 3344(b)(1) ............................................................................8

Cal. Civ. Code § 3344(e) ..................................................................................19

Fed. R. Civ. P. ........................................................................................ *passim*

OTHER AUTHORITIES

*Bonilla v. PeopleConnect, Inc.*, No. 21-cv-00051 (N.D. Ill.), ECF No. 74 ..................................23

*Boshears v. PeopleConnect, Inc.*, No. 21-cv-1222 (W.D. Wash.), ECF No. 17 ..........................23

Statcounter GlobalStats, https://rb.gy/jlcfl (last visited June 30, 2023) .......................................10

1 Dan B. Dobbs & Caprice L. Roberts, *Law of Remedies: Damages—Equity—Restitution* § 4.1(1) (3d ed. 2018) ..................................................................................15

George Washington Preparatory Senior High, https://bit.ly/3NUhCMZ ......................................18

Judicial Council of California Civil Jury Instructions, CACI No. 1803 (2022)............................13

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 117 (5th ed. 1984).................8

1 J. Thomas McCarthy and Roger E. Schechter, *Rights of Publicity and Privacy* § 6:50, Westlaw (2d ed database updated May 2023) .........................................................16

*Restatement (Third) of Restitution and Unjust Enrichment* § 1 (2011) ........................................15

*Restatement (Third) of Unfair Competition* § 46 (1995) .....................................................9, 12, 29

Yearbooks – The History of Garfield High School – James A. Garfield Senior High School (garfieldhs.org) ..........................................................................................18

1    The Court must consider whether Plaintiff has met her Rule 23 burden based on the facts, not the

2    Complaint's allegations. Applying that standard, the motion should be denied.

3    Plaintiff has misstated how the Website works. ***First***, Plaintiff's motion is premised on her

4    erroneous allegation that all users search for another person in a yearbook and that all users are then taken

5    through the same advertising flow that inevitably ends in a subscription offer. Yet the vast majority of

6    users do not access this potential flow and never access a yearbook. Instead, they are asked to subscribe

7    **before** any individual's likeness is used. ***Second***, Classmates.com does not "extract" information from

8    yearbooks and "aggregate[] [that] information into digital records associated with specific individuals."

9    Dkt. 172 ¶162. There are no preexisting individual records or "URLs" that pull up digital records about an

10   individual. The only information PeopleConnect makes accessible about class members is their yearbooks.

11   How the Website actually works precludes class certification because class members vary in

12   whether they: (1) are identifiable in purported advertisements on Classmates.com, (2) theoretically can be

13   incorporated into those advertisements, (3) have been injured by them, and (4) are subject to affirmative

14   defenses. These and other variations among class members create individualized issues at every turn.

15   Further, Plaintiff is a poor representative of the proposed class. Her allegation that her likeness has been

16   used in an offer to subscribe is not true. Plaintiff admitted she is unaware of anyone searching for her other

17   than her counsel, and, after a laborious process, PeopleConnect has confirmed that no one has searched for

18   her, except related to this litigation. Moreover, as Plaintiff confirms, any images of her from her yearbook

19   that could be displayed adjacent to a subscription offer would be too small to identify her by name or face.

20                                      **BACKGROUND**

21   **I.    What The Classmates.com Library Contains.**

22   PeopleConnect sources its yearbooks from purchases and donations. ▮▮▮▮▮▮▮▮▮▮

23   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Lambard Decl. ¶8. PeopleConnect scans yearbooks it obtains.

24   Those scans, the equivalent of digital photocopies, are run through ▮▮▮▮▮▮▮▮▮▮▮▮

25   ▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶56. So, if a user searches a yearbook for

26   the word "John," results may display for hits in which those characters appear in that order (*e.g.*, "John,"

27   "Johnson," "Johnston"). *Id.* ¶58. The scanning and ▮▮▮▮ processes do not "aggregate[]"information

28   concerning any putative class members into "digital records associated with specific individuals." Dkt. 172

¶162. ████████████████████████████████████, only a scanned yearbook and a general ██████ file. Lambard Decl. ¶56. The only individual profiles on Classmates.com are for its Registered Members, who are not in the proposed class and whose profiles contain data they submitted—not data "extracted" from any yearbook. *Id.*

## II. Plaintiff's Yearbook.

Plaintiff appears in one yearbook in Classmates.com's library: the 2016 Tulare Union High School yearbook. It was donated. PeopleConnect paid nothing to acquire it. *Id.* ¶33. It has been available on Classmates.com since August 2021. *Id.* Plaintiff admits she is unaware of anyone other than counsel searching for her. Halbig Decl., Ex. 10, at 6. And through a labor-intensive process, PeopleConnect confirmed that no one has searched for Plaintiff except in connection with this case. Knutzen Decl. ¶5.

## III. How Classmates.com Works.

The Court observed that "the gravamen of Plaintiff's complaint" is that the alleged advertisements can be generated "at any point by any person," Dkt. 204 at 11, but not all users of Classmate.com are shown subscription offers at all, let alone after viewing a yearbook:

- **Visitors**. Visitors do not have a Classmates.com account. Toivola Decl. ¶8. Classmates.com makes available to them: (1) the cover and first four, two-page spreads of any yearbook in full resolution, usually including the cover and other introductory pages; and (2) low-resolution thumbnail images of the remaining pages. *Id.* ¶¶29, 38. Most Visitors who become Free Members do so before they look at any yearbooks. Knutzen Decl. ¶10. So, the offer to subscribe is made before a name or photo has been shown.

- **Free Members**. After Free Members register for a free account, they can access in full resolution every page of every yearbook. While Free Members are searching, they may see an offer to subscribe, but they often do not. PeopleConnect does not track when there is a subscription offer and not for any particular search. No subscription offers are displayed when a Free Member is viewing within a yearbook. Toivola Decl. ¶82-86.

- **Subscribers**. Subscribers pay a fee for access to other benefits unrelated to viewing yearbooks, such as messaging with other Subscribers and discounts on yearbook reprints. Classmates.com does not display subscription offers to Subscribers. *Id.* ¶90.

### A. The Visitor Experience

Visitors use Classmates.com to look for reunions and events and to browse yearbook pages. Toivola Decl. ¶¶20, 25. They are not shown subscription offers. *Id.* ¶19. A Visitor who types "Classmates.com" into a browser reaches the Landing Page. *Id.* ¶9. The Landing Page does not "prompt[]"a Visitor to "search" for "Class members they may know." *Contra* Dkt. 190 at 1. Instead, the Visitor is asked to select the state

where **the Visitor** graduated. *Id*. ¶9. If they do so, they are taken to subsequent webpages where they can select a city and school. *Id*. ¶¶11-15. If a Visitor makes these selections, they will be directed to a new webpage with an option to register for a free account. *Id*. ¶¶11-16. The Visitor's first chance to register for a free membership is before the Visitor accesses any yearbooks. Because of its prominence on the Landing Page, PeopleConnect refers to this as the "Direct Registration Flow." *Id*. ¶10. If the Visitor fills out the registration form and clicks "SUBMIT," the Visitor becomes a Free Member and is then directed to a new webpage that is generated using information the Visitor entered into the registration form: first name, school and year. *Id*. ¶17. Importantly, most Visitors who register are shown an offer to subscribe without having viewed any yearbooks. *See* Knutzen Decl. ¶10.

Visitors can take several detours from the Direct Registration Flow. For example, a Visitor can scroll down the registration webpage to yearbook covers that match the information the Visitor selected for **their** state, city and school. Toivola Decl. ¶27. A Visitor who clicks any of those yearbooks will be taken to a webpage called "Browse View," where the Visitor can review the yearbook's first four, two-page spreads, which typically include the cover and other introductory pages. *Id*. ¶29. These pages are displayed in "full resolution," the highest quality available to Visitors of those particular pages. *Id*. ¶26. While a Visitor can view pages beyond those pages, they will be displayed only in low-resolution thumbnail images presented on a separate webpage ("Grid View"). Initially, the Grid View thumbnails will be partially or fully covered with a "popup" message prompting the Visitor to register to become a Free Member. The Visitor can register or close the popup. If a Visitor closes the popup, but clicks on a thumbnail, the popup will reappear. *Id*. ¶¶34-42. The thumbnails in Grid View are small and low resolution and, therefore, typically are illegible. *See id*. ¶¶38, 39. Even Plaintiff could make virtually no identifications of her former schoolmates in the Grid View of her yearbook. Halbig Decl., Ex. 8.

While the Direct Registration Flow is the common way to use Classmates.com from the Landing Page, Visitors instead can click the "Browse yearbooks" link at the bottom of that page. The Visitor will be directed to a different webpage with an option to register and a list of states for the Visitor to "FIND YOUR YEARBOOK." If the Visitor completes the registration form and clicks "SUBMIT," the Visitor will become a Free Member. Alternatively, if the Visitor selects a state and then, on subsequent webpages, a city and school, Classmates.com will display hyperlinks to yearbooks for that school. Clicking those links

directs the Visitor to Browse View, as described above. Toivola Decl. A Visitor also can run searches by clicking "Search" on the left side of the Browse View webpage and entering search terms. *Id*. This search is "plain text," meaning that whatever the Visitor types in (*e.g.*, made up terms, mascots, teams, or people's names), is compared to the text file that was ▮▮▮▮▮▮▮ from that yearbook. This search function is simplistic and imprecise. Lambard Decl. ¶58. The search results are displayed on another webpage with low-resolution thumbnail images like those in Grid View—except even smaller. Toivola Decl. ¶¶45. Again, these thumbnails typically are not legible. *See id*. ¶46. When Plaintiff was shown search results for her yearbook, she could not identify *anyone*, even her "best friend." Halbig Decl., Ex. 8.

If the Visitor clicks on any search result thumbnail, the Visitor is taken back to Grid View, again covered by the registration popup. Toivola Decl. ¶47. Thus, Plaintiff is incorrect when she asserts that "[t]he flow begins by prompting users to search for Class members they may know." Dkt. 190 at 1 (citing Dkt. 192 at 1). Rather, the webpages Plaintiff submits are not readily found on the Website; instead, a Visitor must know how to access them, *e.g.*, starting by clicking on the "Help Center" link on the bottom of the Landing Page. Toivola Decl. ¶¶91-104. Most Visitors do not run searches this way so it is not correct to say that this webpage "begins" every purported "advertising flow," much less "in the same way." Dkt. 190 at 1.

***Plaintiff's Sequence Theory***. Plaintiff's first theory of liability is that one possible series of webpages can include a page that contains class members' information, a separate page that permits the Visitor to register and another page that contains an offer to subscribe (Plaintiff's "Sequence Theory"). Dkt. 190 1-2. As detailed in the Toivola Declaration, this is just one of *many* potential sequences—*and virtually no Visitors go through it*. In roughly the past two years, less than ▮ of all Visitors saw yearbooks, which means the vast majority of Visitors do not even get to step one of her Theory. Knutzen Decl. ¶8. In that same time, less than ▮ of Visitors caused yearbook pages to be displayed *and then registered for an account*, which means that virtually no Visitors reach the subscription offer that is key to her Theory. *Id*. ¶9. In the other ▮ of Visitor sessions, the Visitor did something else, like registering without first causing any yearbook pages to be displayed or causing yearbook pages to be displayed and not registering. *Id*.

**B.    The Free Member Experience**

When Free Members sign in, they are taken to the Free Member Home Page. Toivola Decl. ¶¶72-74. On the right side are five content blocks, or "Banners." These Banners appear when the Free Member logs in—before the Free Member runs any search or views any yearbooks. *Id.*. These Banners include an offer to subscribe. After Free Members sign in, they can access yearbooks in full resolution as well as send messages to other Registered Members, plan alumni events and access other Free Member profiles. *Id.* If they run plain-text searches from the search bar in the top right, the Website displays search results on a new webpage with the results (on the left side) that, as Plaintiff admits, are only "adjacent to" the Banners on the right side. *Id.*; Dkt. 172 ¶¶120, 137, 154. These Free Member Search Banners vary each time a user runs search terms or refreshes the screen. Importantly, the Free Member Search Banners do not always include an offer to subscribe, and PeopleConnect does not record whether for any particular search results the Banners contain a subscription offer or not. *Id.*

***Plaintiff's Banner Theory***. Plaintiff's second theory of liability is premised on "banner ads promoting Classmates.com subscriptions adjacent to the search results." Dkt. 172 ¶¶120, 137, 154. Undercutting Plaintiff's theory, however, is that only one of the Banners there can include, *but does not always include*, an offer to subscribe. Toivola Decl. Also, if a Free Member searches via mobile device (which many do), no subscription offers display. *Id.* Plaintiff does not and cannot provide any evidence (must less common evidence) to distinguish between putative class members whose names or photographs were used in search results adjacent to a subscription-offer Banner and those that were not.

## C.    The Subscriber Experience

Classmates.com does not display upgrade offers to Subscribers because they already are subscribing. *Id.* The benefits that Subscribers pay for have nothing to do with accessing individuals in yearbooks, *e.g.*, seeing more information about and exchanging messages with other Registered Members—all of whom agreed to the TOS and so are excluded and receive a discount on yearbook reprints. *Id.*. Importantly, the actual benefits of a subscription disprove Plaintiff's allegation that "the point of using Plaintiff's image for advertising is to try to enhance [PeopleConnect's] business revenues by increasing the odds of sales." Dkt. 204 at 7. The Website sells two things: yearbook reprints and subscriptions. Claims based on yearbook reprints are preempted, Dkt. 73, and the subscription benefits have nothing to do with accessing yearbooks.

**ARGUMENT**

Plaintiff seeks certification of a Rule 23(b)(3) damages class and a 23(b)(2) injunction class based on her claim that Classmates.com has improperly used the names and photographs of putative class members to advertise paid subscriptions to Classmates.com. For either class, Plaintiff must prove each of the four components of Rule 23(a)—numerosity, commonality, typicality and adequacy. *See Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 231 (N.D. Cal. 2015). As for her Rule 23(b)(3) damages class, Plaintiff also must prove superiority and predominance. *In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311, 318–19 (N.D. Cal. 2014). No class can be certified because Plaintiff has not carried her burden. With respect to the proposed Rule 23(b)(3) class, Plaintiff has not proven predominance, as her claims require individualized proof as to every putative class member. She also has not proven superiority as there is no workable way to identify who is and, equally important, who is not a member of the class. As for both proposed classes, Plaintiff has not proven commonality under Rule 23(a)(2) because Plaintiff's claims calls for individualized proof, nor has she proven adequacy under Rule 23(a)(4) because of the weakness of her own claims. Plaintiff's fallback request for certification of specific issues under Rule 23(c)(4) fails because she has not identified any issue of consequence that can be resolved on a class-wide basis.

**I.      The Proposed Rule 23(b)(3) Damages Class Cannot Be Certified Because Plaintiff Has Not Sustained Her Burden Of Proving Predominance.**

Rule 23(b)(3) requires that a proposed class representative prove common issues of law or fact will "predominate" over individual issues. The Ninth Circuit has explained that this burden cannot be met if the putative class members' claims turn on individualized questions unanswerable via common proof. *E.g.*, *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 471 (9th Cir. 2023) (reversing class certification given "complexity of the individualized questions" and "absence of any representative evidence" that could answer those questions via common proof); *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020) (affirming denial of certification, noting "[t]he inclusion of class members whom, by definition, could not have been injured is ... indicative of the individualized inquiries that would be necessary to determine whether a class member has suffered any injury in the first place" (citation omitted)). That is the case here.

Plaintiff seeks to certify a Rule 23(b)(3) damages class to pursue claims under Section 3344, and her other claims, which are derivative. *See* Dkt. 76 at 29–30, 32–33. Each putative class member must

show: (1) PeopleConnect's use of their identities; (2) appropriation of their identities to PeopleConnect's advantage; (3) lack of consent; (4) resulting injury; (5) PeopleConnect's knowing use of their names or likenesses for purposes of advertising or solicitation; and (6) a direct connection between the use and the commercial purpose. *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1008 n.2 (9th Cir. 2017). Because individualized issues related to these elements would be the focus of any trial on the merits given the nature of the claims Plaintiff is pursuing, she has not carried her burden to show that common issues "predominate" over the individualized ones. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596–97 (9th Cir. 2012) (vacating certification order given individualized inquiries for one element of claim).

### A.   Plaintiff Cannot Prove With Common Evidence That Every Putative Class Member Is "Readily Identifiable" In An Advertisement On Classmates.com.

As the Court recently confirmed, Dkt. 204 at 3, each putative class member must prove that PeopleConnect used their "name, photograph, or likeness." *See Maloney*, 853 F.3d at 1008 n.2. And they must prove that the use of their likeness has a "direct connection" to, and be "for purposes of," advertising. *Id.*; *see* Dkt. 76 at 26 ("[A]ll § 3344 claims seem to involve an advertising element (*i.e.*, promotional aspect").). It is not enough for putative class members to show that their "likenesses" is on Classmates.com and that Classmates.com offers paid subscriptions. The statute makes that clear: "The use of a [likeness] … shall not constitute a use for which consent is required … solely because the material containing such use is commercially sponsored or contains paid advertising." Cal. Civ. Code § 3344. Instead, each putative class member must prove that PeopleConnect used their names or likenesses *to advertise subscriptions*.

Key to that determination is the commonsense principle that a "likeness" is not used in an "advertisement" unless the person can be "readily identifiable." Cal. Civ. Code § 3344(b). For photographs, a plaintiff is not "readily identifiable" unless "one who views the photograph with the naked eye can reasonably determine that the person depicted in the photograph is the same person who is complaining of its unauthorized use." *Id.*, (b)(1). And a person cannot be readily identifiable from the purported use of their name if the name is in such a small and/or low-resolution type face that the human eye cannot read it. *See* Restatement (Third) of Unfair Competition § 46 cmt. d (1995) ("If the appropriation consists of the use of a name, for example, the name as used by the defendant must be understood by the audience as referring to the plaintiff.").

Illustrative is *Young v. Greystar Real Estate Partners, LLC*, 2019 WL 4169889 (S.D. Cal. Sept. 3, 2019). There, the plaintiff sued under for the defendant's alleged "harvesting" of his photograph from social media and reposting of it, without consent, on the defendant's social media. *Id.* at *1. The court dismissed the claim because the plaintiff was not "readily identifiable" in the photograph because most of the individual's face "[was] not discernible," and "[t]he remaining viewable aspects of the depicted individual's frame . . . are common, plain, and non-identifying." *Id.* at *4. Because "the photograph could be of any countless number of white males," the plaintiff could not establish identifiability nor state a claim. *Id.*; *see also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 117, at 853 (5th ed. 1984) ("[T]here is no liability for the publication of a picture of [the plaintiff's] hand, leg or foot, or of his house, his automobile, or his dog, with nothing to indicate whose they are.").

Given that each putative class member must prove they are "readily identifiable" in an advertisement on Classmates.com, it follows that variations among putative class members in their ability to prove identifiability forecloses a finding of predominance under Rule 23(b)(3). This is a point made in *Davis v. Electronic Arts Inc.*, where a plaintiff sought to certify a class of NFL players whose likenesses allegedly had been misappropriated in a video game that used avatars supposedly representing each player. 2018 WL 11436326, at *1 (N.D. Cal. Aug. 17, 2018). In refusing to certify a class, the court observed "each and every avatar alleged to represent a particular player will have to be examined to determine if it is an appropriation of *that specific player's* identity[.]" *Id.* at *3-4; *cf. id.* (use of plaintiffs' names in software not actionable if not identifiable in the manner used). Because this inquiry was at "the very heart of [plaintiffs'] liability case," predominance was lacking. *Id.* & n.3.

Here, Plaintiff, who bears the burden of showing that identifiability can be resolved with common proof, has offered no evidence of identifiability for herself or the class as a whole. Nor can she. As is clear from the leading authority, identifiability often requires individualized proof. The Third Restatement on Unfair Competition lists as the types of "[r]elevant evidence": "the nature and extent of the identifying characteristics used by the defendant, the defendant's intent, the fame of the plaintiff, evidence of actual identification made by third persons, and surveys or other evidence indicating the perceptions of the audience." Restatement (Third) of Unfair Competition § 46 cmt. d (1995). A person's fame, specific instances in which a third party identified that person in an advertisement and survey data regarding the

degree to which a person is identifiable all are individualized. Indeed, in individual lawsuits, PeopleConnect would introduce "relevant evidence" as to these characteristics for each particular plaintiff to show that person is not "readily identifiable" in any so-called advertisement, including by conducting a survey specific to each individual plaintiff. *See Pesina v. Midway Mfg. Co.*, 948 F. Supp. 40, 42–43 (N.D. Ill. 1996) (using a survey to show that only 6% of viewers could identify individual plaintiff). In short, there would be mini-trials as to each class member about whether they are identifiable in either the Sequence Theory or Banner Theory using evidence specific to that class member, not the class as a whole.

Plaintiff incorrectly asserts that every putative class member is readily identifiable in the purported advertisements as a matter of law because, she says, each "use[]" includes that member's "name, school, year of attendance, and low-resolution photograph." Dkt. 190 at 7–8. But as illustrated below, for the vast majority of putative class members, the Website does not display a legible name *or* discernable photograph in either of the two types of so-called advertisements. So as Plaintiff herself admitted at her deposition, they are not readily identifiable under Section 3344. *See* Halbig Decl., Ex. 8.

Neither of the cases Plaintiff cites supplies a workaround to that problem. In *Lukis v. Whitepages, Inc.*, the issue was not the alleged use of photographs and names, but the alleged use of class members' names, ages, telephone numbers, addresses, *and* names of relatives, all of which were readily legible. 454 F. Supp. 3d 746 (N.D. Ill. 2020). There is a wide gulf between illegible names and imperceptible photographs and the collection of legible information at issue in *Lukis*. As for *Sessa v. Ancestry.com, Inc.*, that case was decided on a motion to dismiss, not one for class certification, and it does not analyze identifiability at all, but instead notes that a plaintiff cannot pursue a claim under the Nevada Right of Publicity Act unless she is "recognizable" in the use. 561 F. Supp. 3d 1008, 1016, 1022 (D. Nev. 2021).

### 1.   The Extent To Which Putative Class Members Are Readily Identifiable In The Purported Advertisements Varies Tremendously.

As noted above, except for the few individuals presented in Visitor Browse View, the "advertising" in the Sequence and Banner Theories is limited to PeopleConnect's presentation of entire yearbook pages in *low-resolution thumbnail images*. The degree to which individuals are readily identifiable, therefore, turns on how the original yearbooks appear when presented in that low-resolution format. Pictures in yearbooks, of course, vary widely in size and in quality. Lambard Decl. ¶4. Whether a putative class

member is readily identifiable to the naked eye in one of the so-called advertisements varies dramatically. This is evident from actual-size images from her yearbook to Visitors in Grid View:

 

Toivola Decl.[1] There is variability in the degree to which the individuals in these low-resolution thumbnails are identifiable. The pictures of the individual who appears in the top-left thumbnail are large, and her name is printed in large type. The faces of the individuals in the photograph on the top-right are much smaller, and their names are not listed. As for the bottom thumbnail, the faces of most individuals are only marginally larger, and the names are so small they cannot be read. It is plain to the naked eye that not all putative class members are equally identifiable in the way their names and photographs would be presented in the Sequence Theory. The examples above are from low-resolution thumbnails presented in Grid View to Visitors. Significant variations also exist within the full-resolution presentations available to Visitors in Browse View, as the below examples from Plaintiff's yearbook demonstrate: Toivola Decl. The face on

 

---

[1] These images are the same physical dimensions as they would appear on the Website in a browser set to the default 100% zoom with the most common desktop resolution of 1920x1080. *See* Toivola Decl.; *see* Statcounter GlobalStats, https://rb.gy/jlcfl (last visited June 30, 2023).

the left is larger than those on the right, even though the overall picture is smaller. There also is variability within the photograph on the right, as faces in the back are harder to make out than in the front. And there are no names for anyone in any of these photos.

Not all putative class members are equally identifiable in these so-called advertisements assuming that they can be identified at all in a dated picture. The putative class spans many yearbooks and variability only increases when these yearbooks are considered.[2] Characteristics like photography quality, color and layout choices and number of students all factor in. Individuals who appear in recent, full-color and/or high-quality yearbooks may have photographs that are more discernable to the naked eye than in old and/or black-and-white yearbooks. *See* Lambard Decl. ¶4. The yearbook's design choices matter, too: yearbooks that feature individual students on full pages or use larger type may contain more individuals who can be readily identified. Also, some yearbooks are forty or fifty years old so the putative class members may look very different now as they may have lost their hair, gained or lost weight or had cosmetic surgery. *See id.* ¶3. Others may have changed their name, by marriage or otherwise. Others may have changed their gender identity, resulting in changes to their appearance and name. There are myriad changes a putative class member undergoes after graduation that will make identification an individualized inquiry.

### 2.    Plaintiff's Testimony Shows That Identifiability Is An Individual Issue.

It is not surprising that Plaintiff does not identify any common evidence that could resolve the issue of identifiability class-wide because her own testimony proves that identifiability here cannot be established with common proof. In her deposition, Plaintiff was shown her 2016 yearbook as it could appear to a Visitor in her Sequence Theory. When shown the Browse View full-resolution images of her yearbook—which depict over forty individuals, many in close-up—Plaintiff could identify only two, both

---

[2] Plaintiff selects December 18, 2018, as the beginning of the class period, claiming the statute of limitations was tolled during the pendency of the original complaint. But that is wrong because California disallows tolling of state-law claims filed in federal court by earlier state-law claims filed in federal court. *See Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 878 F. Supp. 2d 1009, 1015 (C.D. Cal. 2011). Thus tolling began when Nolen filed her claims, March 23, 2023, which would mean claims predicated on the presentation of a yearbook added to the Classmates.com yearbook library before March 23, 2021, would be untimely. *See* Dkt. 177 (finding former Plaintiff Tseng's claim untimely).

of whom were in special tributes with their names in big type, and two others she vaguely recognized, but could not identify by name.[3] *See* Halbig Decl, Ex. 8, 98:23–120:7; 98:23–100:20; 102:1–103:22.

Similarly, when shown the Grid View of her whole yearbook containing pictures of over 2,000 of Plaintiff's former classmates and teachers, Plaintiff was able to make only three identifications, her cooking teacher and two others who were pictured in full page photos and/or with large type printed names. *See id.* 107:20–24; 111:1–112:2; 113:25–114:8. Tellingly, when Plaintiff was directed to photographs of her class year and photographs of her softball team, she could not identify anyone, even her teammates. *Id.* at 117:3–120:7. Plaintiff explained she could not identify more individuals because the thumbnails are not legible, which is exactly the point. *See id.* at 113:8–12 ("A. I can't make out the picture, so I can't say I know. Q. You can't make out the pictures. What do you mean by that? A. I can't see if that's somebody I know."); *id.* at 113:25 ("It's blurred, I can't really tell."); *id.* at 116:6 ("I can't really see the last name."). Indeed, even when counsel used a web browser to magnify those Grid View thumbnails by 250%, Plaintiff did no better. *See id.* at 131:2–132:17. Plaintiff had similar problems when shown search results as they might be presented to Free Members in Plaintiff's Banner Theory. Again, when shown actual search results for her own yearbook, Plaintiff could not identify *anyone* in those low-resolution thumbnails. *Id.* at 135:24–136:15. In fact, Plaintiff could not make any identifications even when shown search results for her "best friend." *Id.* at 14:11–15:6, 135:24–136:3; *see id.* 140:20–25 (inability to read any names in thumbnails).

Plaintiff has not carried her burden to prove that this element of her claim may be proven on a class-wide basis. Indeed, her inability to identify all but a few of the putative class members from her own yearbook confirms the individual nature of this task. The statutory requirement of identifiability thus is an insurmountable obstacle for Plaintiff under Rule 23. For every class member, individual analyses will be required to determine whether they may be identified when those yearbooks are placed in the format that

---

[3] "Actual identification," or failures of identification, is relevant evidence to whether any given member meets the "readily identifiable" element. Restatement (Third) of Unfair Competition § 46 cmt. d. Here, the relevant audience is likely users of Classmates.com, not attendees of any particular school. Even so, PeopleConnect asked Plaintiff to identify individuals pictured *in her own yearbook*. Even using this extremely Plaintiff-friendly one, the "audience"—Plaintiff herself—still largely failed to make any identifications. If Plaintiff were substituted with a generic, reasonable user, as the objective inquiry here demands, that reasonable viewer make ever fewer identifications.

PeopleConnect uses in the two types of so-called advertisements. This will be the primary focus of any trial for any putative class member and it thus precludes certification of a Rule 23(b)(3) class.

**B.    Plaintiff Cannot Prove Each Class Member Is An Injured Party With Common Proof.**

Each putative class member must prove the use of their names and photographs by PeopleConnect harmed them. Dkt. 76 at 25 (Section 3344 "require[s] that a plaintiff have suffered injury in order to be awarded damages"). This requirement is clear from the statute, which provides that a defendant owes damages "to the *injured* party or parties." Cal. Civ. Code § 3344(a) (emphasis added).

Because injury is a separate and independent *element* of Section 3344, each putative class member must prove something beyond what they must prove to establish the other elements—namely, PeopleConnect's use of their individual likenesses in an advertisement. Recognizing this, the Court has held that this additional showing may take one of two forms: "mental anguish," Dkt. 76 at 25–26, or economic injury, *Id*. at 22–24.For her UCL claim, each Plaintiff must show that he "has lost money or property." Cal. Bus. & Prof. Code § 17204. Mental anguish, therefore, does not suffice. *See Cal. Med. Ass'n v. Aetna Health of Cal. Inc.*, 63 Cal. App. 5th 660, 663 (2021). Plaintiff has not shown that she can establish either form of injury using common proof because both turn on individualized evidence.

**1.    Mental Anguish Cannot Be Established With Common Proof.**

A party seeking to recover the statutory damages provided for in Section 3344(a) must be an "injured party." This Court explained that one such harm occurs where there is a "'resulting … injury to the feelings'" of the plaintiff that disturbs the plaintiff's "'peace of mind'" and "'impairs the mental peace and comfort'" of the plaintiff. Dkt. 76 at 25 (quoting Assem. Com. on Judiciary, Analysis of Assem. Bill No. 826 (1971 Reg. Sess.) June 14, 1971, at 1). The Court recognized that this form of injury is "'mental and subjective.'" *Id*.; Dkt. 204 at 8. Plaintiff, however, does not attempt to demonstrate in her Motion that this type of "mental and subjective" injury may be proven on a class-wide basis. She likely declines to do so because establishing that there has been a "mental and subjective" injury necessarily requires individualized inquiries that frequently turn on, for example, medical records corroborating that there was indeed a disturbance to the plaintiff's "peace of mind" that "impair[ed]" the plaintiff's "mental peace and comfort." Plaintiff thus has rightly forfeited any argument that the injury element may be proven on a class-wide basis using common evidence of each putative class member's mental anguish.

## 2.     Economic Injury Cannot Be Established With Common Proof.

Ignoring the Court's admonition that non-celebrities "as a practical matter … will often have to rely on mental anguish as the hook for statutory damages," Dkt. 76 at 25, Plaintiff argues only that the putative class can prove that all class members suffered an "economic injury" on a class-wide basis. She is wrong. Section 3344 allows "injured part[ies]" to recover "the greater of," on the one hand, the plaintiff's "actual damages suffered … as a result of the unauthorized use" and, on the other hand, $750. Cal. Civ. Code § 3344(a). Thus, a plaintiff claiming that a defendant's use of her likeness in an advertisement caused her economic harm must prove she is an "injured party" who suffered "actual damages." As the court explained in *Lightbourne v. Printroom Inc.*, "a plaintiff [cannot] simply recover [statutory damages] upon proof that his or her likeness was displayed on a school's online photo store. … [W]hile Section 3344 … provides for $750 in statutory damages, courts parsing the statute have unanimously concluded that these statutory damages are recoverable only upon a showing of actual damages[.]" 307 F.R.D. 593, 602 (C.D. Cal. 2015). And in California, the term "actual damages. … denote[s] compensatory damages for actual injuries." *Saunders v. Taylor,* 42 Cal. App. 4th 1538, 1543–44 (1996).

Plaintiff's argument  that economic injury may be proven on a class-wide basis. fails because she makes no attempt to establish that any putative class member suffered actual economic damages, let alone through common evidence. Instead, she asserts that the Court may infer that each putative class member suffered an economic injury because "PeopleConnect ascribes an economic value to, and earns a benefit from," each putative class member's likeness. Dkt. 190 at 9. This is wrong in multiple respects.

*First*, the existence of an economic injury—that is, actual damages—cannot be presumed. In arguing otherwise, Plaintiff cites the Court's denial of PeopleConnect's motion to dismiss based on prior Plaintiffs' failure to plead injury, *id.* at 8–9, but the Court held there that, *at the pleadings stage*, "[e]conomic value may reasonably be inferred from PeopleConnect's [alleged] use of the images to advertise[.]" Dkt. 76 at 24. That does not mean Plaintiff need not ultimately prove "actual damages" using real evidence—as Section 3344(a) requires. Cal. Civ. Code § 3344(a).[4] *Second*, Plaintiff cannot, merely by establishing that PeopleConnect may have profited, prove that she, or any other putative class member,

---

[4] Plaintiff's citation to *Fraley v. Facebook, Inc.* is similarly deficient. 830 F. Supp. 2d 785, 809 (N.D. Cal. 2011). No such class-wide evidence exists here; instead, this too will be an individualized inquiry.

was *harmed*. It is axiomatic that the equitable remedy of disgorgement does not compensate a plaintiff's injury.[5] Yet Plaintiff treats them as though they serve the same purpose, claiming the putative class may prove injury on a class-wide basis by showing: (1) PeopleConnect receives revenue from Subscribers; (2) PeopleConnect receives licensing fees for certain yearbooks to Ancestry.com; and (3) PeopleConnect sometimes, though not always, pays third parties for yearbooks. Dkt. 190 at 9. But this is wrong. Even if these facts evidenced PeopleConnect's enrichment (they do not), they do not evidence any plaintiff's actual economic injury.

   ***Third***, even if disgorgement could substitute for individualized economic injury, Plaintiff's contention still fails. Under Section 3344(a), a plaintiff's recovery for disgorgement is limited to "profits from the unauthorized use *that are attributable to the use*." Cal. Civ. Code § 3344(a) (emphasis added). "This means that the profits must have been triggered by the identity of this particular person, not just by any interchangeable person" and that a plaintiff must therefore identify evidence "link[ing] [her] image … with a percentage of [defendant's] sales." 1 Rights of Publicity and Privacy § 6:50; *see also Christoff v. Nestlé USA, Inc.*, 62 Cal. Rptr. 3d 122, 141, 143 (Ct. App. 2007) (same), *aff'd in part, rev'd in part*, 47 Cal. 4th 468 (2009). But Plaintiff simply divides PeopleConnect's profits across all purported putative class members, thus assigning to each—without any factual support whatsoever—an equal fraction of whatever financial benefit PeopleConnect arguably obtains by hosting yearbooks containing their likenesses. Plaintiff cites nothing suggesting that she may *presume* a link between a use of a particular person's likeness and specific revenues or that a *de minimis* impact of less than a cent proves economic injury nor can she because the statute requires a link between use and the specific person.[6]

   It is impossible to link any use of an identity and any portion of PeopleConnect's revenues. *First*, that PeopleConnect sells a subscription service is not evidence of any putative class member's economic

---

[5] *E.g.*, 1 Dan B. Dobbs & Caprice L. Roberts, *Law of Remedies: Damages—Equity—Restitution* § 4.1(1), at 374 (3d ed. 2018) ("Restitution . . . differs in its goal or principle from damages, which measures the remedy by the plaintiff's loss and seeks to provide compensation for that loss."); *Restatement (Third) of Restitution and Unjust Enrichment* § 1 cmt. c (2011)

[6] *See, e.g., Aligo v. Time-Life Books, Inc.*, 1994 WL 715605, at *2–4 (N.D. Cal. Dec. 19, 1994) (a four-second use of plaintiff's photograph in a 29-minute infomercial was not enough to show use of that footage as opposed to all of the over covers that were used actually "inure[d] to [the defendants'] commercial advantage" even if the whole video resulted in revenue to the defendant).

injury because PeopleConnect does not charge for access to yearbooks and thus does not charge for access to anyone's likeness. *See* Toivola Decl. *Second*, that Ancestry.com pays PeopleConnect licensing fees for certain yearbooks is immaterial because claims based on the licensing yearbooks sound in copyright and are preempted. *See* Dkt. 76 at 18–19. *Third*, ████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████. *Id.* ¶8.

### C.      Plaintiff Cannot Prove Lack Of Consent With Common Evidence.

Another element of Section 3344 Plaintiff must show can be proven with common evidence is that she and the putative class members did not consent to the use of their likenesses. Her failure to do so means the Motion should be denied. For example, in *Jones v. Corbis Corp.*, 815 F. Supp. 2d 1108 (C.D. Cal. 2011), *aff'd*, 489 F. App'x 155 (9th Cir. 2012), the plaintiff accused the defendant of violating her right of publicity under common law and Section 3344 by displaying her likeness online without her consent. She moved to certify a class, but the court denied certification because "[c]onsent to use a name or likeness need not be express or in writing, but it may be implied from the consenting party's conduct and the circumstances of the case." *Id.* at 1113. As such, an inquiry would be required for each would-be class member into "the circumstances surrounding each photograph, [their] knowledge of the circumstances, [their] past industry experience and conduct, and other evidence of [their] conduct that would reasonably imply consent." *Id.* at 1113, 1117. The centrality of those inquiries defeated predominance. *Id.* at 1113; *accord Gorss Motels Inc. v. A.V.M. Enters.*, 2019 WL 4278951, at *4 (D. Conn. Sept. 10, 2019) (refusing certification where consent demanded "highly individualized" inquiries). Here, too, there are many ways putative class members may have consented to be decided on an individualized basis.

---

[7] ███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

### 1.    Many Putative Class Members Consented Through Their Schools.

Many putative class members consented to the use of their names and yearbooks through written agreements with their schools. In *Lightbourne v. Printroom Inc.*, 122 F. Supp. 3d 942, 944 (C.D. Cal. 2015), for example, a student athlete sued a website operator that obtained a photograph of the student from his school and then sold it online without his consent. At summary judgment, the court held that the athlete's Section 3344 claim failed because he had signed a consent form empowering his school to "sell and distribute," including "through a third party," his photograph. *Id.*

Here, many schools, including some in the largest districts in California, require students (or guardians) to sign agreements concerning the use of the students' names and likenesses. Those consent agreements vary in scope, with the broadest, including the current form used by Plaintiff's school district, specifying that any photographs taken by or on behalf of the school are public information and will be accessible worldwide. Halbig Decl., Ex. 1-1 to 1-6; Ex. 4-1 to 4-10. Other consent forms, such as the one for former Plaintiff Overton's school, provide that the school may freely use any photographs. Halbig Decl., Ex. 7; Ex. 4. Many schools that use consent forms have no doubt changed them over time. Similarly, some photographers or yearbook companies likely require students to sign consent forms.

For each putative class member, the Court must determine: (i) *the fact* of any consent between the member and their school(s), which presents questions concerning which consent form governed, whether the student (or guardian) signed it, and, if so, whether they later revoked it; (ii) *the scope* of that consent which may require  reference to extrinsic evidence; and (iii) *any subsequent conduct* by the school that, consistent with the terms, precludes members from suing for use online. On this last point, a school's contribution of yearbooks—which happens frequently, *see e.g.*, Lambard Decl. ¶6, —would suffice. So would the online publication by a school of its own yearbooks, as many schools now do, particularly where the consent agreement indicates that publication online renders such photographs public information.[8]

### 2.    Many Putative Class Members Consented When Donating Yearbooks.

Putative class members who donated their yearbooks via the Send In Your Yearbook ("SIYY") program consented to the use of their names and photos. SIYY donors agree to "grant [PeopleConnect] the

---

[8] *E.g.*, George Washington Preparatory Senior High, https://bit.ly/3NUhCMZ; Yearbooks – The History of Garfield High School – James A. Garfield Senior High School (garfieldhs.org).

perpetual, non-revocable right and license to use, publish, [or] display . . . the images" in the donated yearbook "on the world wide web . . . for commercial, promotional, and all other purposes." *See* Lambard Decl., Ex. 1. ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ *See id.* ¶8.

While SIYY donors will need to be excluded from the class, there is no mechanical way to do so. Donors consent to PeopleConnect's use of their information to the extent it appears in the yearbooks they provide. *See* Lambard Decl., Ex. 1 (SIYY consent form). Not all donors, however, appear in the yearbooks they contribute to PeopleConnect, but rather donate books on behalf of an institution like a museum, library, bookstore, or historical society. *Id.* ¶27. PeopleConnect does not systemically record whether donors appear in the yearbooks they provide. *Id.* Moreover, PeopleConnect does not verify the accuracy of information provided by donors. *Id.* ¶22. Such information may be phony, misspelled, or may include a common name that appears in a yearbook more than once. To determine whether a putative class member is an SIYY donor for their own yearbooks requires manual review of different types of information that would need to be gathered. *See id.* ¶29. Plaintiff insists the Court need not consider SIYY donations because "donating a yearbook requires creating an account on Classmates.com and … the Class [already] excludes account holders." Dkt. 190 at 15 n.5. Plaintiff is incorrect. SIYY donors are *not* required to create an account. Lambard Decl. ¶16. They create an account only to use the free trial subscription PeopleConnect offers to donors. *Id.* ¶45. Because Plaintiff cannot identify common proof sufficient to exclude SIYY donors who are members of putative class, class certification is not permitted.

### 3.     Some Putative Class Members Consented Through Self-Searches.

Other class members consented to PeopleConnect's use of their information by agreeing to the TOS and then searching for themselves or authorizing someone else to search for them on their behalf. Toivola Decl., Ex. X (TOS). There is no manageable way to determine, much less with common proof, which putative class members so consented for the same reasons that Plaintiff cannot demonstrate any manageable means of excluding Registered Members from the class. *See infra* at Part II.

### D.     Plaintiff Cannot Prove With Common Evidence That Every Putative Class Member's Identity Has Been Part Of An Advertisement On Classmates.com.

The requirement that class members prove that PeopleConnect's use of their likenesses had a "direct connection" to advertising also forecloses certification. That is because even under the Court's recent interpretation of what constitutes "use," Dkt. 204 at 5–11,[9] Plaintiff still has not shown how to resolve using common evidence whether each putative class member's identity has been used in a way that has a "direct connection" to the advertisement of Classmates.com subscriptions.

The Court recently held that "publication" of information online is an actionable "use", online publication does not require actual "viewing" and such a "use" may occur "even if some predicate act is required to access it." Dkt. 204 at 6. In doing so, the Court compared internet publication to a newspaper, observing that "the posting of information on the web should be treated in the same manner as the publication of traditional media" and that a newspaper is deemed published even if it sits, locked and unread, in a news rack. *Id.* Use of a likeness alone, however, is not enough because as this Court has noted, another element is there be a "direct connection" between a "use" and any purported advertising. *E.g.*, Dkt. 204 at 3; *see* Cal. Civ. Code § 3344(e) ("[I]t shall be a question of fact whether or not the use of the person's [name or photograph] was so directly connected with the commercial sponsorship or with the paid advertising as to constitute a use for which consent is required."); *see also* Dkt. 76 at 27 (direct connection element under *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190 (2017), is "a factual dispute").

Here, not all class members' names and photographs have been used in a direct connection to advertising. That is because, for those class members whose names or photographs have not been included in the webpages comprising Plaintiff's two theories, there is no direct connection between any "use" of their information and any purported advertisement. Moreover, whether any class member can establish a "direct connection" will depend on the ways they are pictured in their yearbooks: for example, individuals pictured only in small images, or as one member of a large group, or in the back of a book, may not bear any "direct connection" to any purported advertisement. This individualized issue defeats predominance. This distinction among putative class members arises from how Classmates.com actually works—which PeopleConnect now for the first time can put before the Court. Plaintiff identified two instances in which she claims that an individual's name and/or photograph appear with any level of proximity at all to an offer

---

[9] PeopleConnect maintains that publication on the internet, and thus "use" under Section 3344, does not occur until a person's likeness has been displayed on a computer or phone screen. *See* Dkt. 180, 185.

for a subscription, the Sequence and Banner Theories. The problem is that the webpages on which an offer for a paid subscription is made—*are not generated, and thus do not exist,* until a user takes certain volitional actions on the Website above and beyond accessing those materials. This, then, is not a question of *access*, but of *creation*. Absent such creation, there is no connection between a putative class member's likeness and an advertisement to speak of, let alone a direct connection.

**Sequence Theory**. Plaintiff does not contend that PeopleConnect violates Section 3344 by hosting a webpage—the Grid View of the 2016 Tulare Union High School Yearbook—that contains her name or photograph. Rather, her Sequence Theory is that this existing webpage, when combined with a subscription offer on another webpage violates Section 3344. But there cannot exist any such subscription offer webpage linked to the Grid View webpage of her yearbook, or the yearbooks of many other putative class members. The subscription offer webpage only can be created if a Visitor: (1) accesses a putative class member's yearbook; (2) fills out the registration form with the information requested to create a Free Member account (including name, email address, password, and graduation school and year) and (3) clicks "SUBMIT," thereby accepting the TOS and becoming a Free Member. Toivola Decl. Unless and until the Visitor does this, there can be no "direct connection" between any advertisement and the putative class members' yearbook photographs and names in the Classmates.com library because no advertisement yet exists. Moreover, many Visitors register before viewing yearbooks and thus see the subscription offer *before* seeing anyone in the yearbook. Knutzen Decl. ¶10. Class members' information used in such a sequence bear no direct connection to any advertisement. As the Seventh Circuit in *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1101 (7th Cir. 2022) recognized, "[a] person's identity cannot be employed to sell a product if their identity is only revealed" after the "commercial purpose" has been achieved." There is no way mechanically to determine which putative class members have been part of a so-called advertisement, however, chiefly because *PeopleConnect does not maintain records of whether particular yearbook pages are displayed to Visitors*. Knutzen Decl. ¶4(d). The "direct connection" element under the Sequence Theory thus cannot be proven on a class-wide basis, foreclosing certification of a Rule 23(b)(3) class.

**Banner Theory**. The Banner Theory has the same core deficiency because PeopleConnect does not create the webpage essential to Plaintiff's claim until a user takes certain affirmative steps. Indeed,

PeopleConnect could not do so: the Banner Theory relies on a Free Member Search results webpage comprised of: (i) search results containing a putative class members' name and photograph; and (ii) the Banners on the right side of the page that happened to include a subscription offer. But as demonstrated above, the Free Member Search results webpage is not created until the Free Member conducts a search; it simply does not exist before then. Moreover, not all Free Member Search results webpages contain a subscription offer, and PeopleConnect does not keep records of what Banners were presented to any particular user for any particular search. Yet, search results webpages that were created or could be created that do not include subscription-offers Banners plainly are not actionable.

These challenges also defeat certification of a class limited to those whose names have appeared in a legible format next to the thumbnails populated in search results displayed to Free Members. When a Free Member's search terms match text that appears in a searched yearbook, the Website populates that matching text does not occur unless and until a Free Member runs a search. This means PeopleConnect does not create ahead of time any such webpage a user can access by typing some URL into a browser. That means even if there were a way to determine which putative class members had been searched (and there is not, *see* Knutzen Decl. ¶¶3–6), the Court still could not reliably determine whether each such member (much less whether all such members) had been presented adjacent to a subscription offer, as opposed to a preempted offer to purchase a yearbook reprint. *See* Dkt. 76 at 18.

### E.    Plaintiff Cannot Defeat The Affirmative Defenses With Common Evidence.

PeopleConnect's affirmative defenses based on putative class members' agreement to arbitrate to and waive participation in class actions and based on Section 230 of the Communications Decency Act will defeat the claims of many, but not all, putative class members. To determine the applicability of those defenses to each putative class member, the Court will have to engage in near-endless individualized inquiries, which precludes class certification. *See O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 414 (C.D. Cal. 2000) (decertifying class because no predominance due to individualized defenses).

#### 1.    Plaintiff Cannot Defeat Arbitration Or Class-Waiver With Common Evidence.

Plaintiff does not dispute that by agreeing to the TOS, many potential putative class members agreed to arbitrate and waived any rights to participate in a class action lawsuit. To avoid this problem, Plaintiff wrongly asserts the Court can mechanically exclude class members who agreed to arbitrate by

carving out all Registered Members. Dkt. 190 at 15–16. She provides no specifics, however, as to how this would be done. That is because it cannot be done with common proof.

*First*, PeopleConnect ██████████████████████████████ so there can be ambiguities if a particular individual is the actual registered user. Lambard Decl. ¶61. A user may register ████████████████████████████████████████ ████████████████ *Id.* Moreover, multiple people at a single school may have the same name or may choose to use a peer's name when registering. *See id.* at ¶63. These issues regularly occur, as evidenced by Plaintiff's school. There are ██ current Registered Members who indicated at registration that they graduated from Plaintiff's high school in 2016. *Id.* at ¶¶62–63. Of these ██ members, however, ████ ██—provided a name at registration that *does not match any senior's name in the yearbook. Id.* Additionally, ██ registered using obviously fake names ("MM" and "ZZ"); one registered user is " ██ ██████ though there are three people in the yearbook with that name, making it unclear which, if any, is a Registered Member; and two users submitted the name " ████████ " but no one in the yearbook has that name—though there is a ███████████████████ So again, it is unclear from PeopleConnect's records whether either of these individuals is a Registered Member. *Id.*

*Second*, putative class members cannot be relied upon to recall whether they have ever registered with Classmates.com. Former Plaintiff Carney declared under oath he was not a registered member, but PeopleConnect showed otherwise after investigating his email addresses, resulting in Carney withdrawing his claim. *See* Dkt. 151. A similar fate met Plaintiff Overton, Dkt. 183 (voluntary dismissal); Jason Fry, the original plaintiff in *Boshears v. PeopleConnect, Inc.*, No. 21-cv-01222 (W.D. Wash. Oct. 29, 2021), ECF No. 17; and Sergio Bonilla in *Bonilla v. PeopleConnect, Inc.*, No. 21-cv-00051 (N.D. Ill. Mar. 29, 2022), *see* ECF No. 74. Similarly, PeopleConnect has been contacted by individuals unable to register because someone else, intentionally or by accident, already had registered using that individual's email address. *See* Lambard Decl. ¶41. Fundamentally, there is no mechanical way for PeopleConnect to determine if someone is a Registered Member. To the contrary, PeopleConnect repeatedly has had to seek individualized discovery into all email addresses each plaintiff ever used and then manually searched each of those email addresses against all records of Registered Members, and even doing that is inadequate.

***Third***, the class-action waiver defense presents an additional individualized issue because the Classmates.com TOS did not include that waiver before January 10, 2014. Toivola Decl. To resolve which putative class members waived their rights to participate in Plaintiff's putative class action, the Court additionally would need to determine when each putative class member registered and, if prior to January 2014, whether each member continued to use the site after the waiver was added to the TOS, which would demonstrate their acceptance of the class action waiver.

### 2. The Section 230 Defense Cannot Be Defeated With Common Evidence.

This Court has held that Section 230 immunity applies to claims based on yearbooks provided to PeopleConnect by an "information content provider"—*i.e.*, "yearbook authors/publishers"—in circumstances that would prompt a "reasonable person" in PeopleConnect's position to "conclude that the [yearbooks] we[re] provided for publication on the Internet." *See* Dkt. 76 at 10. In so holding, the Court observed that this issue presents a "question of fact." *Id.* The questions of uncommon fact here concern the identity of each person who contributed a yearbook to PeopleConnect and the actions taken by the author/publisher of each yearbook in order to evaluate whether these actions would suggest to a reasonable actor in PeopleConnect's position that that author/publisher intended their yearbook to be published online.

***First***, detailed individualized inquiries are necessary to determine whether each yearbook was contributed to PeopleConnect by an "author[]/publisher" of a "yearbook," whether "person or entity," "that is responsible, *in whole or in part*, for the creation or development" of the yearbook. Dkt. 76 at 9 (quoting 47 U.S.C. § 230(f)(3))(emphasis added). Many different yearbook contributors could meet that definition. For example, many schools—like those that self-publish or exercise even some editorial control over their yearbooks—will qualify. Students who served on their school's yearbook editorial or publishing boards and thus are at least "in part" "responsible" for their yearbooks' "creation" also might qualify. *Id.* The same will be true of school faculty that serve as yearbook advisors, the photographers (professional or student) who take the portraits, and the corporate publishers. *See* Lambard Decl., Ex. 5–10; 11. For any such yearbook contributed, every individual pictured must be excluded from the class.

***Second***, for each donated yearbook, the Court will have to inquire into the roles and relationships among its contributor, the school, the photographer(s), the students, faculty, and PeopleConnect to determine whether those circumstances would lead a reasonable actor to "conclude that the [yearbooks]

we[re] provided for publication on the Internet." Dkt. 76 at 10 (citation omitted). And PeopleConnect has in fact acquired many yearbooks from these sources. *See* Lambard Decl. ¶¶33–41 (highlighting nine illustrative examples of yearbook donations, including from former teachers, school administrators, museums, and alumni groups). The breadth of possibilities demonstrates that the applicability of Section 230 will be a central issue for many putative class members and that this issue cannot be resolved absent the kind of intensive, individualized inquiries that defeat class certification.

## II.    A Rule 23(b)(3) Class Cannot Be Certified Because Plaintiff Has Not Proven Superiority.

Rule 23(b)(3) also requires that Plaintiff establish that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To be superior, a class must be manageable, meaning "the difficulties likely to be encountered in the management of [the proposed] class action" must not "outweigh the benefits of considering common issues in one trial." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001). Classes in which "each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually" flunk that requirement, *id.*, as do classes for which the plaintiff cannot define a workable means of identifying who is in the class, *Pierce v. County of Orange*, 526 F.3d 1190, 1200 (9th Cir. 2008). Plaintiff has not carried her burden to prove superiority. The Court will need to decide numerous, significant individualized issues for each class member that precludes certification. Plaintiff cannot "explain how the court could possibly try this case as a class action given the number of individual issues involved." *Daniel F. v. Blue Shield of Cal.*, 305 F.R.D. 115, 132 (N.D. Cal. 2014) (finding lack of superiority). Nor has Plaintiff identified a plausible method for separating those who may recover from those who cannot. ***First***, there is no manageable way to limit the class only to individuals who reside in California, as she defines the proposed class. Plaintiff does not propose a way to identify from the thousands pictured in the yearbooks from around the country added to the Classmates.com library on or after March 23, 2021, let alone on or after December 18, 2018 (the date Plaintiff proposes, *see supra* n.5), those who currently reside in California. The declaration from Steven Weisbrot just suggests he will conduct "a series of database-drive searches." Dkt. 197 ¶61. Plaintiff's Proposed Trial Plan says even less, declaring that all manageability concerns, like the residency inquiry, can be reserved for post-judgment administration. *See* Dkt. 199. But manageability cannot be established based "merely on assurances … that any problems with

predominance or superiority can be overcome." *Zinser*, 253 F.3d at 1189 (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 742 (5th Cir. 1996)). This is an issue that must be resolved before judgment, not after. Plaintiff's damages theory multiplies the number class members by $750. There must be a manageable way to determine *before* judgment how many people are in the class. This cannot be resolved post-judgment because the Court cannot enter a judgment until the size of the class is resolved.[10] ***Second,*** for each of the reasons the putative class fails the predominance standard, it likewise fails the superiority requirement. *See supra* Section I. ***Third***, Plaintiff has offered no feasible way to determine how to identify let alone exclude Registered Members who are by definition not class members.

To the extent Plaintiff acknowledges these issues at all, she simply insists that she has no burden to show manageability under Rule 23. *See* Dkt. 190 at 21–22. But that is incorrect. The Ninth Circuit has held that a putative class representative cannot maintain a class action if she "present[s] no viable method of identifying" class members. *Thomas v. Cnty. of Los Angeles*, 703 F. App'x 508, 511 (9th Cir. 2017) (affirming decertification). The one case Plaintiff cites, *Briseno v. ConAgra Foods, Inc.*, is not to the contrary, as it holds only that there is no extra "ascertainability" requirement because "Rule 23(b)(3) already contains a specific, enumerated mechanism to achieve that goal: the manageability criterion of the superiority requirement." 844 F.3d 1121, 1127 & n.7 (9th Cir. 2017). Accordingly, any suggestion that Plaintiff need not establish there is some way to identify who is and who is not in the class is wrong.

## III.   No Class Can Be Certified Plaintiff Has Not Proven Commonality And Adequacy.

For many of the same reasons that Plaintiff cannot establish predominance under Rule 23(b)(3) she cannot carry her burdens to establish either commonality under Rule 23(a)(2) or adequacy under Rule 23(a)(4) for either of her classes. For commonality, the individualized issues are so pervasive that they cut across each element a putative class member must prove to establish liability. For adequacy, disparate subgroups within the proposed class have divergent interests, and Plaintiff's position is substantially weaker, placing her interest to pursue the most tenuous legal arguments in the case at odds with the interests of putative class members who need not go out on those limbs. In short, Plaintiff's particular Section 3344

---

[10] This issue will become an immediate problem if a class is certified, as Plaintiff will need to design a method to give notice to the class. Plaintiff's expert's prediction that his notice plan will reach the class is not reassuring. At best, Plaintiff will blanket the State of California with over-inclusive, unspecific notice. Class members will not be targeted, nor will recipients of that notice know if they are in the class.

claims do not lend themselves to class-wide treatment of any sort. The Motion to certify both the Rule 23(b)(2) class and the Rule 23(b)(3), therefore, should be denied.

### A.     Plaintiff Has Not Proven Commonality Because Individual Issues Pervade.

Plaintiff must show the claims of all class members present a common issue "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Thus, in *Wal-Mart*, the Supreme Court denied certification of a class consisting of female employees claiming that Wal-Mart's delegation of promotion decisions to individual managers, given its corporate culture, denied them equal pay and promotional opportunities in violation of Title VII. *Id.* at 343–44. Though the plaintiffs purported to challenge common company policies, the Court held commonality was lacking because they effectively were suing "about literally millions of employment decisions at once. Without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." *Id.* at 352.

The requirement under *Wal-Mart* that a proposed class representative identify a common issue of law or fact "central to the validity of … the claim[]" that may be resolved "in one stroke" thus means that raising common questions is not enough; rather, it must be shown that a class-wide proceeding will "generate common *answers* apt to drive the resolution of the litigation." *Stitt v. Citibank*, 2015 WL 9177662, at *3 (N.D. Cal. Dec. 17, 2015) (quoting *Wal-Mart*, 564 U.S. at 350). That in turn means Plaintiff cannot satisfy the "rigorous" commonality analysis by simply "assert[ing] '*any* common question'—rather, she must define a question that 'will produce a common answer' to the question driving the resolution of the litigation." *Harris v. Best Buy Stores, L.P.*, 2018 WL 3932178, at *3, *8 (N.D. Cal. Aug. 16, 2018) (emphasis added) (quoting *Wal-Mart*, 564 U.S. at 350).

The Ninth Circuit's decision in *Willis v. City of Seattle*, well illustrates this principle. 943 F.3d 882 (9th Cir. 2019). There, homeless individuals living outside on public property claimed that city and state authorities engaging in a "policy and practice of 'sweeps'" of encampments that destroyed their property was unconstitutional. *Id.* at 884. The Ninth Circuit held that commonality was lacking because, in spite of the allegation in the complaint of a singular overall policy, "there [was] no evidence that every [plaintiff] has experienced the same challenged practice or suffered the same injury." *Id.* at 885. Similar is *Stitt*, where

the court found commonality lacking with respect to fraud claims regarding certain fees charged by a bank in conjunction with property inspections because while the bank had a uniform policy of charging the fees, whether charging them met the elements of fraud presented an individualized inquiry that would turn on the reasonableness of each home inspection. 2015 WL 9177662, at *4.

Here, Plaintiff in her Proposed Trial Plan identifies five purportedly common issues in this case. Dkt. 199 at 2. Her Proposed Trial Plan, however, fails to establish that any of these issues may be resolved class-wide and that litigation of the putative class members' claims will not devolve into a series of individualized mini-trials. Rather, as in *Stitt*, Plaintiff's argument regarding commonality "unravels upon an examination of the elements of" the Section 3344 claim. 2015 WL 9177662, at *4. As explained above, the answer to the first three questions will require individualized evidence. *See supra* Parts I.B-D. As for the latter two questions, which relate to the proper calculation of damages and the generalized issue of whether the proposed class qualifies for injunctive relief, the answer to those questions in and of themselves are not "apt to drive the resolution of the litigation" and thus do not establish commonality. *See Wal-Mart*, 564 U.S. at 350. Again, the central question raised by Plaintiff's claim is whether the webpages and functionalities that give rise to the Sequence Theory and Banner Theory violate Section 3344. Identifying the method for calculating the amount of statutory damages and whether injunctive relief is proper if liability is established are collateral issues to that question, which itself turns on numerous individualized issues, as noted above. That precludes any finding of commonality.

### B.     Plaintiff Cannot Prove Adequacy Due To Inherent And Pervasive Class Conflicts.

The tension between Plaintiff's claim and those of putative class members further prevent Plaintiff from carrying her burden under Rule 23(a)(4) to establish that she is an adequate representative of the proposed class. "To fairly and adequately protect the interests of the class, [a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Singh v. Google LLC*, 2022 WL 94985, at *9. (N.D. Cal. Jan. 10, 2022) (internal citations and quotation marks omitted). This requirement is rooted in principles of due process, and the standard courts apply thus is designed "to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

"The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class … bring[s] into question the adequacy of the named plaintiff's representation." *Mateo v. V.F. Corp.*, 2009 WL 3561539, at *5 (N.D. Cal. Oct. 27, 2009) (quoting *J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980)). This reflects the "danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Backus v. ConAgra Foods, Inc.*, 2016 WL 7406505, at *5 (N.D. Cal. Dec. 22, 2016) (citation omitted). The concern is acute if the claims of the proposed class representative are *weaker* than the claims of absent class members. *See Muchnick v. Thomson Corp.*, 654 F.3d 242, 251, 254–55 (2d Cir. 2011) (vacating certification order where subgroups had "more valuable" claims, "producing 'disparate interests' within the class"); *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 303 (3d Cir. 2010) (lead plaintiff inadequate where claims weaker than the putative class members); *Brown v. Porter McGuire Kiakona & Chow, LLP*, 2019 WL 254658, at *11 (D. Haw. Jan. 17, 2019) (denying certification where varying claim strength among subgroups caused "differing interests [with] the potential to create serious conflicts of interest" between class representative and other members). That is because a class led by a representative with a particularly weak claim risks that representative losing on behalf of the class only after taking the most tenuous possible legal position, *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856–57 (1999), or settling the group's claims more cheaply based on the additional challenges the representative would face on the merits, *see Molski v. Gleich*, 318 F.3d 937, 955–56 (9th Cir. 2003), *overruled en banc on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010), *rev'd* 564 U.S. 338 (2011).

Although no putative class member ultimately will be able to prevail, Plaintiff's claims are weaker than most—making her inadequate.

***First***, Plaintiff has a weak case on identifiability. She does not appear on any of the full-resolution pages available in Browse View, leaving only her appearances in low-resolution thumbnails as possible bases for her claim. Toivola Decl. It is not surprising, then, that Plaintiff has produced no evidence that would support a claim of identifiability—whether it be related to her fame, anecdotal instances of actual identifications or survey results. *See Restatement (Third) of Unfair Competition* § 46 cmt. d (discussing evidence relevant to identifiability); *cf.* Dkt. 190 at 7 (information in use must be "sufficient to identify the person"). But it is because Plaintiff has such a weak case on identifiability that she has no choice but to

press tenuous theories about the element that other putative class members need not embrace. *See supra* Part I.A. She simply cannot adequately represent the interests of those who are identifiable in the purported advertisements on Classmates.com to the naked eye.

**Second**, Plaintiff has no evidence that a Visitor searched for her and then registered or that a Free Member searched for her and there was a Banner containing a subscription offer adjacent to their search results. *See supra*; Halbig Decl., Ex. 8, 34:18–20 (no knowledge of any user ever searching for her on the Website). Lacking any such evidence, Plaintiff can only take the extreme position that an advertisement with a direct connection to her likeness exists on the website based on the *possibility* a user could cause her yearbook to be used in a supposed advertisement. Not everyone in the putative class will have to take that extreme (and untenable) position, making Plaintiff a weak, and, thus, inadequate, representative.

**Third**, Plaintiff also has disavowed any emotional anguish or any actual damages—the latter disavowal consistent with the fact that PeopleConnect acquired her yearbook *for free*, defeating Plaintiff's already untenable unjust-enrichment theory of harm that she deploys instead of grappling with her burden to show real injury. *See supra* at Part I.D; Halbig Decl., Ex. 8, 190:20–202:13; Lambard Decl. ¶33. Plaintiff also cannot invoke mental anguish resulting from any loss of control over her image because she repeatedly has posted pictures of herself in high school on social media whose terms specify that by posting any photograph, Plaintiff surrenders the rights to control such images. *E.g.*, Halbig Decl., Ex. 8, 151:10–20; 152:5–155:21; 156:7–14 (Plaintiff's posts on Facebook), Ex. 11 (Facebook's Terms of Service). This means she has no choice but to push the untenable theory that proof of PeopleConnect's profits from hosting yearbooks alone suffices to establish an actionable economic injury. Other class members may not need to rely on that highly improbable argument. And, consistent with her disavowal of injury, Plaintiff does not seek any money damages, but only suppression of her name and likeness online (which PeopleConnect has already done). As this Court has held, that provides an independent ground for her inadequacy, as she seeks less relief than would be available to the rest of –the class if they could prevail on the merits. *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 633 (N.D. Cal. 2015) (finding lead plaintiff seeking less relief than available to other members of the class not adequate).

Plaintiff's interests thus are not aligned with those of the other putative class members given the unique legal arguments she must advance to recover. She therefore is not an adequate representative under

29

Rule 23(a)(4) of even the Rule 23(b)(2) class she has sought to certify. Finally, because these issues are fatally dependent upon individualized inquiries, Plaintiff's adequacy defects cannot be resolved by the creation of subclasses. The Court simply would not be able to determine with any common evidence which putative class members belonged to which subclass. The Motion should therefore be denied in its entirety.

**IV.   Plaintiff's Requests For Certification Of Rule 23(c)(4) Issues Should Be Denied.**

Plaintiff's alternative request for certification of seven issue classes under Rule 23(c)(4) should also be denied. Again, it is Plaintiff's burden to establish that certification under Rule 23(c)(4) is proper. *Rahman v. Mott's LLP*, 693 F. App'x 578, 579 (9th Cir. 2017). But certification under Rule 23(c)(4) is proper only if doing so would carve off discrete, case-critical determinations that are resolvable class-wide from issues in the case that are not, such as "to separate the issue of liability from damages." *Tasion*, 308 F.R.D. at 632–33 (citation omitted). Where there are "numerous individualized issues affecting [necessary] determinations" with respect to liability, (c)(4) certification is "inefficient" and improper. *Reitman v. Champion Petfoods USA, Inc.*, 830 F. App'x 880, 882 (9th Cir. 2020). Plaintiff's (c)(4) proposals suffer from each of the defects in *Tasion*. Plaintiff improperly seeks "a comprehensive division" of all issues that, in aggregate, comprise her claim. *Id.* at 639. Given that (b)(3) certification is not appropriate, her comprehensive issues-class request fails. Further, as in *Tasion*, most of Plaintiff's (c)(4) requests fail commonality.[11] She also roundly fails adequacy, given that successful members of the putative class would be entitled to statutory damages, yet Plaintiff wants only an injunction, and no compensation at all. *See* Halbig Decl., Ex. 8 Nolen Decl. Tr. 53:1–55:2. Plaintiff also cannot establish adequacy because, as discussed above, divisions among subgroups on *each* of these proposed issues causes disparate interests among those divided groups. *See supra* (citing *Amchem*).

---

[11]   Plaintiff's proposed (c)(4) class concerning consent does not even present a relevant issue, much less one whose resolution would "materially advance the litigation." *Taison*, 308 F.R.D. at 640. Members who consented to use have no claim; that is true regardless of whether PeopleConnect's "regular practices and policies include obtaining consent from Class members." Dkt. 190 at 23. Plaintiff's final two proposed issues—whether class members are entitled to statutory damages and to injunctive relief for use—are not discrete issues at all, but rather each is a repackaging of all the elements Plaintiff must establish to prevail on her claim.

# CONCLUSION

Plaintiff cannot meet her burden to establish the requirements for class certification. Therefore, the Court should deny Plaintiff's Amended Motion for Class Certification in its entirety.

Dated: July 5, 2023

Respectfully Submitted,

By: */s/ Debbie L. Berman*
Debbie L. Berman (*pro hac vice*)
dberman@jenner.com
Wade A. Thomson (*pro hac vice*)
wthomson@jenner.com
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

Benjamin T. Halbig (Cal. Bar. No. 321523)
bhalbig@jenner.com
JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, California 94105
Telephone: (628) 267-6800
Facsimile: (628) 267-6859

Kate T. Spelman (Cal. Bar. No. 269109)
kspelman@jenner.com
JENNER & BLOCK LLP
515 S. Flower Street, Suite 3300
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

*Attorneys for Defendant PeopleConnect, Inc.*