Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Telephone: (415) 358-6293

*Attorneys for Plaintiff and the Proposed Class*
*Additional Counsel Listed in Signature*

**THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ALICIA NOLEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PEOPLECONNECT, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:20-cv-09203-EMC<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Complaint Filed: Dec. 18, 2020<br><br>Hearing Date: September 7, 2023<br>Hearing Time: 1:30 p.m.<br><br>Judge Edward M. Chen, Courtroom 5 |

# TABLE OF CONTENTS

I. ARGUMENT....1

A. Common Issues Predominate. ....1

1. Every Class Member is Readily Identifiable by Name, School, and Year....1

2. Plaintiff Can Prove Statutory Injury with Common Proof. ....5

3. Whether PeopleConnect Obtained Prior Consent is a Common Issue. ....7

4. Plaintiff Can Prove Commercial Use on a Class-Wide Basis. ....9

5. PeopleConnect's Affirmative Defenses Cannot Defeat Predominance. ....9

B. Plaintiff has Shown Superiority....11

C. Plaintiff has Shown Commonality and Adequacy....12

II. CONCLUSION ....14

# TABLE OF AUTHORITIES

**Cases**

*Abdul-Jabbar v. General Motors Corp.*,
85 F.3d 407 (9th Cir. 1996) ....... 4

*Avilez v. Pinkerton Gov't Servs.*,
286 F.R.D. 450 (C.D. Cal. 2012) ....... 9

*Bernstein v. Virgin Am., Inc.*,
Case No.15-cv-02277-JST (N.D. Cal. Nov. 7, 2016) ....... 12

*Bias v. Wells Fargo & Co.*,
312 F.R.D. 528 (N.D. Cal. 2015) ....... 9, 10

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ....... 10, 12

*Christoff v. Nestle USA Inc.*,
152 Cal.App.4th 1439 (Cal. Ct. App. 2007) ....... 7

*Davis v. Electronic Arts Inc.*,
2018 U.S. Dist. LEXIS 173625 (N.D. Cal. Aug. 17, 2018) ....... 5

*Davis v. Four Seasons Hotel Ltd.*,
CIV. 08-00525 HG-BMK, 2011 WL 4590393 (D. Haw. Sept. 30, 2011) ....... 10

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008),
*aff'd*, 836 F.3d 1263 (9th Cir. 2016) ....... 11

*Fischer v. InstantCheckmate LLC*,
2022 WL 971479 (N.D. Ill. Mar. 31, 2022) ....... 8

*Fraley v. Facebook, Inc.*,
830 F. Supp. 2d 785 (N.D. Cal. 2011) ....... 6

*Herrera v. LCS Fin. Servs. Corp.*,
274 F.R.D. 666 (N.D. Cal. 2011) ....... 10

*Kellman v. Spokeo, Inc.*,
No. 3:21-CV-08976-WHO, 2023 WL 411353 (N.D. Cal. Jan. 25, 2023) ....... 13

*Kimzey v. Yelp Inc.*,
21 F. Supp. 3d 1120 (W.D. Wash. 2014) ....... 11

*Orthopedic Sys., Inc. v. Schlein*,
202 Cal.App.4th 529 (Cal. Ct. App. 2011) .......... 6

*Tyson Foods, Inc. v. Bouaphekeo*,
577 U.S. 442 (2016) .......... 1, 9, 11

*White v. Samsung Electronics Am., Inc.*,
971 F.2d 1395 (9th Cir. 1992) .......... 4

*Young v. Greystar*,
2019 U.S. Dist. LEXIS 149731 (S.D. Cal. Sept. 3, 2019) .......... 5

**Statutes**

Cal. Civ. Code § 3344 .......... 4, 5, 7, 9, 13

**Rules**

Federal Rules of Civil Procedure, Rule 23 .......... 9, 10, 11, 12

# I. ARGUMENT

## A. Common Issues Predominate.

PeopleConnect identifies five issues it claims require individualized proof. Even were PeopleConnect correct that some issues are individualized, this would not defeat predominance because "one or more of the central issues in the action are common to the class and can be said to predominate." *See Tyson Foods, Inc. v. Bouaphekeo*, 577 U.S. 442, 453 (2016). Here, the Court does not need to weigh common issues against individualized ones, because each of the issues PeopleConnect identifies will be addressed with common Class-wide evidence.

### 1. Every Class Member is Readily Identifiable by Name, School, and Year.

PeopleConnect argues that identifiability presents an individualized issue. In support, PeopleConnect points to screenshots of the Classmates.com website showing that certain photographs are too low-resolution for facial identification, and/or written names are too low-resolution to decipher. Dkt. 208 ("Opposition"), at *9-11. PeopleConnect makes much of the fact that Plaintiff could not identify some of the individuals who attended her high school from screenshots that PeopleConnect cherry-picked. *Id.*, at *11-13.

However, the screenshots on which PeopleConnect misleadingly relies are not relevant, because they are not the advertisements from which Plaintiff's claim arises. PeopleConnect hand-picked misleading screenshots that are unrepresentative of what non-subscribers (*i.e.*, visitors[1] and free members) see when they search for a name. PeopleConnect advertises by providing a search page on which non-subscribers may search by name, state, city, and decade of school attendance. *See* Dkt. 2 ("Initial Complaint"), at ¶23; Declaration of Bejamin Osborn in Support of Plaintiff's Class Certification Reply ("Osborn Reply Decl."), Ex. 1. In response to a search, PeopleConnect returns results which include: (1) the individual's name in clearly legible **bold** font; (2) the school in clearly legible **bold** font, and the school's city and state; and (3) the

[1] A "visitor" is a user who has neither registered nor purchased a subscription, while a "free member" is a user who has registered but not purchased a subscription.

yearbook year in clearly legible large blue font. *See* Initial Complaint, ¶¶ 24 & 41; Osborn Reply Decl., Ex 2 (additional examples). PeopleConnect's 30(b)(6) witness confirmed that similar results are shown in response to a search for any name in PeopleConnect's database. *See* Dkt. 191-9 (Toivola Tr.), 48:3-20 (after a visitor has "searched for an individual," Classmates will return a result for each instance where that name "has been tagged on a yearbook page."). For free members, banner ads inviting the user to subscribe appear adjacent to the search results. Initial Complaint, ¶¶ 24 & 27; Osborn Reply Decl., Ex. 3 (additional examples). Similar banner ads appear after a free member search for any name. Osborn Reply Decl., Ex. 7 (Toivola Tr.), at 34:-6-14, 39:19-40:4; Dkt. 189-10 (Toivola Tr.), at 50:1-24. The corporate representative also testified that screenshots in the Initial Complaint accurately reflect the flows that appear in response to visitor and free member searches. *See* Dkt. 191-9 (Toivola Tr.), at 56:13-57:15; 58:9-60:3. "Since the original complaint . . . was filed," there have been no changes that "altered the nature of the Website flows." Dkt. 217 (Toivola Decl., at *2 n. 1).

The Class is limited to those "whose names and yearbook photographs are or were searchable on the Classmates.com website." Thus, by definition, the Class includes only individuals for whom a search yields at least one result that accurately identifies them by name, high school, and year of attendance. Here are the search results that actually appear after a visitor or free member searches for "[redacted]," about whom PeopleConnect questioned Ms. Nolen:[2]

[2] In this Reply, Plaintiff's counsel redacted [redacted] name and photograph. In its Opposition, PeopleConnect failed to redact the names and likeness of absent Class members who, to the best of counsel's knowledge, have never consented to PeopleConnect's use of their names and likenesses for any purpose. *See, e.g.*, Opposition, at *10 (showing images of students including [redacted], whose face and distinctive hair is plainly identifiable in the brief). This compounds the injury and further demonstrates PeopleConnect's disregard of Class members' legal rights.

[redacted]

As shown, [redacted] name is bold and plainly legible, and the search results accurately identify her school, location, and year of attendance. Visitors who click on [redacted] name or photograph receive a pop-up window asking them to register an account. After registering, the visitor is presented with a payment screen. *See* Osborn Reply Decl., Exs. 4 & 5.[3] For free members, banner ads soliciting subscriptions appear adjacent to [redacted] search results. *Id.*, Ex. 6. Thus, PeopleConnect uses [redacted] persona to advertise.

[3] Exhibit 4 shows the visitor advertising flow using [redacted] name and likeness in static screenshots. Exhibit 5 shows the same advertising flow captured in video format. While Plaintiff's counsel did not register a new account (because PeopleConnect has taken the spurious position that by doing so, counsel would agree to arbitration on his client's behalf), PeopleConnect's 30(b)(6) witness testified that after a new user registers, PeopleConnect invariably presents a payment screen. Dkt. 189-10 (Toivola Tr.), at 44:12-46:2.

PeopleConnect delivers the same advertising flow in response to a search for any Class member. The same registration pop-up appears to every visitor after a search for any name and a click on one of the results. *See* Dkt. 191-9 (Toivola Tr.), at 58:25-59:2 (registration pop-up in the Complaint "is the popover that appears if an unregistered user is trying to access the full-size yearbook"). The same subscription solicitation is shown to every visitor who registers. *See* Dkt. 189-10 (Toivola Tr.), at 44:12-46:2 ([redacted]). And banner ads soliciting subscriptions are shown to every free member after searching for any name. Dkt. 189-10 (Toivola Tr.), at 50:1-24.

The issue of identifiability is therefore common to the Class, and boils down to: does PeopleConnect's presentation of a name, school, and year in the search results it delivers to visitors serve to "readily identify" the Class member? PeopleConnect does not contest that the commercial use of a name gives rise to statutory right of publicity and common law misappropriation claims. *See, e.g.*, Cal. Civ. Code § 3344 ("Any person who knowingly uses another's name . . . for purposes of advertising. . ."); *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407 (9th Cir. 1996) (reversing dismissal of California § 3344 and common law claims where name was used in commercial advertisement). A recognizable image is not required, so long as the advertisement identifies the Class member. *See White v. Samsung Electronics Am., Inc.*, 971 F.2d 1395, 1398 (9th Cir. 1992) ("It is not important *how* the defendant has appropriated the plaintiff's identity, but *whether* the defendant has done so.") (emphasis in original). PeopleConnect does not contest that the combination of a name, school, and year – information that appears in every search result shown to a non-registered user – suffices to identify the individual.[4]

---

[4] In a different section of the Opposition, PeopleConnect falsely asserts that there are three different people who all attended Plaintiff's high school in the same year who have the same first and last name. As discussed in Part A(4) below, this is simply not true.

That Class members are identified by name, school, and year of attendance in PeopleConnect's advertisements distinguishes the cases PeopleConnect cites, each of which concerned only the use of an image, without an accompanying name or other identifying information. In *Davis v. Electronic Arts Inc.*, that the video game did not identify NFL players by name was central to Judge Seeborg's denial of class certification. Because "players' names . . . are not displayed to persons playing the game," identifiability would turn on whether "each and every avatar alleged to represent a particular player" was sufficiently detailed. 2018 U.S. Dist. LEXIS 173625, *7 (N.D. Cal. Aug. 17, 2018). Likewise, in *Young v. Greystar*, the defendant used an image depicting a portion of the plaintiff's face. 2019 U.S. Dist. LEXIS 149731 (S.D. Cal. Sept. 3, 2019). In granting a motion to dismiss, the *Young* court suggested that, had the defendant "tagged" the photograph with "Plaintiff's name" in a way that "would cause the public to readily identify the photograph as depicting Plaintiff," the plaintiff would have met the pleading standard. *Id.*, at *11. Here, PeopleConnect's advertisements contain precisely what was missing in *Davis* and *Young*: information, including a name, by which the viewer may uniquely identify the individual portrayed. Indeed, the reason PeopleConnect provides the free search results identifying Class members by name, school, and year, is to assure the user before they purchase a subscription that the person in the low-resolution photo is the person they're looking for.

**2. Plaintiff Can Prove Statutory Injury with Common Proof.**

PeopleConnect argues that Plaintiff cannot show the Class members are "persons injured" under § 3344 because she cannot show economic injury and actual damages Class-wide. On the contrary, Plaintiff's Motion described substantial common evidence establishing economic injury and actual damages. Motion, at *15-17. The evidence shows that: (1) PeopleConnect earns an economic benefit from its commercial use of Class members' personas; (2) there is a commercial market for licenses granting the right to make commercial use of Class members' yearbook photographs; and (3) PeopleConnect actively participates in that market as [redacted] a seller (receiving licensing fees). *Id.*

In arguing this evidence is insufficient to show economic harm, PeopleConnect ignores controlling authority, including this Court's rulings. In denying the motion to dismiss the Initial Complaint, this Court held that "Plaintiffs have alleged an economic injury" because they alleged "they were not paid – implicitly, by PeopleConnect – for the use of their names and likenesses . . . Plaintiffs are simply asserting that PeopleConnect should have paid them." Dkt. 76, at *30. The Court quoted *Fraley*, in which Judge Koh held that the plaintiffs plead "economic injury because they were not compensated for Facebook's commercial use." *Id.*, at *23 (quoting *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 806 (N.D. Cal. 2011)). That PeopleConnect makes commercial use of all Class members' personas without compensating them can and will be shown on a Class-wide basis.

While this proof alone would be sufficient to show economic injury, Plaintiff has also shown there is an active market for licensing the right to make commercial use of the Class members' names and yearbook photographs. Thus, while non-celebrity plaintiffs need not show their personas have "commercial value on the open market," here, Plaintiff has shown that Class member's personas have commercial value on the open market. *See Orthopedic Sys., Inc. v. Schlein*, 202 Cal.App.4th 529 (Cal. Ct. App. 2011). Indeed, PeopleConnect [redacted] received licensing fees for the right to make commercial use of Class members' photographs.

PeopleConnect argues that, because it acquired some Class members' names and photographs via yearbook donations [redacted], economic injury cannot be shown Class-wide.[5] This misses the point. That PeopleConnect [redacted]. That PeopleConnect also acquires personas for free when it can does not affect their value. Nor are donated yearbooks in fact "free" to PeopleConnect. The donation form promises the donator

[5] [redacted]. *See* Dkt. 191-6.

"a FREE 3-month Classmates membership" as consideration. Dkt. 191-7 (McGuane Decl.), at *27; Dkt. 212, Lambard Decl., Ex. 3.

PeopleConnect cites *Christoff v. Nestle USA Inc*., 152 Cal.App.4th 1439 (Cal. Ct. App. 2007) and a treatise cited therein for the proposition that to establish statutory injury under § 3344, a plaintiff must prove the precise amount of profit attributable to the use of their likeness. Neither authority supports that proposition. They speak to what a plaintiff must show to recover "lost profits," <u>not</u> what must be shown to establish a plaintiff is a "person[] injured" who suffered economic injury. Indeed, *Christoff* acknowledged that "section 3344 applies to Christoff even though he is not a celebrity," thereby acknowledging the plaintiff was a "person[] injured" even though he had failed to show the precise profits attributable to the misuse. *Id.*, at 1445. Here, Plaintiff does not seek "lost profits" for the Class, so she need not establish what portion of PeopleConnect's profits is attributable to each Class member. Rather, she seeks statutory damages, to which she and the Class are entitled if they suffered injury in some amount, as the Court has already held. *See* Dkt. 76, at *25 ("Section 3344 on its face does not require that a plaintiff have suffered mental anguish . . . to be awarded statutory damages . . . [but] does require that a plaintiff have suffered injury to be awarded damages, included statutory.").

### 3. Whether PeopleConnect Obtained Prior Consent is a Common Issue.

Lack of "prior consent" can be shown on a Class-wide basis because PeopleConnect has admitted the only means by which it obtains consent is via agreement to the Terms. *See* Cal. Civ. Code § 3344; Motion, at *15. No one who agreed to the Terms is a member of the Class.

PeopleConnect nevertheless argues that consent is an individualized issue because some Class members signed agreements with their schools when their yearbook photographs were taken. This argument fails. ***First***, Section 3344 requires that a defendant receive consent *before* making commercial use of the plaintiff's identity. *See id.* (requiring "prior consent"). PeopleConnect has no policy for verifying what agreements, if any, the students in a yearbook made with their school. PeopleConnect admitted that, other than through agreement to the Terms,

it "would have no way to know if [individuals] gave consent other ways." Doc. 191-9 (Toivola Tr.), at 64:2-10. That PeopleConnect is now tracking down agreements after-the-fact for purposes of this lawsuit merely underlines that it failed to obtain consent before publishing Class member's names and images in its advertising flows, as the law requires. ***Second***, whatever consent a Class member gave to their school to use or share their name and photograph has no bearing on whether that Class member consented to PeopleConnect's use of their persona to advertise. *See Fischer v. InstantCheckmate LLC*, 2022 WL 971479, at *9 (N.D. Ill. Mar. 31, 2022). PeopleConnect has no evidence that any class member agreed that PeopleConnect could exploit her childhood photo for its own profit. Again, the two agreements PeopleConnect cites make the point: PeopleConnect claims one "provides that the school may freely use any photographs," and the other that "photographs . . . are public information and will be accessible worldwide." Even assuming this correctly characterizes the agreements, neither agreement says a word about consent to *PeopleConnect's* use *to advertise subscriptions*.

PeopleConnect also argues that some individuals consented when they donated yearbooks to PeopleConnect. The Class definition excludes those who donated yearbooks because it excludes registered users. PeopleConnect claims yearbook donors are not required to register. This claim is odd, given that the yearbook donation form requires the donator provide a "Full name," "Address," "City," "State," "Zip Code," "Phone Number," and "Email Address," along with information about their yearbook. Dkt. 212, Lambard Decl., Ex. 1. Setting aside the semantics of whether those who register via donation form are "registered users," Plaintiff will exclude yearbook donators from the Class by definition.[6] The information in the donation form is more than sufficient to identify prospective claimants as donors.

[6] To the extent this issue concerns the Court, Plaintiff would propose a slight modification of the Class definition, to add, ". . . and who have not donated a yearbook to Classmates.com. . ."

**4. Plaintiff Can Prove Commercial Use on a Class-Wide Basis.**

Commercial use can be shown with common evidence because PeopleConnect incorporates each Class members' name, school, yearbook year, and low-resolution photograph in advertising flows that are, by design, identical in form and advertising content. PeopleConnect claims that it does not currently choose to keep precise records of which search results have been displayed to non-registered users. This ignores this Court's recent ruling that visual display is not required to establish "commercial use" under § 3344. *See* Dkt. 204; Part (C) *below*. Whether a third party has viewed the advertising flow incorporating a given Class member's name and low-resolution photograph is not relevant. That Class members' names and photographs are published and ready to populate the advertising flow at any time is the infringing commercial use. *See id.*

**5. PeopleConnect's Affirmative Defenses Cannot Defeat Predominance.**

Predominance is rarely defeated "simply because affirmative defenses may be available against individual members." *Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 466 (C.D. Cal. 2012). As Supreme Court wrote in *Tyson Foods, Inc. v. Bouaphakeo*, when "one or more of the central issues . . . predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as . . . affirmative defenses." 577 U.S. 442, 453 (2016). Here, neither of the two potential affirmative defenses PeopleConnect asserts can defeat predominance.

**Arbitration**. PeopleConnect acknowledges the Class excludes anyone who registered an account and thereby agreed to the Terms. But PeopleConnect asserts it will be administratively difficult to determine which individuals registered because people do not always register using their real names, and may not remember their registration. Properly construed, this argument pertains to ascertainability, not predominance. But "ascertainability does not demand documentary proof of each membership criterion or mathematical precision." *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 539 (N.D. Cal. 2015) (citation omitted).

As Plaintiff described in her Motion, whether an individual registered an account can be established by "averment" and by "PeopleConnect checking the claimant's name, email address, and high school" against its database. To register, users must provide an email address, school, and graduation year. Thus, Class membership can be established by the user averring that none of the registered email addresses associated with her yearbook ever belonged to her. To the extent PeopleConnect is suggesting putative Class members may misrepresent their names, schools, or email addresses, "the ascertainability requirement concerns identification rather than verification." *Bias,* at 538 (citation omitted). Further, the Ninth Circuit has recognized that "the risk of dilution based on fraudulent or mistaken claims seems low . . . especially . . . in class actions involving low-cost consumer goods," and that courts can rely on "claim administrators, various auditing processes, [and] sampling for fraud detection . . . to avoid or minimize fraudulent claims." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1130 (9th Cir. 2017) (quotation omitted). There is no reason these processes cannot be applied here.

Even were the Class to include some members who previously created accounts on Classmates.com and agreed to the Terms, "that some members of a putative class may have signed arbitration agreements or released claims against a defendant does not bar class certification." *Herrera v. LCS Fin. Servs. Corp.,* 274 F.R.D. 666, 681 (N.D. Cal. 2011) (certifying class under Rule 23(b)(3) and citing cases). In *Davis v. Four Seasons Hotel Ltd.*, CIV. 08-00525 HG-BMK, 2011 WL 4590393, *3 (D. Haw. Sept. 30, 2011), the court certified a class under Rule 23(b)(3) when the evidence showed that 24% of the class members had signed arbitration agreements. Here, the 33 registered accounts PeopleConnect claims would be administratively difficult to associate with specific individuals from Tulare Union High School's 2016 class represent less than 12% of that class.

PeopleConnect falsely claims three separate people with the name "[redacted]" attended Ms. Nolen's school in her year. In fact, [redacted] is one person. Reply Decl. of

Alicia Nolen. Her name simply appears multiple times in the yearbook. Osborn Reply Decl., Exs. 2 & 3 at *3 (search for "[redacted]" shows her name appears on multiple pages).

**Communications Decency Act**. CDA immunity may be resolved with common evidence because, as this Court noted, there is "a question of fact as to whether PeopleConnect should be deemed a developer of information itself – *i.e.*, not just a mere service provider." Dkt. 176, *12 n. 7. When a website is "responsible, in whole or in part, for the creation or development of the offending content," then the website is "also a content provider" under the CDA, and it is not entitled to immunity. *Kimzey v. Yelp Inc*., 21 F. Supp. 3d 1120 (W.D. Wash. 2014) (citing *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008)) (*aff'd*, 836 F.3d 1263 (9th Cir. 2016)). Here, Plaintiff does not treat PeopleConnect as the "publisher or speaker" of the yearbook photographs themselves, but rather as the publisher, speaker, and creator of the advertising flow that subjects her identity to commercial use. Whether PeopleConnect is itself a "developer" responsible for the creation of "offending content" – *i.e.*, the advertising flow – is a question of fact that can be resolved by reference to the design of the flow, which is common to all Class members.

Even were the Court required to inquire into the circumstances under which individual yearbooks were acquired, this would not defeat predominance. There are a little over 1,000 California yearbooks that PeopleConnect uploaded within the relevant period, only a subset of which were donated. For immunity, PeopleConnect must show it reasonably believed <u>at the time of donation</u> (not after-the-fact) that the donator was a publisher or author. Should the Court decide this inquiry is relevant, PeopleConnect may resolve this affirmative defense separately on a per-yearbook basis. *See Tyson*, at 453.

**B. Plaintiff has Shown Superiority.**

PeopleConnect does not contest that three of the four superiority factors laid out in Rule 23(b)(3) weigh in favor of class certification. PeopleConnect quibbles only with the fourth factor: manageability. The Ninth Circuit recognizes the "well-settled presumption that courts should not

refuse to certify a class merely on the basis of manageability concerns." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (quotation omitted; citing cases).

PeopleConnect claims that it will not be feasible to determine whether claimants are California residents. On the contrary, courts routinely certify Rule 23(b)(3) classes where state of residency is an element of class membership. *See, e.g.*, *Bernstein v. Virgin Am., Inc.*, Case No.15-cv-02277-JST (N.D. Cal. Nov. 7, 2016) (certifying Rule 23(b)(3) class and noting that California residency be established, for example, by "looking to . . . the state where [the claimant] paid income taxes"); *Briseno*, at 1123 (affirming Rule 23(b)(3) certification of class comprising residents of eleven states). The remainder of PeopleConnect's arguments regarding manageability simply rehash arguments it made with respect to predominance, which Plaintiff addressed in Part A above.

**C. Plaintiff has Shown Commonality and Adequacy**

PeopleConnect's commonality arguments are likewise mostly a rehash of its predominance arguments, addressed above.

PeopleConnect also argues that Plaintiff Nolen is an inadequate representative because her "claims are weaker than most." Opposition, at *28. Even were this the relevant standard (it is not, *see* Motion at *20), none of the issues PeopleConnect identities are in fact "weaknesses," nor do they meaningfully differentiate Ms. Nolen's claims from those of absent Class members.

***First***, PeopleConnect claims that Ms. Nolen's name and persona were less identifiable in the search results shown to non-registered users than those of other Class members, citing generally to the "Toivola Decl." (Dkt. 217), Opposition, at *28. It is not clear to which part of that 133-page declaration PeopleConnect refers. None of the screenshots in the Toivola Declaration show the results of a search for the name "Alicia Nolen." *C.f.* Dkt. 217, Toivola Decl, ¶85 (results of a search for "Softball"). Before PeopleConnect suppressed Ms. Nolen's name and image, a search for Ms. Nolen returned results in the same form shown for [redacted] in Part A above. *See* Toivola Tr., 48:3-20 (results appear in the same format for any name search). That is,

the search results plainly identified Ms. Nolen by name (in bold), school (in bold), and year of attendance (highlighted in blue). As discussed in Part A, this is the same information by which PeopleConnect's advertisements identify all Class members.[7]

***Second***, PeopleConnect claims there is no evidence a visitor or registered user ever searched for Ms. Nolen, which PeopleConnect claims renders her claim "untenable." PeopleConnect ignores this Court's recent Order finding that there is no "visual display requirement" in § 3344, and that "Defendant commercially used Plaintiff's image the moment the image became a publicly accessible part of Defendant's advertising flow." Dkt. 204, at *4-5.

***Third***, PeopleConnect ludicrously claims Ms. Nolen "disavowed" any injury by "post[ing] pictures of herself . . . on social media."[8] Again, this argument ignores the law, including this Court's rulings. Where and when Ms. Nolen chooses to place her own name and likeness in the public view is her right and is irrelevant to this case. As the Court wrote in denying PeopleConnect's recent motion to compel information, "When Plaintiff created his [social media] accounts, he did so of his own volition . . . evidence of consent in the context of other platforms would be entirely irrelevant." Dkt. 174, at *3. *See also Kellman v. Spokeo, Inc.*, No. 3:21-CV-08976-WHO, 2023 WL 411353, at *1-2 (N.D. Cal. Jan. 25, 2023) ("[I]t seems doubtful that any information that plaintiffs posted on their private social media accounts is relevant to defend against plaintiffs' claims about unlawful use of their personal information for commercial purposes and without consent.").

---

[7] PeopleConnect's admonition that "Plaintiff has produced no evidence that would support a claim of identifiability" betrays a Kafkaesque cynicism. Before this Court's order compelling PeopleConnect to provide website access on July 24, 223, Ms. Nolen was unable to present identifiability evidence because PeopleConnect blocked her access to the website. *See* Dkt. 222. And Ms. Nolen is still unable to present direct evidence of her own identifiability because PeopleConnect has now "suppressed" her name and photograph. Because PeopleConnect is hiding the evidence, Ms. Nolen cannot present screenshots of the advertising flow incorporating her persona.

[8] PeopleConnect also falsely claims Ms. Nolen "does not seek any money damages." Not so. Dkt. 172 (Second Amended Complaint), at ¶ 198.

## II. CONCLUSION

For the reasons above, Plaintiff respectfully requests the Court GRANT her motion to certify the Class pursuant to Rules 23(b)(3) and 23(b)(2) or, alternatively, certification of issues under 23(c)(4).

Dated: July 31, 2023

By: */s/ Raina C. Borrelli*

Raina Borrelli (*pro hac vice*)
raina@turkestrauss.com
Sam Strauss (*pro hac vice*)
sam@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (608) 509-4423

Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

Benjamin R. Osborn (*pro hac vice*)
ben@benosbornlaw.com
LAW OFFICE OF BENJAMIN R. OSBORN
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464

*Attorneys for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 31st day of July, 2023.

By: */s/ Raina C. Borrelli*
Raina Borrelli (*pro hac vice*)
raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (608) 509-4423