UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA NOLEN,<br><br>        Plaintiff,<br><br>    v.<br><br>PEOPLECONNECT, INC.,<br><br>        Defendant. | Case No. 20-cv-09203-EMC<br><br>**ORDER RE STATUS REPORT**<br><br>Docket No. 276 |

Previously, the Court ordered the parties to meet and confer regarding (1) class definition and (2) class notice. *See* Docket No. 256 (order conditionally granting class certification, filed on 12/14/2023); Docket No. 267 (order re class definition and class notice, filed on 1/19/2024). Following several months of exchanges, the parties have finally submitted a status report. The parties have reached agreement on some issues, but not others.

## I.     CLASS DEFINITION

Ms. Nolen proposes the following class definition[1]:

> All persons residing in the State of California: (1) who are not, and have never been, registered users of Classmates.com; (2) who have never donated a yearbook to Classmates.com; and (3) for whom a search of their name, using the search bar on the Classmates.com website, yields at least one record corresponding to the class member from a yearbook that Classmates.com first made publicly available on or after December 18, 2018.

Status Rpt. at 3. The parties have three disputes related to this proposed definition.

---

[1] The Court has modified the proposed definition to address grammatical issues.

## A. Element (3)

PeopleConnect takes issue with the third element in the proposed definition, asserting that it suffers from both vagueness and overbreadth problems. According to PeopleConnect, the third element is vague because "the only way to determine who is 'searchable,' and therefore is a member of a class, is to undergo a burdensome, individualized manual process for all class members"; and the third element is overbroad because it "include[s] individuals who do not have meritorious claims" – *i.e.*, because they are not reasonably identifiable. Status Rpt. at 4.

Neither argument is persuasive. As to vagueness, PeopleConnect has not explained why class members could not self-identify. The Court's class-certification order addressed self-identification, albeit in a slightly different context (*i.e.*, a class member representing that she is not a registered user, as registered users are excluded from the class). *See* Docket No. 256 (Order at 30-32). Any concern about fraudulent self-identification is also tempered here because the legitimacy of a self-identification can easily be tested; this is not a situation where, *e.g.*, a consumer may not have kept a receipt showing that she purchased a product.

As for overbreadth, the Court previously rejected (in its class certification order) PeopleConnect's contention that reasonable identifiability could not be determined without overwhelming individualized inquiries. PeopleConnect is essentially asking the Court to reconsider without having filed a motion for leave to file a motion for reconsideration as required by the District's Local Rules. *See* Civ. L.R. 7-9.

Even if PeopleConnect had so moved and the Court given leave to file a motion to reconsider, PeopleConnect would not obtain a more favorable result. As the Court noted in its class certification order, "a person is usually identifiable by their name, especially when viewed in context of having attended a particular school in a particular year." Docket No. 256 (Order at 21). PeopleConnect has still failed to show that the problem of, *e.g.*, a same or similar name "is . . . extensive or pervasive . . . , especially when the confusion must occur within the same school within a given year." Docket No. 256 (Order at 25). In the absence of a such problem, any confusion of identity can be worked out without having individualized inquiries overwhelm common ones. *See Van v. LLR, Inc.*, 61 F.4th 1053, 1069 (9th Cir. 2023) (stating that, "[w]hen a

2

1 defendant substantiates . . . an individualized issue . . . , the district court must determine . . .
2 whether a class-by-class-member assessment of the individualized issue will be unnecessary or
3 workable"). For example, as Plaintiffs contend, if there are multiple individuals with the same
4 name, other information available in the yearbook can likely be used to distinguish them – or may
5 show that the names all refer to the same person. *See also* Docket No. 256 (Order at 25) (stating
6 that PeopleConnect "has not demonstrated that any confusion of identity cannot be easily
7 resolved").[2]

8 Moreover, although a person must be reasonably identifiable in order to prevail on a §
9 3344 claim, should that issue present a larger concern, it could be reserved for a later stage in the
10 proceedings, *i.e.*, when damages are to be determined. "Rule 23 specifically contemplates the
11 need for . . . individualized claim determinations after a finding of liability." *Briseno v. ConAgra*
12 *Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017); *see also* Docket No. 256 (Order at 26 n.12)
13 (noting that Federal Rule of Civil Procedure 23(c)(4) allows for issues to be determined on a
14 classwide basis; "what is before the Court is something akin to a separation of liability and
15 damages issues – *i.e.*, Ms. Nolen will rely on common evidence to show that PeopleConnect used
16 people's names and photos for a commercial purpose; if she is successful, then the only remaining
17 step for a person to claim statutory damages of $750 is to show that their name was readily
18 identifiable").

---

[2] In *Van*, there was a more significant problem of individualized inquiries compared to that here. The defendant was a company that sold clothing to purchasers through fashion retailers in all fifty states. It "allegedly charged sales tax to these purchasers based on the location of the retailer, rather than the location of the purchaser, which resulted in some online purchasers being charged, and having paid, sales tax when none was owed." *Van*, 61 F.4th at 1058. Some retailers, however, gave discounts to offset the improper sales tax. There was evidence that there were 13,680 discounts out of 72,373 transactions total, and "at least eighteen of the 13,680 discounts provided to class members were provided for the [express] purpose of offsetting the improperly assessed sales tax." *Id.*; *see also id.* at 1068 n.13. The Ninth Circuit noted:

> [The defendant's] evidence, even though it consisted of only a small number of invoices, was sufficient to prove that an inquiry into the circumstances and motivations behind *each of the 13,680 discounts* might be necessary. This inquiry, which could potentially involve up to *13,680 depositions* and months of trial, certainly cannot be described as de minimis.

*Id.* at 1069 (emphasis added).

1  The Court therefore rejects PeopleConnect's challenge to element (3). That being said, the
2  Court modifies element (3) to provide some additional clarity and, as discussed below, to limit the
3  definition to California yearbooks. The class definition approved by the Court is as follows (with
4  the modifications highlighted for the convenience of the parties only).

> All persons residing in the State of California: (1) who are not, and have never been, registered users of Classmates.com; (2) who have never donated a yearbook to Classmates.com; and (3) for whom a search of their name, using the search bar to search a California yearbook made available for viewing on the Classmates.com website, yields at least one record corresponding to the class member from a California yearbook that Classmates.com first made publicly available on or after December 18, 2018.

B.   Additional Element re Consent

PeopleConnect argues next that a fourth element should be added to the proposed definition. Specifically, PeopleConnect points out that elements (1) and (2) are included to acknowledge that a person is *not* a class member if she has consented to use of her name or likeness – *i.e.*, by (1) becoming a registered user or (2) donating a yearbook. PeopleConnect asserts that there should be a fourth element that acknowledges consent to use in another context, namely, when individuals give consent to use to school districts and yearbook publishers. *See* Status Rpt. at 8.

The Court rejects PeopleConnect's proposal. In its class certification order, the Court noted that PeopleConnect offered no "concrete evidence that yearbook publishers were given broad consents to use." Docket No. 256 (Order at 34). While PeopleConnect did offer some evidence to support its position that school districts were given broad consents to use, the Court examined that evidence and did not find it compelling. Most of the consents allowed a "district to use the names or photos for district purposes. At best, only a few of the forms . . . suggest[ed] that there might be broader consents." Docket No. 256 (Order at 35).

This ruling does not mean that PeopleConnect cannot argue this kind of consent as a defense on the merits. However, given the lack of evidence to suggest this is a common kind of consent, it need not be included as part of the class definition.

4

1  C.  California Yearbooks

2  Finally, PeopleConnect argues that the proposed definition should be modified –

3  specifically, element (3) – so that only "California yearbooks" are implicated and not yearbooks

4  nationwide. *See* Status Rpt. at 10-11 (proposing the following change: "All persons residing in the

5  State of California . . . for whom a search of their name . . . yields at least one record

6  corresponding to the class member from a *California* yearbook that Classmates.com first made

7  publicly available on or after December 18, 2018") (emphasis added).

8  The Court agrees with PeopleConnect. Plaintiffs' filings led both PeopleConnect and the

9  Court to believe that Plaintiffs were concerned about California yearbooks only, and the Court's

10 analysis (*e.g.*, on manageability) was predicated on that understanding. For example, at class

11 certification, Plaintiffs submitted an expert declaration (the Kupperberg Declaration). Mr.

12 Kupperberg was asked to opine on, e.g., the estimated size of the class. See Docket No. 141

13 (Kupperberg Decl. ¶ 7.I). He estimated the size of the class by looking at the number of

14 "California yearbooks in PeopleConnect's database." Docket No. 141 (Kupperberg Decl. ¶ 11).

15 Also, in their reply brief in support of class certification, Plaintiffs argued that there would not be

16 individualized inquiries with respect to the Communications Decency Act immunity defense

17 because "[t]here are a little over 1,000 California yearbooks that PeopleConnect uploaded within

18 the relevant period, only a subset of which were donated. For immunity, PeopleConnect must

19 show it reasonably believed at the time of donation (not after-the-fact) that the donator was a

20 publisher or author. Should the Court decide this inquiry is relevant, PeopleConnect may resolve

21 this affirmative defense separately on a per-yearbook basis." Docket No. 227-3 (Reply at 11).

22 **II.  CLASS NOTICE**

23 The parties have two disputes related to class notice.

24 A.  New Registered Users During Notice Period

25 Ms. Nolen asks that,

26 > in the event [she] and the Class prevail at trial after class notice goes
27 > out, potential class members who believe they inadvertently
>   registered for a Classmates.com account between the notice date and
>   the close of the opt-out period can submit an affidavit at the time
28 > they file a claim stating that their registration was made in the

5

> context of determining their class membership and they did not intend to give up their right to participate as a class member in this case.

Status Rpt. at 14.

The Court finds this issue premature. The main concern at this juncture is to include in the class notice a clear warning that becoming a registered user will take the user outside of the class definition. The Court gave that guidance in a previous order. *See* Docket No. 267 (Order at 3). The parties have included a warning in the long-form class notice to which class members are directed via, *e.g.*, programmatic advertising and social media campaigns.

B.     Domain Name for Notice Website

Ms. Nolen has retained an expert on class action notice and claims administration, Angeion Group, LLC, to assist with the notice website for the class action. Angeion has proposed to the parties six domain names for the website:

(1) CaliforniaClassmatesLitigation.com

(2) CaliforniaClassmatesClassAction.com

(3) CaliforniaNamePhotoSearchClassAction.com

(4) CAYearbookClassAction.com

(5) YearbookSearchClassAction.com

(6) YearbookPhotoClassAction.com

Ms. Nolen prefers either (1) or (2); PeopleConnect prefers (3) or (4). PeopleConnect's main objection to (1) and (2) is that each uses the brand name "Classmates" which "could create confusion for people looking for the notice website and for Classmates.com"; also, (1) and (2) "do not reference the theory behind the claims themselves." Status Rpt. at 17.

The use of the brand name is not problematic. *Cf. Keim v. ADF Midatlantic, LLC*, No. 12-80577-CIV-MARRA, 2019 U.S. Dist. LEXIS 229346, at *5-6 (S.D. Fla. Feb. 1, 2019) ("As an initial matter, the Court does not agree with Defendants' position that the mere mention of the name 'Pizza Hut' in the proposed URL implies Pizza Hut's approval of the class action. The inclusion of a defendant's name in the URL for a website where class members can obtain additional information is in the Federal Judicial Council's model class notice and is therefore not

1  improper."). However, (1) and (2) are, apart from the Classmates name, somewhat generic; in that

2  regard, (5) has some appeal. The Court proposes "ClassmatesYearbookSearchClassAction,"

3  assuming that it is available.

4  C.   Other Comments re Class Notice

5  The parties have essentially agreed on the means for class notice to be given and on the

6  language to be used in the class notice. The means for class notice is reasonable. The Court has

7  some comments on the language to be used in the class notice(s).

8      1.   Weisbrot Declaration, Exhibits B and C

9  Exhibits B and C attached to the Weisbrot Declaration are samples of Internet banner ads

10 and social media ads. The parties have agreed to these samples. *See* Weisbrot Decl. ¶ 36.

11 Although the Court understands that the nature of these ads necessarily means that their

12 content is short, the Court is concerned that the ads are somewhat vague in nature. The ads

13 include a statement that "a class action lawsuit may affect your rights" (Exhibit B) or "your legal

14 rights may be affected by a class action. Act Now!" (Exhibit C). Should the ads include an

15 additional statement along the lines of the following?: "Class members must decide whether they

16 want to exclude themselves from the lawsuit."

17 In addition, the Court has some concern with the graduation imagery used in Exhibit C. Is

18 there yearbook imagery that can be used instead?

19     2.   Weisbrot Declaration, Exhibit D

20 Exhibit D attached to the Weisbrot Declaration is the class certification notice (long-form).

21 This is the notice that presumably will be available on the notice website and to which class

22 members will be directed if, *e.g.*, they click on an Internet banner ad.

23 - Page 1. At the top of the page, the notice should have a paragraph in bold that
24   follows "**NOTICE OF CLASS CERTIFICATION**." The paragraph should
25   briefly inform class members that (1) a class has been certified (with the definition
26   of the class provided below) and that (2) they must decide whether they want to
27   exclude themselves from the lawsuit.

28 - Page 1. The content of the paragraph that begins with "**IMPORTANT:**" should be

bolded in its entirety and underlined.

- Page 1 *et seq.*  Each of the questions posed (starting with "**How do I know if I am a Class Member?**" and continuing on) should be numbered.
- Page 2.  There is a typo in the section "**What are my options if I am a Class member?**"  The phrase "(by doing nothing).)." should read instead "(by doing nothing)."
- Page 2.  Regarding the section, "**How do I opt out of the Class?**," the Court understands that class members will be given 30 days to opt out.  *See* Weisbrot Decl. ¶ 36.  Should class members be given a little more time – *e.g.*, 45 days?
- Page 2.  Regarding the section, "**How do I opt out of the Class?**," a link is provided to the opt-out form.  Can the opt-out form also be included as an attachment to the class notice?
- Page 3.  There should be a section on how a class member can get more information – *e.g.*, through the website or the toll-free number.
- Page 3.  Should the notice close with a reminder about what the class member must do (*e.g.*, you need to act now if you want to exclude yourself from the class) as well as a reminder that, if the class member registers with Classmates.com, they cannot and will not be a member of the class.

3. <u>Weisbrot Declaration, Exhibit E</u>

Exhibit E attached to the Weisbrot Declaration is the opt-out form, which can be submitted online or via mail.  Should the form include a section where the individual opting out can provide other names that have been used during their school years?

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

8

### III.  CONCLUSION

The Court has provided its rulings and/or guidance on both class definition and class notice above.  Where the Court has posed questions for the parties, the parties shall meet and confer and file a joint status report in response within one week of the date of this order.

**IT IS SO ORDERED**.

Dated: May 20, 2024

_____
EDWARD M. CHEN
United States District Judge