**REDACTED**

Case No. _____

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

ALICIA NOLEN, on behalf of herself and all others similarly situated,

Plaintiff-Respondent,

v.

PEOPLECONNECT, INC.,

Defendant-Petitioner.

---

On Appeal from December 14, 2023 Sealed Order
and May 20, 2024 Order Granting Class Certification
United States District Court, Northern District of California
The Honorable Edward M. Chen
Case No. 20-cv-09203-EMC

---

# RENEWED PETITION FOR PERMISSION TO APPEAL
# UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(f)

---

Clifford W. Berlow
Debbie L. Berman
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
cberlow@jenner.com
dberman@jenner.com

Ian Heath Gershengorn
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6000
igershengorn@jenner.com

*Attorneys for Defendant-Petitioner PeopleConnect, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record for Defendant-Petitioner PeopleConnect, Inc. ("PeopleConnect") states that PeopleConnect is a wholly owned subsidiary of PeopleConnect Holdings, Inc., a non-public Delaware corporation, and PCHI Parent, Inc., a non-public Delaware corporation.

No publicly held corporation owns 10% or more of PeopleConnect's stock. PeopleConnect has no publicly held affiliates.

Dated: May 24, 2024
/s/ *Ian Heath Gershengorn*
Ian Heath Gershengorn

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ............................................................................ 1

BACKGROUND ............................................................................. 3

I.    Plaintiff's Theory Of Liability Does Not Require That Any Class
      Member's Name Appear On Classmates.com. ..................................... 3

II.   The Orders Deferred Adjudication Of Individualized Issues. ..................... 5

LEGAL STANDARD ........................................................................ 10

QUESTIONS PRESENTED .................................................................. 10

REASONS FOR GRANTING THE PETITION ............................................... 10

I.    A Class Cannot Be Certified Without A Workable Plan For Winnowing
      Class Members Who Lack Viable Claims. ......................................... 11

      A.    The Decision Below Was Manifestly Erroneous Under Circuit
            Precedent. ............................................................... 11

      B.    This Case Presents A Fundamental Issue Of Class Action Law
            Requiring The Court's Immediate Review. .................................. 16

II.   The Decision Below Is Manifestly Erroneous Because Class Certification
      Hinges On Fundamental Misreadings Of Section 3344. ............................ 20

CONCLUSION ............................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdul-Jabbar v. Gen. Motors Corp.*,
  85 F.3d 407 (9th Cir. 1996) ............................................................... 7

*In re Asacol Antitrust Litigation*,
  907 F.3d 42 (1st Cir. 2018) ......................................................... 17, 18

*Bowerman v. Field Asset Servs., Inc.*,
  60 F.4th 459 (9th Cir. 2023) ............................................................ 12

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ............................................... 13, 14, 16

*Castano v. Am. Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) ............................................................. 19

*Castillo v. Bank of Am., NA*,
  980 F.3d 723 (9th Cir. 2020) ........................................................... 12

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) ........................................................... 10

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) .......................................................................... 11

*Cordoba v. DIRECTV, LLC*,
  942 F.3d 1259 (11th Cir. 2019) ....................................................... 18

*Cross v. Facebook, Inc.*,
  14 Cal. App. 5th 190 (2017) ............................................................ 21

*Dancel v. Groupon, Inc.*,
  949 F.3d 999 (7th Cir. 2019) ............................................................. 7

*Lara v. First Nat'l Ins. Co. of Am.*,
  25 F.4th 1134 (9th Cir. 2022) .......................................................... 12

*Lightbourne v. Printroom Inc.*,
  307 F.R.D. 593 (C.D. Cal. 2015) ..................................................... 23

*Maloney v. T3Media, Inc.*,
 853 F.3d 1004 (9th Cir. 2017) ..............................................5, 22

*Miller v. Collectors Universe, Inc.*,
 159 Cal. App. 4th 988 (2008) ...................................................22

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods
 LLC*,
 31 F.4th 651 (9th Cir. 2022) ....................................................13

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
 934 F.3d 619 (D.C. Cir. 2019)........................................2, 17, 18

*In re Rhone-Poulenc Rorer, Inc.*,
 51 F.3d 1293 (7th Cir. 1995) ....................................................19

*Saunders v. Taylor*,
 42 Cal. App. 4th 1538 (1996) ...................................................23

*In re SFPP Right-of-Way Claims*,
 No. CV 15-07492, 2017 WL 2378363 (C.D. Cal. May 23, 2017)..............14, 16

*Teutscher v. Woodson*,
 835 F.3d 936 (9th Cir. 2016) ....................................................19

*Valentino v. Carter-Wallace, Inc.*,
 97 F.3d 1227 (9th Cir. 1996) ....................................................13

*Valenzuela v. Union Pac. R.R. Co.*,
 No. CV-15-01092, 2017 WL 679095 (D. Ariz. Feb. 21, 2017) ........................14

*Van v. LLR, Inc.*,
 61 F.4th 1053 (9th Cir. 2023) ........................................2, 12, 13, 14

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011)........................................................10–11, 19

*Zinser v. Accufix Rsch. Inst., Inc.*,
 253 F.3d 1180 (9th Cir. 2001) ...................................................13

**Statutes**

Cal. Civ. Code § 3344(a) .............................................................23

Cal. Civ. Code § 3344(e) ..................................................21, 22

**Other Authorities**

1 Dan B. Dobbs & Caprice L. Roberts, *Law of Remedies: Damages—Equity—Restitution* § 4.1(1), (3d ed. 2018).......................................................23

## INTRODUCTION

On December 14, 2023, the District Court conditionally certified a class that indisputably has members who cannot prove their claims. It did so without explaining how it would winnow those without valid claims from the class before final judgment. That is erroneous under the law of this and other Circuits. Compounding this error, the District Court sidestepped critical liability issues requiring individualized findings based on manifestly erroneous interpretations of the statutory elements.

Identifying these errors, PeopleConnect petitioned for review of the December 14 Order under Rule 23(f). In that Petition, PeopleConnect also demonstrated that the December 14 Order failed to define the class, making it an impermissible conditional certification. On May 20, 2024, the District Court issued a final class definition, this time without conditions. The May 20 Order, however, did not touch upon the other defects in the December 14 Order.

PeopleConnect thus files this renewed Petition to narrow the issues before the Court and moot any assertion that its prior Petition did not put the May 20 Order before the Court. Immediate review under Rule 23(f) is warranted because the certification orders ("Orders") are manifestly erroneous and raise important issues of class action and right of publicity law.

*First*, the District Court erred by certifying a class without a workable plan to remove members with meritless claims. Under *Van v. LLR, Inc.*, "[w]hen a defendant substantiates" an "individualized issue" affecting some class members' ability to prove all the elements of their claims, the district court must determine "whether a class-member-by-class-member assessment of the individualized issue will be unnecessary or workable." 61 F.4th 1053, 1069 (9th Cir. 2023). A "workable" plan both ensures that common issues predominate and upholds the Seventh Amendment. *E.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619 (D.C. Cir. 2019). Accordingly, a case cannot proceed as a class action without a "workable" plan for resolving individualized issues affecting liability. But that is what happened here.

*Second*, the Orders are premised on an unsupported expansion of the California Right of Publicity Statute, California Civil Code § 3344. After PeopleConnect showed that individualized proof is needed to determine if class members could meet Section 3344's connection and injury elements, the District Court skirted those issues by concluding what no other court has: mere presence of a name on a server is a use directly connected to advertising causing actual injury, even if that name is never seen. The District Court erred in justifying its predominance finding based on this specious reasoning.

Plaintiff did not prove the appropriateness of certifying a class. PeopleConnect, therefore, respectfully requests that the Court grant this Petition and, after briefing and argument, vacate the December 14 and May 20 Orders.

## BACKGROUND

## I. Plaintiff's Theory Of Liability Does Not Require That Any Class Member's Name Appear On Classmates.com.

Plaintiff claims Classmates.com, a website that allows users to view school yearbooks, violates Section 3344. Her theory focuses on the website's search engine where users can search for text in those yearbooks to generate results identifying pages where that text appears.[1] She claims these results violate Section 3344 because they can include a person's name and can sometimes appear adjacent to references to paid subscriptions to Classmates.com. Dkt. 227-3 at 1–2. Crucially, she contends that even if a person's name has never been in a search result or appeared adjacent to a mention of paid subscriptions, that *potential* occurrence violates the statute.

Under this sweeping theory, Plaintiff moved to certify a class of: "All persons residing in the State of California who are not registered users of Classmates.com[2] and whose names are or were searchable on the

---

[1] A thorough description of the operation of Classmates.com is at Dkt. 214 at 2–5.
[2] Registered users have contractually consented to the display of their names and thus have no Section 3344 claim.

Classmates.com website, where at least one such yearbook photograph became searchable for the first time on or after December 18, 2018." Dkt. 189-3 at 5. Plaintiff also submitted a trial plan proposing that "all issues be tried together in a single trial" and indicating she would submit at some future date a "post-trial claims administration plan … which would govern post-judgment submission, processing, and resolution of claims." Dkt. 199 at 1, 3.

After PeopleConnect identified numerous individualized issues that must be resolved to determine liability, Plaintiff in her Reply insisted these issues could be resolved by "claim administrators, various auditing processes, and sampling." Dkt. 227-3 at 10. When the District Court asked if Plaintiff envisioned a "claims made basis," her counsel answered "yes," suggesting all individual issues be resolved using a "claim form" with "back end … controls" like "sampling." A58:9–A59:6.

Plaintiff elaborated on the process she envisions in a status report submitted to the District Court after PeopleConnect filed its prior Rule 23(f) Petition. Dkt. 276 at 7–8. She proposed that part of her proposed process would require that PeopleConnect manually review the name of every class member in the 1,000-plus yearbooks at issue and identify each instance in which a class member's name is similar to that of another person's name in the same yearbook, which as discussed below would mean the class member might not have a valid

claim under the "identifiability" element of Section 3344. *Id*.[3] Plaintiff then could choose to contest each instance, with the District Court deciding contested class membership disputes. *Id*. So, in short, Plaintiff wants to shift the burden to PeopleConnect on an element of each class member's claim and have the District Court resolve individual issues of fact without a jury.

## II.    The Orders Deferred Adjudication Of Individualized Issues.

Every class member under Section 3344 must prove: (1) PeopleConnect used their names; (2) PeopleConnect appropriated their names to its advantage; (3) they did not consent to PeopleConnect's use of their names; (4) they were injured by the use; (5) the use was knowing and for purposes of advertising or solicitation; and (6) there was a direct connection between PeopleConnect's use and a commercial purpose. *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1008 n.2 (9th Cir. 2017). The District Court acknowledged that the use, consent, and injury elements require individual proof. A20–A21, A26–A27, A36–A37.

*First*, the District Court agreed that each class member must prove it is *possible* for their names to appear in a search result. A24. But the District Court

---

[3] Plaintiff's expert imprecisely estimated that the total "number of individuals" in the 1,000-plus yearbooks at issue is 394,875, of which he estimated 104,029 are class members, Dkt. 198 at 5, 8, although PeopleConnect would have no way of knowing in advance which individuals from that larger group are and are not part of the class.

acknowledged that PeopleConnect proved some potential class members *cannot* appear in search results. Dkt. 232-2 at 5–8. Specifically:

(1)    Not all names are recognized by ███████████████████ PeopleConnect uses to digitize yearbooks. Dkt. 232-2 at 2; A49:18–25.

(2)    "[O]nly the first three responsive terms for each search result will be shown," which means the first three hits for *either* the first or last name separately. Dkt. 232-2 at 7. Plaintiff's yearbook showed this means some potential class members cannot appear in search results, even though they are in the book. *Id.* at 4; A54:23–A55:1.

(3)    Search results are limited to "500 individual yearbook pages," meaning not all hits will be displayed if a common name is searched. For example, there are almost 100,000 hits when the name "John Smith" is searched in California yearbooks alone, yet only the first 500 can be displayed. Dkt. 232-2 at 3; A49:6–15. Also, if a school's name contains one of the searched names, hits for the school as opposed to individuals may be displayed. Dkt. 232-2.

(4)    Search results are not static, so even identical searches may produce different results if run at different times. The results for "John Smith" in California changed from the time Plaintiff's counsel first ran that search to when PeopleConnect did so by the time of the hearing. A48:15–A49:15, A51:20–A52:2.

PeopleConnect proved there is "no mechanical way" to resolve these issues. Dkt. 232-2 at 5. Indeed, Plaintiff and the District Court both acknowledged this meant every class member would have to be individually searched. A58–A59.

*Second*, the District Court acknowledged that each class member must prove they would be "readily identifiable" from a search result. A19–A24, A26 n.12. PeopleConnect proved this was an individualized inquiry, as class members sometimes have the same or similar names to others in the same yearbook.[4] Dkt. 232-2 at 5. In Plaintiff's yearbook alone there were 9 instances of individuals having the same names and at least 20 other instances of individuals having similar names. Dkt. 232-2 at 5. PeopleConnect also showed that proving identifiability under Section 3344 typically is done through competing survey evidence. Dkt. 232-2 at 9–10.

*Third*, the District Court acknowledged that class members must prove they did not consent to their names appearing on Classmates.com. A26. PeopleConnect identified three ways individuals may have consented:

---

[4] The District Court found that identifiability is disputable only if individuals have the same or similar names, A20, but this Court's precedent holds that identifiability is a jury question even in cases involving celebrities, *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 413 (9th Cir. 1996); *cf. Dancel v. Groupon, Inc.*, 949 F.3d 999 (7th Cir. 2019). Especially in the yearbook context, there are many reasons why people may not be identifiable by their school-age name. For example, class members may have changed names by marriage or otherwise. Also, the yearbook may include sponsors or rival teams who did not attend the school. If class members must individually prove identifiability, there would be endless mini-trials.

(1) Registered members consent to their names appearing on Classmates.com. Because membership is tied to email addresses, at a minimum, every claimant would have to disclose every email address they have ever used to enable PeopleConnect to investigate if they are members. But people often forget they registered, or what email addresses they used, necessitating additional investigation. Indeed, for three out of the six named plaintiffs in this case, PeopleConnect investigated and determined they were members despite their claims to the contrary. Dkts. 128, 151, 153, and 183. Also, PeopleConnect

███████████████████████████████████████████████████████

Dkt. 214 at 22. Often this information is inaccurate, so comparing it to information supplied in a claims form will not necessarily identify a specific person. In Plaintiff's yearbook alone, there were ██ Classmates.com members who indicated at registration they graduated in 2016, but ██ of them (████) supplied names that do not match any senior's name in the yearbook. A29–A31.

(2) Those who donate a yearbook to Classmates.com consented. PeopleConnect does not verify the accuracy of information provided by donors which it showed may be phony, misspelled, or include a common name that appears in a yearbook more than once. Dkt. 214 at 17–18. PeopleConnect thus proved it is not always possible to match any donor to a particular yearbook. *Id.*

(3)    Some class members consented by signing consent forms as students. A33–A36. The District Court acknowledged the scope of consent would vary school-to-school, but concluded the issue could be resolved "school by school rather than person by person," A36–A37, ignoring that the class involves more than 1,000 yearbooks and that a student-by-student analysis still would be required to determine if each class member signed a release. The Orders thus do not exclude those who executed consent forms. *See* A65–A73.

The District Court nonetheless conditionally certified a Rule 23(b)(3) class, stating that all of these individual issues could be resolved "at a later prove-up stage." A24–A25, A30–A33, A36–A37. Then, after PeopleConnect filed its initial Petition in this Court, based on additional submissions by the Parties, the District Court certified the following class:

> All persons residing in the State of California: (1) who are not, and have never been, registered users of Classmates.com; (2) who have never donated a yearbook to Classmates.com; and (3) for whom a search of their name, using the search bar to search a California yearbook made available for viewing on the Classmates.com website, yields at least one record corresponding to the class member from a California yearbook that Classmates.com first made publicly available on or after December 18, 2018.

A68. In doing so, the District Court did not adopt any plan for winnowing class members who could not prevail on the merits, or revisit any aspect of its rulings regarding Section 3344.

## LEGAL STANDARD

Immediate appellate review under Rule 23(f) is "most appropriate" when the class certification decision: (1) "presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review"; or (2) "is manifestly erroneous." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). A manifest error is one that is "significant" and "easily ascertainable from the petition itself." *Id.* In such cases, review is warranted "even absent a showing of another factor[]" because there is "no reason for a party to endure the costs of litigation when a certification decision is erroneous and inevitably will be overturned." *Id.*

## QUESTIONS PRESENTED

1.    Whether by certifying a Rule 23(b)(3) class without resolving how class members will prove individualized liability issues, the District Court manifestly erred under the precedent of this and other Circuits.

2.    Whether the District Court manifestly erred by certifying a class based on misinterpretations of Section 3344 that both violate the First Amendment and ignore individualized issues necessary to prove class members' claims.

## REASONS FOR GRANTING THE PETITION

Because class certification is a critical inflection point, the Supreme Court has instructed courts to engage in a "rigorous analysis" of the Rule 23 criteria. *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). The burden is on the party seeking certification to "affirmatively demonstrate" with "evidentiary proof" that its proposed class satisfies Rule 23. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

Plaintiff failed to carry her burden. *First*, the certified class includes individuals who cannot prove their claims, and Plaintiff has not outlined *how* those individuals could be winnowed in a constitutionally compliant way before judgment. *Second*, class members face at least two other individual issues of proof that foreclose certification, but the District Court cast them aside based on fundamental misreadings of Section 3344.

This Court should address these shortcomings now. The alternative is to subject PeopleConnect to unworkable proceedings in violation of the Seventh Amendment should this matter reach final judgment. In the meantime, it will face the unnecessary burdens of class litigation. PeopleConnect should not be required to wait and see whether these matters will be sorted out before final judgment.

## I.    A Class Cannot Be Certified Without A Workable Plan For Winnowing Class Members Who Lack Viable Claims.

### A.    The Decision Below Was Manifestly Erroneous Under Circuit Precedent.

This Court resolved in *Van* that a district court cannot certify a class with members who lack viable claims unless the plaintiff has proven either that it is "unnecessary" to winnow those individuals before judgment or that there is a

"workable" way to do so. 61 F.4th at 1069. Because Plaintiff made no such showing, the District Court could not certify a class.

In *Van*, the defendant proved at least 18 of over 13,000 transactions at issue were not actionable. *Id.* at 1068. The district court certified the class because it did not believe this liability defect applied to many class members. *Id.* at 1067–69, 1068 n.13. This Court vacated, explaining that emphasizing the *frequency* with which the issue would prove dispositive "rests on a misunderstanding of the Rule 23 inquiry." *Id*. at 1068. Rather, a class cannot be certified unless "a class-member-by-class-member assessment of the individualized issue will be unnecessary or workable." *Id*. at 1069.[5] *Van* further held that certification was improper even when "the number of proposed class members for whom it can presently be determined" that individualized issues will be dispositive "is *de minimis*" if the only way to identify those members was through cumbersome mini-trials. *Id.* at 1068.

---

[5] *Accord Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 468–71, 481 (9th Cir. 2023) (reversing certification because class included members lacking viable claims and "complex, individualized inquiries would be needed" to remove them); *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1138 (9th Cir. 2022) (affirming denial of certification because resolving who could not prevail "will require an individualized determination for each plaintiff"); *Castillo v. Bank of Am., NA*, 980 F.3d 723, 732 (9th Cir. 2020) (affirming denial of certification because proposed representative did not supply "a common method of proving the fact of injury and any liability" that does not require "highly individualized inquiries").

As *Van* emphasizes, requiring a court to identify a "workable" method for winnowing class members who lack viable claims *before* certifying a class follows from *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (en banc). 61 F.4th at 1069. In *Olean*, this Court explained that if a class contains uninjured class members, a court must "consider whether the possible presence of uninjured class members means that the class definition is fatally overbroad." 31 F.4th at 669 & nn.13, 14. Though this Court found the nature of the claims and evidence in *Olean* made it *unnecessary* to develop a winnowing method, this reasoning tracks longstanding precedent that a proposed class representative must proffer "a suitable and realistic plan for trial of the class claims" at certification and the "court cannot rely merely on assurances of counsel that any problems with predominance or superiority can be overcome." *E.g., Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001); *accord Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Here, despite precedent requiring that it resolve how individualized issues affecting liability will be adjudicated *before* certifying a class, the District Court deferred. That was error. To the extent the District Court read *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), to hold otherwise, it was wrong. In *Briseno*, the individualized issues concerned allocation of an easily calculable amount of aggregate damages among class members. *Id.* at 1132 (damages

calculated by multiplying price premium by number of units sold).[6] Here, aggregate damages are unknowable; they depend on the number of class members who prove entitlement to statutory damages.[7] And, as other courts recognize, *Briseno* affords no license to delegate "threshold liability concern[s] that require[] a legal determination" to "claims administrators." *In re SFPP Right-of-Way Claims*, No. CV 15-07492, 2017 WL 2378363, at *14 (C.D. Cal. May 23, 2017); *Valenzuela v. Union Pac. R.R. Co.*, No. CV-15-01092, 2017 WL 679095, at *18 (D. Ariz. Feb. 21, 2017) (*Briseno* does not mean "predominating individual issues can be disregarded at class certification because creative case management techniques may be found to deal with them later").

In *Van*, it was enough that the defendant identified 18 of 13,680 transactions affected by individual issues, thereby requiring review of each of those 13,680 transactions to determine which class members could not prevail. 61 F.4th at 1068. PeopleConnect proved more. In Plaintiff's yearbook, which lists 1,831 names in its index, PeopleConnect proved there are at least 2 individuals who are not searchable,

---

[6] The individual damages sought in *Briseno* were minimal. *Briseno*, 844 F.3d at 1130. Here, the District Court recognized that statutory damages were substantial, so PeopleConnect should be able to refute false claims. Dkt. 256 at 30 n.14.

[7] Specifically, Plaintiff seeks statutory damages of $750 per violation. Thus, to enter a judgment, the District Court must determine the number of class members with valid claims. Because that number, which will be multiplied by $750, is a prerequisite to the entry of judgment, determining who is in the class and who is not is not analogous to allocating an awarded amount among individuals seeking to share in a defined, aggregate amount.

■ sets of individuals sharing the same or similar names, and ■ instances of registered members reporting they were part of that year's senior class, albeit in ■ instances those names do not match a name in the index. And this was in one yearbook.[8] These issues will multiply across the more than 1,000 yearbooks in the proposed class.

The District Court addressed *Van* only in a conclusory footnote in the May 20 Order, stating that the need for individual inquiry there "was a more significant problem." A67 n.2. Yet in *Van*, the Court concluded that although the defendants demonstrated only that 18 transactions showed recovery was not permitted, each of the 13,680 would have to be scrutinized. Here, PeopleConnect showed in a single yearbook there were dozens of individuals who could not prevail *and* that this analytical process would need to be repeated for each of the more than 1,000 yearbooks in the certified class.

*Van* holds that the District Court could not put these issues off based on a hunch that few individuals would lose on the merits. What matters under *Van* is that there is no way to resolve them other than reviewing each class member individually in contested proceedings. That is not "workable" on a classwide basis because a method is not workable if it fails to provide PeopleConnect "a fair opportunity to

---

[8] PeopleConnect also identified a yearbook in which not one person was searchable. Dkt. 232-3 ¶ 16.

present its defenses when putative class members actually come forward." *Briseno*, 844 F.3d at 1132. That is why even if the District Court had adopted the broad contours of a method Plaintiff proposed in relation to the May 20 Order, *see* Dkt. 276 at 7—it did not—that proposal solves nothing. It runs roughshod over PeopleConnect's right to have a jury decide disputed elements by assigning what could be tens of thousands of individual determinations to the District Court (or a claims administrator). *See* Dkt. 198 at 5, 8 (Plaintiff's expert estimating that there are 394,875 individuals in 1,000-plus yearbooks at issue, of which 104,029 are class members).

It makes no difference that some issues arguably also go to class membership, rather than the merits of class members' claims. Both issues are analyzed under the same predominance and superiority criteria. If no workable method exists to separate potential class members from ineligible class members prior to judgment, the class cannot be certified. *In re SFPP Right-of-Way Claims*, 2017 WL 2378363, at \*13–14.

B.     **This Case Presents A Fundamental Issue Of Class Action Law Requiring The Court's Immediate Review.**

The rule in other circuits is that if a district court finds that a proposed class contains individuals who lack viable claims, there must be a "reasonable and workable" method for winnowing the non-viable claims prior to judgment. As noted above, that did not occur here.

The clearest articulation comes from *In re Asacol Antitrust Litigation*, 907 F.3d 42 (1st Cir. 2018). There, the First Circuit vacated certification of a class containing "members who could not be presumed to be injured" because the process the plaintiffs proposed for identifying those members precluded the defendant "from raising genuine challenges at trial to the assertion of liability by individual members of a class." *Id.* at 57. In doing so, the First Circuit held: "[T]he district court must at the time of certification offer a reasonable and workable plan for how that opportunity will be provided in a manner that is protective of the defendant's constitutional rights and does not cause individual inquiries to overwhelm common issues." *Id.* at 58.

*Asacol* highlights the delicate balance of a "workable" plan. A process that "provides defendants no meaningful opportunity to contest whether an individual would have, in fact," been injured or that relies on a claims administrator's "review of contested forms completed by consumers concerning an element of their claims" is unconstitutional for denying a defendant its Seventh Amendment and due process rights. *Id.* at 53. But a process requiring individualized inquiry into whether each class member has a valid claim would cause individualized issues to predominate. *Id.* at 53–54.

The D.C. Circuit echoed this in *In re Rail Freight Fuel Surcharge*, 934 F.3d 619. Recognizing that class members who cannot prevail "must be winnowed away

as part of the liability determination," the court held that absent a workable "mechanism" to distinguish injured class members from uninjured class members, class certification cannot occur. *Id.* at 624, 625; *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1274 (11th Cir. 2019) (court erred in certifying class without accounting for individualized issue "in deciding whether issues common to the class actually predominated over issues that were individualized to each class member"). Like the First Circuit, the D.C. Circuit emphasized the balance a workable plan must strike: "any winnowing mechanism must be truncated enough to ensure that the common issues predominate, yet robust enough to preserve the defendants' Seventh Amendment and due process rights to contest every element." *In re Rail Freight Fuel Surcharge*, 934 F.3d at 625.

These decisions arose in scenarios on all fours with this one. They involved proposed classes where "the aggregate damage amount is the sum of damages suffered by a number of individuals, such that proving that the defendant is not liable to a particular individual because that individual suffered no injury reduces the amount of the possible total damage." *In re Asacol Antitrust Litig.*, 907 F.3d at 55 (distinguishing from cases where "total damage caused by the defendant is independent of the number and identity of people harmed"). Requiring a workable winnowing method before class certification in that circumstance tracks the settled rule that a "class cannot be certified on the premise that [the

defendant] will not be entitled to litigate its statutory defenses to individual claims." *Wal-Mart*, 564 U.S. at 367. And it tracks the Seventh Amendment "right to a jury trial for suits in which *legal* rights are to be ascertained and determined." *Teutscher v. Woodson*, 835 F.3d 936, 943 (9th Cir. 2016) (quotation omitted).[9]

Every indication is that neither Plaintiff nor the District Court envisions allowing PeopleConnect to present individualized defenses to a jury. Dkt. 276 at 7–8 (Plaintiff proposing that court decide factual issues relating to class membership); Dkt. 227-3 at 10 (Plaintiff proposing individualized issues be resolved by "claim administrators, various auditing processes, and sampling"); A56:18–19 (Plaintiff proposing a "claim form" in which class members indicate they were searchable and identifiable); A24 (District Court referencing "later prove-up stage" and suggesting issues relating to consent be resolved using "self-identification"). But any Seventh Amendment compliant procedure will put individualized issues to a jury and due process will afford PeopleConnect an opportunity to test and challenge individual claims. Yet conducting such mini-trials would be at odds with the predominance and

---

[9] This is no small issue, as courts have recognized the tension between class actions and the Seventh Amendment. *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1297, 1303 (7th Cir. 1995) (rejecting, on Seventh Amendment grounds, certification of class with a trial plan where one jury would resolve liability but then allowing individual class members to file suits with subsequent juries); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996) (same).

manageability requirements of Rule 23(b)(3), requiring dense, individualized inquiries and disputes potentially over searchability, identifiability, and consent.

The solution is not to put this dilemma off to the future, but to recognize now that it means a class cannot be certified.

## II. The Decision Below Is Manifestly Erroneous Because Class Certification Hinges On Fundamental Misreadings Of Section 3344.

Review also is warranted because the decision below threatens massive liability for disseminating First Amendment protected information about the names appearing in school yearbooks despite the fact that individualized questions about the elements of "connection" and "injury" preclude certification.[10] To avoid obvious individualized issues going to these elements, the District Court held that Section 3344 bars the *potential* depiction of a person's name in a search result and that a person suffers statutory injury if a defendant obtains a scintilla of benefit from that theoretical use whether tied to that person's specific name or not. It was wrong about both points.

Without that unprecedented, erroneous expansion of Section 3344, Plaintiff's attempt to certify a class necessarily fails. In the prototypical Section 3344 case, a plaintiff's name or likeness is linked to a commercial product in a way the public

---

[10] PeopleConnect objected to the Court's misinterpretations of Section 3344 and expressly preserved those issues in its opposition and at the hearing. Dkt. 214 at 19 n.9; A51:16–A52:21, A53:20–25, A60:4–A63:5.

sees. That was the core of Plaintiff's Complaint: Classmates.com is alleged to have displayed her likeness to users in a way that encouraged them to "buy" a Classmates.com subscription. But that left Plaintiff in a quandary because it was undisputed at class certification that individualized issues would predominate if class members had to prove "connection" and "injury," given that the names of many class members have never been in a search result and determining whose names had been in a search result was highly individualized and likely impossible. Dkts. 232-2 at 11–12.

Plaintiff thus had to argue liability attaches if class members' names *could* appear in a search result *if* a user ever looks. The District Court agreed, but no court has ever held that mere presence of a person's name or likeness on a company's server is enough. For one thing, under Section 3344 a "use of the person's name" must be "directly connected with the commercial sponsorship or with the paid advertising." Cal. Civ. Code § 3344(e). The leading authority is *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190 (2017). In *Cross*, the plaintiff sued Facebook under Section 3344 for misappropriating his likeness for the purpose of advertising by selling ad space on Facebook pages that also included his image. *Id.* at 208–09. The court affirmed dismissal because even though the plaintiff's photographs appeared on Facebook, Facebook had not incorporated those photographs into the advertising. *Id.* at 210. Plaintiff's theory here is even more attenuated. There, the plaintiff's name

and image had been displayed on Facebook; here, Plaintiff contends a name need never be displayed on Classmates.com.

In agreeing with Plaintiff that mere *possibility* of a person's name appearing in a search result supports Section 3344 liability, the District Court placed weight on the fact that PeopleConnect offers its search engine for commercial reasons. A18–A19. But this misses the point. The search engine may have a commercial purpose—every business does—but "solely because the material containing" the person's name is commercial is not sufficient to show it was "directly connected" if the search engine never accesses that name. Cal. Civ. Code § 3344(e).

Section 3344 also requires proof of "resulting injury." *Maloney*, 853 F.3d at 1008 n.2. And while proving a plaintiff's personal "mental anguish" or "discernable commercial loss" would suffice, *Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1006 (2008), those are individualized inquiries not amenable to class resolution. So, Plaintiff claimed the class could prove classwide economic injury by showing that PeopleConnect profited from hosting and licensing yearbooks. Dkt. 227-3 at 5–7. The District Court agreed. A37–A39. This too was manifest error.

Simply because a defendant profited does not mean any individual suffered injury, especially class members whose names are never searched. The statute reinforces that point; it allows "injured part[ies]" to recover "the greater of," on the one hand, the plaintiff's "actual damages suffered ... as a result of the unauthorized

use" and, on the other hand, $750. Cal. Civ. Code § 3344(a). It does not look to the defendant's gain. Rather, the plaintiff must prove she is an "injured party" who suffered "actual damages." And "actual damages" in California "denote[s] compensatory damages for actual injuries." *Saunders v. Taylor*, 42 Cal. App. 4th 1538, 1543–44 (1996); *Lightbourne v. Printroom Inc.*, 307 F.R.D. 593, 602 (C.D. Cal. 2015) ("[A] plaintiff [cannot] simply recover [statutory damages] upon proof that his or her likeness was displayed on a school's online photo store. … [W]hile Section 3344 … provides for $750 in statutory damages, courts parsing the statute have unanimously concluded that these statutory damages are recoverable only upon a showing of actual damages[.]").

The District Court maintained that if PeopleConnect attached "some economic value" to the overall set of class members' names, that was "actual injury" for each member. A38–A39. But Section 3344 includes a *separate* disgorgement remedy for those who suffer actual damages consisting of "any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages." Cal. Civ. Code § 3344. Proof of a basis for disgorgement does not double as evidence of actual injury. 1 Dan B. Dobbs & Caprice L. Roberts, *Law of Remedies: Damages—Equity—Restitution* § 4.1(1), at 374 (3d ed. 2018). It certainly does not establish actual injury for each class member, including (again) those whose names were never in a search result.

In short, inquiries into connection and injury here are highly individualized and cannot be resolved without a class member by class member examination. The District Court's order erroneously eliminated those statutory requirements in conditionally certifying a class and thus should be reviewed.

## CONCLUSION

For these reasons, PeopleConnect's petition for permission to appeal should be granted.

Date: May 24, 2024                                  Respectfully submitted,

                                                    /s/ *Ian Heath Gershengorn*

Clifford W. Berlow                                  Ian Heath Gershengorn
Debbie L. Berman                                    JENNER & BLOCK LLP
JENNER & BLOCK LLP                                  1099 New York Avenue, NW
353 North Clark Street                              Suite 900
Chicago, IL 60654                                   Washington, DC 20001
(312) 222-9350                                      (202) 639-6000
cberlow@jenner.com                                  igershengorn@jenner.com
dberman@jenner.com

*Attorneys for Defendant-Petitioner PeopleConnect, Inc.*

# CERTIFICATE OF COMPLIANCE

I hereby certify that PeopleConnect's Renewed Petition for Permission to Appeal Under Federal Rule of Civil Procedure 23(f) complies with Circuit Rules 5-2(b) and 32-3 because the Petition's word count of 5,597 divided by 280 (19.99) does not exceed 20 pages, excluding the portions identified in Federal Rules of Appellate Procedure 5(b)(1)(E) and 32(f). The Petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in 14-point Times New Roman font.

Dated: May 24, 2024

/s/ *Ian Heath Gershengorn*
Ian Heath Gershengorn

## CERTIFICATE OF SERVICE FOR ELECTRONIC FILING

I, Ian Heath Gershengorn, hereby certify that I caused the Petition For Permission To Appeal Under Federal Rule Of Civil Procedure 23(f), the Sealed Appendix, and the Appendix to be electronically filed with the Clerk of the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system on May 24, 2024. I further certify that on May 24, 2024, I caused these documents to be served by electronic mail and overnight mail, delivery charge prepaid, to the following:

Raina Challeen Borrelli
Samuel Joseph Strauss
Strauss Borrelli PLLC
980 N Michigan Ave.
Suite 1610
Chicago, IL 60611
(872) 263-1100
raina@straussborrelli.com
sam@straussborrelli.com

Michael Francis Ram
Marie Noel Appel
Morgan & Morgan
Complex Litigation Group
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
(415) 358-6913
mram@forthepeople.com
mappel@forthepeople.com

Benjamin Ross Osborn
Law Office of Benjamin R. Osborn
102 Bergen Street, Apt. 4
Brooklyn, NY 11201
(347) 645-0464
ben@benosbornlaw.com

/s/ *Ian Heath Gershengorn*
Ian Heath Gershengorn

*Attorney for Defendant-
Petitioner PeopleConnect, Inc.*